# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DOW CHEMICAL CANADA, INC. §
on its own behalf and as assignee of §
THE DOW CHEMICAL COMPANY §
§
VS. § C.A. No. 05-23 (JJF)
§
HRD CORPORATION (d/b/a §
Marcus Oil & Chemical) §

## DEFENDANT'S ANSWER AND COUNTERCLAIMS

Defendant, HRD CORPORATION (d/b/a Marcus Oil & Chemical) ("HRD"),
by and through its undersigned counsel, responds to the complaint filed by
Plaintiff, DOW CHEMICAL CANADA, INC. ("DCCI"), on its own behalf and as
assignee of THE DOW CHEMICAL COMPANY ("TDCC") (collectively "Dow"), as
follows:

1.     Defendant admits that Plaintiff brought this action as alleged in
Paragraph 1 of Plaintiff's Complaint but denies that Defendant owes any monies
to Plaintiff and that any monies are due in whole or in part to Plaintiff. Defendant
admits that the parties did communicate with respect to polyethylene wax
production, but Plaintiff's description is a misleading mischaracterization in
material respects of what actually occurred. Defendant admits entering into the
two contracts with Plaintiff – (1) a Joint Development Agreement ("JDA") and (2)
the Sarnia PE Wax Supply Agreement ("Supply Agreement"). However,
Defendant denies the factual statements because they are incomplete and because

the contracts, which contain numerous provisions to which the Complaint does not refer, speak for themselves.  Defendant denies that DCCI commenced production of polyethylene wax in accordance with the specifications of the parties. Defendant denies that Defendant failed to make payments due for conforming product under any agreement.  Defendant denies being in default of any payment. Defendant denies that DCCI has any right to terminate any agreement with Defendant or that DCCI has any right to recover any funds in this action.

2.    Defendant admits the allegations in Paragraph 2 of Plaintiff's Complaint.

3.    Defendant admits the allegations in Paragraph 3 of Plaintiff's Complaint.

4.    Defendant admits the allegations in Paragraph 4 of Plaintiff's Complaint.

5.    Defendant does not at this time have sufficient information to admit or deny the allegations in Paragraph 5 of Plaintiff's Complaint.

6.    Defendant admits the allegations in Paragraph 6 of Plaintiff's Complaint.

7.    Defendant admits that the parties communicated with respect to the manufacture of polyethylene waxes.

8.    Defendant admits entering into negotiations with Plaintiff and signing a Confidentiality Agreement.  Defendant denies that it withheld any necessary information from Plaintiff.

2

9.    Defendant denies the factual allegations in Paragraph 9 of Plaintiff's Complaint because they fundamentally misrepresent the events they purport to describe.

10.    Defendant admits that Defendant and Plaintiff entered into two contracts as alleged in Paragraph 10 of Plaintiff's Complaint, but denies Plaintiff's version of the content of the contracts because the provisions of the contracts, many of which are material terms but do not appear here, speak for themselves.

11.    Defendant admits that Defendant and Plaintiff entered into the JDA, which speaks for itself. Defendant therefore denies the remainder of Paragraph 11 of Plaintiff's Complaint as incomplete and misleading. [1]

12.    Defendant admits entering into the JDA, which speaks for itself. Defendant therefore denies the remainder of Paragraph 12 of Plaintiff's Complaint as an incomplete account of the terms and purpose of the contract.

13.    Defendant denies Plaintiff's account of the terms of the JDA as articulated in Paragraph 13 of the Complaint on the grounds that Plaintiff's interpretation of the JDA is misleading and necessarily incomplete. The JDA

---

[1] On December 3, 2004, HRD's main offices, warehouse, and plant sustained extensive damage in a fire at the Marcus Oil complex in Houston, Texas. HRD stored the vast majority of its business records at this location Due to the fire damage, the City of Houston declared the structure unsafe and refused to permit any officer or employee of HRD to reenter any of the buildings. On December 4, 2004, the City of Houston razed the entire complex to the ground, destroying the bulk of HRD's business records, including electronic data stored on HRD's computers. HRD is diligently attempting to reconstruct those records to the extent such reconstruction is possible, but HRD currently lacks sufficient knowledge to admit or deny many of Plaintiff's factual allegations due to the destruction of its records in the fire and subsequent bulldozing of its Houston offices. For this reason, we are unable to admit at this time whether the documents that Plaintiff alleges are true and correct in this and other paragraphs are in fact true, correct, and complete. Defendant will supplement to the extent possible upon retrieval or reconstruction of any of these destroyed records.

contains many material terms not mentioned here, and those terms speak for themselves as to the parties' obligations.

14.    Defendant denies the factual allegations in Paragraph 14 of Plaintiff's Complaint on the grounds that Plaintiff does not fully and accurately describe the terms of the JDA. The JDA that the parties executed articulate the obligations of those terms far more completely and thoroughly than Plaintiff's allegations here, and they speak for themselves as to those obligations.

15.    Defendant admits that the parties executed the two contracts, but denies Plaintiff's factual allegations in Paragraph 15 of the complaint on the grounds that the terms of the Supply Agreement speak for themselves and that Plaintiff's account of the terms of the Supply Agreement is incomplete and misleading.

16.    Defendant denies the factual allegations in Paragraph 16 of Plaintiff's Complaint because the parties mutually agreed to complete the additional specifications at a later date.

17.    Defendant admits the provisions to which Paragraph 17 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

18.    Defendant admits the provisions to which Paragraph 18 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

19.    Defendant admits the provisions to which Paragraph 19 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

20.    Defendant admits the provisions to which Paragraph 20 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

21.    Defendant admits the provisions to which Paragraph 21 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

22.    Defendant admits the provisions to which Paragraph 22 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

23.    Defendant admits the provisions to which Paragraph 23 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

24.    Defendant admits the provisions to which Paragraph 24 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

25.    Defendant admits the provisions to which Paragraph 25 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

26.    Defendant admits the provisions to which Paragraph 26 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

27.    Defendant admits the provisions to which Paragraph 27 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

28.    Defendant admits the provisions to which Paragraph 28 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

29.    Defendant admits the provisions to which Paragraph 29 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

30.    Defendant admits the provisions to which Paragraph 30 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

31.    Defendant admits the provisions to which Paragraph 31 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

32.    Defendant admits the provisions to which Paragraph 32 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

33.    Defendant admits the provisions to which Paragraph 33 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

34.    Defendant admits the provisions to which Paragraph 34 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

35.    Defendant admits that Defendant and Plaintiff worked on potential specifications, as alleged in Paragraph 35 of Plaintiff's Complaint.

36.    Defendant admits that Defendant and Plaintiff worked on potential specifications but deny that Plaintiff relied on Defendant, as alleged in Paragraph 36 of Plaintiff's Complaint.  Defendant admits that Plaintiff and Defendant spoke together about these matters and looked at samples on occasion, but Defendant denies the remainder of the factual allegations.

37.    Plaintiff had extensive knowledge regarding Defendant's end use applications and even Defendant's prospective customers for the product. Defendant denies the factual allegations in Paragraph 37 of Plaintiff's Complaint regarding evaluation of the commercial viability of the product, Dow's reliance, and Dow's subjective expectations.

38.    Defendant admits participation in developing supplements to the Supply Agreement, but Defendant denies Plaintiff's factual allegations in Paragraph 38 regarding the circumstances under which Defendant and Plaintiff signed any agreement.  These assertions are incomplete and misleading.

7

39.    At this time, Defendant denies Plaintiff's factual allegations in Paragraph 39 of the Complaint for want of information. Defendant is currently seeking to verify or deny this allegation more completely and may supplement this response.

40.    Defendant admits that the parties executed an amendment to the Supply Agreement, but Defendant denies Plaintiff's remaining factual allegations in Paragraph 40 of the Complaint. These allegations regarding reasons for the amendment are incomplete and misleading. Additionally, Plaintiff's unverifiable account of its perception of Defendant's business plan is speculative and misleading.

41.    Defendant admits the provisions in Paragraph 41 of Plaintiff's Complaint.

42.    Defendant admits the provisions to which Paragraph 42 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

43.    Defendant admits the provisions to which Paragraph 43 of Plaintiff's Complaint refers, but Defendant denies the statements as an incomplete recitation of those provisions.

44.    Defendant admits the authenticity of the amendment to which Paragraph 44 of Plaintiff's Complaint refers, but Defendant denies Plaintiff's summary as incomplete and inaccurate.

45.    Defendant admits Plaintiff's factual allegations in Paragraph 45 of the Complaint that Defendant paid $4 million as part of its performance under the contract.

46.    Defendant cannot admit nor deny Plaintiff's factual allegations in Paragraph 46 of the Complaint.  The complete terms of the Supply Agreement and any amendments speak for themselves.

47.    Defendant admits Plaintiff's factual allegations in Paragraph 47 of the Complaint.

48.    Defendant admits executing an amendment to the JDA but denies Plaintiff's remaining factual allegations in Paragraph 48 of the Complaint.  The complete terms of the JDA and any amendments speak for themselves.  Defendant denies Plaintiff's account regarding the purpose or effect of any amendment.

49.    Defendant admits executing the Supply Agreement and accompanying Schedules but denies Plaintiff's remaining factual allegations in Paragraph 49 of Plaintiff's Complaint.  The Supply Agreement and related documents speak for themselves, and Plaintiff's allegations are an inaccurate and incomplete restatement of the contract's terms.

50.    Defendant admits receiving small quantities of material from Plaintiff, but Defendant is presently seeking additional information to admit or deny Plaintiff's remaining factual allegations.  Defendant therefore denies the remainder of Paragraph 50 of the Complaint for want of information.

51.    Plaintiff has not provided Defendant with sufficient information such that Defendant could admit or deny either that the Sarnia plant conversion was ever completed or, if so, when, as alleged in Paragraph 51 of Plaintiff's Complaint.

52.    Plaintiff has not provided Defendant with sufficient information such that Defendant could admit or deny any plan that Plaintiff allegedly created for the Sarnia plant, as asserted in Paragraph 52 of Plaintiff's Complaint. Defendant similarly cannot admit or deny whether Plaintiff's self-serving assertions regarding the contents of that plan are true. Defendant denies that Plaintiff "indicated" to Defendant what conforming or non-conforming products the plant would initially produce.

53.    Paragraph 53 of Plaintiff's Complaint is an incomplete summary of the applicable facts, and Plaintiff's statements are vague regarding the events and items to which it refers. Defendant therefore denies these factual allegations.

54.    Defendant cannot admit or deny when Plaintiff allegedly commenced operations at its plant, as alleged in Paragraph 54 of the Complaint.

55.    Defendant cannot admit or deny whether or not Plaintiff's self-serving allegations in Paragraph 55 of Plaintiff's Complaint are true. Plaintiff has provided Defendant with no credible information regarding its plant operations. Defendant denies any knowledge of Plaintiff's testing or of Plaintiff's attempts to ensure that the Sarnia plant produced conforming materials.

56.    Defendant admits receiving some product from Plaintiff about the time alleged in Paragraph 56 of Plaintiff's Complaint.    Plaintiff provided Defendant with insufficient information for Defendant to admit or deny when Plaintiff produced or shipped the product.    Defendant further denies that the product corresponded to any product specifications under the Supply Agreement.

57.    Defendant admits receiving some product from Plaintiff on or about the time alleged in Paragraph 57 of Plaintiff's Complaint.    Plaintiff provided Defendant with insufficient information for Defendant to admit or deny when Plaintiff produced or shipped the product.    Defendant further denies that the product corresponded to any product specifications under the Supply Agreement.

58.    Defendant admits receiving some product from Plaintiff on or about the time alleged in Paragraph 58 of Plaintiff's Complaint.    Plaintiff provided Defendant with insufficient information for Defendant to admit or deny when Plaintiff produced or shipped the product.    Defendant further denies that the product corresponded to any product specifications under the Supply Agreement.

59.    Defendant admits corresponding with Plaintiff on or about the time alleged in Paragraph 59 of Plaintiff's Complaint, but Defendant denies that the subject of the correspondence related to product that conformed to the Supply Agreement.

60.    Defendant admits receiving some product from Plaintiff on or about the time alleged in Paragraph 60 of Plaintiff's Complaint.    Plaintiff provided Defendant with insufficient information for Defendant to admit or deny when

11

Plaintiff produced or shipped the product. Defendant further denies that the product corresponded to any product specifications under the Supply Agreement. Defendant also denies Plaintiff's legal conclusions regarding the degree of materiality from which the product diverged from the JDA specifications.

61. Defendant admits receiving some product from Plaintiff on or about the time alleged in Paragraph 61 of Plaintiff's Complaint. Plaintiff provided Defendant with insufficient information for Defendant to admit or deny when Plaintiff produced or shipped the product. Defendant further denies that the product corresponded to any product specifications under the Supply Agreement.

62. Defendant admits receiving some product from Plaintiff on or about the time alleged in Paragraph 62 of Plaintiff's Complaint. Plaintiff provided Defendant with insufficient information for Defendant to admit or deny when Plaintiff produced or shipped the product. Defendant further denies that the product corresponded to any conforming product under the Supply Agreement. Defendant also denies Plaintiff's legal conclusions regarding the degree of materiality from which the product diverged from the JDA's specifications.

63. Defendant denies Plaintiff's allegations regarding Defendant's obligations under the Supply Agreement as asserted in Paragraph 63 of Plaintiff's Complaint. Defendant denies Plaintiff's legal assertions regarding any event that "triggered" the applicability of any Supply Agreement. Defendant also denies that Plaintiff produced any product conforming to the requirements of the Supply Agreement.

64.     Defendant denies Plaintiff's factual and legal allegations in Paragraph 64 of the Complaint.

65.     Defendant denies Paragraph 65 of Plaintiff's Complaint for want of information.  Plaintiff did not attach the email to which the paragraph refers, and Defendant has not yet located it.

66.     Defendant admits paying for product that it took as non-conforming product under the contract, as referenced in Paragraph 66 of Plaintiff's Complaint, but Defendant denies that Plaintiff's factual allegations fully articulate the facts and circumstances surrounding any invoice Plaintiff sent to Defendant or any payment Defendant sent to Plaintiff.

67.     Defendant admits payment of an invoice in the amount of Can $1.375 million based on Plaintiff's representations, to which payment Plaintiff refers in Paragraph 67 of the Complaint.

68.     Defendant denies all legal and factual allegations in Paragraph 68 of Plaintiff's Complaint on the grounds that Plaintiff's representations regarding the conformity of the product to the contract specifications are inaccurate and incomplete, and that such representations constitute mischaracterizations of Plaintiff's compliance with the contractual obligations to which it freely committed itself.

69.     Defendant denies Plaintiff's factual allegations in Paragraph 69 of the Complaint.  Defendant repeatedly sought to receive conforming material from the plant, but Plaintiff refused to provide it.

13

70.    Defendant denies Plaintiff's factual allegations in Paragraph 70 of the Complaint.

71.    Defendant denies Plaintiff's factual allegations in Paragraph 71 of the Complaint.  Defendant denies Plaintiff's self-serving suppositions regarding Defendant's subjective and unshared understanding regarding any communications Plaintiff made to Defendant.  Defendant further denies that Plaintiff produced non-conforming product in good faith.

72.    Defendant denies Plaintiff's factual allegations in Paragraph 72 of the Complaint.

73.    Defendant denies Plaintiff's factual allegations in Paragraph 73 of the Complaint.

74.    Defendant denies Plaintiff's factual allegations in Paragraph 74 of the Complaint for want of information.  Defendant is currently researching delivery dates and payment history and may supplement this response.

75.    Defendant denies Plaintiff's factual allegations in Paragraph 75 of the Complaint for want of information.  Defendant is currently researching delivery dates and payment history and may supplement this response.

76.    Defendant denies Plaintiff's factual allegations in Paragraph 76 of the Complaint for want of information.

77.    Defendant denies Plaintiff's factual allegations in Paragraph 77 because this summary presents an incomplete and misleading account of Plaintiff and Defendant's business dealings.

78.    Defendant admits that it never terminated the Supply Agreement and that it discussed trying to get conforming materials with Plaintiff, as alleged in Paragraph 78 of the Complaint. Defendant denies Plaintiff's remaining factual allegations.

79.    Defendant denies any monies are due either in whole or in part to Plaintiff, as Plaintiff alleges in Paragraph 79 of the Complaint. Defendant is currently attempting to obtain information from which it may be able to compile a list of deliveries and invoices and may supplement this response when the records permit.

80.    Defendant denies any monies are due either in whole or in part to Plaintiff, as Plaintiff alleges in Paragraph 80 of the Complaint. Defendant is currently attempting to obtain information from which it may be able to compile a list of deliveries and invoices and may supplement this response when the records permit.

81.    Defendant denies any monies are due either in whole or in part to Plaintiff, as Plaintiff alleges in Paragraph 81 of the Complaint. Defendant is currently attempting to obtain information from which it may be able to compile a list of deliveries and invoices and may supplement this response when the records permit.

82.    Defendant denies any monies are due either in whole or in part to Plaintiff, as Plaintiff alleges in Paragraph 82 of the Complaint. Defendant is currently attempting to obtain information from which it may be able to compile a

list of deliveries and invoices and may supplement this response when the records permit.

83.    Defendant denies any monies are due either in whole or in part to Plaintiff, as Plaintiff alleges in Paragraph 83 of the Complaint.  Defendant is currently attempting to obtain information from which it may be able to compile a list of deliveries and invoices and may supplement this response when the records permit.

84.    Defendant denies any monies are due either in whole or in part to Plaintiff, as Plaintiff alleges in Paragraph 84 of the Complaint.  Defendant is currently attempting to obtain information from which it may be able to compile a list of deliveries and invoices and may supplement this response when the records permit.

85.    Defendant denies any monies are due either in whole or in part to Plaintiff, as Plaintiff alleges in Paragraph 85 of the Complaint.  Defendant is currently attempting to obtain information from which it may be able to compile a list of deliveries and invoices and may supplement this response when the records permit.

86.    Defendant denies any monies are due either in whole or in part to Plaintiff, as Plaintiff alleges in Paragraph 86 of the Complaint.  Defendant is currently attempting to obtain information from which it may be able to compile a list of deliveries and invoices and may supplement this response when the records permit.

87.     Defendant denies Plaintiff's factual allegations in Paragraph 87 of the Complaint.  Defendant admits receiving demands for payment of various sums of money from Plaintiff.  Defendant denies Plaintiff's assertions that these demands were valid or justified.  Defendant further denies that the agreement of the parties authorized Plaintiff to demand millions of dollars from Defendant.  The complete terms of the Supply Agreement and any amendments speak for themselves.

88.     Defendant admits receiving this letter from Plaintiff on or about the time alleged in Paragraph 88 of the Complaint.  Defendant denies the remaining factual allegations.

89.     Defendant admits receiving Exhibit H from Plaintiff on or about the time alleged in Paragraph 89 of the Complaint.  Defendant denies the remaining factual allegations.

90.     Defendant admits receiving Exhibit I from Plaintiff on or about the time alleged in Paragraph 90 of the Complaint.  Defendant denies the remaining factual allegations.

91.     Defendant admits receiving Exhibit J from Plaintiff on or about the time alleged in Paragraph 91 of the Complaint.  Defendant denies the remaining factual allegations.

92.     Defendant admits receiving Exhibit K from Plaintiff on or about the time alleged in Paragraph 92 of the Complaint.  Defendant denies the remaining factual allegations.

93.    Defendant denies Plaintiff's factual allegations in Paragraph 93 of the Complaint. Defendant denies that it owes these amounts to Plaintiff.

94.    Defendant admits receiving Exhibit L from Plaintiff on or about the time alleged in Paragraph 94 of the Complaint. Defendant denies the remaining factual allegations. Defendant denies that it owes any of these amounts to Plaintiff

95.    Defendant denies Plaintiff's factual allegations in Paragraph 95 of the Complaint. Defendant denies any assertion that it failed to conform to the terms of the Supply Agreement or ever committed any breach, material or otherwise. Defendant also denies that Plaintiff has any right to recover any funds in this action.

96.    Defendant denies Plaintiff's factual allegations in Paragraph 96 of the Complaint. Defendant denies that it owes any amounts to Dow. Defendant denies that any portion of the Supply Agreement authorizes payment of any such amounts. The complete terms of the Supply Agreement and any amendments speak for themselves. Plaintiff's summary of the Supply Agreement is incomplete and a misrepresentation of the terms of the agreement. Defendant also denies Plaintiff's legal conclusions that the termination of the contract entitled Plaintiff to payment of any funds.

97.    Defendant incorporates its responses to Paragraphs 1-96 to Plaintiff's Complaint as if set forth herein.

98.    Defendant admits that Plaintiff and Defendant are parties to the Supply Agreement as alleged in Paragraph 72 of the Complaint. Defendant denies all remaining factual allegations on the grounds that they are legal conclusions.

99.    Defendant denies Plaintiff's factual allegations in Paragraph 99 of the Complaint.

100.    Defendant denies Plaintiff's factual allegations in Paragraph 100 of the Complaint.

101.    Defendant denies Plaintiff's factual allegations in Paragraph 101 of the Complaint.

**DEFENSES**

102.    Defendant asserts the defense of failure of consideration. Dow failed to produce any product that fulfilled its obligations under the Supply Agreement. Specifically, Defendant denies that Dow achieved "Beneficial Manufacture." No part of the Supply Agreement obligates HRD to pay for any non-conforming product.

103.    Defendant asserts the defense of prior breach. HRD fulfilled all its obligations under the Supply Agreement until Dow began producing wax that did not conform to the contractual specifications. In further discussions, Dow asserted that it believed that the product conformed to the specifications and refused to produce waxes that matched the samples HRD had approved. Dow's production, delivery, and demand for payment of non-conforming product constitute a breach of Section 9.1.1 of the Supply Agreement. Additionally, Dow breached Section

9.1.3 of the Supply Agreement by failing to remove solvents or "light ends" from the wax, by recombining these light ends into the wax, or both.

104.  Light ends are waste byproducts of the manufacturing process for polyethylene wax. Both the wax and the light ends are composed of carbon and hydrogen. The light ends, however, have fewer carbon atoms; they therefore have a lower molecular weight and are liquid or gaseous, unlike polyethylene wax, which is a highly viscous material. These substances are used as solvents in the manufacturing process, and the process itself produces additional quantities of light ends. Manufacturers of these waxes typically remove these volatile light ends from the finished wax because the presence of this impurity results in a product that is far more likely to smoke and/or catch fire under the elevated temperatures used in transportation, storage, and end use of the product.

105.  HRD paid for the retrofitting of the plant, including equipment to remove this impurity from the product. Dow was aware of the problematic nature of these light ends in the intended end use application. The manufacturing process was designed to remove this substance, but rather than dispose of it in a manner consistent with good manufacturing practices, Dow either dumped this waste material back into the product, failed to remove it, or both. The presence of these light ends directly caused the finished substance to be completely unfit for any commercial purpose. Furthermore, by recombining the light ends, Dow breached Section 12.1 of the Supply Agreement by altering the production facilities and raw materials Dow used in the manufacture of the wax. HRD did not and would not

20

have consented to later addition of any impurity, much less one that HRD had sought to eliminate by paying for equipment for exactly this purpose. Dow's multiple breaches of the Supply Agreement fully excuse HRD's later refusal to continue to make payments on a plant that was not producing conforming waxes and payments for defective wax that it could not use.

106. Defendant asserts the defense of failure to perform conditions precedent. The Supply Agreement does not obligate HRD to pay for substantially non-conforming product. Because Dow never produced any commercially usable waxes, HRD was not obligated to pay for them.

107. Defendant asserts the defense of failure to give adequate assurance of future performance. After Dow submitted its first waxes, HRD quickly realized that the wax did not conform to the specifications and samples that Dow had provided to HRD, nor did Dow produce any Grade 1 product. HRD became reasonably insecure regarding Dow's future performance under the Supply Agreement and requested in writing adequate assurances that Dow's performance would conform to the Supply Agreement in the future. Pending receipt of such assurances, HRD suspended its performance under the Supply Agreement, fully intending to resume performance should Dow give adequate assurances that its future performance would comply with the terms of the agreement between the parties. Dow failed to give these assurances and instead demanded additional compensation and terms that extended far beyond the original Supply Agreement. Dow's actions reaffirmed HRD's concerns regarding Dow's future performance.

21

Dow's failure to give adequate assurances constitutes repudiation of the Supply Agreement pursuant to 6 Del. C. §2-609(4).

108.   Defendant asserts the defense of breach of the obligation of good faith and fair dealing.   The Joint Development Agreement imposed these obligations on both parties, but Plaintiff breached this obligation by failing to collaborate to produce conforming goods in good faith.   Plaintiff gained confidential information from Defendant regarding Defendant's business dealings, clients, and products, on the premise that Plaintiff would collaborate with Defendant to produce a commercially viable product.   Instead of executing its duties under the contract, Plaintiff delivered non-conforming, entirely unusable product to Defendant.   Defendant timely inspected the goods and informed Plaintiff that the product was defective and had no commercially viable use, and Plaintiff failed to provide conforming goods.   In fact, Plaintiff declined to provide conforming goods unless Defendant modified its obligations to Plaintiff.   Plaintiff sought to use the JDA and Supply Agreement as leverage because Defendant had relied on Plaintiff's promises that it would supply Defendant with product in a quantity and quality to meet its needs.   Dow's refusal to comply with these obligations constituted a breach of the duty of good faith and fair dealing.

## COUNTERCLAIMS

109.   This is an action for breach of contract and for a determination of rights under those contracts.   In July 2002, Dow entered into two contracts

regarding Dow's manufacture and supply of polyethylene waxes to HRD. The first contract, the Joint Development Contract ("JDA") obligated TDCC to develop with HRD specifications for a particular kind of polyethylene wax that HRD negotiated to purchase from Dow. Dow and HRD entered into a second contract, the Sarnia PE Wax Supply Agreement ("Supply Agreement") under which TDCC, and later DCCI, as assignee of the Supply Agreement agreed to supply HRD with polyethylene waxes which complied with the parties' expectations and the specifications to be developed pursuant to the JDA. DCCI commenced production of polyethylene wax in May 2004. HRD has complied with all of its obligations under the Supply Agreement. However, the wax manufactured by Dow failed to conform to either the specifications or parties' expectations and did not meet commercial standards for wax production. In accordance with the Delaware Uniform Commercial Code, HRD notified Dow that the product did not meet the parties' expectations or specifications and requested that Dow cure the manufacturing defect. Dow refused to do so, which constituted a material breach of both the Joint Development Agreement and Supply Agreement. Dow also misappropriated HRD's proprietary information, despite the execution of a confidentiality agreement, in violation of the Delaware Uniform Trade Secrets Act, 6 Del. C. §2001 et. seq. As a result of Dow's wrongful actions, HRD has suffered extensive damages.

## JURISDICTION AND VENUE

110.   The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a)(2) in that it is an action between a foreign citizen and a citizen of a state and the amount in controversy exceeds $75,000 exclusive of interest and costs.

111.   The Court has personal jurisdiction over Dow, because in Paragraph 23 of the Supply Agreement, both Dow and HRD agreed to submit to the exclusive jurisdiction of the court of Delaware or Michigan.

112.   Venue is proper in this District pursuant to 28 U.S.C. Section 1391 because Dow agreed to submit to the exclusive jurisdiction of the Courts of Delaware or Michigan.

## PARTIES

113.   Counter-Plaintiff HRD is a Texas corporation with its principal place of business in Houston, Texas. HRD sells polyethylene waxes under the name Marcus Oil and Chemical.

114.   Counter-Defendant DCCI is a Canadian corporation with its principal place of business in Calgary, Alberta, Canada. DCCI is an indirectly wholly owned subsidiary of TDCC and produces chemical, plastic and agricultural products for a variety of industrial and consumer uses. DCCI is the assignee of the contract at issue that was originally executed by TDCC and HRD. TDCC is a Delaware corporation with its principal place of business in Midland, Michigan.

TDCC produces chemical, plastic and agricultural products for a variety of industrial and consumer uses.

## COUNT 1: BREACH OF THE SUPPLY AGREEMENT

115. Plaintiff/Counter-Defendant Dow materially breached the Supply Agreement such that the value of the entirety of the contract was substantially impaired. Dow's material breach occurred prior to any alleged breach of HRD. Dow deliberately included solvents, or light ends, in the product. Inclusion of this impurity made the product commercially useless in its entirety. Dow's adulteration of the wax created a product that was far more likely to smoke and/or catch fire under the elevated temperatures used in transportation, storage and end use. Dow was aware of the end use application and the application temperatures to which the wax would be subjected. Upon HRD's notifying Dow of the serious departure from the specifications, Dow refused to supply conforming product without additional substantial consideration from Defendant/Counter-Plaintiff HRD, including accelerated payments of the costs to retrofit the plant, payments for the costs of producing non-conforming product, and a guarantee of over $30 million for future payments.

116. Counter-Plaintiff complied with its obligations under the Supply Agreement. Counter-Plaintiff paid millions of dollars to retrofit Dow's plant to produce a high-quality wax. The manufacturing process requires equipment to remove these light ends from the wax, and HRD happily paid for that equipment. Because of either Dow's failure to eliminate these light ends or Dow's intentional

25

recombination of the waste material back into the product, all the wax that Dow sent HRD contained this impurity.   This waste material made the product completely worthless.   Because the material Dow shipped to HRD failed to conform in all material respects to the specifications, Dow breached Section 9.1.1 of the Supply Agreement.

117.   Failure to remove the light ends, or deliberately recombining them, constitutes a breach of Dow's contractual obligations.   All the wax that Dow shipped was this adulterated product, and HRD never received any usable product that complied with the contractual specifications.   HRD sought to ensure that the plant would produce high-quality product, which is why HRD paid handsomely for the retrofitting, including equipment to remove this waste by-product.   Dow's production of contaminated wax violates Section 12.1 of the Supply Agreement, which requires Dow to obtain HRD's consent to alter the production facilities and raw materials.

118.   Dow also obligated itself under the Supply Agreement to produce the wax in accordance with good manufacturing practices.   Such practices do not include leaving a waste byproduct in the polyethylene wax that makes the wax both entirely unusable and significantly more flammable and therefore more hazardous to transport and use.   Dow's failure to remove this impurity, or deliberate recombination of it, constitutes a breach of Section 9.1.3 of the Supply Agreement.

119.    Plaintiff breached multiple provisions of the Supply Agreement. These breaches substantially impaired the value of the whole contract. Defendant has suffered damages because of these breaches.    Furthermore, the Supply Agreement provides in Section 21.4.2.2 and 21.5.2.2 that wrongful termination of the Supply Agreement by Dow prevents Dow from selling polyethylene wax to anyone for a period of 2 years if the parties have not achieved Beneficial Manufacture, or a period of three years if the parties have achieved Beneficial Manufacture. Defendant therefore requests that the Court enjoin Dow from selling polyethylene wax to anyone for a period of 2 years, pursuant to Section 21.4.2.2 of the Supply Agreement or, should the finder of fact determine that the parties achieved Beneficial Manufacture, the Court enjoin Dow from selling polyethylene wax to anyone for a period of 3 years, pursuant to 21.5.2.2 of the Supply Agreement.

### COUNT 2:  BREACH OF THE JOINT DEVELOPMENT AGREEMENT

120.    Plaintiff/Counter-Defendant Dow materially breached the Joint Development Agreement such that the value of the entirety of the contract was substantially impaired.  Plaintiff's material breach occurred before any alleged breach by HRD.  The Joint Development Agreement imposed the obligation of good faith and fair dealing on both parties, and Counter-Plaintiff HRD complied with its obligations under the Joint Development Agreement. Plaintiff however breached its obligation by failing to collaborate to produce conforming goods in good faith.  Plaintiff gained confidential information from Defendant regarding

Defendant's business dealings, clients, and products, on the premise that Plaintiff would collaborate with Defendant to produce a commercially viable product.

121.    Instead of executing its duties under the contract, Plaintiff delivered non-conforming, entirely unusable product to Defendant.    Defendant timely inspected the goods and promptly informed Plaintiff that the product was seriously defective and had no commercially viable use.    Nevertheless, Plaintiff failed to provide any conforming goods.    In fact, Plaintiff declined to provide conforming goods unless Defendant modified its obligations to Plaintiff such that Defendant's contractual burdens were increased, making the contracts far more favorable to Plaintiff.    Plaintiff sought to use the JDA and Supply Agreement as leverage because Defendant had relied on Plaintiff's promises that it would supply Defendant with product in a quantity and quality to meet its needs.    Its refusal to comply with these obligations constituted a breach of the duty of good faith and fair dealing.

122.    Defendant had developed a profitable business in the manufacture and sale of hot melt adhesives.    Plaintiff gained proprietary information, such as Defendant's customers and manufacturing processes, from Defendant pursuant to the Joint Development Agreement.    Defendant disclosed this information relying on Plaintiff's agreement in Section 6.2 of the JDA that it would maintain this information in confidence and use it only for activities pursuant to the JDA. Despite this contractual obligation, Plaintiff misused Defendant's proprietary information to develop a plan to enter into direct competition with Defendant.

Once Plaintiff learned of this highly profitable market, it refused to provide Defendant with product that was commercially usable. Instead Dow used Defendant's confidential business information to begin its entrance into the market. Plaintiff used Defendant's confidential information in a manner entirely inconsistent with the provisions of the contract.

123. Plaintiff breached the Joint Development Agreement by failing to execute its obligations under that contract in good faith. It also breached the confidentiality agreement by using proprietary information to compete directly with HRD. HRD has suffered and will suffer damages because of Plaintiff/Counter-Defendant's breach.

## COUNT 3:  MISAPPROPRIATION OF
## TRADE SECRETS BY IMPROPER MEANS

124. HRD had developed a highly profitable business in the manufacture and sale of hot melt adhesives. Dow and HRD entered into a confidentiality agreement as part of the Joint Development Agreement to protect HRD's trade secrets, including end-use applications, HRD's business plans, manufacturing processes, associated technical information, and identities of customers. During the course of their business relationship and under the protection of this confidentiality agreement, HRD shared this information with Dow in furtherance of their joint development and production of polyethylene wax. HRD disclosed this information to facilitate the manufacture of polyethylene wax that would be well-suited to HRD's purposes, of which Dow was fully aware. Dow, however,

29

proceeded to ship HRD "product" that was entirely unfit for any commercial use, resisted remedying the defective and dangerous product, made unreasonable monetary demands on HRD, contacted one or more of HRD's customers, and then filed suit against HRD for breach of contract.

125.   The information that HRD shared with Dow was information that is not generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, that has independent economic value given the lucrative opportunities in HRD's industry and by virtue of its not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and is the subject of extensive efforts on the part of HRD to maintain its secrecy.  HRD kept this information secret until Dow signed the contracts, which included confidentiality clauses.   Dow obtained this information through improper means, including numerous misrepresentations to HRD and breach of its contractual duties to maintain the secrecy of these trade secrets.  Despite Dow's contractual obligations to the contrary, Dow used HRD's proprietary information to develop a plan to enter into direct competition with HRD, with the aid of the information Dow misappropriated from HRD.

126.   Because of Dow's wrongful actions, HRD has suffered damages. HRD requests that this Court grant HRD damages pursuant to the Delaware Uniform Trade Secrets Act, 6 Del. C. §2003.  HRD also requests this Court to grant HRD injunctive relief pursuant to 6 Del. C. §2002 to prevent Dow from

using this wrongfully acquired information to its commercial advantage. Furthermore, Dow's conduct was willful and malicious, and Dow's actions were taken in bad faith. HRD therefore requests exemplary damages pursuant to 6 Del. C. §2003(b) and an award of attorney's fees pursuant to pursuant to 6 Del. C. §2004.

## COUNT 4: FAILURE TO GIVE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

127. When HRD received the first few shipments of product, HRD quickly realized that the product was not commercially viable. The product that Dow shipped to HRD contained a greatly increased content of solvents, or "light ends." Because of the presence of this additional substance, Dow's product could not serve any commercial purpose on its own, nor would it mix with other substances to create any usable product. Unable to use this material for any purpose, HRD immediately notified Dow of this material deviation in the product from the samples Dow had produced.

128. Furthermore, the parties agreed to an anticipated production of 90% Grade 1 product and 10% Grade 2 product, as well as a 20% allowance for Off-Spec product in the first year of operation. Dow's first shipments, however, consisted entirely of substantial quantities of Grade 2 and Off-Spec product. Dow did not indicate its intent to produce sufficient Grade 1 product to conform to these contractual proportions. HRD became concerned that Dow would overwhelm

them with Grade 2 and Off-Spec product and fail to supply the amount of Grade 1 product to which the parties had agreed.

129.    Because of Dow's failure to produce any Grade 1 product and failure to eliminate the light ends from the product as they had for the samples, HRD became reasonably insecure regarding Dow's future performance in conformity with the Supply Agreement.  Pursuant to 6 Del. C. §2-609(1), HRD notified Dow in writing of these failures to comply with its contractual obligations and immediately suspended its own performance under the Supply Agreement.  HRD made every effort to continue this business relationship in a manner that would confer benefits to both parties.  HRD even agreed to take and pay for Off-Spec product on the assurance that Dow would remove light ends from the product.

130.    Rather than provide HRD with adequate assurances that it would produce conforming product, Dow began to make demands on HRD that extended beyond the terms of the Supply Agreement.  Among other requests, Dow asked HRD to accelerate payments and to provide guarantees.  HRD had paid to retrofit the Sarnia plant to enable Dow to eliminate light ends from the finished product and therefore knew the capability of the plant to produce a high quality product. HRD attempted to cooperate with Dow so that HRD could receive conforming product as it had anticipated and depended on receiving, but Dow demanded unreasonable concessions and additional consideration.  Far from assuring HRD that Dow would comply with the Supply Agreement in the future, Dow's demands only fortified HRD's concerns regarding Dow's future performance.  Dow's

interest in complying with the obligations of the contract was significantly outweighed by its desire to compete with HRD in the market, using information about HRD's business that it had gained during the course of developing the product.

131. Because Dow failed to provide adequate assurances of its future performance, HRD never resumed its performance. HRD declined to pay the invoices that Dow sent because HRD would not pay for nonconforming product. HRD did not place any orders because Dow would send product that contained an unsafe and unacceptable level of light ends. At no time in the ensuing months did Dow indicate its readiness to perform as it had obligated itself. Instead, Dow canceled the Supply Agreement and filed suit.

132. 6 Del. C. §2-609(1) authorizes HRD's suspension of performance because of HRD's reasonable insecurity regarding Dow's willingness to perform in accordance with the Supply Agreement provisions. Under 6 Del. C. §2-609(4), Dow's failure to adequately assure HRD of future performance is a repudiation of the Supply Agreement, which entitles HRD to recover damages for Dow's repudiation and post-termination damages.

133. Defendant's asserted right to suspend its performance and Plaintiff's obvious disagreement with that assertion, as evidenced by its complaint, demonstrate that a controversy exists involving the rights or other legal relations of the Defendant and the Plaintiff under the contract, the parties' interests are real and adverse, and this issue is ripe for judicial determination. Therefore, Defendant requests that this Court declare that pursuant to 6 Del. C. §2-609, Defendant had the right to suspend its performance under

the contract, that Defendant had the right to request adequate assurances of Plaintiff's future performance under the contract, and that Defendant had the right to terminate the contract due to Plaintiff's failure to provide reasonable adequate assurances. Furthermore, under 6 Del. C. §2-609(d), Dow's refusal to adequately assure HRD of its future performance in conformity with Dow's contractual obligations is a wrongful repudiation of the Joint Development Agreement and the Supply Agreement. Such wrongful repudiation constitutes a breach of these contracts by Dow. HRD has suffered damages as a direct result of Dow's breach of the JDA and Supply Agreement.

## REQUEST FOR RELIEF

WHEREFORE, Defendant HRD Corporation respectfully requests that this Court order that Plaintiff takes nothing by reason of its Complaint, and that Defendant be granted the following relief:

A.    Damages for Dow's breach of Supply Agreement;

B.    Reimbursement of HRD's payments under the Supply Agreement;

C.    Injunctive relief to prevent Dow from selling polyethylene wax;

D.    Injunctive relief to prevent Dow's unauthorized use of the trade secrets Dow misappropriated from HRD;

E.    Exemplary damages;

F.    Post-termination damages;

G.    A declaration that HRD had the right to suspend performance, to request adequate assurances of future performance, and to terminate the contract;

34

H.    Attorney's fees;

I.    Costs of Court; and

J.    Any relief that this Court deems just and proper.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: _____

Richard L. Horwitz (#2246)
Suzanne M. Hill (#4414)
1313 North Market Street
Hercules Plaza, 6th Floor
PO Box 951
Wilmington, DE 19889-0951
(302) 984-6000 (Tel)
(302) 658-1192 (Fax)

*Attorneys for HRD Corporation*

Of Counsel:

John O'Neill
Sheryl A. Falk
Eleanor Vernon
HOWREY, SIMON, ARNOLD & WHITE, LLP
1000 Louisiana, Ste. 1800
Houston, Texas 77002
(713) 654-7600 (Tel)
(713) 654-7690 (Fax)

PA&C 676266v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, Suzanne M. Hill, hereby certify that on March 31, 2005, the attached document

was electronically filed with the Clerk of the Court using CM/ECF which will send

notification of such filing(s) to the following and the document is available for viewing

and downloading from CM/ECF:

Kenneth Nachbar
David J. Teklits
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

I hereby certify that on March 31, 2005, I have faxed the documents to the

following non-registered participants:

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611

By: _Suzanne M. Hill_
   Richard L. Horwitz
   Suzanne M. Hill
   Hercules Plaza, 6th Floor
   1313 N. Market Street
   Wilmington, Delaware  19899-0951
   (302) 984-6000
   rhorwitz@potteranderson.com
   shill@potteranderson.com

676294