UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA, INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY,<br><br>   Plaintiff, Counter-Defendant,<br><br>   v.<br><br>HRD CORPORATION (d/b/a Marcus Oil & Chemical)<br><br>   Defendant, Counter-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 05-023 (JJF)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DOW CHEMICAL CANADA, INC.'S REPLY TO
COUNT I OF H.R.D. CORPORATION'S COUNTERCLAIMS**

   Plaintiff, Dow Chemical Canada, Inc. ("DCCI"), by and through its undersigned counsel, hereby replies to HRD Corporation's ("HRD") counterclaim count I. As outlined more extensively in DCCI's Motion To Dismiss HRD Corporation's Counterclaims And To Strike HRD Corporation's Affirmative Defenses, which is being filed simultaneously with this reply, HRD's Answer, Affirmative Defenses, and Counterclaims fail to clearly delineate whether HRD has asserted its counterclaims against DCCI or The Dow Chemical Company ("TDCC"), which is not a party to this litigation. However, given that DCCI is a party to the Supply Agreement and a party to this litigation, DCCI assumes that HRD is asserting Counterclaim Count I for breach of the Supply Agreement against DCCI. Accordingly, DCCI provides its answer to that counterclaim as follows:

**COUNTERCLAIMS**

   109. This is an action for breach of contract and for a determination of rights under those contracts. In July 2002, Dow entered into two contracts regarding Dow's manufacture and supply of polyethylene waxes to HRD. The first contract, the Joint Development Contract ("JDA") obligated TDCC to develop with HRD specifications for a

particular kind of polyethylene wax that HRD negotiated to purchase from Dow. Dow and HRD entered into a second contract, the Sarnia PE Wax Supply Agreement ("Supply Agreement") under which TDCC, and later DCCI, as assignee of the Supply Agreement agreed to supply HRD with polyethylene waxes which complied with the parties' expectations and the specifications to be developed pursuant to the JDA. DCCI commenced production of polyethylene wax in May 2004. HRD has complied with all of its obligations under the Supply Agreement. However, the wax manufactured by Dow failed to conform to either the specifications or parties' expectations and did not meet commercial standards for wax production. In accordance with the Delaware Uniform Commercial Code, HRD notified Dow that the product did not meet the parties' expectations or specifications and requested that Dow cure the manufacturing defect. Dow refused to do so, which constituted a material breach of both the Joint Development Agreement and Supply Agreement. Dow also misappropriated HRD's proprietary information, despite the execution of a confidentiality agreement, in violation of the Delaware Uniform Trade Secrets Act, 6 Del, C. §2001 et. seq. As a result of Dow's wrongful actions, HRD has suffered extensive damages.

**Answer:**

DCCI admits that HRD has asserted counterclaims in response to DCCI's complaint filed January 18, 2005, but DCCI denies those counterclaims have any merit. Further answering, DCCI admits that TDCC and HRD entered into the JDA and a Supply Agreement in July of 2002. DCCI further admits that in January 2004 TDCC assigned all of its interests and obligations under the Supply Agreement to DCCI. Further answering, DCCI admits that, pursuant to the Supply Agreement, DCCI was to supply polyethylene wax in accordance with specifications developed pursuant to the JDA. DCCI further admits that, in May 2004, DCCI commenced production of polyethylene wax in accordance with the specifications developed pursuant the JDA and incorporated in to the Supply Agreement. Except as expressly admitted, DCCI denies each of the allegations in Paragraph 109.

**JURISDICTION AND VENUE**

110. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a)(2) in that it is an action between a foreign citizen and a citizen of a state and the amount in controversy exceeds $75,000 exclusive of interest and costs.

**Answer:**

DCCI admits the allegations in Paragraph 110.

111.  The Court has personal jurisdiction over Dow, because in Paragraph 23 of the Supply Agreement, both Dow and HRD agreed to submit to the exclusive jurisdiction of the court of Delaware or Michigan.

**Answer:**

DCCI admits the allegations in Paragraph 111.

112.  Venue is proper in this District pursuant to 28 U.S.C. Section 1391 because Dow agreed to submit to the exclusive jurisdiction of the Courts of Delaware or Michigan.

**Answer:**

DCCI admits the allegations in Paragraph 112.

## PARTIES

113.  Counter-Plaintiff HRD is a Texas corporation with its principal place of business in Houston, Texas. HRD sells polyethylene waxes under the name Marcus Oil and Chemical.

**Answer:**

DCCI admits the allegations in Paragraph 113.

114.  Counter-Defendant DCCI is a Canadian corporation with its principal place of business in Calgary, Alberta, Canada. DCCI is an indirectly wholly owned subsidiary of TDCC and produces chemical, plastic and agricultural products for a variety of industrial and consumer uses. DCCI is the assignee of the contract at issue that was originally executed by TDCC and HRD. TDCC is a Delaware corporation with its principal place of business in Midland, Michigan. TDCC produces chemical, plastic and agricultural products for a variety of industrial and consumer uses.

**Answer:**

DCCI admits the allegations in Paragraph 114.

## COUNT 1: BREACH OF THE SUPPLY AGREEMENT

115. Plaintiff/Counter-Defendant Dow materially breached the Supply Agreement such that the value of the entirety of the contract was substantially impaired. Dow's material breach occurred prior to any alleged breach of HRD. Dow deliberately included solvents, or light ends, in the product. Inclusion of this impurity made the product commercially useless in its entirety. Dow's adulteration of the wax created a product that was far more likely to smoke and/or catch fire under the elevated temperatures used in transportation, storage and end use. Dow was aware of the end use application and the application temperatures to which the wax would be subjected. Upon HRD's notifying Dow of the serious departure from the specifications, Dow refused to supply conforming product without additional substantial consideration from Defendant/Counter-Plaintiff HRD, including accelerated payments of the costs to retrofit the plant, payments for the costs of producing non-conforming product, and a guarantee of over $30 million for future payments.

**Answer:**

DCCI admits that, following initiation of this litigation on January 18, 2005, DCCI and HRD discussed potential settlement agreements which, in light of HRD's breach, would have involved execution of a new supply agreement providing for a new schedule of payments and a guarantee to secure those future payments.[1] Except as expressly admitted, DCCI denies each of the allegations in Paragraph 115.

116. Counter-Plaintiff complied with its obligations under the Supply Agreement. Counter-Plaintiff paid millions of dollars to retrofit Dow's plant to produce a high-quality wax. The manufacturing process requires equipment to remove these light ends from the wax, and HRD happily paid far that equipment. Because of either Dow's failure to eliminate these light ends or Dow's intentional recombination of the waste material back into the product, all the wax that Dow sent HRD contained this impurity. This waste material made the product completely worthless. Because the material Dow shipped to HRD failed to conform in all material respects to the specifications, Dow breached Section 9.1.1 of the Supply Agreement.

**Answer:**

DCCI admits that, in accordance with the terms of the Supply Agreement, HRD made certain payments to DCCI, and that the amount of some of these payments was calculated based on alterations to DCCI's Sarnia facility. Further answering, DCCI denies that HRD fully

---

[1] DCCI expressly reserves all of its rights under Fed.R.Evid. 408 with respect to any settlement proposals or statements made in compromise negotiations.

complied with all of its obligations under the Supply Agreements, including payment of all amounts due under the Supply Agreement. Except as expressly admitted, DCCI denies each of the allegations in Paragraph 116.

117.    Failure to remove the light ends, or deliberately recombining them, constitutes a breach of Dow's contractual obligations. All the wax that Dow shipped was this adulterated product, and HRD never received any usable product that complied with the contractual specifications. HRD sought to ensure that the plant would produce high-quality product, which is why HRD paid handsomely for the retrofitting, including equipment to remove this waste by-product. Dow's production of contaminated wax violates Section 12.1 of the Supply Agreement, which requires Dow to obtain HRD's consent to alter the production facilities and raw materials.

**Answer:**

DCCI denies each of the allegations in Paragraph 117.

118.    Dow also obligated itself under the Supply Agreement to produce the wax in accordance with good manufacturing practices. Such practices do not include leaving a waste byproduct in the polyethylene wax that makes the wax both entirely unusable and significantly more flammable and therefore more hazardous to transport and use. Dow's failure to remove this impurity, or deliberate recombination of it, constitutes a breach of Section 9.1.3 of the Supply Agreement.

**Answer:**

DCCI admits that Paragraph 9.1.3 of the Supply Agreement provides that ". . . all products sold pursuant to this Agreement . . . will be manufactured in accordance with Dow good manufacturing practices. . ." Except as expressly admitted, DCCI denies each of the allegations in Paragraph 118.

119.    Plaintiff breached multiple provisions of the Supply Agreement. These breaches substantially impaired the value of the whole contract. Defendant has suffered damages because of these breaches. Furthermore, the Supply Agreement provides in Section 21.4.2.2 and 21.5.2.2 that wrongful termination of the Supply Agreement by Dow prevents Dow from selling polyethylene wax to anyone for a period of 2 years if the parties have not achieved Beneficial Manufacture, or a period of three years if the parties have achieved Beneficial Manufacture. Defendant therefore requests that the Court enjoin Dow from selling polyethylene wax to anyone for a period of 2 years, pursuant to Section 21.4.2.2 of the Supply Agreement or, should the

finder of fact determine that the parties achieved Beneficial Manufacture, the Court enjoin Dow from selling polyethylene wax to anyone for a period of 3 years, pursuant to 2 1.5.2.2 of the Supply Agreement.

**Answer:**

DCCI denies each of the allegations in Paragraph 117.

MORRIS NICHOLS ARSHT & TUNNELL

/s/ Kenneth J. Nachbar
Kenneth J. Nachbar (#2067)
David J. Teklits (#3221)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 575-7294
knachbar@mnat.com
dtelkits@mnat.com
   *Attorneys for Dow Chemical Canada, Inc.*

OF COUNSEL:

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL  60611
(312) 923-2951

April 20, 2005

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on April 20, 2005 I electronically filed DOW CHEMICAL CANADA, INC.'S REPLY TO COUNT I OF H.R.D. CORPORATION'S COUNTERCLAIMS with the Clerk of the Court using CM/ECF which will send notification of such filing to the following

>Richard I. Horwitz
>Suzanne M. Hill
>Potter Anderson & Corroon LLP
>Hercules Plaza, 6th Floor
>1313 North Market Street
>Wilmington, DE  19899-0951

>/s/ Kenneth J. Nachbar
>Kenneth J. Nachbar (#2067)
>Morris, Nichols, Arsht & Tunnell
>1201 North Market Street
>P.O. Box 1347
>Wilmington, DE  19899-1347
>(302) 658-9200
>knachar@mnat.com