**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA, INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, <br><br>        Plaintiff, <br><br>        v. <br><br> HRD CORPORATION (d/b/a Marcus Oil & Chemical) <br><br>        Defendant, Counterclaim Plaintiff, <br><br>        v. <br><br> DOW CHEMICAL CANADA, INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY, <br><br>        Counterclaim Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 05-023 (JJF) |

## <u>DECLARATION OF DAVID H. FIFIELD</u>

David H. Fifield declares as follows:

1.     I am an attorney employed by The Dow Chemical Company ("TDCC"). I am based at TDCC's facilities in Freeport, Texas.

2.     In my position, I have represented TDDC and its affiliate, Dow Chemical Canada, Inc. ("DCCI"), in negotiations and meetings with HRD Corporation ("HRD") regarding the Joint Development Agreement ("JDA") and the Sarnia PE Wax Supply Agreement ("Supply Agreement"). From September 2004 through December 2004, I was also involved in ongoing discussions between DCCI and HRD regarding HRD's nonpayment of invoices due under the Supply Agreement.

Declaration of David H. Fifield                                Page 1

3.      On January 18, 2005, after HRD had repeatedly failed to make payments due under the Supply Agreement, DCCI terminated the Supply Agreement and filed this breach of contract suit against HRD.

4.      Shortly before and soon after this litigation was filed, HRD and DCCI engaged in settlement discussions with respect to disputed matters related to the Supply Agreement. I was involved in those discussions and communicated directly with representatives of HRD regarding settlement proposals. Those discussions and communications took place between November 30, 2004 and February 18, 2005.

5.      I have reviewed HRD's First Amended Answer and Counterclaims. Three paragraphs of HRD's counterclaims contain allegations which recount the substance of the settlement negotiations and communications:

    a.      In Paragraph 120, HRD asserts that: "Upon HRD's notifying Dow of the serious departure from the specifications, Dow refused to supply conforming product without additional substantial consideration from Defendant/Counter-Plaintiff HRD, including accelerated payments of the costs to retrofit the plant, payments for the costs of producing non-conforming product, and a guarantee of over $30 million for future payments." (Def.'s First Am. Answer and Countercl. ¶ 120.)

    b.      In Paragraph 127, HRD asserts that "In fact, Dow declined to provide conforming goods unless HRD modified its obligations to Dow such that HRD's contractual burdens were increased, making the contracts far more favorable to Dow. (Def.'s First Am. Answer and Countercl. ¶ 127.)

    c.      In Paragraph 137, HRD asserts that "Dow began to make demands on HRD that extended beyond the terms of the Supply Agreement. Among other requests Dow asked HRD to accelerate payments and to provide Guaranties." (Def.'s First Am. Answer and Countercl. ¶ 137, first and second sentences.) Also in Paragraph 137, HRD asserts that ". . .but Dow demanded unreasonable concessions and additional consideration." (Def.'s First Am. Answer and Countercl. ¶ 137, fourth sentence.)

Declaration of David H. Fifield                                                    Page 2

6.      While I disagree with HRD's characterizations of DCCI's position in those

settlement negotiations, these allegations contained in HRD's counterclaims can only refer to the

settlement negotiations undertaken by the parties between November 30, 2004 and February 18,

2005, because those were the only discussions in which these topics were discussed between the

parties.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on _____June 27_____, 2005.


_____
David H. Fifield


Declaration of David H. Fifield                                                           Page 3

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d

2004 WL 1824356 (E.D.Pa.)

**(Cite as: 2004 WL 1824356 (E.D.Pa.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
PHILADELPHIA'S CHURCH OF OUR SAVIOR,
Plaintiff,
v.
CONCORD TOWNSHIP, et al. Defendants.
**No. Civ.A. 03-1766.**

Filed March 26, 2003.
July 27, 2004.
Charles J. Hardy, Joseph J. McAlee, Richard A.
Sprague, Stephen R. Kurens, Sprague & Sprague,
Philadelphia, PA, for Philadelphia's Church of Our
Savior, Plaintiff.

Hugh A. Donaghue, Donaghue and Bradley,
Media, PA, Lead Attorney, Attorney to be Noticed,
Paola Tripodi Kaczynski, William F. Holsten,
Holsten & Associates, Media, PA, Attorney to be
Noticed, for Concord Township, Defendant.

Paola Tripodi Kaczynski, William F. Holsten, (See
above for address), Attorney to be Noticed, for
Hugh A. Donahue, Defendant.

Paola Tripodi Kaczynski, William F. Holsten, (See
above for address), Attorney to be Noticed, for
Manos Kavadias, Defendant.

Paola Tripodi Kaczynski, William F. Holsten, (See
above for address), Attorney to be Noticed, for
James W. McKinley, Defendant.

Paola Tripodi Kaczynski, William F. Holsten, (See
above for address), Attorney to be Noticed, for
Dominic J. Cappelli, Defendant.

Paola Tripodi Kaczynski, William F. Holsten, (See
above for address), Attorney to be Noticed, for
Howard J. Gallagher, Defendant.

Paola Tripodi Kaczynski, William F. Holsten, (See
above for address), Attorney to be Noticed, for H.
William Vollmer, Defendant.

Paola Tripodi Kaczynski, William F. Holsten, (See
above for address), Attorney to be Noticed, for
Dominic A. Pileggi, Defendant.

*MEMORANDUM AND ORDER*

SMITH, Magistrate J.

**\*1** Currently before the Court is a Motion for
Leave to Supplement the Amended Complaint by
plaintiff, Philadelphia's Church of Our Savior.
Having considered the arguments of both parties,
the Court denies Plaintiff's motion.

I. PROCEDURAL HISTORY

On March 26, 2003, plaintiff, Philadelphia's
Church of Our Savior (the "Church"), filed a
complaint against defendant, Concord Township
(the "Township") alleging three counts of
defendant's misconduct in violation of the Religious
Land Use and Institutionalized Persons Act of 2000
("RLUIP"), 42 U.S.C. § 2000cc, *et seq.,* five counts
of misconduct in violation of 42 U.S.C. § 1983, and
five counts of misconduct in violation of the
Pennsylvania Constitution. The complaint
specifically contended that defendants (1)
wrongfully rejected the Church's request for a
building permit, after promising to issue one; (2)
improperly demanded a permanent easement from
the Church as a *quid pro quo* for the building permit
and; (3) improperly refused to accept for filing or to
review the Church's written application for a
building permit, despite the fact that the proposed
sanctuary complied with all applicable zoning,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2

2004 WL 1824356 (E.D.Pa.)

**(Cite as: 2004 WL 1824356 (E.D.Pa.))**

building and safety codes. Plaintiff asserted this Court's federal question jurisdiction overall federal claims pursuant to 28 U.S.C. § 1331 and 1342(a)(3)-(4), and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. On February 4, 2004, plaintiff was granted leave to amend its complaint in order to add the five members of the Township's Board of Supervisors, the Township Solicitor and the Township Building Inspector in their individual capacities.

Both parties met with this Court on June 23, 2003 and entered into settlement negotiations. Following discussions, the parties agreed that plaintiff would complete an application for a building permit and plaintiff would pay the cost for an architectural firm to certify BOCA compliance. The firm was approved by defendant and, upon submission of the firm's report, the Township issued a foundational permit on August 28, 2003, authorizing plaintiff to build the foundation to support the membrane structure. Thereafter, it issued a Building Permit authorizing plaintiff to erect the proposed sanctuary.

On June 4, 2004, plaintiff filed a Motion for Leave to Supplement its First Amended Complaint to include paragraphs referring to the settlement conference and how the concessions made by the Township establish that defendants had the authority to waive its application requirements. The undersigned held oral argument on June 17, 2004 and, subsequently, both parties filed post-argument briefs. The Court now considers whether Plaintiff's request for leave to supplement the Amended Complaint should be granted.

II. DISCUSSION

Plaintiff seeks leave to supplement its Amended Complaint with references to the settlement proceedings held before this Court [FN1] in order to prove that defendants repeatedly denied, in their responsive pleading and discovery responses, that they had the authority to grant waivers of various requirements. [FN2]

> FN1. Specifically, plaintiff seeks to add the following paragraphs:

91. In or about March 2003, plaintiff filed its Complaint against the Defendant Township, and in or about February 2004 plaintiff filed its First Amended Complaint. In its responsive pleadings and discovery responses, defendants have repeatedly denied that defendant Concord Township, by and through its Board of Supervisors, had the authority to grant a waiver or waivers of various permitting requirements such as land development or land disturbance permits, and/or a special exception....

92. At a conference held before Magistrate Judge Charles B. Smith on June 23, 2003, Defendant Concord Township, by and through its counsel, agreed to afford plaintiff a procedure to obtain a building permit which would permit the plaintiff to construct the proposed temporary sanctuary in question, which procedure did not include any requirements that plaintiff comply with various local building requirements such as a the need to obtain a land development permit, land disturbance permit, and/or special exception.

93. Plaintiff availed itself of the opportunity afforded by Defendant Township and the Defendant Township officials, and the Defendant Township did, in fact, thereafter issue a foundational permit to Plaintiff on or about August 28, 2003 authorizing the Plaintiff to build the foundation to support the membrane structure....

94. Thereafter the Defendant Township issued a building permit to the plaintiff authorizing the plaintiff to erect the proposed sanctuary.

95. Both the foundational permit and the building permit issued to the plaintiff were issued under a process which did not require Plaintiff to comply with various local building requirements such as the need to obtain a land development permit, land disturbance permit or a special exception....

96. As permitted by the foundational

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1824356 (E.D.Pa.)

**(Cite as: 2004 WL 1824356 (E.D.Pa.))**

permit and the building permit, the plaintiff has begun the construction of its proposed 620-seat sanctuary.

97. In light of the explicit representations and actions on behalf of defendants before this Court including the explicit waiver of various permitting requirements, defendant should be and or judicially and/or equitably estopped from denying such authority in this case.

FN2. In its Answer to the Complaint, the Township denied that there was "any alternative procedure for reviewing and granting requests for building permits," and that "any procedure resembling what Plaintiff refers to as 'the expedited permit approval procedure' exists within Concord Township." Answer to Complaint, at par. 24.

**\*2** Federal Rule of Civil Procedure 15(d) states that:

Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.

The Supreme Court has held that "leave to amend 'shall be freely given when justice so requires." ' *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.--the leave sought should, as the rules require, by 'freely given." ' *Id.* It "is an abuse of discretion for a district court to deny leave to amend" without one of these reasons. *Alvin v. Suzuki,* 227 F.3d 107, 121 (3d Cir.2000).

Defendants offer two arguments in opposition to plaintiff's motion. Defendants first claim that the motion to supplement would only proffer

inadmissible evidence making the supplement futile. Second, defendants claim that the motion to supplement the claim with allegations regarding the settlement proceedings is being offered in bad faith. As the Court deems the futility argument to be the more compelling claim, we deny the motion on these grounds.

Denying leave to amend on the ground of futility includes those instances where:

a complaint or an answer, as amended, would be subject to a motion to dismiss under Rule 12(b)6, or a motion to strike under 12(f), [and] it would be an idle move for the court to allow such an amendment over the objection of the opposing party who could simply make a formal motion to dismiss or strike after leave to amend is granted.

3 Moore's Federal Practice ¶ 15.080[4]; *see also Liberty Fish Co. v. Home Indemnity Co.,* Civ. A. No. 89-5201, 1990 WL 83341, \*1 (E.D. Pa. June 18, 1990) (leave to amend may be denied on grounds of futility where proposed amendment would be subject to successful motion to strike under Rule 12(f)); *Medical Graphics Corp. v. Hartford Ins. Co.,* 171 F.R.D. 254, 257 (D.Minn.1997) (leave to amend should be denied if proposed amendment would invite motion to strike).

Defendants argue that the proposed supplemental allegations are strictly prohibited by Federal Rule of Evidence 408, which states:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence or statements made in compromise negotiations is likewise not admissible.

Fed.R.Evid. 408. This Rule is founded on two major policies: (1) "[t]he evidence is irrelevant since the offer may be motivated by a desire for peace rather than from any concession of weakness of position ... (2)[a] more consistently impressive ground is promotion of the public policy favoring the compromise and settlement of disputes. Fed.R.Evid. 408, Advisory Committee Note. While

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 1824356 (E.D.Pa.)

**(Cite as: 2004 WL 1824356 (E.D.Pa.))**

Page 4

Rule 408 does not apply to pleadings directly, repeated decisions from this Court have held that allegations in a complaint may be stricken, under Rule 12(f), as violative of these policies. *See, e.g., Agnew v. Avdin Corporation,* Civ. A. No. 88-3436, 1988 WL 92872, *4 (E.D.Pa. Sept. 6, 1988) (parts of a complaint may be stricken pursuant to Rule 408 if they are for the purpose of showing liability and refer to settlement negotiations); *United States Transmission Systems v. Americus Center,* Civ. A. No. 85-7044, 1986 WL 13838, *2 (E.D.Pa. Dec. 3, 1986) (striking allegations from a complaint as they fall within Rule 408 and are thus clearly inadmissible); *Scott v. Township of Bristol,* Civ. A. No. 90-1412, 1991 WL 40354, *5 (E.D.Pa. Mar. 20, 1991) (striking allegations referencing settlement discussions as immaterial and of questionable probative value); *see also United States ex rel. Alasker v. CentraCare Health Systems, Inc.,* Civ. A. No. 99-106, 2002 WL 1285089, *2 (D. Minn. June 5 2002) (granting defendant's motion to strike paragraphs of complaint that improperly refer to settlement negotiations and fall within the scope of Rule 408); *Yankelevitz v. Cornell University,* Civ. A. No. 95-4593, 1997 WL 115651, *4 (S.D.N.Y. Mar. 14, 1997) (if the amendment relates to settlement discussions, then it may be stricken under Rule 12(f) and would therefore be futile). Therefore, because claims in a complaint may be stricken under Rule 12(f) if they violate Rule 408, they may also be found futile pursuant to Rule 408.

*3 The Court must now determine whether the proposed supplement to the Amended Complaint falls within the scope of Rule 408. As noted above, allegations made in a complaint may not use settlement negotiations "to prove liability for or invalidity of the claim or its amount." Fed.R.Evid. 408. Plaintiff alleges in Paragraph One of the complaint, that defendants violated the RLUIP as well as multiple constitutional rights due, in part, to defendants' "wrongful rejection of the Church's request in October through December of 2002 for a building permit through defendant Township's Expedited Permit approval procedure, after Defendant Concord Township promised to issue a permit." Defendants, in their Sixth Affirmative

Defense, expressly deny that they ever had "an expedited permit approval procedure for Building Permits or land development." Consequently, to use the settlement discussions and offers of compromise to prove that the Township did have such an expedited permit approval procedure would directly undermine a primary affirmative defense and go towards proving liability under the complaint.

Plaintiff asserts that it does not seek to aver an offer of settlement to prove liability. Rather, it plans to "attack defendants' credibility, and/or establish that, contrary to its pleadings and discovery responses, defendant Concord Township did at the time in question have a procedure for the expedited processing of building permits." Plaintiff's Post-Argument Brief, at pp. 6- 7. Plaintiff contends that "[d]espite defendant's denials, after plaintiff filed suit the Defendant Township agreed to grant the Church a building permit without the Church first (a) filing a building permit application, and (b) obtaining all permits and/or approvals that would normally be required." *Id.* at 4.

Yet, plaintiff's argument, which seeks to attack defendants' credibility, is superfluous. Throughout its pleadings and discovery requests, plaintiff has alleged only that an expedited permit approval procedure existed [FN3] and repeatedly, defendants have denied those allegations, indicating only that no such expedited approval procedure was in place. [FN4] For plaintiff now to argue that it seeks to use the settlement negotiations to contradict Defendants' averments and judicially estop them from taking inconsistent positions before this Court is nothing more than an attempt at misdirection. Using the settlement negotiations to attack defendants' credibility would also conveniently disprove defendants' Sixth Affirmative Defense and establish a primary basis of liability. As noted, such a purpose is expressly precluded under Rule 408.

FN3. Paragraphs 34-37 state as follows:
34. "... Defendant Township's Board has adopted customs, practices and/or procedures under which the Defendant Township may exempt landowners from

Not Reported in F.Supp.2d

2004 WL 1824356 (E.D.Pa.)

**(Cite as: 2004 WL 1824356 (E.D.Pa.))**

Page 5

the various procedural and substantive formalities set forth in Paragraphs 30-33 above. Pursuant to these customs, practices and/or procedures, at all times material hereto the Defendant Township's Board had implemented alternative procedures for reviewing and granting requests for building permits. The procedure has been and is hereinafter referred to as the Expedited Permit approval procedure.

35. Under the Expedited Permit approval procedure, the Defendant Township's Board may initiate and complete an expedited review of a landowner's request to build a structure without written application by the landowner.

36. Under the Expedited Permit approval procedure, the Defendant Township's Board may grant a building permit, and permit construction to begin, based upon the landowner's submission to the Supervisors of, *inter alia,* sealed architectural and/or engineering drawings.

37. Under the Expedited Permit approval procedure, the Defendant Township's Supervisors may authorize the Defendant Township's Building Inspector to issue the landowner a building permit, and conduct a building code review during construction; if any changes in construction are required by applicable building code provisions, the landowner may be required by the building Inspector to promptly modify the construction. First Amended Complaint, at ¶¶ 34-37.

FN4. For example, in its Answer to the First Amended Complaint at paragraph 34, defendants state "It is specifically denied, and strict proof demanded, that the Township's Board of Supervisors has implemented any alternative procedure for reviewing and granting requests for Building Permits. It is further denied that any procedure resembling what plaintiff refers to as 'the expedited permit approval procedure' exists within Concord Township." Moreover, in its answer to

plaintiff's Requests for Admissions, the Township stated "[n]o such expedited approval procedure was ever in effect in Concord Township."

Plaintiff's alternative claim, that it only seeks to prove that defendants had the "authority" to grant an expedited permit in order to attack defendants' credibility, is likewise fatally flawed. Primarily, plaintiff never alleged, at any point in its pleadings, that defendants possessed this expedited waiver authority. Therefore, defendants never had occasion to deny in their Answer that they had such authority, [FN5] meaning that the settlement negotiations would not operate to contradict any of defendants' averments. Moreover, as the focus of plaintiff's cause of action depends not on the Township's authority to grant an expedited permit, but rather whether the process actually existed, the Court recognizes this new addition of the word "authority" as a cloaked attempt to prove liability. As Rule 408 expressly precludes use of settlement negotiations to establish such liability, the proposed supplement is futile.

> FN5. Although plaintiff vehemently argues in its Post-Argument Brief that defendants have denied their *authority* to grant waivers of local building requirements, it cites to nothing to support that statement.

*4 To the extent plaintiff contends that its proposed supplemental allegations pertain only to admissions of fact made by defendants during settlement negotiations, which fall outside the scope of Rule 408, the Court finds that nothing in the proposed supplemental allegations constitute such an admission. That the Township could waive its permit requirements in the course of a federal court litigation does not mean that it had the ability to do otherwise outside of litigation. In several cases cited by defendants, the Pennsylvania Commonwealth Court, albeit in dicta, took judicial notice that variance decisions in the context of the settlement of a judicial proceeding are distinct from zoning board variances. *See Summit Township Taxpayers Assoc. v. Summit Township Board of Supervisors,* 411 A.2d 1263, 1266 (Pa.Commw.1980) ("Because

Not Reported in F.Supp.2d

Page 6

2004 WL 1824356 (E.D.Pa.)

**(Cite as: 2004 WL 1824356 (E.D.Pa.))**

court-approved settlements of zoning cases are lawful ... we must recognize such settlements as being distinct from zoning hearing board variances; even though a judicial settlement may result in a departure from the ordained zoning pattern"); *Yaracs v. Summit Acadamy,* 845 A.2d 203, 209 n. 6 (Pa.Commw.2004) (citing *Summit* ). Accordingly the mere fact that the Township would act in the context of a settlement agreement is not dispositive of whether it had the authority outside of federal litigation.

Finally, it appears that discovery would not yield any information that could lead to admissible evidence. Nor does plaintiff offer any insight on the admissible evidence they hope to find. The "strong Congressional policy behind Fed.R.Evid. 408 as well as the liberal discovery rules" ' support putting the burden "on the party seeking discovery to make a particularized showing 'that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence." ' *Key Pharmaceuticals v. ESI-Lederle,* Civ. A. No. 96-1219, 1997 WL 560131, *2 (E.D.Pa. Aug. 29, 1997) (*citing Fidelity Fed. Sav. And Loan Ass'n v. Felicetti,* 148 F.R.D. 532 (E.D.Pa.1993)). Plaintiff fails to show that the discovery relating to these supplemental complaints will lead to admissible evidence. Consequently, plaintiff fails to meet its burden of showing that the discovery of these supplemental complaints will lead to any admissible evidence not shielded by Rule 408.

In sum, plaintiff has neglected to overcome defendants' contention that the proposed supplemental allegations are, in fact, futile for purposes of Federal Rule of Civil Procedure 15. Accordingly, the Court denies the Motion for Leave to Supplement the First Amended Complaint.

An appropriate order follows.

### *ORDER*

AND NOW this 27th day of *July,* 2004, upon consideration of Plaintiff's Motion for Leave to Supplement the First Amended Complaint, the Response of Defendants thereto and the additional

briefs and letters submitted by both parties, and upon conducting oral argument on the Motion, it is hereby ORDERED that the Motion is DENIED.

2004 WL 1824356 (E.D.Pa.)

### **Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2716864 (Trial Pleading) Answer Containing Affirmative Defenses of Defendants Concord Township, Dominic A. Pileggi, H. William Vollmer, Howard J. Gallagher, Dominic J. Cappelli, James W. McKinley, Manos Kavadias and Hugh A. Donaghue to Plaintiff's Amended Complaint (2004)

• 2003 WL 23903184 (Trial Pleading) Answer Containing Affirmative Defenses of Defendant Concord Township to Plaintiff's Complaint (Jun. 20, 2003)

• 2003 WL 23903179 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum of Law of Defendant Concord Township in Support of Its Motion to Dismiss Plaintiff's Complaint (May. 13, 2003)

• 2003 WL 23903173 (Trial Motion, Memorandum and Affidavit) Notice Under Local Rule for the Eastern District of Pennsylvania 7.1(c) (Apr. 11, 2003)

• 2:03CV01766 (Docket)

(Mar. 26, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.