# EXHIBIT C

Service: **Get by LEXSEE®**
Citation: **2002 us dist lexis 12203**

*2002 U.S. Dist. LEXIS 12203, \**

SPECIALTY INSURANCE, ET AL. v. ROYAL INDEMNITY COMPANY

CIVIL ACTION NO. 00-2482

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2002 U.S. Dist. LEXIS 12203

March 22, 2002, Decided
March 22, 2002, Filed; March 25, 2002, Entered

**SUBSEQUENT HISTORY:** Summary judgment denied by Specialty Ins. v. Royal Indem. Co., 2004 U.S. Dist. LEXIS 13376 (E.D. Pa., July 9, 2004)

**DISPOSITION:** [\*1] Defendants' Motion to Dismiss granted in part and denied in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff insurance agencies sued defendant indemnity company for breach of contact, breach of the covenant of good faith and fair dealing, violations of New York Insurance Law, and negligence. The indemnity company moved to dismiss the claims.

**OVERVIEW:** The court dismissed the N.Y. Ins. Law § 2123 (McKinney 2000) claim because the types of policies at issue were for property and casualty insurance, not life insurance or accident and health insurance. N.Y. Ins. Law § 2304 did not create a private cause of action as such a right would have been inconsistent with the legislative scheme establishing the state superintendent's enforcement procedures. No private cause of action existed under N.Y. Ins. Law art. 24 for similar reasons. One insurance agency had sufficiently pled a breach of contract claim for the failure to renew its specialty license given that the indemnity company was required to avoid any acts that interfered with the agency's ability to administer a restaurant insurance program. However, the claims for a breach of duty of good faith and fair dealing were dismissed as they duplicated the breach of contract claim. The negligence claim by the same insurance agency was dismissed as the indemnity company owed it no legal duty independent of the contractual obligations. The other insurance agency's third party beneficiary claims were dismissed as it was unable to show that the agreement was entered into for its benefit.

**OUTCOME:** The motion to dismiss was denied with respect to one insurance agency's breach of contract claim, but was otherwise granted.

**CORE TERMS:** duty, insurer, fair dealing, breach of contract, right of action, license, New York Insurance Law, cause of action, Insurance Law, at-will, third party,

beneficiary, contractual, termination, casualty insurance, reasonable care, choice of law, fire alarm, unfair, exemplary damages, negligence claim, legal duty, third-party, underwrite, terminable, renew, legislative scheme, independent duty, health insurance, public interest

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Civil Procedure > State & Federal Interrelationships > Application of State Law

*HN1* ♣ A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state.  More Like This Headnote

Contracts Law > Contract Conditions & Provisions > Forum Selection Clauses
Civil Procedure > State & Federal Interrelationships > Choice of Law

*HN2* ♣ Both Pennsylvania law and the Restatement of Conflict of Laws provide that the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law. When parties have contracted for a specific body of law, the choice of law provisions in the contracts will generally be given effect.  More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action

*HN3* ♣ A court may dismiss a complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Although a court need not credit a plaintiff's bald assertions or legal conclusions when deciding a motion to dismiss, the court must accept as true all the allegations set forth in the complaint, and must draw all reasonable inferences in the plaintiff's favor. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  More Like This Headnote

Insurance Law > Life Insurance > Disclosure Obligations

*HN4* ♣ Under N.Y. Ins. Law § 2123 (McKinney 2000), a private cause of action is created for certain misrepresentations and misleading statements by an agent or representative of any insurer authorized to transact life, accident, or health insurance business in New York. This statutory provision is very specific in limiting the types of policies or contracts to which it applies. It covers life, accident or health insurance, any annuity contract or any health maintenance organization contract. N.Y. Ins. Law § 2123(a)(1). However, property and casualty insurance is not life insurance or accident and health insurance. N.Y. Ins. Law § 1113(1), (3).  More Like This Headnote

Insurance Law > Life Insurance > Disclosure Obligations

*HN5* ♣ Under N.Y. Ins. Law § 2123 (McKinney 2000), the requirements are applicable only to insurance agents or representatives, and not to an insurer. N.Y. Ins. Law § 4226 (McKinney 2000), provides a private cause of action against an insurer for certain misrepresentations and misleading statements. However, it applies only to insurers authorized to transact life or accident and health insurance and, as with § 2123, does not pertain to property or casualty insurance. N.Y. Ins. Law § 4226(a)(1). In addition, § 4226 does not provide a basis for recovery by an insurance agent against an

insurer. <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Regulation of Insurance</u> > <u>Rates</u>
HN6 ± Under N.Y. Ins. Law art. 23, property and casualty insurance are covered. Article 23 has the following purposes: (1) to promote the public welfare by regulating insurance rates to the end that they not be excessive, inadequate or unfairly discriminatory, (2) to promote price competition and competitive behavior among insurers, (3) to provide rates that are responsive to competitive market conditions, (4) to improve the availability and reliability of insurance and (5) to authorize and regulate cooperative action among insurers within the scope of article 23. <u>N.Y. Ins. Law § 2301</u> (McKinney 2000). Neither article 23 nor, in particular, <u>N.Y. Ins. Law § 2304</u> provides a private right of action. <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Regulation of Insurance</u> > <u>Insurance Company Operations</u>
<u>Governments</u> > <u>Legislation</u> > <u>Interpretation</u>
HN7 ± Typically, New York courts do not construe the Insurance Law to provide a private right of action in the absence of express language authorizing such enforcement. When a statute is silent as to whether it grants a private right of action for civil damages, courts apply a three-part inquiry to determine whether such an action is permitted under its terms. The inquiry is: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purposes; and (3) whether creation of such a right would be consistent with the legislative scheme. <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Regulation of Insurance</u> > <u>Rates</u>
HN8 ± Under <u>N.Y. Ins. Law § 2304</u>, there are established the requirements for determining rates to be assessed by an insurer and what information an insurer must provide in the form of a filing to the New York Department of Insurance. Neither § 2304 nor N.Y. Ins. Law art. 23 as a whole explicitly provides a private cause of action for damages. The United States District Court for the Eastern District of Pennsylvania will not read such a right into the statute where other sections of the New York Insurance Law expressly provide a private right of action. <u>More Like This Headnote</u>

<u>Insurance Law</u> > <u>Regulation of Insurance</u> > <u>Claims Investigations & Practices</u>
HN9 ± A private cause of action does not exist under N.Y. Ins. Law art. 24. <u>More Like This Headnote</u>

<u>Contracts Law</u> > <u>Contract Interpretation</u> > <u>Good Faith & Fair Dealing</u>
HN10 ± The United States District Court for the Eastern District of Pennsylvania is satisfied that under New York law, a duty of good faith and fair dealing exists in at will contracts. <u>More Like This Headnote</u>

<u>Torts</u> > <u>Negligence</u> > <u>Negligence Generally</u>
<u>Contracts Law</u> > <u>Breach</u> > <u>Causes of Action</u>
HN11 ± According to the New York Court of Appeals, it is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. Merely charging a breach of a duty of due care, employing language familiar in tort law, does

not, without more, transform a simple breach of contract into a tort claim. Rather, it is the very nature of a contractual obligation, and the public interest in seeing it performed with reasonable care, that may give rise to a duty of reasonable care in performance of the contract obligations, and the breach of that independent duty will give rise to a tort claim. Conversely, where a party is merely seeking to enforce its bargain, a tort claim will not lie. More Like This Headnote

Torts > Negligence > Negligence Generally 🔍
Contracts Law > Breach > Causes of Action 🔍
*HN12*⏚ In determining whether a tort obligation is present, courts must consider the relationship of the parties, the nature of the injury, the manner in which the injury occurred and the resulting harm. According to the New York Court of Appeals, a legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship. Professionals, common carriers and bailees, for example, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties. In these instances, it is policy, not the parties' contract, that gives rise to a duty of due care. Furthermore, a party may be liable in tort if the party has fraudulently induced the plaintiff to enter into a contract or engaged in conduct outside the contract but intended to defeat the contract in a manner resulting in the wilful destruction of another's property. More Like This Headnote

Insurance Law > Regulation of Insurance > Insurance Company Operations 🔍
Torts > Negligence > Standards of Care > Reasonable Care 🔍
*HN13*⏚ According to the New York Court of Appeals, the provisions of the Insurance Law reflect state policy that insurers must deal fairly with their insureds and the public at large. But governing the conduct of insurers and protecting the fiscal interests of insureds is simply not in the same league as the protection of the personal safety of citizens. The provisions of the Insurance Law are properly viewed as measures regulating the insurer's performance of its contractual obligations, as an adjunct to the contract, not as a legislative imposition of a separate duty of reasonable care . More Like This Headnote

Contracts Law > Third Parties > Beneficiaries > Types of Beneficiaries 🔍
*HN14*⏚ In determining whether an entity is a third-party beneficiary of a contract, the court may consider surrounding circumstances in addition to the agreement. The obligation to the third party need not be expressly stated in the contract. More Like This Headnote

Contracts Law > Third Parties > Beneficiaries > Claims & Enforcement 🔍
*HN15*⏚ New York law allows a third party to enforce a contract only if the third party is an intended beneficiary of the contract. Under the three-part test to determine whether an individual should be considered a third-party beneficiary if the party is not specifically named as a third-party beneficiary, the third party must show that (1) a binding contract exists between the other parties, (2) the contract was intended for the benefit of the third party and (3) the benefit to the third party is direct and immediate instead of incidental. More Like This Headnote

**COUNSEL:** For SPECIALTY INSURANCE AGENCY, INC., SECURITY INDEMNITY INSURANCE COMPANY, PLAINTIFFS: HERBERT C. KLEIN, NOWELL AMOROSO KLEIN BIERMAN, HACKENSACK, NJ USA.

For SPECIALTY INSURANCE AGENCY, INC., SECURITY INDEMNITY INSURANCE COMPANY, PLAINTIFFS: MICHAEL J. PALMA, WILLIAM D. BIERMAN, NOWELL AMOROSO KLEIN BIERMAN, P.A., HACKENSACK, NJ USA.

For ROYAL INDEMNITY COMPANY, DEFENDANT: KENNETH T. LEVINE, NELSON, LEVINE, de LUCA & HORST, L.L.C, BLUE BELL, PA USA.

**JUDGES:** R. Barclay Surrick, Judge.

**OPINIONBY:** R. Barclay Surrick

**OPINION: MEMORANDUM & ORDER**

**SURRICK, J.**

**MARCH 22, 2002**

Plaintiffs Specialty Insurance Agency, Inc. ("Specialty") and Security Indemnity Insurance Company ("Security") bring this diversity action against Defendant Royal Indemnity Company ("Royal") for breach of contact, breach of the covenant of good faith and fair dealing, violations of New York Insurance Law, and negligence. Plaintiffs request both compensatory and punitive damages. Currently before the Court is Defendant's Rule 12(b)(6) Motion to Dismiss (the "Motion to Dismiss," Docket No. 8). For the following **[*2]** reasons, the Motion to Dismiss will be granted in part and denied in part.

## I. STATEMENT OF FACTS

The following facts, as alleged in the Complaint, are taken as true and in the light most favorable to Plaintiffs. In 1985, Specialty and Royal entered into a written agreement by which Specialty would serve as the Managing General Agent for Royal in a program of property and casualty insurance for the restaurant industry (the "Restaurant Program"). Cmpl. P 7. Under this agreement, Specialty was responsible for generating business and acting as an underwriter by using its knowledge and skill to determine which restaurants to insure. Id. In 1988, Specialty and Royal renewed the Managing General Agent Agreement (the "MGA Agreement"). Id. at P8.

Pursuant to the MGA Agreement, Specialty was responsible for the administration of the Restaurant Program. The responsibilities given to Specialty included producing insurance policies, underwriting, binding and issuing insurance policies, and collecting the premiums due. Id. at P 9. Royal's responsibilities under the MGA Agreement included licensing Specialty in each state where the Restaurant Program was to be in effect. **[*3]** Id. at P 23; MGA Agreement P 6. This relationship continued until June 30, 1997. Id. at P 10.

In 1994, Royal forced Specialty to increase its rates to its policyholders, even though the Restaurant Program was profitable at the current rates. Id. at P 22(a). This

caused Specialty to lose a major portion of the business which it had built over a number of years. Id. Royal also increased claims reserves without any justification. Id. at P 22(b). This led to the creation of fictitious losses, which were the justification for the increase in the rates. Id. When Specialty showed Royal that the Restaurant Program would still be profitable at the reduced rates and told Royal that the rate increases would destroy the Restaurant Program, Royal ignored Specialty's warnings. Id. at PP 22(c)-(d). Royal forced Specialty to cancel business, including a policy with one of Specialty's best customers, causing irreparable damage to Specialty's reputation in the industry. Id. at PP 22(e), (h).

Prior to the termination of the MGA Agreement, Royal directed Specialty to stop underwriting policies. This also caused irreparable damage to Specialty's relationships within the **[*4]** industry. Id. at P 22(f). In addition, prior to 1996, Royal began a scheme whereby it would accept premiums on a policy and, then, if a significant loss occurred, Royal would either try to avoid payment or claim that Specialty was responsible for payment of the claim due to Specialty exercising bad judgment about which policies to underwrite. Id. at P 22(g). Moreover, Royal failed to renew Specialty's license in the state of Massachusetts, causing Specialty to be sanctioned, fined and barred from doing business in Massachusetts. Id. at PP 26-27. This failure resulted in Security, which had also retained Specialty as its managing agent, being denied the ability to write policies in Massachusetts. Id. at PP 34-34. Finally, Royal refused to pay Specialty a profit contingency which was due under the MGA Agreement. Id. at P 22(i).

## II. NATURE AND STAGE OF PROCEEDINGS

Plaintiffs' Complaint was filed in the District of New Jersey on August 2, 1999. The action was transferred to the Eastern District of Pennsylvania in May, 2000. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

Count I of the Complaint is a claim by Specialty **[*5]** for breach of the duty of good faith and fair dealing. In Count II, Specialty claims Royal violated various sections of New York's Insurance Law. Count III is an additional claim by Specialty for breach of the duty of good faith and fair dealing. Count IV is a claim by Specialty for breach of contract. In Count V, Specialty brings a claim for negligent failure to obtain an insurance license for Specialty in the State of Massachusetts. In Count VI, Security advances a negligence claim also based on Royal's failure to obtain a license for Specialty in the State of Massachusetts.

## III. APPLICABLE LAW

*HN1* A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 497, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941); Kruzitz v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994). Accordingly, we apply Pennsylvania's choice of law rules in this case. *HN2* "Both Pennsylvania law and the Restatement of Conflict of Laws provide that the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly **[*6]** have chosen the relevant law." Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164 (3d Cir. 1999). When parties have contracted for a specific body of law, the "choice of law provisions in [the] contracts will generally be given effect." Smith v. Commonwealth Nat'l Bank, 384 Pa. Super. 65, 557 A.2d 775, 777 (Pa. Super. Ct. 1989); Kruzitz, 40 F.3d at 55.

Plaintiffs and Defendant have conceded in their briefs that New York law applies to the substantive issues in this case. See Pls. Mem. in Opp. at 1-2. The MGA Agreement provides that the "Agreement shall be interpreted and enforced in accordance with the laws of the State of New York." MGA Agreement P16(e). Thus, with respect to the contract issues, all of which arise from the MGA Agreement, the Court will defer to the choice of law indicated by the parties in the MGA Agreement and apply New York law. Moreover, because the claims for negligence arise out of an alleged duty arising from the parties' contractual relationship under the MGA Agreement, we will also apply New York law to those claims.

## IV. STANDARD

HN3⚓A court may dismiss a complaint under Rule 12(b)(6) [*7] of the Federal Rules of Civil Procedure for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir.1997) (citing Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir.1986)). Although a court need not credit a plaintiff's "bald assertions" or "legal conclusions" when deciding a motion to dismiss, Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997), the court must accept as true all the allegations set forth in the complaint, and must draw all reasonable inferences in the plaintiff's favor. Ford v. Schering-Plough Corp., 145 F.3d 601, 604 (3d Cir. 1998). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683, 71 Ohio Op. 2d 474 (1974)). [*8]

## V. ANALYSIS

**A.** The Statutory Claims under New York Insurance Law Must be Dismissed.

Defendant argues that Specialty's claims under the New York Insurance Law (Count II) must be dismissed because Specialty has not identified any specific provision, statute or code which Royal is alleged to have violated, or which provides Specialty with a private cause of action. In fact, no specific statutes or codes were cited in Plaintiffs' Complaint. However, Plaintiffs contend, in their Memorandum of Law in Opposition to Defendant's Motion, that Royal violated Sections 2123 and 2304 of the New York Insurance Law. In addition, Plaintiffs claim Royal violated Article 24, N.Y. Ins. Law § 2401 et seq. (McKinney 2000),, by engaging in deceptive or unfair business practices. For the following reasons, Specialty's claims under the New York Insurance Law will be dismissed.

1. Section 2123 does not apply to Specialty's claim.

HN4⚓Section 2123 of the New York Insurance Law provides a private cause of action for certain misrepresentations and misleading statements by an agent or representative of any insurer authorized to transact life, accident or health insurance business [*9] in New York. N.Y. Ins. Law § 2123 (McKinney 2000). This statutory provision is very specific in limiting the types of policies or contracts to which it applies. It covers "life, accident or health insurance, any annuity contract or any health maintenance organization contract." N.Y. Ins. Law § 2123(a)(1). Specialty admits that it was involved in selling "property and casualty insurance" for the

Restaurant Program. Cmpl. P 7. Because "property and casualty insurance" is not "life insurance" or "accident and health insurance," N.Y. Ins. Law §§ 1113(a)(1), (3), Plaintiffs' claim under Section 2123 n1 must be dismissed.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Moreover, <sup>HN5</sup>Section 2123 applies only to insurance agents or representatives, and not to an insurer, such as Royal. N.Y. Ins. Law § 2123; Dornberger v. Metropolitan Life Ins. Co., 961 F. Supp. 506, 547 (S.D.N.Y. 1997) (dismissing Section 2123 claim against insurer); Buccino v. Continental Assur. Co., 578 F. Supp. 1518, 1526 (S.D.N.Y. 1983) (same); Goshen v. The Mutual Life Ins. Co. of New York, 997 N.Y. Misc. LEXIS 486, 1997 WL 710669 (N.Y. Sup. Ct. Oct. 21, 1997). We note that Section 4226 of the New York Insurance Law provides a private cause of action against an insurer for certain misrepresentations and misleading statements, N.Y. Ins. Law § 4226 (McKinney 2000). However, it applies only to insurers authorized to transact "life" or "accident and health" insurance and, as with Section 2123, does not pertain to property or casualty insurance. N.Y. Ins. Law § 4226(a)(1). In addition, Section 4226 does not provide a basis for recovery by an insurance agent against an insurer. Slote v. Equitable Life Assur. Soc. of U.S., 78 Misc. 2d 462, 356 N.Y.S.2d 812 (N.Y. Sup. Ct. 1974) (insurance agent was not an aggrieved person within meaning of Section 211, now Section 4226).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*10]**

2. Section does not provide a private cause of action.

Specialty purports to bring a cause of action against Royal pursuant to and, thus, Article 23 of the New York Insurance Law. Section 2304 N.Y. Ins. Law § 2301 et seq. (McKinney 2000), <sup>HN6</sup>Article 23 covers property and casualty insurance and has the following purposes: (1) to promote the public welfare by regulating insurance rates to the end that they not be excessive, inadequate or unfairly discriminatory, (2) to promote price competition and competitive behavior among insurers, (3) to provide rates that are responsive to competitive market conditions, (4) to improve the availability and reliability of insurance and (5) to authorize and regulate cooperative action among insurers within the scope of this article. N.Y. Ins. Law § 2301 (McKinney 2000). Neither Article 23 nor, in particular, Section 2304 provides a private right of action.

<sup>HN7</sup>Typically, New York courts do not construe the Insurance Law to provide a private right of action in the absence of express language authorizing such enforcement. Bauer v. Mellon Mortgage Co., 178 Misc. 2d 234, 680 N.Y.S.2d 397, 400 (N.Y. Sup. Ct. 1998) (citing Rocanova v. Equitable Life Assur. Society, 83 N.Y.2d 603, 634 N.E.2d 940, 612 N.Y.S.2d 339 (N.Y. 1994) **[*11]** (no private right of action under Insurance Law § 2601); Kurrus v. CNA Ins. Co., 115 A.D.2d 593, 496 N.Y.S.2d 255 (N.Y. App. Div. 1985)). When a statute is silent as to whether it grants a private right of action for civil damages, courts apply a three-part inquiry to determine whether such an action is permitted under its terms. The inquiry is: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purposes; and (3) whether creation of such a right would be consistent with the

legislative scheme. Id. (citing Sheehy v. Big Flats Community Day, 73 N.Y.2d 629, 541 N.E.2d 18, 543 N.Y.S.2d 18 (N.Y. 1989); Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 451 N.E.2d 459, 464 N.Y.S.2d 712 (N.Y. 1983)); see also Sparkes v. Morrison & Foerster Long-Term Disability Ins. Plan, 129 F. Supp. 2d 182, 187 (N.D.N.Y. 2001) (applying same tripartite test) (citing Uhr v. East Greenbush Central Sch. Dist., 94 N.Y.2d 32, 720 N.E.2d 886, 698 N.Y.S.2d 609 (1999)).

Section 2304 **[*12]** cannot be read to create a private cause of action because such a right would be inconsistent with the legislative scheme provided by Article 23. As stated in Sparkes:

> An implied right of action would not be consistent with the legislative scheme. Section 109 of the Insurance Law establishes the procedures for enforcement of various provisions of the Insurance Law by the Superintendent of Insurance. It does not provide for a private right of action. Buccino v. Continental Assur. Co., 578 F. Supp. 1518, 1526 (S.D.N.Y.1983). Where the legislature intended that a particular provision of the Insurance Law be enforced through a private right of action, it expressly so provided in the terms of the statute. See, e.g., Insurance Law §§ 3420, 4226.

Sparkes, 129 F. Supp. at 188. ᴴᴺ⁸ Section 2304 establishes the requirements for determining rates to be assessed by an insurer and what information an insurer must provide in the form of a filing to the New York Department of Insurance. Neither Section 2304 nor Article 23 as a whole explicitly provides a private cause of action for damages. We will not read such a right into the statute where **[*13]** other sections of the New York Insurance Law expressly provide a private right of action. Id.

Furthermore, the sections within Article 23 providing for enforcement and penalties, as well as the rights of aggrieved parties, are all tied to the powers of the Superintendent of Insurance. Section 2319 permits any party affected by the action of an insurer to appeal to the Superintendent. N.Y. Ins. Law § 2319 (McKinney 2000). Sections 2320 and 2321 address the Superintendent's power to impose penalties for violations of Article 23. N.Y. Ins. Law § 2320, 2321 (McKinney 2000). n2 As the legislature of the State of New York has provided express administrative remedies for violations of Article 23, enforcement is more appropriately within the jurisdiction of the Superintendent of Insurance. See Bauer, 680 N.Y.S.2d at 400 (denying private right of action under Insurance Law) (citing Kurrus). Accordingly, we conclude that a private right of action for damages does not exist under Article 23 of the New York Insurance Law, and Specialty's claim under Section 2304 must be dismissed.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 N.Y. Ins. Law § 2320 expired on August 2, 2001. N.Y. Ins. Law § 2342.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*14]**

3. No private cause of action exists under Article 24.

The purpose of Article 24 of the New York Insurance Law is to "regulate trade practices in the business of insurance" and prohibit all "unfair methods of competition or unfair or deceptive acts or practices" as defined within the Article. N.Y. Ins. Law §§ 2401, 2403 (McKinney 2000). As with Article 23, *HN9* a private cause of action does not exist under Article 24. Pepsico, Inc. v. Continental Casualty Co., 640 F. Supp. 656, 664-65 (S.D.N.Y. 1986), disagreed with on other grounds by Waltuch v. Conticommodity Servs., Inc., 88 F.3d 87, 92 n.8 (2d Cir. 1996); Huckission v. Sentry Insurance, 123 A.D.2d 832, 507 N.Y.S.2d 447, 449 (N.Y. App. Div. 1986) (holding that Article 24 does not create a private right of action or provide a compensatory remedy for insurance agents whose contracts have been terminate); Kurrus v. CNA Ins. Co., 115 A.D.2d 593, 496 N.Y.S.2d 255, 256 (N.Y. App. Div. 1985) (explaining that enforcement by Superintendent of Insurance and administrative review procedures are exclusive remedies under Article 24). n3 Accordingly, Specialty's claim under **[*15]** Article 24 will be dismissed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Enforcement of Article 24 is within the jurisdiction of the Superintendent of Insurance, who is specifically conferred the power to examine and investigate the activities of an insurer to determine whether the individual is in violation of this Article. N.Y. Ins. Law § 2404. To this end, the Superintendent can impose civil penalties on any insurer who does not comply with the Article. Id. The Article establishes a procedure by which affected parties may pursue judicial review of the Superintendent's actions. N.Y. Ins. Law §§ 2405-2408.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**B.** Specialty Has Sufficiently Pled a Claim for Breach of Contract (Count IV).

In its Complaint, Specialty alleges that Royal, under the MGA Agreement, "was obligated to make the Restaurant Program available in accordance with the terms of the MGA Agreement, and implicitly, to avoid any acts that would interfere with or compromise Specialty's ability to administer the Restaurant Program as contemplated by the MGA Agreement." Cmpl **[*16]** P 51. Specialty then alleges the following:

> Royal entered into a course of conduct that was specifically designed and intended to damage, and had the effect of damaging, the interests of Specialty under the MGA Agreement, to interfere with Specialty's conduct of business under the authority of the MGA Agreement, and to exploit its power as insurer under the MGA Agreement, all to Specialty's substantial injury.

Id. at P 52. Specialty claims that the above actions constitute a breach of the contractual obligations. Id. at P 53. In addition, Specialty claims Royal breached the

MGA Agreement by failing to renew a license necessary for Specialty to underwrite insurance policies in Massachusetts. Id. at PP 23-28.

We are satisfied that Specialty has alleged a cause of action for breach of Paragraph 6 (e) of the MGA Agreement for failing to renew Specialty's license in Massachusetts. n4 Although the allegations supporting a breach of sections (a), (b) and (g) of Paragraph 6 are less precise than the claim under section (e), we will deny the Motion to Dismiss with respect to Count IV and will permit Specialty to pursue its claim for breach of contract.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Royal briefly argues that Paragraph 3 of the MGA Agreement specifically identifies a territory consisting only of New York, Connecticut, New Jersey and Pennsylvania, and, therefore, this claim should be dismissed because there is no obligation, under the MGA Agreement, that would pertain to licensing in Massachusetts. Def. Mem. at 13. Royal's argument is unpersuasive because Paragraph 3 explicitly states that the territory "may be changed by addendum of additional states," and the Complaint specifically alleges that the Restaurant Program was in effect in Massachusetts. Cmpl. P 24. In addition, Royal argues that a release executed by Specialty discharges Royal from any liability arising out Specialty selling insurance in Massachusetts without a license. We will reserve judgment on the meaning and effect of the release, which was neither incorporated in nor attached to the Complaint. Cf. Cohen v. Duane, Morris & Heckscher, 1991 U.S. Dist. LEXIS 18287, 1991 WL 269994, *3 (Gawthrop, J.) (E.D. Pa. 1991) (defendant must resort to Rule 56 to assert defense based on release that is neither attached to nor incorporated in the complaint); Neuman v. Harmon, 965 F. Supp. 503, (S.D.N.Y. 1997) (factual issues existed as to meaning and enforceability of mutual release); Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 945 F. Supp. 693, 731 (S.D.N.Y. 1996) (dispute as to material issue regarding affirmative defense of release precluded summary judgment on breach of contract claim).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[\*17]**

**C.** Breach of Duty of Good Faith and Fair Dealing (Counts I and III).

Royal contends that Specialty's claims for breach of the duty of good faith and fair dealing must be dismissed for two reasons. First, Royal contends that the way Royal would make a profit was to have Specialty sell the insurance and that it would, therefore, be illogical for Royal to sabotage the Restaurant Program. Second, Royal contends that because the contract was terminable at will, no duty of good faith and fair dealing existed under the contract.

Specialty apparently concedes that the covenant of good faith and fair dealing does not apply to the termination of at-will contracts. Wieder v. Skala, 80 N.Y.2d 628, 634, 609 N.E.2d 105, 593 N.Y.S.2d 752 (N.Y. 1992) (holding that termination of at-will employment does not give rise to a claim for breach of covenant of good faith and fair dealing); Murphy v. Am. Home Prod. Corp., 58 N.Y.2d 293, 304-05, 448 N.E.2d 86, 461 N.Y.S.2d 232 (N.Y. 1983) (same); Lake Erie Distributors, Inc. v. Martlet Importing, Inc., 221 A.D.2d 954, 956, 634 N.Y.S.2d 599 (N.Y. App. Div. 1995)

(dismissing claim for breach **[*18]** of covenant of good faith and fair dealing for termination of a franchise agreement that was terminable at-will). However, Specialty opposes Royal's Motion to Dismiss on the basis that its claim for breach of implied duty of good faith and fair dealing is based not on the termination of the MGA Agreement but rather on the bad faith behavior exhibited by Royal during its performance of the contract.

The case of Copy-Data v. Toshiba Am., Inc., 582 F. Supp. 231 (S.D.N.Y. 1984) is instructive in this regard. In Copy-Data the district court recognized that the duty of good faith and fair dealing may extend to contracts for distributorships which are terminable at-will. Id. at 236. In that case, Copy-Data entered into a contract with Toshiba for exclusive distributorship rights for Toshiba's copy machines. Id. at 233. The court stated that, although the contract was terminable at-will, implicit in the agreement was that it be for a reasonable period of time and that reasonable notice be given prior to the termination of the contract. Id. at 236. The court held that although there was no obligation for Toshiba to continue **[*19]** the exclusive distributorship with Copy-Data, there was an underlying obligation to deal with Copy-Data in a manner exhibiting good faith, and that Toshiba had breached that implied duty. Id. at 236-37. The Second Circuit reversed, holding that Toshiba did not breach an implied covenant by obtaining Copy-Data's customer list because the customers were not end users of Toshiba's products. 755 F.2d 293. More significantly, however, the Second Circuit did not reject the district court's assertion that an implied duty of good faith and fair dealing existed between Copy-Data and Toshiba, notwithstanding the at-will nature of their contractual relationship. Id.

*HN10* We are satisfied that under New York law, a duty of good faith and fair dealing exists in at will contracts. n5 However, in the instant case, Specialty's claims for breach of duty of good faith and fair dealing amount to nothing more than a duplication of its claims for breach of contract under the MGA Agreement. As such, they must be dismissed. Harris v. Provident Life & Accident Ins. Co., 166 F. Supp. 2d 733, 735 n.1 (N.D.N.Y. 2001) (citing Fasolino Foods Co. v. Banca Nazionale de Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992)); **[*20]** D'Accord Financial Servs., Inc. v. Metsa-Serla Oy, 1999 WL 58916, *2-3 (Cote, J.) (S.D.N.Y. Feb. 8, 1999); Centre-Point Merchant Bank Ltd. v. American Express Bank Ltd., 913 F. Supp. 202, 209 (S.D.N.Y. 1996).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 A plethora of cases under New York law have held that every contract implies a covenant of good faith and fair dealing, see, e.g., Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994) (citing Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co., 30 N.Y.2d 34, 281 N.E.2d 142, 144, 330 N.Y.S.2d 329 (N.Y.), cert. denied, 409 U.S. 875, 34 L. Ed. 2d 128, 93 S. Ct. 125 (1972)); M/A-Com Security Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990); Harris v. Provident Life & Accident Ins. Co., 166 F. Supp. 2d 733, 735 n.1 (N.D.N.Y. 2001). However, we note that there are also a significant number of cases holding that New York law does not create an implied duty of good faith and fair dealing in an at-will employment contract. See, e.g., Nunez v. A-T Financial Information, Inc., 957 F. Supp. 438, 443 (S.D.N.Y. 1997); see also Wieder v. Skala, 80 N.Y.2d 628, 634, 609 N.E.2d 105, 593 N.Y.S.2d 752 (N.Y. 1992); Murphy v. Am. Home Prod. Corp., 58 N.Y.2d 293, 304-05, 448 N.E.2d 86, 461 N.Y.S.2d 232 (N.Y. 1983).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*21]**

Specialty has alleged that Royal interfered in the conduct of business under the MGA Agreement, Cmpl. P 37, and engaged in a course of deceptive and unfair business practices. Cmpl. PP 22(b), 46. The conduct which Plaintiffs contend is a breach of Defendant's duty of good faith and fair dealing is exactly the same conduct which Plaintiffs contend constitutes a breach of contract. In fact, Plaintiffs specifically so allege in their claim for breach of contract in Count IV. See, e.g., Cmpl. PP 49, 52. Moreover, all of the allegations that support Plaintiffs' claims in Count I and Count III are included in the claim against Royal for breach of its obligations under Paragraph 6 of the MGA Agreement. Accordingly, we will dismiss Counts I and III.

**D.** Specialty's Negligence Claim is Dismissed.

In Count V, Specialty claims that Royal had a duty to exercise reasonable care to procure all licenses necessary for Specialty to administer the Restaurant Program and that the failure to exercise reasonable care led to Specialty not being able to underwrite insurance in Massachusetts. Cmpl. PP 56-59. Royal responds that this negligence claim must be dismissed because Defendant **[*22]** does not owe Specialty or Security a legal duty independent of the MGA Agreement. We agree.

*HN11* The New York Court of Appeals has stated, "it is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987). "Merely charging a breach of a 'duty of due care', employing language familiar in tort law, does not, without more, transform a simple breach of contract into a tort claim." Id., at 390. Rather, it is "the very nature of a contractual obligation, and the public interest in seeing it performed with reasonable care, [that] may give rise to a duty of reasonable care in performance of the contract obligations, and the breach of that independent duty will give rise to a tort claim." New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316, 662 N.E.2d 763, 639 N.Y.S.2d 283 (N.Y. 1995). "Conversely, where a party is merely seeking to enforce its bargain, a tort claim will not lie." Id.

*HN12* In determining whether a tort obligation **[*23]** is present, courts must consider the relationship of the parties, the nature of the injury, the manner in which the injury occurred and the resulting harm. Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 551-52, 593 N.E.2d 1365, 583 N.Y.S.2d 957 (N.Y. 1992). The New York Court of Appeals elaborated:

> A legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship. Professionals, common carriers and bailees, for example, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties. In these instances, it is policy, not the parties' contract, that gives rise to a duty of due care.

Id. Furthermore, a party may be liable in tort if the party has "fraudulently induced the plaintiff to enter into a contract" or engaged in "conduct outside the contract but intended to defeat the contract" in a manner resulting in the wilful destruction of another's property. New York Univ., 87 N.Y.2d at 316; Albemarle Theatre, Inc. v. Bayberry Realty Corp., 277 N.Y.S.2d 505, 27 A.D.2d 172, 177 (N.Y. App. Div. 1967).

These factors **[*24]** are not present in the instant action. Specialty asserts its negligence claim on grounds that Royal failed to renew Specialty's license in Massachusetts. Specialty has not pled a claim of fraud against Royal. Specialty has not alleged acts by Royal extraneous to the contract that would constitute the willful destruction of Specialty's property. Nor is this a case where Specialty could be said to have relied upon Royal to exercise due care based on an inherent public interest in seeing Royal adhere to a recognized standard.

In this regard, we do not overlook the New York Court of Appeals' holding in Sommer, which imposed a duty of care upon a fire alarm company that had contracted with a building owner to monitor its building and report fires as required by local law. 79 N.Y.2d 552-53. The court held that prior to entering into the contract, the fire alarm company did not owe the plaintiffs any duty. Id. at 551. However, once the contract had been entered into, there were duties which arose from the contract. Id. The issue was whether the defendant's failure to perform its duties constituted a breach of contract, a tort, or both. Id. The New **[*25]** York Court of Appeals found that an independent duty existed separate from the terms of the contract. The court cited a comprehensive fire-safety scheme, under which a fire alarm company could be penalized, as demonstrating the public interest in the careful performance of a fire alarm services contract. Id. at 552-53. The court also emphasized that the nature of the injury from a failure to perform carefully and completely could result in catastrophic consequences. Id. at 553. The plaintiffs' negligence claim was therefore upheld. Id.

More recently, however, in New York Univ. v. Continental Ins. Co., the New York Court of Appeals declined an opportunity to extend Sommer to a case brought by an insured against its insurer for breach of contract. 87 N.Y.2d at 316-18 (rejecting the existence of a duty governing an insurer's conduct independent from the terms of the insurance contract and thus finding no basis for an actionable, independent tort). The Court of Appeals explained that, in Sommer, it "did not . . . suggest that statutory provisions necessarily or generally impose tort duties independent of contractual obligations. **[*26]** " Id. at 317. The court continued:

> HN13⚓To be sure, the provisions of the Insurance Law reflect State policy that insurers must deal fairly with their insureds and the public at large. But governing the conduct of insurers and protecting the fiscal interests of insureds is simply not in the same league as the protection of the personal safety of citizens. As compared to the fire-safety regulations cited in Sommer, the provisions of the Insurance Law are properly viewed as measures regulating the insurer's performance of its contractual obligations, as an adjunct to the contract, not as a legislative imposition of a separate duty of reasonable care . . .

Id. Because the public interests involved in the instant action are more akin to those implicated in New York Univ. than in Sommer, we conclude that Specialty cannot state a legal duty owed by Royal to Specialty that is independent from Royal's contractual obligations under the MGA Agreement. Count V will therefore be dismissed.

**E.** Security's Negligence and Third Party Beneficiary Claims are Dismissed.

Security has brought its only claim on a theory of negligence. In Count VI, **[*27]** Security claims that Royal had knowledge that Specialty was the Managing General Agent for Security and that, if Specialty were to lose its license in any state, there would be an adverse impact on Security. Cmpl. PP 62-68. In addition, in its Memorandum of Law in Opposition to the Motion, Security argues that it is entitled to recover for its loss as a third-party beneficiary to the MGA Agreement. Royal contends it had no contractual relationship with Security and was under no obligation to obtain a license for Specialty for the benefit of Security.

As above indicated, there was no independent duty outside the MGA Agreement for Royal to obtain licenses. Royal cannot owe a duty to Security beyond what was intended under the MGA Agreement. Security's claim, if any, against Royal must sound in contract rather than tort. Because Security was not a direct party to the MGA Agreement, we must determine whether Security was a third-party beneficiary of the contract. n6

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 *HN14* ⚓In doing so, we may consider surrounding circumstances in addition to the agreement, In re Houbigant, Inc., 914 F. Supp. 964, 985 (S.D.N.Y. 1995); Belgrave Owners, Inc. v. Or Holding Corp., 233 A.D.2d 352, 650 N.Y.S.2d 249, 250 (N.Y. App. Div. 1996) (citing Aievoil v. Farley, 223 A.D.2d 613, 636 N.Y.S.2d 833 (N.Y. App. Div. 1996); Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 45, 485 N.E.2d 208, 495 N.Y.S.2d 1 (N.Y. 1985)), and the obligation to the third party need not be expressly stated in the contract. Id. But see Piccoli, 19 F. Supp. 2d 157, 164 n.41 (comparing cases and noting that there is considerable dispute concerning whether a court may consider extrinsic evidence).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*28]**

*HN15*⚓New York law allows a third party to enforce a contract only if the third party is an intended beneficiary of the contract. Flickinger v. Harold C. Brown & Co., Inc., 947 F.2d 595 (2d Cir. 1991) (follows the Restatement (Second) of Contracts § 302 (1979)); Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 162 (S.D.N.Y. 1998). Plaintiffs cite Internationale Nederlanden (U.S.) Capital Corp. v. Bankers Trust Co., 261 A.D.2d 117, 689 N.Y.S.2d 455 (1999) as providing a three-part test to determine whether an individual should be considered a third-party beneficiary if the party is not specifically named as a third-party beneficiary. Internationale Nederlanden, 261 A.D.2d at 123. See also State of California Public Employees' Retirement System v. Shearman & Sterling, 95 N.Y.2d 427, 741 N.E.2d 101, 104, 718 N.Y.S.2d 256 (N.Y. 2000). The third party must show that (1) a binding contract exists between the other parties, (2) the contract was intended for the benefit of the third party and (3) the benefit to the third party is direct and immediate instead of incidental. Id.

Applying this **[*29]** test to the facts of this case, Security is unable to show that the MGA Agreement was entered into for the benefit of Security. Plaintiffs allege that Specialty provided insurance through Security to restaurants which were not acceptable to Royal. Cmpl. P 62. Plaintiffs further allege that Royal knew that Specialty was Security's Managing General Agent and that, if Specialty was not licensed to underwrite insurance in a specific state, Security would not be able to conduct its insurance business in that state. Id. P 63. These allegations suggest nothing more than that Royal, as a party to the MGA Agreement, knew Security would benefit from Royal obtaining licenses for Specialty. What is lacking from both the Complaint and Plaintiffs' Memorandum of Law is any allegation regarding the intent of the parties to the MGA Agreement concerning whether it was entered into with an expressed purpose of benefitting Security. In re Houbigant, 914 F. Supp. at 986 (holding that expressed intent of the promissee is of primary importance) (citing Drake v. Drake, 89 A.D.2d 207, 455 N.Y.S.2d 420, 422 (N.Y. App. Div. 1982)). Plaintiffs have failed to appreciate the **[*30]** difference between a known but incidental beneficiary and one that is intended. Security's claim against Royal will therefore be dismissed.

**F.** Plaintiffs may not Recover Punitive or Exemplary Damages.

Royal also moves pursuant to Fed. R. Civ. Proc. 12(f) to strike Specialty's claim for exemplary damages. We have dismissed all claims with the exception of Specialty's claim for breach of contract. Clearly, Specialty would not be entitled to exemplary damages on its claim for breach of the MGA Agreement. New York University v. Continental Ins. Co., 87 N.Y. 2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763.

## VI. CONCLUSION

For these reasons, Defendant's Motion to Dismiss is granted in part and denied in part. The Complaint fails to allege a proper cause of action under the New York Insurance Laws, and the Motion is granted with respect to Count II. The Complaint sufficiently states a claim for breach of contract, and the Motion is denied with respect to Count IV. The claims for breach of the duty of good faith and fair dealing are duplicative of the breach of contract claim, and the Motion is granted with respect to Counts I and III. Plaintiffs have failed **[*31]** to show a duty independent of the contract which would give rise to a claim for negligence, and the Motion is granted with respect to Counts V and VI. Finally, the Complaint fails to allege sufficient facts to support an award of exemplary damages.

An appropriate Order follows.

## ORDER

AND NOW, this 22ND day of March 2002, it is hereby ORDERED that, upon consideration of Defendants' Motion to Dismiss (Docket No. 8), and all papers filed in support thereof or in opposition thereto, the Motion to Dismiss is **GRANTED in Part** and **DENIED in Part**, as follows:

1. Counts I, II, III, V and VI are **DISMISSED**.

2. The Motion to Dismiss is **DENIED** in all other respects.

**AND IT IS SO ORDERED.**

R. Barclay Surrick, Judge

Service: **Get by LEXSEE®**
Citation: **2002 us dist lexis 12203**
View: Full
Date/Time: Friday, July 1, 2005 - 3:57 PM EDT

* Signal Legend:
  ⚙ - Warning: Negative treatment is indicated
  Q - Questioned: Validity questioned by citing refs
  ⚠ - Caution: Possible negative treatment
  ◆ - Positive treatment is indicated
  Ⓐ - Citing Refs. With Analysis Available
  ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**EXHIBIT D**

Westlaw.

Not Reported in F.Supp.2d

Page 1

2002 WL 1285089 (D.Minn.)

**(Cite as: 2002 WL 1285089 (D.Minn.))**

C

Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.
UNITED STATES OF AMERICA, ex rel. and Julie
Alsaker, and Luanne Caton,
Plaintiffs,
v.
CENTRACARE HEALTH SYSTEM, INC. and St.
Cloud Hospital, Inc., Defendant.
**No. Civ. 99-106(JRTRLE).**

June 5, 2002.

D. Gerald Wilhelm, Assistant United States
Attorney, Office of the United States Attorney,
Minneapolis, MN, for the United States.

Gary Leo Manka, Katz & Manka, Minneapolis,
MN, for plaintiffs Julie Alsaker and Luanne Caton.

Kevin J. Hughes, Paul R. Harris and Kathleen M.
Premo, Hughes Mathews, P.A., St. Cloud,
Minnesota, Douglas A. Kelley, William Michael, Jr.
and Steven E. Wolter, Douglas A. Kelley, P.A.,
Centre Village Offices, Minneapolis, MN, for
defendants.

MEMORANDUM OPINION AND ORDER

TUNHEIM, J.

**\*1** This is a fraud action brought against
defendants CentraCare Health System Inc., and St.
Cloud Hospital pursuant to the *qui tam* provisions
of the False Claims Act, 31 U.S.C. §§ 3729 *et seq* .
Plaintiffs allege that defendants prepared and
submitted false and/or fraudulent claims for home
health aid visits in violation of 31 U.S.C. § 3729.
The government intervened in the action pursuant to
31 U.S.C. § 3730(b)(4)(A). Defendants have moved
the Court for an order dismissing all counts of the
relators' complaint and Counts I, II and III of the

government's amended complaint for failure to
comply with Rules 9(b) and 12(b)(6) of the Federal
Rules of Civil Procedure. Defendants also move to
strike certain paragraphs of the amended complaint.
For the reasons that follow, the motion to strike is
granted in part and denied in part. The Court also
grants defendants' motion to dismiss for failure to
plead fraud claims with sufficient particularity
under Rule 9(b), but will grant plaintiffs leave to
file a second amended complaint to cure these
deficiencies.

BACKGROUND

On January 25, 1999, plaintiffs *qui tam* relators
Julie Alsaker and Luanne Caton ("relators") filed
this action under seal pursuant to the *qui tam*
provisions of the False Claims Act ("FCA").
Alsaker was employed at one of defendants'
facilities from 1993 through 1996. Caton is the
daughter of a resident who lived at one of the
facilities owned and operated by defendants. The
complaint alleges that since at least 1992,
defendants submitted claims for reimbursement of
services provided by home health aides where the
aides were not trained and certified in accordance
with the provisions of 42 C.F.R. § 484.36(A)(1).
Relators also allege that defendants submitted false
bills to Medicare for home health aid visits that
were not properly reimbursable either because the
claims included "padded" time records or the
services provided were custodial in nature and were
not related to treatment of the beneficiary's illness
or injury. Complaint at ¶¶ 18-23.

The government intervened on March 16, 2001,
and shortly thereafter, the case was unsealed. The
government served its amended complaint on
defendants on October 17, 2001, after United States
Magistrate Judge Raymond L. Erickson directed the
government to do so or face a recommendation of
dismissal for failure to effectuate proper service and
for failure to prosecute. October 11, 2001 Order at
3. [FN1] The amended complaint alleges six counts,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

2002 WL 1285089 (D.Minn.)

**(Cite as: 2002 WL 1285089 (D.Minn.))**

three counts of alleged violations of the FCA and one count each of Unjust Enrichment, Payment By Mistake, and Common Law Recoupment. It alleges that St. Cloud Hospital, acting through its agents, from "at least" 1992 to the present, filed or caused to be filed claims for home health services which were not eligible for reimbursement under the Medicare and Medicaid programs for, among other reasons, the following:

> FN1. The government did not file its amended complaint within the prescribed time period because the parties had agreed to defer service of the complaint until January 2002 in order to attempt to settle the claims. However, the parties failed to notify the court of this extension and in August 2001, the Magistrate Judge issued an order to show cause why the complaint had not been filed 120 days after the government intervened in the action.

a. claims were inflated by adding fifteen-minute increments of time so as to increase the amount claimed and reimbursed for personal care attendant services under Medicaid. Relator Julie Alsaker was directed by agents of Defendant St. Cloud Hospital, acting within the scope of their agency, to "pad" the time she spent providing services;

*2 b. The claims submitted were for custodial services unrelated to any need for skilled nursing services, which makes the claims non-reimbursable under Medicare. Relator Julie Alsaker was directed by agents of the Defendant St. Cloud Hospital to provide such services to Medicare beneficiaries, and knows that those services were billed to Medicare and/or Medicaid.

Am. Complaint ¶ 22. The government undertook an investigation in June 1999 and caused a small sample of claims submitted to Medicare to be selected from among those filed for residents of one of the residential facilities owned and operated by defendants during calendar year 1995. Am. Complaint ¶ 26. This sample was reviewed for compliance with Medicare requirements and when the analysis was completed in November 1999, the

fiscal intermediary determined that of the total of approximately $100,000 paid by Medicare for these claims, about $82,000 in claims were non-reimbursable for various reasons outlined in Exhibit A attached to the complaint. *Id.* In March 2000, the fiscal intermediary completed a Comprehensive Medical Review of defendants' home health claims submitted during January and early February 2000. Upon such review, the fiscal intermediary determined that approximately 42% of the claims submitted to Medicare were not reimbursable for a variety of reasons, including lack of medical necessity and missing documentation.

The government thus maintains that the claims which have so far been audited and were submitted to Medicare and Medicaid were false when submitted either because the service provided was not medically necessary; the service was not supported by a plan of care as required by regulation; the beneficiary receiving the service was not eligible to receive the service; the service was not provided as claimed; and/or the service represented personal care attendance not reimbursable by Medicare. Am. Complaint ¶ 33. The government further maintains that defendants knew the claims were false when submitted. *Id.* ¶ 34. Defendants responded to the government's amended complaint by filing this motion to dismiss and motion to strike.

## DISCUSSION

Defendants move to dismiss all counts of the relators' complaint and Counts I, II, and III of the amended complaint for failure to state a claim. [FN2] Defendants also move to strike certain paragraphs pursuant to Rule 12(f). The Court first addresses the motion to strike.

> FN2. Although defendants also move to dismiss all counts of the relators' complaint, only the amended complaint is legally relevant. "It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *Atlas Van Lines, Inc. v. Poplar Bluff Transfer Co.,* 209 F.3d 1064, 1067 (8th Cir.2000);

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 3

2002 WL 1285089 (D.Minn.)

**(Cite as: 2002 WL 1285089 (D.Minn.))**

*Kenney v. Musgreves,* Nos. 00-2394, 00-2775, 00-2305, 00-2396, 2000 WL 1665077 at *1 (8th Cir. Nov. 7, 2000). The government concedes as much in its response brief. Gov't Response to Motion to Dismiss at 1-2.

I. Motion to Strike

Defendants move to strike certain paragraphs from the amended complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) authorizes courts to strike "redundant, immaterial, impertinent or scandalous matter" from parties' pleadings. Specifically, defendants object to paragraphs 28-30 and 34(e) of the amended complaint on the basis that these paragraphs improperly describe confidential settlement discussions in violation of Rule 408 of the Federal Rules of Evidence.

Under Rule 408, evidence of conduct or statements made in compromise negotiations is inadmissible to prove liability. Fed.R.Evid. 408. Although this is a rule of evidence, courts have routinely granted motions to strike allegations in pleadings that fall within the scope of Rule 408. *Austin v. Cornell Univ.,* 891 F.Supp. 740, 750-51 (N.D.N.Y.1995) (granting defendant's motion to strike paragraph of complaint that alludes to settlement negotiations and falls within scope of 408), *rev'd on other grounds, Walsh v. City of Auburn,* 942 F.Supp. 788, 797 n. 5 (N.D.N .Y.1996); *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 40 (S.D.N.Y.1992) (granting defendant's motion to strike portions of complaint that refer to settlement discussions under Rule 408 as immaterial and potentially prejudicial); *Braman v. Woodfield Gardens Assocs. Realcorp Investors I,* 715 F.Supp. 226, 230 (N.D.Ill.1989) (same). Upon review of the paragraphs in question, the Court agrees with defendants that these paragraphs improperly discuss settlement negotiations prohibited by Rule 408. Paragraph 28 of the amended complaint provides, in relevant part, that "defendants were contacted by the United States by letter, and invited to engage in discussions relating to settlement of potential claims." Paragraph 29 states that, "during that meeting, counsel for

defendants conceded that significant issues existed concerning the reimbursability of claims filed by defendants for home health services." Paragraph 34(e) states that "attorneys for defendants, during the discussions described herein, admitted that the billing practices of defendants for home health services were deficient, and had been so at varying levels for a number of years." Accordingly, the Court grants the motion to strike these paragraphs. [FN3]

> FN3. Defendants also object to paragraph 31 which recounts a status conference between the Magistrate Judge and counsel. While the information contained in this paragraph does not directly advance plaintiff's allegations of fraud, it does provide context to the underlying action. The statement is thus not completely immaterial. The Court therefore denies this portion of defendant's motion.

II. Motion to Dismiss

*3 Defendants argue that plaintiffs have not stated a claim for fraud with sufficient particularity. Rule 9(b) requires that "[i]n all averments of fraud, or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The Eighth Circuit has interpreted the term "circumstances" of fraud to include the "time place and contents of false representations, as well as the identity of the person making the false representation, and what was obtained or given up thereby." ' *Commercial Prop. v. Quality Inns,* 61 F.3d 639, 644 (8th Cir.1995). Put another way, the complaint must read like the opening paragraph of a newspaper article: it must contain the "who, what, when, where and how" of the alleged fraud. *Bennett v.. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982), *adhered to on reh'g,* 710 F.2d 1361 (8th Cir.) (en banc). One of the primary purposes of the rule is to ensure that a defendant can adequately respond and prepare a defense to charges of fraud. *Greenwood v. Dittmer,* 776 F.2d 785, 789 (8th Cir.1985). As a result, "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 4

2002 WL 1285089 (D.Minn.)

**(Cite as: 2002 WL 1285089 (D.Minn.))**

the rule." *Commercial,* 61 F.3d at 644; *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 549 (8th Cir.1997).

Defendants maintain that the false claim allegations contained in both complaints fail to specify the times of occurrence of the alleged fraudulent activity (the "when"), the specific identity of the fraudulent agents (the "who") and do not describe any specific circumstances constituting fraud in specific cases. Such generic pleading, defendants argue, is clearly insufficient as cases like *United States ex rel. Robinson v. Northrop Corp.,* 149 F.R.D. 142 (N.D.Ill.1993), *United States ex rel. Minnesota Assoc. of Nurse Anesthetists,* Civ. No. 4-96-734 (ADM/JGL) at 21-23 (D.Minn. Mar. 3, 1997) (*"MANA"* ), *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 198 F.R.D. 560 (N.D.Ga.2000), and *United States ex rel. Cox v. Iowa Health Sys.,* 29 F.Supp.2d 1022, 1024-25 (S.D.Iowa 1998), make clear.

The government argues that the particularity requirement should be relaxed because this case involves a "complex scheme of fraud over an extended period of time." [FN4] *MANA,* Mar. 3 1997 Order at 22 ("Less specificity in the complaint can be permitted when the fraudulent activity involves numerous transactions or the fraud occurred over a long period of time."); *Clausen,* 198 F.R.D. at 562 (noting that the specificity requirements are applied less stringently where the fraud occurred over an extended period of time and consisted of numerous acts); *United States ex rel. Johnson v. Shell Oil Co.,* 183 F.R.D. 204 (E.D.Tex.1998). Under these circumstances, the government maintains that its complaint satisfies the notice pleading standard.

> FN4. The government also suggests that a lesser pleading standard should apply because the information is "uniquely within the control of the defendants." Am. Complaint ¶ 32. The Court disagrees. Julie Alsaker is a former employee and is alleged to have direct knowledge of the fraudulent activity and to have "witnessed" fraudulent conduct. Presumably, she would

have more specific information to offer than has been plead so far. Additionally, the government has subpoena power to obtain documents, and in fact, previously exercised this power when it conducted the first of two studies to assess the merits of relators' complaint.

Having reviewed the amended complaint and the relevant caselaw, the Court concludes that the amended complaint fails to provide the sufficient level of particularity to satisfy Rule 9(b). The amended complaint suffers from many of the same deficiencies identified in cases mentioned above. For instance, the amended complaint pleads that "Relator Julie Alsaker was directed by agents of Defendant St. Cloud Hospital, acting within the scope of their agency, to 'pad' the time she spent providing services" and to provide "custodial services unrelated to any need for skilled nursing services, which makes the claims non-reimbursable under Medicare." Am. Complaint ¶ 22(a), (b) (emphasis added). The complaint's generalized reference to "agents of defendant St. Cloud Hospital" is as deficient as was plaintiffs' reference to "a Northrup engineer" in *Robinson,* or to "defendant anesthesiologists" in *MANA.* Remarkably, the government suggests that this type of pleading is sufficient because defendant St. Cloud Hospital was Alsaker's employer and therefore knows with whom she had daily contact. However, the burden rests with the government, not the defendants, to plead their fraud allegations. The Court presumes, and counsel for plaintiff acknowledged at oral argument, that Alsaker can identify the specific "agents" who directed her to "pad" her hours and to conduct non-reimbursable custodial services. These specifics are not peculiarly within the control of the defendant and they should be disclosed in the complaint.

**\*4** The Court recognizes that plaintiffs' allegations involve over 30,000 claims submitted by defendants over an approximately eight-year period. For this reason, a lower standard of pleading the fraud allegations is appropriate. Nonetheless, a less stringent standard does not alleviate the plaintiffs' burden to allege any specifics of the fraud. As the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 5

2002 WL 1285089 (D.Minn.)

**(Cite as: 2002 WL 1285089 (D.Minn.))**

district court in *MANA* explained:

> The Court recognizes that plaintiffs allege a general practice of fraud that covers an extensive period of time. Clearly plaintiffs are not required to recite specifics for all 28,000 allegedly fraudulent transactions. Nevertheless, plaintiffs must provide some representative examples of the fraud which detail the specifics of who, where and when. Plaintiffs complaint does not once describe a single instance of the fraudulent conduct that names a *specific* anesthesiologist on an *exact* date at a *particular* hospital with reference to either the procedure, patient or bill. Failure to plead *no* specifics is insufficient to satisfy Rule 9(b), even given a lesser pleading standard for allegations of extensive fraud.

*MANA,* Mar. 3, 1997 Order at 23 (emphasis in original). The Court agrees with this statement and finds that the complaint must at least provide some representative examples of the alleged fraud. Counts I, II and III of the amended complaint do not accomplish this and accordingly must be dismissed for failure to comply with Rule 9(b). The Court will, however, dismiss those counts of the amended complaint without prejudice and allow the government an opportunity to file a second amended complaint which complies with the requirements of Rule 9(b). This practice is consistent with the procedure followed by other courts under similar circumstances. *Robinson,* 149 F.R.D. at 146 (dismissing plaintiffs' complaint without prejudice but granting plaintiffs leave to amend their complaint to bring it into compliance with Rule 9(b)); *MANA,* Mar. 3, 1997 Order at 24.

Because the Court finds that the complaint is subject to dismissal under 9(b), the Court will not now address defendants' arguments under Rule 12(b)(6) raised in the latter part of defendants' reply brief. Defendants may renew their motion under 12(b)(6) if plaintiffs file a second amended complaint which satisfies the pleading requirements of Rule 9(b). However, the Court pauses to remind defendants of the deferential standard of review that must be accorded plaintiffs on such a motion. The Court also notes that most of the cases relied on by defendants in support of this portion of their motion were before the court on motions for summary

judgment, not motions to dismiss. *See United States ex rel. Minnesota Assoc. of Nurse Anesthetists v. Allina Health Sys. Corp.,* Civ. No. 4-96-734, Mar. 17, 1999 (order granting summary judgment); [FN5] *United States ex rel. Lowell Quirk v. Madonna Towers, Inc.,* 278 F.3d 765 (Feb. 4, 2002) (appeal of order granting summary judgment); *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1263 (9th Cir.1996) (appeal of district court order granting summary judgment); *United States v. Adler,* 623 F.2d 1287 (8th Cir.1980) (post-trial motions). [FN6]

> FN5. In addition, the Eighth Circuit recently overturned the district court's grant of summary judgment for the defendants. *United States ex rel. Minnesota Assoc. of Nurse Anesthetists v. Allina Health Sys. Corp,* 276 F.3d 1032, 1052-56 (8th Cir. Jan. 17, 2002), *reh'g and reh'g en banc denied,* Mar. 25, 2002.

> FN6. At oral argument, the government raised objection to the submission of exhibits by defendants in their reply brief. Because the Court does not reach the issues relating to defendants' motion under Rule 12(b)(6), to which the exhibits in question pertain, the Court need not resolve that objection at this time.

ORDER

**\*5** Based on the foregoing, the submissions of the parties, and all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendants' motion to strike [Docket No 22] is GRANTED in part and DENIED in part. The motion is GRANTED as to paragraphs 28-30 and 34(e) and they are accordingly STRICKEN from the amended complaint [Docket No. 19]. Defendants' motion to strike is DENIED in all other respects.

2. Defendants' motion to dismiss [Docket No. 22] is GRANTED and Counts I, II and III of the government's first amended complaint [Docket No. 19] are DISMISSED WITHOUT PREJUDICE.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 6

2002 WL 1285089 (D.Minn.)

**(Cite as: 2002 WL 1285089 (D.Minn.))**


Plaintiffs shall have thirty (30) calendar days from the date of this Order to file a second amended complaint in this action, Civil File No. 99-106 (JRT/RLE), and defendants may thereafter respond in a manner authorized by the Federal Rules of Civil Procedure.

2002 WL 1285089 (D.Minn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.