UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA, INC.<br>on its own behalf and as assignee of<br>THE DOW CHEMICAL COMPANY<br><br>Plaintiff,<br><br>v.<br><br>HRD CORPORATION (d/b/a<br>Marcus Oil & Chemical)<br><br>Defendant, Counterclaim Plaintiff | §<br>§<br>§<br>§<br>§<br>§<br>§     C.A. No. 05-23 (JJF)<br>§<br>§<br>§<br>§<br>§ |

### HRD CORPORATION'S MOTION TO COMPEL

Pursuant to Federal Rules of Civil Procedure 26, 34 and 37, Defendant/Counterclaim Plaintiff HRD Corporation d/b/a Marcus Oil & Chemical ("HRD") hereby files this Motion to Compel Production of Documents from Plaintiffs/Counterclaim Defendants Dow Chemical Canada, Inc. and The Dow Chemical Company (collectively, "Dow").

1. On April 6, 2006, HRD served its Request for the Production of Documents to Dow (the "Document Requests,"). (Exhibit A hereto) (D.I. 49) At Dow's request, HRD granted two extensions in which to respond to the Document Requests, the last of which expired on June 30, 2006.

2. On June 30, 2006, Dow served its written responses to the Document Requests. (Exhibit B hereto) Dow's response to the Document Requests recited a number of vaguely worded general objections, and each individual response stated yet additional objections. Most of the responses to the Document Requests contained the following language:

> Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, [Dow] will produce responsive, non-privileged documents in their possession located after a reasonable search of Dow's files.

1

Dow did not produce any documents--**NOT ONE**--even though HRD gave it over 90 days to conduct a "reasonable search."

3. By letter dated July 17, 2006, HRD advised Dow that its responses to the Document Requests were inadequate, and asked for a face-to-face meeting. (Exhibit C hereto) On July 31, 2006, counsel for HRD traveled to Chicago for a face-to-face meeting to address Dow's multiple objections to the Document Requests. Based upon discussions that took place at the meeting in Chicago, HRD's counsel believed agreements had been reached regarding discovery, yet no documents were forthcoming from Dow.

4. On August 29, 2006, HRD sent another letter asking Dow when Dow would produce documents. (Exhibit D hereto) Dow did not respond.

5. Between September 19, 2006 and October 9, 2006, representatives of Dow and HRD met to discuss a potential settlement and it was agreed that Dow could delay production of documents until November 7, 2006. The settlement negotiations were unsuccessful, and on October 31, 2006, HRD requested that document production begin immediately. (Exhibit E hereto)

6. On November 1, 2006, Dow stated that it would begin document production on November 7, 2006 and that document production would be complete by November 30, 2006. (Exhibit F hereto) Instead, on or about November 3, 2006, Dow submitted a proposed Amended Stipulation and Order Governing Discovery Materials to HRD, and implied that no documents would be produced until the document was signed. (Exhibit G hereto)

7. The Amended Stipulation was unreasonable, but, based on Dow's promise to send documents the next day, and in an effort to get discovery moving, HRD agreed to sign a temporary stipulation agreeing that its experts would not be given any documents until a ruling

2

was received from the Court. In return, Dow agreed to furnish its documents. This stipulation was signed by HRD's counsel and faxed to Dow on November 28, 2006. (Exhibit H hereto)

8. On November 30, 2006, Dow rejected its own stipulation and submitted another, more onerous, stipulation to HRD. This second stipulation would prohibit the dissemination of both "confidential" and "highly confidential" information by HRD's counsel to any HRD expert until Dow satisfied itself about its unspecified and unsupported concerns that HRD might export technology to Iran. Although such concerns are both unfounded and irrelevant, HRD has assured Dow that it has no intention of exporting any technology to Iran. (Exhibit I hereto) Dow did not respond to HRD's query as to how it could satisfy Dow's concerns.

9. Ostensibly in response to HRD's request to learn how it could satisfy Dow's concerns, on December 8, 2006, Dow made new, even more onerous demands upon HRD as a prerequisite of producing documents. Following the receipt of these demands, HRD arranged for a teleconference with Dow's counsel as one last attempt to resolve the issues surrounding the Document Requests. The parties agreed that this dispute required Court intervention, and that the parties needed to request an amended scheduling order from the Court. (Exhibit J hereto)[1]

10. Then, on December 12, 2006, Dow made additional onerous and irrelevant demands on HRD, and demanded that HRD produce four witnesses for depositions before it would produce any documents. (Exhibit K hereto) Finally, on December 13, 2006, Dow sent yet another letter to HRD. (Exhibit L hereto)[2] Counsel for HRD sent a response letter on December 14, 2006, offering to sign yet another agreed order to the effect that HRD would not export any information to Iran, and the parties held one more unsuccessful teleconference the next day.

---

[1] HRD does not agree with Dow's characterization of HRD or Dow's obligations, nor does Dow agree with Dow's characterizations of counsel for HRD's statements.

[2] The attachments to the December 13, 2006, letter have been excluded.

3

11. Dow's latest objections are irrelevant, untimely, and without merit. HRD is entitled to discovery of documents, "regarding any matter, not privileged, that is relevant to the claim or defense...." Fed. R. Civ. P. 26. Further, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Dow made its written general objections and stated that it would produce documents subject to its general objections. Dow has failed to produce even those documents to which it did not object in its written responses. Furthermore, with respect to Dow's objection concerning HRD's proposed expert, HRD has agreed—pending a decision by the Court—not to share Dow's documents with its expert. With respect to Dow's irrelevant objections based upon HRD having business operations in Iran and India (businesses that have nothing to with wax), any documents produced by Dow that are marked "highly confidential" cannot be shared with HRD pursuant to an existing protective order of this Court.

**WHEREFORE**, HRD Corporation respectfully requests that this Court grant the motion to compel, award attorney fees to HRD, and enter the attached proposed form of order.

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| | |
| Michael Landrum | By: /s/ *W. Harding Drane, Jr.* |
| William C. Ferebee | W. Harding Drane, Jr. (#1023) |
| O'DONNELL FEREBEE MEDLEY & KEISER, PC | Suzanne M. Hill (#4414) |
| 450 Gears, Eighth Floor | 1313 N. Market Street |
| Houston, TX 77067-4512 | Wilmington, DE 19899-0951 |
| (281) 875-8200 (telephone) | (302) 984-6000 |
| (281) 875-4962 (facsimile) | wdrane@potteranderson.com |
| | shill@potteranderson.com |
| Dated: December 18, 2006 | *Attorneys for HRD Corporation* |

761674v3