# EXHIBIT  A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOW CHEMICAL CANADA, INC. | § | |
| on its own behalf and as assignee of | § | |
| THE DOW CHEMICAL COMPANY | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | C.A. No. 05-23 (JJF) |
| | § | |
| HRD CORPORATION (d/b/a | § | |
| Marcus Oil & Chemical) | § | |
|     Defendant, Counterclaim Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| DOW CHEMICAL CANADA, INC. | § | |
| on its own behalf and as assignee of | § | |
| THE DOW CHEMICAL COMPANY | § | |
| and THE DOW CHEMICAL, | § | |
| COMPANY | § | |
|     Counterclaim Defendants. | § | |

### HRD CORPORATION'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DOW CHEMICAL CANADA, INC. AND THE DOW CHEMICAL COMPANY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rule 26.1 of the United States District Court for the District of Delaware, HRD Corporation requests that Plaintiff /Counterclaim Defendants produce for inspection and copying all of the following documents and other tangible things that are in their possession, custody or control. The following instructions and definitions apply:

### DEFINITIONS

1.    "Dow" refers to both Dow Chemical Canada, Inc. and The Dow Chemical Company.

2.    "You" or "your" shall refer to Dow.

3.    "Marcus" refers to HRD Corporation d/b/a Marcus Oil & Chemical.

4.    "Metallocene Polymers" shall refer to olefin based polymers that were synthesized using single site catalyst.

5.    "Adhesive company" refers to any company with a majority of sales to the adhesive industry, or a company that has a division or affiliate with sales to the adhesive industry that is ranked among the top 20 suppliers to the adhesive industry by Adhesive Age Magazine.

6.    "Adhesive markets" includes hot melt adhesives used in the packaging, personal care, construction or other markets where two items are to be bound.

7.    The term "communication" shall mean any correspondence, contact, discussion, or exchange between any two or more persons, whether written or oral. Without limiting the foregoing, the term "communication" includes all documents, telephone conversations, face-to-face conversations, meetings or conferences, and any other means of transmitting a message.

8.    The term "document" shall mean anything discoverable under Rule 34 of the Superior Court Civil Rules. Further, the term "document" shall be used in the broad and liberal sense and means written, typed, printed, recorded or graphic matter, however produced or reproduced, of any kind and description and whether an original, master, duplicate or copy, including papers, notes of conversations, contracts, agreements, purchase orders, invoices, payment vouchers, credit memos, credit policies, payment receipts, bills of lading, delivery receipts, service tickets, field service reports, drawings, telegrams, tape recordings, communications (including inter-office and intra-

office memoranda), analytical reports, studies, UCC searches, security agreements, working papers, corporate records, minutes of meetings, notebooks, wire transfers, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, desk calendars, photographs, transcriptions or sound recordings of any type of personal or telephone conversations, negotiations, meetings, conferences, or things similar to any of the foregoing, and data, information or statistics contained within any data storage module, tape, disc or other memory device, or other information retrievable from storage systems including computer generated reports and print-outs and electronic communication, including e-mail and facsimile transmissions.  The term "document" shall also include data compilations from which information can be obtained and translated, if necessary, through detection devices in a reasonably usable form.  The term "document" shall also mean any English translation of a document in another language. If any "document" has been modified by the addition of notations or otherwise, or has been prepared in multiple copies which are not identical, each modified copy or non-identical copy is a separate "document."

      9.    The term "JDA" shall refer to the Joint Development Agreement executed in July 2002. This term shall include any addendums, amendments or schedules to the JDA.

      10.    The term "Supply Agreement" shall refer to the Sarnia PE Wax Supply Agreement that was executed in July 2002, and any schedules, amendments or addendums thereto.

      11.    The term "Light Ends" shall refer to the waste byproducts of the manufacturing process for polyethylene wax.

12.    The term "PFD" shall refer to process flow diagrams.

13.    The term "P&ID" shall refer to piping and instrument diagrams.

14.    The term "MOC" shall refer to Management of Change.

15.    The term "SOP" shall refer to standard operating procedures.

16.    The term "SOC" shall refer to standard operating conditions.

## INSTRUCTIONS

1.    Answer each of the attached Requests for Production so that your response identifies to which production request(s) the item applies.

2.    You are reminded that your written response: to this Request for Production shall state, with respect to each category of items that inspection and other requested action will be permitted as requested, except to the extent that you make objections in writing to particular items or categories.

3.    Your written response:s and/or objections, if any, shall be served on the opposing attorney no later than thirty (30) days after service of same.

4.    You are required to make all documents or items subject to this Request for Production, available for inspection and copying in the offices of O'Donnell, Ferebee, Medley & Keiser, P.C., 450 Gears Road, Suite 800, Houston, Texas 77067.

5.    If you contend that you may partially or entirely withhold a requested document because of a rule, privilege, immunity, or other reason, for each document partially or entirely withheld provide the following information: identify the document; and state the factual basis on which you claim the privilege or immunity.

6.    This request does not seek correspondence between you and your attorneys that was made in anticipation of litigation or in the course of this lawsuit.

4

7.    This discovery request is continuing.    In the event that any information or material comes to your attention, possession, custody or control, or the attention, possession, custody or control of your agents, employees, affiliates, subsidiaries, accountants, partners, officers, directors, or attorneys subsequent to the filing of your response:, which material or information is responsive to any interrogatory or request for production you are required to furnish said additional information, answers, or material to the opposing attorney as soon as possible.

## DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION NO. 1

With respect to the JDA, all documents relating to the following:

a.    business objectives that Dow sought to achieve by entering into the JDA;

b.    negotiation of the JDA;

c.    execution of the JDA; and

d.    technical or business probems that arose during the performance of the JDA.

### RESPONSE:

### REQUEST FOR PRODUCTION NO. 2

With respect to the Supply Agreement, all documents relating to the following:

a.    business objectives that Dow sought to achieve by entering into the SupplyAgreement;

b.    negotiation of the Supply Agreement;

c.    execution of the Agreement;

d.    technical or business problems that arose during the performance of the Supply Agreement.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3**

       All documents relating to sales calls made by Dow employees concerning any products that Dow was to produce for Marcus.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4**

       All documents relating to market analyses that Dow conducted concerning any products Dow was to produce for Marcus.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5**

       All documents relating to Dow's business plans for the adhesive market for the years 1999 through 2006.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6**

       All documents evidencing the volume of sales and the revenue generated for each product sold to the following businesses:

         a.     H.B. Fuller;

         b.     National Starch;

         c.     Findley; and

         d.     Henkel.

**RESPONSE:**

## REQUEST FOR PRODUCTION NO. 7

All documents relating to Dow's business plans for the adhesive industry from 2001 through 2006 that contain references to Metallocene Polymers.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 8

Documents relating to communications between Dow and Adherent Technologies or Eastman Chemical Company on the topic of Metallocene Polymers.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 9

Documents relating to communications between Dow and any adhesive companies that mentions Marcus or Metallocene Polymers.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 10

With respect to the agreement of January 8, 2001, documents relating to all communications between Dow employees concerning the following:

a.    business objectives that Dow sought to achieve by entering into the January 8, 2001 agreement;

b.    negotiation of the January 8, 2001 agreement;

c.    execution of the January 8, 2001 agreement; and

d.    technical or business problems that arose during the performance of the January 8, 2001 agreement.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11**

With respect to the Assignment and Novation Agreement, documents relating to all communications between Dow employees concerning the following:

      a.      business objectives that Dow sought to achieve by entering into the Assignment and Novation Agreement;

      b.      negotiation of the Assignment and Novation Agreement;

      c.      execution of the Assignment and Novation Agreement; and

      d.      technical or business problems that arose during the performance of the Assignment and Novation Agreement.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12**

Documents relating to any communication between Dow employees that discusses the benefits, costs or risks associated with producing products for Marcus.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13**

All "call" reports that mention Marcus.

**RESPONSE:**

## REQUEST FOR PRODUCTION NO. 14

Documents reflecting calls made jointly with Marcus personnel to adhesive companies.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 15

Documents that discuss the effect of the Marcus products on other Dow sales.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 16

Documents relating to communications between Dow technical personnel and Marcus.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 17

Documents relating to communications between Dow technical personnel and adhesive companies, adhesive consultants, and adhesive labs, during the period from January 8, 2001, to January 1, 2006.

## RESPONSE:

## REQUEST FOR PRODUCTION NO. 18

Produce copies of all patents filed from January 8, 2001 until the present that include claims dealing with Metallocene Polymers, and/or which mention their use in adhesive or wax applications.

## RESPONSE:

**REQUEST FOR PRODUCTION NO. 19**

Produce copies of all lab notebooks related to the development of products supplied to Marcus.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20**

Produce the results of all experiments conducted by Dow for stripping Light Ends from polymer made by Dow for Marcus, including lab produced and Sarnia-produced samples.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21**

All documents relating to Dow project reviews relating to the JDA and the Supply Agreement.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22**

All documents relating to of all agreements between Dow and other companies from January 8, 2001 to the present that mention adhesive applications and/or Metallocene Polymers.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23**

All documents that discuss Dow's metallocene catalysts and their ability to produce polyethylene copolymer with a molecular weight distribution (Mz) below 2.2.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24**

Documents that discuss Dow's metallocene catalysts versus Exxon's metallocene catalysts.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25**

Documents that discuss any limitations of the products that could be produced at Sarnia.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 26**

A 500 gram sample of every product produced for Marcus pursuant to the JDA and/or the Supply Agreement, whether in the lab or at Sarnia.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27**

All PFD's and P&ID's for the Sarnia plant at the time production for Marcus commenced.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 28**

All documents relating to MOC for changes made to the plant during production for Marcus, including all changes to PFDs and/or P&IDs.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29**

The final drawings of the Sarnia plant.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30**

The design and modeling calculations for devolatilization of Marcus products at Sarnia.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31**

All SOPs and all SOCs for the Sarnia plant at the time of production for Marcus commenced.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 32**

All changes to the SOPs and SOCs during pendency of the production for Marcus.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33**

All documents relating to communication regarding proposed and/or actual changes made to PFDs, P&IDs, SOPs and SOCs during production for Marcus.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34**

The operational procedures for devolatilization of Marcus products at Sarnia.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 35**

The design criteria for conversion of devolatilization units before and after the Sarnia retrofitting.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 36**

All procedures for initial start-up of the plant for production for Marcus

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 37**

All temporary operating procedures and/or all procedures for non-standard conditions during the production for Marcus

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 38**

All shift logs for each shift during production for Marcus.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 39**

All daily production reports for each day during production for Marcus.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 40**

All weekly, monthly, quarterly, and annual production reports for the period of time in which Dow was producing products for Marcus.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 41**

All reports documenting unusual events during production for Marcus including safety, environmental, production and/or quality events.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 42**

The quality control logs and analytical lab notebooks for the Marcus products produced by Dow.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 43**

The material balance for production at Sarnia.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44**

The solvent and polymer mass balance calculations conducted during the Sarnia operations.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45**

The analytical procedures for analyzing the effectiveness of the Sarnia devolatilization units.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 46**

The data accumulated for analyzing the effectiveness of the Sarnia devolatilization units.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 47**

The operations logs from Sarnia.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48**

The production schedules from Sarnia.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 49**

The in-process product analysis from Sarnia.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50**

The grading logs and/or off grade production logs for Sarnia.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51**

Documents concerning the segregation procedure for non conforming production.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 52**

The regrading procedure and logs.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 53**

The scrapped materials log.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 54**

The reworking procedure and reworking logs.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 55**

The Marcus requests for product as referenced in Paragraph 53 of your Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 56**

Produce all records on the trial production runs at Sarnia.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 57**

A 500 gram sample of off spec material shipped May 5, 2004.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 58**
A 500 gram sample of each off spec material shipped May 14, 2004.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 59**

A 500 gram sample of the Prime product produced May 9, 2004.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 60**

A 500 gram sample of the off spec materials shipped June 10 and 11, 2004.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 61**

A 500 gram sample of any other material shipped to Marcus from Sarnia.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 62**

The document where you disclosed Patent Application No. 10/509,212 to Marcus.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 63**

The disclosures to Marcus made pursuant to Paragraph 4.4 of the JDA.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 64**

The disclosures to Marcus made pursuant to Paragraph 4.5 or 4.7 of the JDA.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 65**

All documents relating to communications between Dow and Marcus regarding the success or lack of success of the products created pursuant to the JDA.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 66**

All documents relating to communications regarding the initial samples referred to in Paragraph 6.1 of the JDA.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 67**

Documents concerning the methods Dow uses to protect confidential information as described in Paragraph 6.3 of the JDA.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 68**

Documents in which the confidential information was shared with Marcus.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 69**

Documents concerning any developments as defined by Paragraph 10.7 of the JDA.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 70**

The Profit and Loss Statement and Balance Sheets for the Sarnia plant for the years 2000-2006.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 71**

The documents showing the Research and Development Expenses incurred pursuant to the Joint Development Agreement.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 72**

The invoices to Marcus for Research and Development Expenses.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 73**

The Profit and Loss statements showing the profit Dow made on the Research and Development part of the JDA.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 74**

The Profit and Loss statements showing the profit Dow made on the Supply Agreement.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 75**

Documents reflecting the amount of money Marcus paid Dow pursuant to the JDA.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 76**

All documents showing the amount of money Marcus paid Dow pursuant to the Supply Agreement.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 77**

All documents detailing the damages you are claiming in this lawsuit.

**RESPONSE:**



POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael Landrum
William C. Ferebee
O'DONNELL FEREBEE MEDLEY &
KEISER, PC
450 Gears, Eighth Floor
Houston, TX 77067-4512
(281) 875-8200 (telephone)
(281) 875-4962 (facsimile)



Dated: April **6**, 2006


726474

By: _Suzanne M. Hill_
    Richard L. Horwitz (#2246)
    W. Harding Drane, Jr. (#1023)
    Suzanne M. Hill (#4414)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    wdrane@potteranderson.com
    shill@potteranderson.com

*Attorneys for HRD Corporation (d/b/a Marcus Oil & Chemical)*

21

# EXHIBIT  B

06/30/2006    18:53    MORRIS NICHOLS ARSHTAND TUNNELL                    NO.358    P005

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| DOW CHEMICAL CANADA INC. on its own<br>behalf and as assignee of THE DOW CHEMICAL<br>COMPANY,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>HRD CORPORATION (d/b/a Marcus Oil &<br>Chemical),<br><br>　　　　Defendant, Counterclaim Plaintiff,<br><br>　　　　　　v.<br><br>DOW CHEMICAL CANADA INC., on its own<br>behalf and as assignee of THE DOW CHEMICAL<br>COMPANY, and THE DOW CHEMICAL,<br>COMPANY,<br><br>　　　　Counterclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Case No. 05-023 (JJF)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DOW CHEMICAL CANADA INC.'S AND
## THE DOW CHEMICAL COMPANY'S RESPONSE TO
## HRD CORPORATION'S REQUEST FOR PRODUCTION OF DOCUMENTS

　　　　Plaintiff and Counterclaim Defendants Dow Chemical Canada Inc. ("DCCI") and

The Dow Chemical Company ("TDCC") hereby respond to Defendant, Counterclaim-

Plaintiff HRD Corporation's ("HRD") Request For Production Of Documents.

### GENERAL RESPONSES AND OBJECTIONS

　　　　The following General Responses and Objections ("General Objections") to the

document requests are incorporated by reference into each of DCCI and TDCC's

responses set forth below.

1.    DCCI and TDCC object to each document request to the extent that it calls for the disclosure of material or information that is subject to any claim of privilege or protection from disclosure including, without limitation, the attorney-client privilege or the work product doctrine. DCCI and TDCC will provide a privilege log in accordance with the terms of Paragraph 14(c) of the Protective Order entered in this case, or any amendment to such protective order. Pursuant to such order, the parties have agreed that any privilege log need not list communications with, or other work product prepared by, counsel to the parties after commencement of the litigation on January 18, 2005. The parties also agree that a Producing Party's Privilege Log need not list the internal working files of counsel for the Producing Party.

2.    DCCI and TDCC object to all instructions, definitions and the requests to the extent that they exceed the discovery permitted by Fed.R.Civ.P. 26 and 34.

3.    DCCI and TDCC object to the requests to the extent that they seek publicly available documents or information already available to HRD.

4.    DCCI and TDCC object to producing copies of documents that do not differ materially from the copy produced on the grounds that production of such documents would be unduly burdensome.

5.    DCCI and TDCC object to the requests to the extent they seek production of documents related to DCCI and TDCC activities related to materials and products outside of the definition of "Polyethylene Waxes" in the Joint Development Agreement ("JDA") and the Sarnia PE Wax Supply Agreement ("Supply Agreement"). Under the March 26, 2003 addendum to the JDA, Polyethylene Waxes were defined as "metallocene ethylene homopolymers and copolymers having a number average

2

molecular weight ("Mn") within the range of 600-9,000, a density > 0.890g/cc and

Melting Temperature ("Tm") above 50˚C, and blends thereof."

6.    DCCI and TDCC also object to the requests to the extent they seek to

engage in an unwarranted search purportedly based on unsupported and conclusory

allegations of a general nature regarding DCCI and TDCC's development, sales and

marketing activities outside of the Polyethyelene Waxes to be developed pursuant to the

JDA and to be supplied pursuant to the Supply Agreement.  HRD's responses and

supplemental responses to DCCI's and TDCC's interrogatories demonstrate that HRD

has no factual basis for the conclusory counterclaim allegations regarding

misappropriation or misuse of trade secrets and confidential information.  Accordingly, in

light of HRD's complete failure to identify any factual basis for the conclusory

allegations in response to DCCI and TDCC's discovery requests, HRD is not permitted to

engage in an unwarranted search into DCCI's and TDCC's other businesses.  *See, e.g.,*

*Imax Corp. v. Cinema Technologies, Inc.,* 152 F.3d 1161, 1164-65 (9th Cir. 1998);

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 755 F.Supp. 635, 637-38 (D. Del.

1991); *Smithkline Beecham Pharmaceuticals v. Merck & Co., Inc.,* 766 A.2d 442, 447-48

(Del. 2000); *Engelhard Corp. v. Savin Corp.,* 505 A.2d 30, 33 (Del. Ch. 1986).

7.    DCCI and TDCC's responses to document requests are not intended to

waive, and should not be construed as waiving, the right to object to the relevance or

admissibility as evidence of any information or documents provided, or the subject matter

thereof.  DCCI and TDCC reserve all evidentiary objections, including without limitation

relevance and hearsay concerning each of DCCI's and TDCC's responses to document

requests, and any documents produced in response to document requests.

3

8. DCCI and TDCC object to HRD's definition of the term "Metallocene Polymers" to the extent it includes olefin based polymers that were synthesized using a single site catalyst that was not a metallocene catalyst.

9. DCCI and TDCC object to HRD's definition of the term "Light Ends" as vague and ambiguous.

10. DCCI and TDCC object to HRD's definition of the term "adhesive companies" as vague, ambiguous and burdensome to determine.

11. DCCI and TDCC object to the document requests to the extent they are overbroad, unduly burdensome, oppressive, or not reasonably calculated to lead to the discovery of admissible evidence.

12. DCCI and TDCC object to the document requests to the extent they seek information concerning trade secrets or other confidential information that DCCI and/or TDCC did not contemplate would be requested and which DCCI and/or TDDC would object to having disclosed to certain outside consultants of HRD. DCCI and TDCC will seek a modification of the protective order in order to attempt to resolve this objection.

13. DCCI and TDCC object to the document requests to the extent they seek information concerning trade secrets or other confidential information that are irrelevant, highly confidential information and so marginally discoverable that the risk of inadvertent disclosure exceeds the benefit to HRD.

14. DCCI and TDCC object to the document requests to the extent they seek information concerning trade secrets, confidential information, or information subject to confidentiality obligations with a third party.

4

15.    No responses herein should be construed to be a representation that documents responsive to any request in fact exist. Neither these responses nor the production of documents by DCCI or TDCC should be deemed to be an admission of the truth or accuracy of any characterization or conclusion contained in the requests.

## RESPONSES TO REQUEST FOR DOCUMENTS

### Request For Production No. 1.

With respect to the JDA, all documents relating to the following:

a.    business objectives that Dow sought to achieve by entering into the JDA;

b.    negotiation of the JDA;

c.    execution of the JDA; and

d.    technical or business problems that arose during the performance of the JDA.

### RESPONSE:

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 2.

With respect to the Supply Agreement, all documents relating to the following:

a.    business objectives that Dow sought to achieve by entering into the Supply Agreement;

5

    b.    negotiation of the Supply Agreement;

    c.    execution of the Agreement;

    d.    technical or business problems that arose during the performance of the Supply Agreement.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 3.**

All documents relating to sales calls made by Dow employees concerning any products that Dow was to produce for Marcus.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 4.

All documents relating to market analyses that Dow conducted concerning any products Dow was to produce for Marcus.

### RESPONSE:

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 5.

All documents relating to Dow's business plans for the adhesive market for the years 1999 through 2006.

### RESPONSE:

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks highly confidential commercial information.

As noted in General Objection 5, which is incorporated herein, the scope of the JDA and Supply Agreement were limited to "Polyethylene Waxes," which were defined as "metallocene ethylene homopolymers and copolymers having a number average molecular weight ("Mn") within the range of 600-9,000, a density > 0.890g/cc and Melting Temperature ("Tm") above 50°C, and blends thereof." Furthermore, as explained in General Objection 6, which is incorporated herein, HRD is not permitted to

7

engage in an unwarranted search into DCCI and TDCC's other businesses based on HRD's factually unsupported counterclaims.

Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession related to DCCI and TDCC's business plans with HRD located after a reasonable search of DCCI and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 6.

All documents evidencing the volume of sales and the revenue generated for each product sold to the following businesses:

    a.    H.B. Fuller;

    b.    National Starch;

    c.    Findley; and

    d.    Henkel.

### RESPONSE:

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks highly confidential commercial information.

As noted in General Objection 5, which is incorporated herein, the scope of the JDA and Supply Agreement were limited to "Polyethylene Waxes," which were defined as "metallocene ethylene homopolymers and copolymers having a number average molecular weight ("Mn") within the range of 600-9,000, a density > 0.890g/cc and

Melting Temperature ("Tm") above 50°C, and blends thereof." Furthermore, as explained in General Objection 6, which is incorporated herein, HRD is not permitted to engage in an unwarranted search into DCCI and TDCC's other businesses based on HRD's factually unsupported counterclaims. Subject to the foregoing objections, the General Objections which are hereby incorporated herein, subject to availability, and subject to third party confidentiality objections, DCCI and TDCC will produce documentation summarizing the unit volume of DCCI or TDCC's sales of certain polymers for hot melt adhesives for the period 1999 through 2006

## Request For Production No. 7.

All documents relating to Dow's business plans for the adhesive industry from 2001 through 2006 that contain references to Metallocene Polymers.

## RESPONSE:

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks highly confidential commercial information.

As noted in General Objection 5, which is incorporated herein, the scope of the JDA and Supply Agreement were limited to "Polyethylene Waxes," which were defined as "metallocene ethylene homopolymers and copolymers having a number average molecular weight ("Mn") within the range of 600-9,000, a density > 0.890g/cc and Melting Temperature ("Tm") above 50°C, and blends thereof." Furthermore, as explained in General Objection 6, which is incorporated herein, HRD is not permitted to engage in an unwarranted search into DCCI and TDCC's other businesses based on HRD's factually unsupported counterclaims.

9

Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession related to DCCI and TDCC's business plans with HRD located after a reasonable search of DCCI's and TDCC's files.  To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 8.**

Documents relating to communications between Dow and Adherent Technologies or Eastman Chemical Company on the topic of Metallocene Polymers.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks highly confidential commercial information.

As noted in General Objection 5, which is incorporated herein, the scope of the JDA and Supply Agreement were limited to "Polyethylene Waxes," which were defined as "metallocene ethylene homopolymers and copolymers having a number average molecular weight ("Mn") within the range of 600-9,000, a density > 0.890g/cc and Melting Temperature ("Tm") above 50°C, and blends thereof."  Furthermore, as explained in General Objection 6, which is incorporated herein, HRD is not permitted to engage in an unwarranted search into DCCI and TDCC's other businesses based on HRD's factually unsupported counterclaims.

Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged

10

documents in their possession relating to communications between TDCC or DCCI and

Adherent Technologies or Eastman Chemical Company to the extent that they relate to

work performed pursuant to the JDA or the Supply Agreement with HRD located after a

reasonable search of DCCI's and TDCC's files.  To the extent that such documents

contain trade secrets or other highly confidential commercial information, and such

information has no relevance to the issues in the current litigation, such information shall

be redacted.

**Request For Production No. 9.**

Documents relating to communications between Dow and any adhesive
companies that mention Marcus or Metallocene Polymers.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence, and because it

seeks highly confidential commercial information.

As noted in General Objection 5, which is incorporated herein, the scope of the

JDA and Supply Agreement were limited to "Polyethylene Waxes," which were defined

as "metallocene ethylene homopolymers and copolymers having a number average

molecular weight ("Mn") within the range of 600-9,000, a density > 0.890g/cc and

Melting Temperature ("Tm") above 50°C, and blends thereof."  Furthermore, as

explained in General Objection 6, which is incorporated herein, HRD is not permitted to

engage in an unwarranted search into DCCI and TDCC's other businesses based on

HRD's factually unsupported counterclaims.

Subject to the foregoing objections, and the General Objections which are hereby

incorporated herein, DCCI and TDCC will produce responsive, non-privileged

11

documents in their possession relating to communications between DCCI or TDCC and

any adhesive company to the extent that they relate to work performed pursuant to the

JDA and Supply Agreement with HRD located after a reasonable search of DCCI's and

TDCC's files. To the extent that such documents contain trade secrets or other highly

confidential commercial information, and such information has no relevance to the issues

in the current litigation, such information shall be redacted.

**Request For Production No. 10.**

    With respect to the agreement of January 8, 2001, documents relating to all
communications between Dow employees concerning the following:

      a.    business objectives that Dow sought to achieve by entering into the
             January 8, 2001 agreement;

      b.    negotiation of the January 8, 2001 agreement;

      c.    execution of the January 8, 2001 agreement; and

      d.    technical or business problems that arose during the performance of the
             January 8, 2001 agreement.

**RESPONSE:**

    DCCI and TDCC object to this request to the extent it is overbroad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Subject to the foregoing objections, and the General Objections which are

hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged

documents in their possession located after a reasonable search of DCCI's and TDCC's

files. To the extent that such documents contain trade secrets or other highly confidential

commercial information, and such information has no relevance to the issues in the

current litigation, such information shall be redacted.

**Request For Production No. 11.**

With respect to the Assignment and Novation Agreement, documents relating to all communications between Dow employees concerning the following:

    a.    business objectives that Dow sought to achieve by entering into The Assignment and Novation Agreement;

    b.    negotiation of the Assignment and Novation Agreement;

    c.    execution of the Assignment and Novation Agreement; and

    d.    technical or business problems that arose during the performance of the Assignment and Novation Agreement.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 12.**

Documents relating to any communication between Dow employees that discusses the benefits, costs or risks associated with producing products for Marcus.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged

13

documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 13.**

All "call" reports that mention Marcus.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 14.**

Documents reflecting calls made jointly with Marcus personnel to adhesive companies.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's

files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 15.

Documents that discuss the effect of the Marcus products on other Dow sales.

### RESPONSE:

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 16.

Documents relating to communications between Dow technical personnel and Marcus.

### RESPONSE:

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential

commercial information, and such information has no relevance to the issues in the

current litigation, such information shall be redacted.

**Request For Production No. 17.**

Documents relating to communications between Dow technical personnel and
adhesive companies, adhesive consultants, and adhesive labs, during the period from
January 8, 2001, to January 1, 2006.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence, and because it

seeks highly confidential commercial information.

As noted in General Objection 5, which is incorporated herein, the scope of the

JDA and Supply Agreement were limited to "Polyethylene Waxes," which were defined

as "metallocene ethylene homopolymers and copolymers having a number average

molecular weight ("Mn") within the range of 600-9,000, a density > 0.890g/cc and

Melting Temperature ("Tm") above 50°C, and blends thereof." Furthermore, as

explained in General Objection 6, which is incorporated herein, HRD is not permitted to

engage in an unwarranted search into DCCI and TDCC's other businesses based on

HRD's factually unsupported counterclaims.

Subject to the foregoing objections, and the General Objections which are hereby

incorporated herein, DCCI and TDCC will produce responsive, non-privileged

documents in their possession relating to communications between DCCI or TDCC and

any adhesive company, adhesive consultant, or adhesive lab to the extent that they relate

to work performed pursuant to the JDA and Supply Agreement with HRD located after a

reasonable search of DCCI's and TDCC's files. To the extent that such documents

contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 18.

Produce copies of all patents filed from January 8, 2001 until the present that include claims dealing with Metallocene Polymers, and/or which mention their use in adhesive or wax applications.

### RESPONSE:

DCCI and TDCC object to this document request to the extent that HRD's use of the term "all patents filed" is ambiguous and fails to inform DCCI and TDCC what documents HRD is seeking. HRD is not clear whether it is seeking patents issued, patent applications, or some other document. DCCI and TDCC also object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. HRD's request for "all patents filed" which include claims dealing with Metallocene Polymers is overbroad and could encompass a large number of patents. Finally, DCCI and TDCC also object to this request as all requested documents are publicly available.

### Request For Production No. 19.

Produce copies of all lab notebooks related to the development of products supplied to Marcus.

### RESPONSE:

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged

documents in their possession located after a reasonable search of DCCI's and TDCC's

files. To the extent that such documents contain trade secrets or other highly confidential

commercial information, and such information has no relevance to the issues in the

current litigation, such information shall be redacted.

### Request For Production No. 20.

Produce the results of all experiments conducted by Dow for stripping Light Ends
from polymer made by Dow for Marcus, including lab produced and Sarnia-produced
samples.

### RESPONSE:

DCCI and TDCC object to this request to the extent it is overbroad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. DCCI and TDCC object to HRD's definition of the term "Light Ends" as

vague and ambiguous. Subject to the foregoing objections, and the General Objections

which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-

privileged documents in their possession located after a reasonable search of DCCI's and

TDCC's files. To the extent that such documents contain trade secrets or other highly

confidential commercial information, and such information has no relevance to the issues

in the current litigation, such information shall be redacted.

### Request For Production No. 21.

All documents relating to Dow project reviews relating to the JDA and the Supply
Agreement.

### RESPONSE:

DCCI and TDCC object to this request to the extent it is overbroad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. DCCI and TDCC also object to the term "project reviews" as vague and

ambiguous. Based on DCCI's and TDCC's understanding of this term, responsive documents located in response to other document requests will be produced.

Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located in such reasonable searches. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 22.

All documents relating to of all agreements between Dow and other companies from January 8, 2001 to the present that mention adhesive applications and/or Metallocene Polymers.

### RESPONSE:

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks highly confidential commercial information.

As noted in General Objection 5, which is incorporated herein, the scope of the JDA and Supply Agreement were limited to "Polyethylene Waxes," which were defined as "metallocene ethylene homopolymers and copolymers having a number average molecular weight ("Mn") within the range of 600-9,000, a density > 0.890g/cc and Melting Temperature ("Tm") above 50°C, and blends thereof." Furthermore, as explained in General Objection 6, which is incorporated herein, HRD is not permitted to engage in an unwarranted search into DCCI's and TDCC's other businesses based on HRD's factually unsupported counterclaims.

19

Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession related to work performed pursuant to the JDA and Supply Agreement with HRD located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 23.**

All documents that discuss Dow's metallocene catalysts and their ability to produce polyethylene copolymer with a molecular weight distribution (Mz) below 2.2.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. DCCI and TDCC also object to the use of "molecular weigh distribution (Mz)" request as vague and ambiguous. Molecular weight distribution usually refers to the polydispersity index (Mw/Mn) and not, as this request suggests, "Mz." DCCI and TDCC also object to this request to the extent it seeks trade secrets and highly confidential commercial information regarding DCCI's and TDCC's metallocene catalysts. Further, Dow objects to this request to the extent it seeks "all documents" as overly broad and unduly burdensome. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce selected documents regarding the ability of Dow metallocene catalysts to produce a molecular weight distribution lower than 2.2, as measured by the polydispersity index, located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or

other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 24.**

Documents that discuss Dow's metallocene catalysts versus Exxon's metallocene catalysts.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Exxon is a direct competitor of DCCI and TDCC, and DCCI and TDCC have no control and/or access to Exxon's metallocene catalysts. Accordingly, DCCI and TDCC could not utilize Exxon's metallocene catalysts for HRD. Therefore, the capabilities of Exxon's metallocene catalysts have no relevance to the present litigation. Furthermore, DCCI and TDCC object to this request to the extent it seeks trade secrets and highly confidential commercial information concerning DCCI's and TDCC's catalysts.

**Request For Production No. 25.**

Documents that discuss any limitations of the products that could be produced at Sarnia.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the request is overbroad because it requests information regarding (1) prior uses of the Sarnia Product Development Plant ("Sarnia PDP"), and (2) other production facilities owned by DCCI at Sarnia. The request is also vague and ambiguous to the extent to which it does not define what HRD means by "limitations."

Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged, documents in their possession that discuss characteristics of the products that could be produced at the Sarnia PDP for HRD which are located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 26.**

A 500 gram sample of every product produced for Marcus, pursuant to the JDA and/or the Supply Agreement, whether in the lab or at Sarnia.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce a reasonable fraction of any existing retained sample of each such product to the extent sufficient quantities exist and to the extent such product was provided to HRD during the course of the JDA or the Supply Agreement.

**Request For Production No. 27.**

All PFD's and P&ID's for the Sarnia plant at the time production for Marcus commenced.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it

seeks trade secrets and highly confidential commercial information. The request is also overbroad to the extent it requests documents regarding other production facilities owned by DCCI at Sarnia. Furthermore, PFD's and P&ID's for the Sarnia PDP at the time of production of HRD are not relevant to the issues in this litigation. Finally, PFD's and P&ID's for the Sarnia PDP at the time of production of HRD also contain trade secrets and other highly confidential commercial information.

**Request For Production No. 28.**

All documents relating to MOC for changes made to the plant during production for Marcus, including all changes to PFDs and/or P&IDs.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks trade secrets and highly confidential commercial information. The request is overbroad because it requests information regarding other production facilities owned by DCCI at Sarnia. Furthermore, MOCs for changes made to the Sarnia PDP at the time of production of HRD are not relevant to the issues in this litigation. Finally, MOCs for changes made to the Sarnia PDP at the time of production of HRD also contain trade secrets and other highly confidential commercial information.

**Request For Production No. 29.**

The final drawings of the Sarnia plant.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it

seeks trade secrets and highly confidential commercial information. The request is overbroad because it requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. DCCI and TDCC object to this request as ambiguous. DCCI and TDCC do not know what "final drawings" HRD is referring to in this request. Furthermore, "final drawings" for the Sarnia PDP at the time of production of HRD are not relevant to issues in this litigation. Finally, "final drawings" for the Sarnia PDP at the time of production of HRD also contain trade secrets and other highly confidential commercial information.

### Request For Production No. 30.

The design and modeling calculations for devolatilization of Marcus products at Sarnia.

### RESPONSE:

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks trade secrets and highly confidential commercial information. The request is overbroad because it requests information regarding other production facilities owned by DCCI at Sarnia. The design and modeling calculations for devolatilization of Marcus Products at the Sarnia PDP also contain trade secrets or other highly confidential commercial information not relevant to the issues in the current litigation.

Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce relevant portions of the design and modeling calculations for devolatilization of Marcus Products at the Sarnia PDP to the extent such calculations bear on issues related to this lawsuit and do not reveal irrelevant trade secrets or highly confidential commercial information.

**Request For Production No. 31.**

All SOPs and all SOCs for the Sarnia plant at the time of production for Marcus commenced.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks trade secrets and highly confidential commercial information. The request is overbroad because it requests information regarding other production facilities owned by DCCI at Sarnia. The request is also overbroad to the extent it does not identify any specific SOPs or SOCs or the reasons why they are relevant to issues in this litigation. SOPs and SOCs for the Sarnia PDP at the time of production for HRD are not relevant to issues in this litigation. Finally, SOPs and SOCs for the Sarnia PDP at the time of production for HRD also contain trade secrets and other highly confidential commercial information and are not relevant to the issues in this litigation.

**Request For Production No. 32.**

All changes to the SOPs and SOCs during pendency of the production for Marcus.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks trade secrets and highly confidential commercial information. DCCI and TDCC object to this request as vague and ambiguous to the extent it does not define what changes to SOCs and SOPs HRD is referring to or identify a specific plant. The request is also overbroad to the extent it does not identify any specific changes to SOPs or SOCs or the reasons why they are relevant to issues in this litigation. Changes to SOPs and

SOCs for the Sarnia PDP at the time of production for HRD are not relevant to issues in this litigation. Changes to SOPs and SOCs for the Sarnia PDP at the time of production for HRD also contain trade secrets and other highly confidential commercial information.

### Request For Production No. 33.

All documents relating to communication regarding proposed and/or actual changes made to PFDs, P&IDs, SOPs and SOCs during production for Marcus.

### RESPONSE:

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks trade secrets and highly confidential commercial information. DCCI and TDCC object to this request as vague and ambiguous to the extent it does not define what changes made to PFDs, P&IDs, SOPs and SOCs HRD is referring to or identify a specific plant. The request is also overbroad to the extent it does not identify any specific changes made to PFDs, P&IDs, SOPs and SOCs or the reasons why they are relevant to issues in this litigation. Changes made to PFDs, P&IDs, SOPs and SOCs for the Sarnia PDP at the time of production for HRD are not relevant to issues in this litigation. Changes made to PFDs, P&IDs, SOPs and SOCs for the Sarnia PDP at the time of production for HRD also contain trade secrets and other highly confidential commercial information.

### Request For Production No. 34.

The operational procedures for devolatilization of Marcus products at Sarnia.

### RESPONSE:

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it

seeks trade secrets and highly confidential commercial information. The request is overbroad because it requests information regarding other production facilities owned by DCCI at Sarnia and trade secrets or other highly confidential commercial information not relevant to the issues in the current litigation.

Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce relevant portions of operational procedures for devolatilization of Marcus Products at the Sarnia PDP which contain information relevant to the issues in this lawsuit and do not contain irrelevant trade secrets or other highly confidential commercial information.

**Request For Production No. 35.**

The design criteria for conversion of devolatilization units before and after the Sarnia retrofitting.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks trade secrets and highly confidential commercial information. The request is also vague and ambiguous to the extent it does not define the term "Sarnia retrofitting" or the "devolatilization units."

Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce relevant portions of the design criteria for conversion of the devolatilization units at the Sarnia PDP to produce products for HRD to the extent such calculations bear on issues related to this lawsuit and do not reveal irrelevant trade secrets or highly confidential commercial information.

27

**Request For Production No. 36.**

All procedures for initial start-up of the plant for production for Marcus.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks trade secrets and highly confidential commercial information. DCCI and TDCC object to this request as vague and ambiguous to the extent it does not identify a specific plant. The request is also overbroad to the extent it does not identify any specific procedures for initial start-up or the reasons why they are relevant to issues in this litigation. Furthermore, procedures for initial start-up for the Sarnia PDP at the time of production for HRD are not relevant to issues in this litigation. Finally, procedures for initial start-up for the Sarnia PDP at the time of production for HRD also contain trade secrets and other highly confidential commercial information.

**Request For Production No. 37.**

All temporary operating procedures and/or all procedures for non-standard conditions during the production for Marcus.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and because it seeks trade secrets and highly confidential commercial information. DCCI and TDCC object to this request as vague and ambiguous to the extent it does not identify a specific plant. The request is ambiguous to the extent it does not define "temporary operating procedures and/or all procedures for non-standard conditions." The request is overbroad to the extent it does not identify any temporary operating procedures and/or all

28

procedures for non-standard conditions which are not relevant to issues in this litigation. Temporary operating procedures and/or all procedures for non-standard conditions for the Sarnia PDP at the time of production for HRD are not relevant to issues in this litigation.

**Request For Production No. 38.**

All shift logs for each shift during production for Marcus.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents unrelated to production of material for HRD. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession related to production of product for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 39.**

All daily production reports for each day during production for Marcus.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents unrelated to production of product for HRD. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and

TDCC will produce responsive, non-privileged documents in their possession related to production of product for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 40.**

All weekly, monthly, quarterly, and annual production reports for the period of time in which Dow was producing products for Marcus.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents unrelated to production of material for HRD. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession related to production of product for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 41.**

       All reports documenting unusual events during production for Marcus including safety, environmental, production and/or quality events.

**RESPONSE:**

       DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents unrelated to production of material for HRD. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession related to production of product for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 42.**

       The quality control logs and analytical lab notebooks for the Marcus products produced by Dow.

**RESPONSE:**

       DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents unrelated to production of material for HRD. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession related to production of product for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such

documents contain trade secrets or other highly confidential commercial information, and

such information has no relevance to the issues in the current litigation, such information

shall be redacted.

**Request For Production No. 43.**

The material balance for production at Sarnia.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence, and because it

seeks trade secrets and highly confidential commercial information. The request is vague

and ambiguous because it does not define what HRD means by "material balance." The

request is also overbroad because it requests information regarding (1) prior uses of the

Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. Furthermore,

the "material balance" for the Sarnia PDP at the time of production for HRD are not

relevant to the issues in this litigation. Finally, the "material balance" for the Sarnia PDP

at the time of production for HRD also contains trade secrets and other highly

confidential commercial information.

**Request For Production No. 44.**

The solvent and polymer mass balance calculations conducted during the Sarnia
operations.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence, and because it

seeks trade secrets and highly confidential commercial information. The request is vague

and ambiguous because it does not define what HRD means by "solvent and polymer

mass balance calculations." The request is also overbroad because it requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. Furthermore, the "solvent and polymer mass balance calculations" for the Sarnia PDP at the time of production for HRD are not relevant to the issues in this litigation. Finally, the "solvent and polymer mass balance calculations" for the Sarnia PDP at the time of production for HRD also contain trade secrets and other highly confidential commercial information.

### Request For Production No. 45.

The analytical procedures for analyzing the effectiveness of the Sarnia devolatilization units.

### RESPONSE:

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce relevant, non-privileged, documents in their possession related to the Sarnia PDP's production of products for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets, or highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 46.**

The data accumulated for analyzing the effectiveness of the Sarnia devolatilization units.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce relevant, non-privileged, documents in their possession related to the Sarnia PDP's production of products for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 47.**

The operations logs from Sarnia.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. The request is also vague and ambiguous to the extent it fails to define "operations logs." Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce

34

relevant, non-privileged, documents in their possession related to the Sarnia PDP's

production of products for HRD during the period April 2004 through July 2004 located

after a reasonable search of DCCI's and TDCC's files. To the extent that such

documents contain trade secrets or highly confidential commercial information, and such

information has no relevance to the issues in the current litigation, such information shall

be redacted.

**Request For Production No. 48.**

The production schedules from Sarnia.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence to the extent it

requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production

facilities owned by DCCI at Sarnia. Subject to the foregoing objections, and the General

Objections which are hereby incorporated herein, DCCI and TDCC will produce

relevant, non-privileged, documents in their possession related to the Sarnia PDP's

production of products for HRD during the period April 2004 through July 2004 located

after a reasonable search of DCCI's and TDCC's files. To the extent that such

documents contain trade secrets or highly confidential commercial information, and such

information has no relevance to the issues in the current litigation, such information shall

be redacted.

**Request For Production No. 49.**

The in-process product analysis from Sarnia.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce relevant, non-privileged, documents in their possession related to the analysis of product at the Sarnia PDP during production of products for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 50.**

The grading logs and/or off grade production logs for Sarnia.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged, documents in their possession related to the Sarnia PDP's production of products for HRD during the period April 2004 through July 2004 located

36

after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 51.

Documents concerning the segregation procedure for non conforming production.

### RESPONSE:

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The request is overbroad and unduly burdensome to the extent it does not specify a specific production facility or product and to the extent it requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged, documents in their possession related to the Sarnia PDP's production of products for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

37

**Request For Production No. 52.**

The regrading procedure and logs.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The request is overbroad and unduly burdensome to the extent it does not specify a specific production facility or product and to the extent it requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged, documents in their possession related to the Sarnia PDP's production of products for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 53.**

The scrapped materials log.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The request is overbroad and unduly burdensome to the extent it does not specify a specific production facility or product and to the extent it requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein,

38

DCCI and TDCC will produce responsive, non-privileged, documents in their possession related to the Sarnia PDP's production of products for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 54.**

The reworking procedure and reworking logs.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The request is overbroad and unduly burdensome to the extent it does not specify a specific production facility or product and to the extent it requests information regarding (1) prior uses of the Sarnia PDP, and (2) other production facilities owned by DCCI at Sarnia. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged, documents in their possession related to the Sarnia PDP's production of products for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 55.

The Marcus requests for product as referenced in Paragraph 53 of your Complaint.

### RESPONSE:

Subject to the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files.

### Request For Production No. 56.

Produce all records on the trial production runs at Sarnia.

### RESPONSE:

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The request is overbroad and unduly burdensome given that it requests "all records" and to the extent it requests information regarding (1) prior uses of the Sarnia PDP, (2) other production facilities owned by DCCI at Sarnia, and (3) does not identify a specific trial production run. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce relevant, non-privileged, documents in their possession related to the Sarnia PDP's production of products for HRD during the period April 2004 through July 2004 located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 57.**

A 500 gram sample of off spec material shipped May 5, 2004.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. This request is vague and ambiguous to the extent it fails to provide a specific railcar or lot number. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce a reasonable fraction of any existing retained sample of such material to the extent sufficient quantities exist and to the extent such material was provided to HRD during the course of the JDA or the Supply Agreement.

**Request For Production No. 58.**

A 500 gram sample of each off spec material shipped May 14, 2004.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. This request is vague and ambiguous to the extent it fails to provide a specific railcar or lot number. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce a reasonable fraction of any existing retained sample of such material to the extent sufficient quantities exist and to the extent such material was provided to HRD during the course of the JDA or the Supply Agreement.

**Request For Production No. 59.**

A 500 gram sample of the Prime product produced May 9, 2004.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. This request is vague and ambiguous to the extent it fails to provide a specific

railcar or lot number. Subject to the foregoing objections, and the General Objections

which are hereby incorporated herein, DCCI and TDCC will produce a reasonable

fraction of any existing retained sample or such product to the extent sufficient quantities

exist and to the extent such product was provided to HRD during the course of the JDA

or the Supply Agreement.

**Request For Production No. 60.**

A 500 gram sample of the off spec materials shipped, June 10 and 11, 2004.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. This request is vague and ambiguous to the extent it fails to provide a specific

railcar or lot number. Subject to the foregoing objections, and the General Objections

which are hereby incorporated herein, DCCI and TDCC will produce a reasonable

fraction of any existing retained sample of such materials to the extent sufficient

quantities exist and to the extent such materials were provided to HRD during the course

of the JDA or the Supply Agreement.

42

**Request For Production No. 61.**

A 500 gram sample of any other material shipped to Marcus from Sarnia.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce a reasonable fraction of any existing retained sample of such material to the extent sufficient quantities exist.

**Request For Production No. 62.**

The document where you disclosed Patent Application No. 10/509,212 to Marcus.

**RESPONSE:**

Subject to the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files.

**Request For Production No. 63.**

The disclosures to Marcus made pursuant to Paragraph 4.4 of the JDA.

**RESPONSE:**

Subject to the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files.

**Request For Production No. 64.**

The disclosures to Marcus made pursuant to Paragraph 4.5 or 4.7 of the JDA.

**RESPONSE:**

Subject to the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files.

**Request For Production No. 65.**

All documents relating to communications between Dow and Marcus regarding the success or lack of success of the products created pursuant to the JDA.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 66.**

All documents relating to communications regarding the initial samples referred to in Paragraph 6.1 of the JDA.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. DCCI and TDCC assumes that HRD is referring to communications between

44

DCCI or TDCC and HRD.  Subject to the foregoing objections, and the General

Objections which are hereby incorporated herein, DCCI and TDCC will produce

responsive, non-privileged documents in their possession relating to communications

regarding the initial samples referred to in Paragraph 6.1 of the JDA located after a

reasonable search of DCCI's and TDCC's files.  To the extent that such documents

contain trade secrets or other highly confidential commercial information, and such

information has no relevance to the issues in the current litigation, such information shall

be redacted.

### Request For Production No. 67.

Documents concerning the methods Dow uses to protect confidential information
as described in Paragraph 6.3 of the JDA.

### RESPONSE:

DCCI and TDCC object to this request to the extent it is overbroad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Subject to the foregoing objections, and the General Objections which are

hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged

documents in their possession located after a reasonable search of DCCI's and TDCC's

files.  To the extent that such documents contain trade secrets or other highly confidential

commercial information, and such information has no relevance to the issues in the

current litigation, such information shall be redacted.

**Request For Production No. 68.**

Documents in which the confidential information was shared with Marcus.

**RESPONSE:**

DCCI and TDCC object to this request as not understandable in its use of the phrase "the confidential information" as lacking antecedent basis. However, DCCI and TDCC construe this request as seeking, "Documents in which confidential information was shared with Marcus," and using that understanding, subject to the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files.

**Request For Production No. 69.**

Documents concerning any developments as defined by Paragraph 10.7 of the JDA.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 70.**

The Profit and Loss Statement and Balance Sheets for the Sarnia plant for the years 2000-2006.

**RESPONSE:**

DCCI and TDCC object to this request as overbroad, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence to the extent it

requests documents unrelated to production of material for HRD.  Subject to the

foregoing objection, and the General Objections which are hereby incorporated herein,

DCCI and TDCC will produce relevant, non-privileged portions of documents in their

possession related to production of material for HRD located after a reasonable search of

DCCI's and TDCC's files.  To the extent that such documents contain trade secrets or

other highly confidential commercial information, and such information has no relevance

to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 71.**

The documents showing the Research and Development Expenses incurred pursuant to the Joint Development Agreement.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Subject to the foregoing objections, and the General Objections which are

hereby incorporated herein, DCCI and TDCC will produce relevant, non-privileged

portions of documents in their possession located after a reasonable search of DCCI's and

TDCC's files.  To the extent that such documents contain trade secrets or other highly

confidential commercial information, and such information has no relevance to the issues

in the current litigation, such information shall be redacted.

**Request For Production No. 72.**

The invoices to Marcus for Research and Development Expenses.

**RESPONSE:**

Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files.

**Request For Production No. 73.**

The Profit and Loss statements showing the profit Dow made on the Research and Development part of the JDA.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce relevant, non-privileged portions of documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 74.**

The Profit and Loss statements showing the profit Dow made on the Supply Agreement.

**RESPONSE:**

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce relevant, non-privileged portions of documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 75.

Documents reflecting the amount of money Marcus paid Dow pursuant to the JDA.

### RESPONSE:

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce relevant, non-privileged portions of documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

### Request For Production No. 76.

All documents showing the amount of money Marcus paid Dow pursuant to the Supply Agreement.

### RESPONSE:

DCCI and TDCC object to this request to the extent it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce relevant, non-privileged portions of documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

**Request For Production No. 77.**

All documents detailing the damages you are claiming in this lawsuit.

**RESPONSE:**

Subject the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files. To the extent that such documents contain trade secrets or other highly confidential commercial information, and such information has no relevance to the issues in the current litigation, such information shall be redacted.

Dated: June 30, 2006

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

Kenneth Nachbar (#2067)
David J. Teklits (#3221)
Samuel T. Hirzel (#4415)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 575-7294 (telephone)
(302) 425-3013 (facsimile)

*Attorneys for Dow Chemical Canada Inc.*
*and The Dow Chemical Company*

OF COUNSEL:

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
(312) 923-2951 (telephone)
(312) 840-7351 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2006 the attached Dow Chemical Canada Inc. And The Dow Chemical Company's Responses To HRD Corporation's Request For Production Of Documents was served by facsimile and Federal Express on the following counsel for the Defendant, Counterclaim-Plaintiffs:

Richard L. Horwitz
W. Harding Drane, Jr.
Susanne M. Hill
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000 (Tel)
(302) 658-1192 (Fax)

William Ferebee
Michael Landrum
O'DONNELL FEREBEE MEDLEY & KEISER, PC
450 Gears, Eighth Floor
Houston, TX 77067-4512
(281) 875-8200 (Tel)
(281) 875-4962 (Fax)

Samuel T. Hirzel (#4415)

# EXHIBIT  C



## O'DONNELL FEREBEE MEDLEY & KEISER, P.C.

Michael L. Landrum                    **ATTORNEYS AT LAW**                    (281) 875-8200

July 17, 2006

Mr. Donald Cassling                         *Via Facsimile: 312-840-8786*
Jenner & Block L.L.P.
One IBM Plaza
Chicago, IL 60611-7603

Mr. Christopher Tompkins                     *Via Facsimile: 312-840-8786*
Jenner & Block L.L.P.
One IBM Plaza
Chicago, IL 60611-7603

Mr. Kenneth Nachbar                         *Via Facsimile: 302-658-3989*
MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
1201 North Market Street
P.O. Box 1347
Wilmington DE 19899-1347

RE:    C.A. No. 05-23; *Dow Chemical Canada, Inc. on its own behalf and as
       assignee of The Dow Chemical Company v. HRD Corporation (d/b/a
       Marcus Oil & Chemical);* In the United States District Court for the District
       of Delaware. *Our File No. M313.26*

       Dow's Discovery Responses

       Exchange of PE Wax samples

Gentlemen:

       HRD Corporation has, to this point, been patient with Dow insofar as the
progress of discovery is concerned; however, from the responses we have received to
the written interrogatories and the requests for production of documents served in early
April of this year, it is apparent that the matter needs to be addressed more formally.

       Under cover of letter dated March 31, 2006, we forwarded to you HRD
Corporation's First Set of Written Interrogatories. We then forwarded to you HRD
Corporation's First Request for Production of Documents. At your request, we granted
you two extensions in which to respond. The last extension expired on June 30, 2006.

July 17, 2006
Page 2 of 3

In June 2006, we received Dow's responses to HRD Corporation's First Set of Written Interrogatories. Without addressing each and every one of the responses, it is fair to state that most of the answers to these interrogatories, after having stated a litany of general, vague objections, conclude with the statement that the specific answers to the questions may be derived "from responsive non-privileged documents DCCI and TDCC will produce pursuant to Federal Rules of Civil Procedure 34, pursuant to Federal Rules of Civil Procedure 33(d), DCCI and TDCC therefore refer HRD to those documents."

While these responses fall far short of meeting the requirements of the Federal Rules of Civil Procedure for many reasons, when viewed in light of the responses recently received to the Requests for Production of Documents, the responses can only be described as evasive or stone walling. This is because the responses to the Requests for Production of Documents, served after a substantial extension of time, fail to include the production of a single document. **NOT ONE.**

Dow's response to HRD Corporation's Requests for Production of Documents itself recites a number of vaguely worded general objections, and each individual response, in addition to referencing those general objections, states yet additional objections, which are themselves general in nature only. Finally, most of the responses to the Requests for Production of Documents ultimately end with the following statement:

> Subject to the foregoing objections, and the General Objections which are hereby incorporated herein, DCCI and TDCC will produce responsive, non-privileged documents in their possession located after a reasonable search of DCCI's and TDCC's files.

You have had over 90 days to conduct a "reasonable search." Sadly, you have not even given a hint as to when the promised documents can be expected.

The Federal Rules of Civil Procedure require that the "reasonable search" referenced in the above quoted passage should take place before the responses are filed. At the very least, if additional time is required, it would be appropriate as a matter of professional courtesy to communicate with opposing counsel to discuss a further extension of time.

We are aware that Federal Rules of Civil Procedure 26 and 37 require that the parties "confer in good faith" in an effort to resolve disagreements regarding discovery before motions to compel are filed. Please allow this letter to serve as our request and offer to participate in a conference to discuss each and every one of HRD's discovery requests and each objection raised by Dow. We suggest that this conference occur by telephone or in person within 10 days following the date of this letter. Because of the enormous number of objections and the lack of specificity in most of them, we suggest

July 17, 2006
Page 3 of 3

that an entire day be set aside for this conference.  We can be available on any one or more of the following dates:

| | |
|---|---|
| July 24, 2006 | August 1, 2006 |
| July 27, 2006 | August 2, 2006 |
| July 31, 2006 | August 3, 2006 |

There is also the matter of testing wax samples.

During our several conversations with Judge Thynge, the parties agreed to exchange samples of PE Wax produced at the Dow Sarnia plant for testing.  We are and have been ready, willing and able to furnish Dow with samples of wax that has been retained by HRD personnel, which are admittedly limited in number and size.  Nevertheless, we have received no indication from Dow indicating how many samples are in Dow's possession, the size of those samples and, perhaps most significantly, when we may expect to receive them.  As was also discussed with Judge Thynge, it is important that objective, third party testing be done on all samples, and it was contemplated, we believe, by all parties at the mediation session that such testing would be useful in further discussions aimed at settling the dispute between the parties.

Please advise us immediately regarding wax samples and how we may arrange to have them delivered to us for testing.

In earlier conversations, the concept of having the samples tested by an agreed third party laboratory was discussed and, we believe, agreed to by Dow, if not ordered by Judge Thynge.   In early June, we suggested to Dow that the appropriate laboratory to undertake these tests is Intertek, a laboratory that the parties used in performing preliminary testing of Sarnia wax during the production phase.  To date, we have had no response from you as to the acceptability of Intertek to do the testing.  If, for some reason, you do not believe that Intertek is not qualified, capable or sufficiently trustworthy to undertake testing on behalf of the parties acting concert, we invite you to provide us with one or more other suggestions as soon as possible.

Please respond to this letter at your earliest convenience in order that we can resolve these outstanding discovery issues without involvement of the Court.

Sincerely,

Michael L. Landrum

MLL:mg
Cc:     Client
        Hardy Drane
        Potter Anderson & Corroon, LLP
        1313 N. Market Street
        Wilmington, DE 19899-0951

A PROFESSIONAL CORPORATION

450 GEARS – SIXTH FLOOR ● HOUSTON, TEXAS 77067-4512 ● FAX (281) 875-4962 ● EMAIL: mlandrum@ofmslaw.com

07/17/2006 11:02 FAX  2818754962                                        ☒001

```
                        ****************************
                        ***   MULTI TX/RX REPORT   ***
                        ****************************
TX/RX NO             0661
PGS.                   4
TX/RX INCOMPLETE
                     -----
TRANSACTION OK
                     (1)  13128408786
                     (2)  13026583989
ERROR INFORMATION
                     -----
```

# O'DONNELL, FEREBEE, MEDLEY & KEISER

## ATTORNEYS AND COUNSELORS AT LAW
### 450 GEARS - EIGHTH FLOOR
### HOUSTON, TEXAS  77067-4584
### mlandrum@ofmklaw.com

**Telephone:** (281) 875-8200                    **Facsimile:** (281) 875-4962

# TELEFAX TRANSMISSION SHEET

**DATE:**           July 17, 2006

**TO:**             Donald Cassling
**FAX:**            312-840-8786

**TO:**             Christopher Tompkins
**FAX:**            312-840-8786

**TO:**             Kenneth Nachbar
**FAX:**            302-658-3989

**FROM:**           Michael L. Landrum

**RE:**             Dow v. HRD

**OUR FILE NO.:** M313.26

Total Number of Pages, Including This Page: 4

Original(s) to follow: [ X ] Yes          [ ] No

If you have any problems receiving this transmission, please call **(281) 875-8200.**