UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA INC. on its own behalf and as assignee of THE DOW CHEMICAL COMPANY,<br><br>      Plaintiff,<br><br>      v.<br><br>HRD CORPORATION (d/b/a Marcus Oil & Chemical)<br><br>      Defendant, Counterclaim Plaintiff | Case No. 05-023 (JJF) |

## DOW'S OPPOSITION TO HRD'S MOTION TO COMPEL

Plaintiff/Counterclaim Defendants Dow Chemical Canada Inc. and The Dow Chemical Company (collectively "Dow") respond to HRD's Motion to Compel (D.I. 71).

1. HRD's Motion to Compel avoids the real and dispositive issue here, *i.e.*, whether Dow can legally produce documents to HRD, its owners, and its consultants given the red flags suggesting HRD will export Dow's metallocene wax technology to Iran. Dow has filed a motion for a protective order with this Court on this issue. (D.I. 73). The Iranian export issue arose when Dow identified red flags suggesting HRD or its owners will export Dow technology in violation of U.S. export control laws. The red flags are fully described in Dow's pending motion. (*Id.*).

2. HRD refers to the Iranian export issue at the end of its motion. There, HRD makes an outright misrepresentation to the Court that raises yet another red flag. HRD falsely asserts that its "business operations in Iran and India" are "***businesses that have nothing to do with wax.***" (D.I. 71 at 4) (all emphasis added herein unless otherwise noted). However, HRD represented to the U.S. Treasury Department the exact opposite-- stating that its Indian business operation "is ***also engaged in the production and sale of specialty waxes.***" (D.I. 73 [Exh. 1] at 2). And HRD's Iranian business operation's

letterhead identifies only one product: "Superior Quality High Performance *Waxes*." (*Id.* at Exh. 2).

3. Rather than deal with the merits of the Iranian export issue, HRD attempts to cast Dow as engaging in a practice of deliberate discovery delay. HRD apparently hopes to disparage Dow to distract the Court from the severity of the Iranian export issue. However, just as its representations regarding its Iranian and Indian businesses are false and misleading, so too are HRD's characterizations of the discovery proceedings.

4. In its motion, HRD criticizes Dow for taking 90 days to respond to HRD's document requests, but fails to mention that it delayed *over eight months* before providing written responses to Dow's first document requests, and three months to respond to Dow's second document requests. (Exhs. 1-4). HRD also criticizes Dow for not producing documents concurrently with its responses, but HRD's requests were far broader than anything possibly relevant to the lawsuit, and required a meet and confer.

5. HRD states that based on a July 31, 2006 meet and confer, "HRD's counsel believed agreements had been reached regarding discovery, yet no documents were forthcoming from Dow." (D.I. 71 at 2). However, Dow did produce documents beginning in August, and stated that more could be produced after the Stipulation and Order Governing Discovery Materials ("Protective Order") was modified. Indeed, HRD's motion wholly ignores HRD's long delay in responding to Dow's request to modify the Protective Order. Dow first advised HRD of the Protective Order issue on *July 20, 2006.* (Exh. 5). Dow raised the issue again at the July 31, 2006 meet and confer (Exh. 6). And again on August 22, Dow reminded HRD, "before [we produce more documents] *we need to revise the protective order* as I discussed at our meeting in Chicago." (Exh. 7). HRD ignored this email.

6. HRD also claims that Dow was not responsive to HRD's discovery inquiries. HRD states "Dow did not respond" to an August 29, 2006 letter to Aaron Barlow where HRD allegedly asked "when Dow would produce documents." However,

2

a week *earlier*, Mr. Barlow sent an e-mail stating that Dow "expect[ed] to produce more documents over the course of the next month," i.e., by September 22.[1] (Exh. 7). Mr. Barlow also wrote, as quoted above, that *before that* "we need to revise the protective order." (*Id.*). HRD's August 29 letter *completely ignored* Mr. Barlow's August 22 email and failed to address the Protective Order issue.[2]

7. HRD continues its mischaracterization of Dow's delay for the September-October time period, stating that HRD "agreed that *Dow could delay production of documents*" during settlement discussions. (D.I. 71 at 2). In reality, the suspension of discovery was mutual. In fact, HRD specifically requested that discovery be suspended with respect to the subpoena of its long-time consultant, Greg Borsinger. (Exh. 8). (To date, no documents have been produced in response to this subpoena). (D.I. 71 [Exh. F]).

8. HRD misleadingly suggests that Dow waited months until November 3, 2006 before advising HRD that the Protective Order needed to be changed. As noted above, that is false. It was on November 3 that Dow reminded HRD *for a fourth time* that a revised Protective Order was needed. (D.I. 71 at 2). HRD finally responded and rejected Dow's request to modify the Protective Order. After HRD rejected Dow's request to modify the Protective Order, Dow proposed that Highly Confidential documents temporarily be treated outside-counsel-eyes only until the dispute was resolved. (D.I. 71 [Exh. G]). Dow asked HRD to confirm this agreement in writing. (*Id.*). But, once again, HRD delayed. HRD waited until the end of November to ask Dow to prepare a written stipulation. (D.I. 71 [Exh. H]).

9. Dow uncovered the Iranian export issue during the final checks of the documents Dow had ready for production on November 28. Dow immediately contacted

---

[1] This production did not materialize because intervening settlement discussions and the parties' agreed suspension of discovery delayed this earlier anticipated production date.
[2] Moreover, HRD faxed the letter to the wrong fax number and Mr. Barlow did not see the fax until HRD filed this motion. HRD faxed to (312) 840-7312, even though Mr. Barlow had informed HRD that his fax number is (312) 923-8408. (D.I. 71 [Exh. D]).

3

HRD's counsel and proposed the documents be produced on an outside-counsel-eyes only basis until the issue could be resolved. (D.I. 73 [Exh. 21]). HRD refused. (*Id.* at Exh. 22). While HRD states that it was willing to "not share documents with its expert," that was not true with respect to documents marked "Confidential." HRD insisted that HRD's owners and consultants have access to Dow's "Confidential" documents. However, once red flags arose, Dow was prohibited from producing any technology information--both "Confidential" and "Highly Confidential"--to HRD's owners and consultants. (*Id.* at Exh. 24).

10. Indeed, while HRD criticizes Dow, HRD has engaged in a pattern of delay and neglect of its discovery obligations. Except for 4049 pages of emails, HRD has failed to produce any documents. (Exh. 9). Notably, HRD has failed to produce:
- any documents to support its damages claim of *$2.6 billion* even though HRD has had more than five months to do so;
- any of its corporate or financial records even though HRD has repeatedly agreed that it would provide such documents; or
- any post 2004 documents maintaining its claims that all of these 2005 and 2006 documents were destroyed in a fire *that occurred in 2004.*

(D.I. 71 [Exh. F]; Exh. 10; Exh. 11).

11. For all the foregoing reasons, HRD's Motion to Compel should be denied. Dow also objects to the form of order proposed by HRD. The order is ambiguous and could be read to order Dow to produce documents Dow objected to as privileged or documents beyond the compromises reached by the parties at their meet and confer.

| | |
|---|---|
| Dated: December 27, 2006 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Samuel T. Hirzel* |
| OF COUNSEL: | Kenneth Nachbar (#2067) |
| Harry J. Roper | Samuel T. Hirzel (#4415) |
| Raymond N. Nimrod | 1201 N. Market Street |
| Aaron A. Barlow | P.O. Box 1347 |
| JENNER & BLOCK LLP | Wilmington, DE 19899-1347 |
| 330 N. Wabash Ave. | (302) 658-9200 |
| Chicago, IL 60611 | Attorneys for Dow Chemical Canada Inc. |
| (312) 222-9350 | and The Dow Chemical Company |

4