# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DOW CHEMICAL CANADA INC. on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| HRD CORPORATION (d/b/a Marcus Oil & Chemical) | ) ) ) | Case No. 05-023 (JJF) |
| Defendant, Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| DOW CHEMICAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY, | ) ) ) ) | |
| Counterclaim Defendants | ) ) ) | |

**NOTICE OF SERVICE**

The undersigned, counsel for Dow Chemical Canada, Inc. and the Dow Chemical

Company hereby certifies that true and correct copies of DCCI'S AND TDCC'S FIRST SET OF

REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS and DCCI'S AND

TDCC'S FIRST SET OF INTERROGATORIES were served on November 23, 2005 on the

following attorneys of record by hand:

> Richard I. Horwitz
> Suzanne M. Hill
> Potter Anderson & Corroon LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Wilmington, DE  19899-0951

Copies were also sent by facsimile to the following:

John O'Neill
Sheryl A. Falk
Eleanor Vernon
Howrey, Simon, Arnold & White, LLP
1000 Louisiana, Suite 1800
Houston, TX 77002

                    MORRIS NICHOLS ARSHT & TUNNELL


                    _____
                    Kenneth Nachbar (#2067)
                    1201 North Market Street
                    P.O. Box 1347
                    Wilmington, DE 19899-1347
                    (302) 575-7294
                    knachbar@mnat.com
                        *Attorneys for Dow Chemical Canada, Inc. and
                        The Dow Chemical Company*

OF COUNSEL:

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
(312) 923-2951

November 23, 2005

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA INC. on its own) behalf and as assignee of THE DOW CHEMICAL) COMPANY, ) ) Plaintiff, ) ) v. ) ) HRD CORPORATION (d/b/a Marcus Oil &) Chemical) ) Defendant, Counterclaim Plaintiff, ) ) v. ) ) DOW CHEMICAL CANADA INC., on its own) behalf and as assignee of THE DOW CHEMICAL) COMPANY, and THE DOW CHEMICAL) COMPANY, ) ) Counterclaim Defendants. ) | Case No. 05-023 (JJF) |

## DCCI's AND TDCC'S FIRST SET OF INTERROGATORIES
### (Interrogatories No. 1 to 13)

Plaintiff and Counterclaim-Defendant Dow Chemical Canada Inc. ("DCCI") and Counterclaim-Defendant The Dow Chemical Company ("TDCC"), by and through their attorneys, hereby propound the following interrogatories upon Defendant and Counterclaim Plaintiff HRD Corporation ("HRD") pursuant to Fed.R.Civ.P. 26 and 33, and request that responses be made within 30 days.

## DEFINITIONS AND INSTRUCTIONS

### A.    Definitions

1.    "Archive" means a long-term storage area, often on magnetic tape, for backup copies of files or for files no longer in active use; or the act of copying files to a long-term storage medium for backup.  An archive copy is typically maintained for historical reference.

2.    "Backup" means a snapshot of a data store taken at a specific point in time, typically stored on a second medium such as tape or a disk, and typically made to have another copy of data in case the original copy is unreadable, but includes any copy of data on any medium in any format.

3.    "Communication" means all interchanges of thoughts, facts, information, and/or opinions between two or more persons or entities, whether written or oral, through any medium whatsoever, including the mails, memoranda, reports, telephones, telegraph, voicemail, facsimile, electronic mail, face-to-face, audiotape, contracts, agreements, solicitations, offers, proposals, financial statements and transcripts.

4.    "Complaint" means the complaint filed by DCCI in the above captioned case on January 18, 2005, or any amendment thereto.

5.    "Computer" means any programmable machine, including, but not limited to, network servers, desktops, laptops, notebook computers, employees' home computers, mainframes, the PDAs (personal digital assistants, such as Palm Pilot, Cassiopeia, HP Jornada, BlackBerry and other such handheld computing devices) of HRD and its employees, digital cell phones, and pagers.

6.    "Correspondence" means any document that either constitutes a communication between two or more entities or persons, or that records, memorializes, reflects, or otherwise summarizes the substance of such a communication whether made directly to the author of the document or otherwise.

7.    "Confidentiality Agreement" means the confidentiality agreement between TDCC and HRD effective January 8, 2001, and any and all amendments thereto.

8.    "Counterclaims" means HRD's First Amended Counterclaims filed in the above captioned matter on June 5, 2005, or any subsequent Amended Counterclaims.

9.    "Counterclaim Defendants" means both DCCI and TDCC, collectively.

10.    "Defenses" means HRD's affirmative defenses filed in the above captioned matter on June 5, 2005, or any subsequent Amended Defenses.

11.    "Defendant," "Counterclaim-Plaintiff," "HRD," "Marcus," "you," "your," and "yourself" means the defendant, HRD Corporation and all of its affiliates, agents, employees, or representatives acting or purporting to act on behalf of HRD for any purpose whatsoever, including without limitation Marcus Oil and Chemical.

2

12.    "Dow" means either DCCl or TDCC, or both, as appropriate in the context of the interrogatory.

13.    "Document" or "documents" shall be construed in the broadest sense possible under Fed.R.Civ.P. 34 and shall include all writings as that term is defined in Fed.R.Evid. 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored, on paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium in your possession, custody or control, or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes, memoranda, appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, voicemail, press releases, notices, brochures, pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in computer-readable form, tests, reports, files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, plans, charts, diagrams, drawings, graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith.

These interrogatories encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, included but not limited to "e-mail," digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" shall also include any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda. If a document responsive to any interrogatory was, but no longer is, in your possession and control, describe in detail the contents of the document, its date of creation and disposition, and its present location and custodian.

14.    "Gregory Borsinger" refers to the consultant identified on page 1 of the HRD Initial Disclosures, including without limitation all affiliates, agents, employees, employers of Gregory Borsinger, or representatives acting or purporting to act on behalf of Gregory Borsinger for any purpose whatsoever, including without limitation New Millennium Associates and New Millennium Development Corp.

15.    "Hard Drive" means the mechanism that reads and writes data on a hard disk. A hard drive is the primary hardware that a computer uses to store information, typically magnetized media on rotating disks.

16.    "HRD Initial Disclosures" means the disclosures served by HRD on November 9, 2005 pursuant to Fed.R.Civ.P. 26(a)(1).

17.    "Individual" or "person" or "affiliate" means any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, or any other form of organization or legal entity, including all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

3

18.    "JDA" means the Joint Development Agreement between HRD and TDCC effective July 1, 2002, which was attached to DCCI's complaint as Exhibit A, and any and all amendments thereto.

19.    "Official," "officer," "director,"  "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

20.    "Plaintiff" and "DCCI" means the plaintiff, Dow Chemical Canada Inc. and all of its affiliates, agents, employees, or representatives acting or purporting to act on behalf of DCCI for any purpose whatsoever.

21.    "Product," "Polyethylene Wax," or "PE Wax" means wax(es) supplied to HRD by Dow pursuant to the JDA and/or the Supply Agreement and any experimental products HRD requested DCCI produce at the Sarnia PDP.

22.    "Product Samples" means any sample of any wax(es) provided to HRD by Dow whether pursuant to the JDA or another agreement.

23.    "Relating to" or "relates to" or "related to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, reflecting and/or in any way pertaining to the subject specified.

24.    "TDCC" means The Dow Chemical Company and all of its affiliates, agents, employees, or representatives acting or purporting to act on behalf of TDCC for any purpose whatsoever.

25.    "Supply Agreement" means the Sarnia PE Wax Supply Agreement between TDCC and HRD effective July 1, 2002, which was attached to DCCI's complaint as Exhibit B, and any and all amendments thereto.

26.    "Sarnia PDP" means DCCI's Sarnia Product Development Plant in Ontario, Canada.

**B.    Instructions**

1.    These interrogatories are continuing and must be supplemented in accordance with Fed.R.Civ.P. 26(e).

2.    When an interrogatory calls for an answer in more than one part, separate the parts in the response accordingly so that the response to each separate part of the interrogatory or is apparent; do not join together and provide a common response or answer to two or more interrogatories or to subparts of an interrogatory.

3.    When asked to identify a document, state or identify: (a) its location; (b) the location of all non-identical copies of the document; (c) the name and title of each person presently in charge of the custody and maintenance of the original and any non-identical copies;

4

(d) the date that the original and all non-identical copies of the document bear; (e) the author and signatories of the original and all non-identical copies; (f) its length; (g) the original document's content and how each non-identical copy of the document differs from the original; (h) each person who received the original or a copy of the document. If the document is available only in machine-readable form, state the form in which the document is available and describe the type of machine required to read the document. If the document was, but no longer is, in your possession, custody, or control, state or identify: (i) what disposition was made of the document; (ii) the date of any such disposition; and (iii) each person that either authorized or has knowledge of such disposition.

4.    When asked to identify a natural person, state his or her: (a) name; (b) title or position; (c) present or last known business address; (d) present or last known home address; (e) present or last known business telephone number; and (f) present or last known home telephone number. If such person is no longer employed by the person for which he/she engaged in the activity that is the subject of the interrogatory, state that date on which he/she left the employ of the person and his/her title or position when he/she engaged in the activity that is the subject of this interrogatory.

5.    When asked to identify a non-natural person, state: (a) the full name of the entity; (b) the address of its principal place of business; (c) the telephone number of its principal place of business; (d) the name and title of each person who (1) is or was an officer, general partner, limited partner, member, or beneficiary of the organization, or (2) represented the organization with respect to the subject matter of the interrogatory; and (e) the relationship of the entity to the parties to this proceeding.

6.    When asked to identify a communication, state: (a) the date, time, and place of the communication; (b) the form of the communication (such as memorandum, letter, or conversation); (c) the speaker(s) or author(s) making the communication; (d) the recipient(s) of the communication; (e) each person who has or believed to have first-hand knowledge of the communication; (f) the substance of the communication; and (g) each document relating to the communication.

7.    To the extent you consider any of the following interrogatories, or their subparts, to be objectionable, answer the portion of the interrogatory or subpart to which you have no objection and separately state the portion of the interrogatory or subpart to which you object and state with specificity all grounds for your objection. If you object to an interrogatory on the basis that it is too broad, provide the response that you believe is within a reasonable scope of the interrogatory. If you object to an interrogatory on the basis that to provide a response would constitute an undue burden, provide all information that can be supplied without undertaking an undue burden. For those interrogatories or portions thereof that you decline to answer, state the reason for the objection or declination in sufficient detail to permit the Court to adjudicate the merits of the claim.

8.    If you believe that any of the following interrogatories call for the production of documents that you claim contained privileged material, produce so much of the document(s) as is not objected to, and set forth in a privilege log, with respect to each such document as to which a claim of privilege is asserted, the nature of the privilege claimed (e.g. attorney-client and/or

work product privileges) and all the reasons upon which you base the claim of privilege. For each document or part of a document as to which you claim privilege, the privilege log should state: (a) the date thereof; (b) the type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid; (c) the name of the person or persons who prepared or signed the document; (d) the name and positions of all intended and actual recipients of the document; and (e) if not previously identified, the nature of the privilege being claimed and all facts relevant to the claim.

9.     Notwithstanding a claim that a document is privileged, any document so withheld must be produced with the portion claimed to be protected excised.

10.     Each interrogatory calls for the knowledge of the answering party, as well as knowledge that is available by reasonable inquiry, including inquiry of the answering party's representatives, agents, and investigators.     If, after exercising due diligence to secure information, any interrogatory cannot be answered in full and complete detail, please state so and answer to the extent possible, specifying in each instance the inability to answer the remainder and stating whatever information or knowledge that you have concerning the unanswered portions.

11.     To bring within the scope of these interrogatories all information or documents that might otherwise be construed to be outside of their scope:

    a.     the singular of each word shall include its plural and vice versa, and the root word and other forms thereof shall be construed to include each other;

    b.     "and" as well as "or" shall be used conjunctively as well as disjunctively;

    c.     "any" shall be construed as "all" and vice versa;

    d.     the present tense shall be construed to include the past tense and vice versa;

    e.     the masculine shall be construed to include the feminine and vice versa;

    f.     "include" and "including" shall have their ordinary meaning and shall mean "including but not limited to;"

    g.     "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed by such person's agents, representatives, and attorneys.

12.     In general, all terms used herein shall be construed in an ordinary common-sense manner, and not in a technical, strained, overly literal, or otherwise restrictive manner.

## INTERROGATORIES

### Interrogatory No. 1.

Identify each person having knowledge of facts relevant to the allegations of the Complaint, and any Answer, Affirmative Defenses, or Counterclaim in this litigation, and summarize the topics about which each person has knowledge.

### Interrogatory No. 2.

Excluding counsel, identify each person who was interviewed about, consulted about, or participated in the preparation or formulation of HRD's (1) answer and Counterclaims, (2) responses to each of these Interrogatories, (3) responses to DCCI's and TDCC's First Set of Document Requests.

### Interrogatory No. 3.

With respect to Counts II and III of your Counterclaims, identify each trade secret that DCCI or TDCC allegedly misappropriated, and, with respect to each trade secret, identify:

    (a)    whether the trade secret consists of information HRD communicated to DCCI or TDCC;

    (b)    whether the trade secret consists of information developed by TDCC or DCCI;

    (c)    the date on which the trade secret was communicated to HRD or DCCI;

    (d)    each person making the communication;

    (e)    each recipient of the communication; and

    (f)    each document reflecting or memorializing the communication.

### Interrogatory No. 4.

For each trade secret you listed in response to Interrogatory 3, identify:

    (a)    the manner in which you allege the trade secret was misappropriated;

    (b)    any third party to whom you allege DCCI or TDCC communicated or disclosed the trade secret;

    (c)    the date on which you allege the trade secret was communicated;

    (d)    each person making the alleged communication;

    (e)    each recipient of the alleged communication; and

7

(f)    each document reflecting or memorializing the alleged communication.

## Interrogatory No. 5.

Identify all testing procedures or processes that you used to test the Product Samples. For each testing procedure or process, identify the tests conducted, the testing methods used, the results of such tests, and each person with knowledge of such tests.

## Interrogatory No. 6.

State whether Product delivered to HRD complied with the specifications in Schedule 1 to the Supply Agreement or any other specification you claim applies to such Product. If your answer is anything other than an unqualified "yes," identify each shipment of Product from Dow that was received by HRD and did not meet the specifications, the specific specification that was not met by each shipment, and each communication between you, Dow, and/or anyone else regarding the failure of the Product in that shipment to meet that specification.

## Interrogatory No. 7.

With respect to the allegation in Paragraph 103 of your Defenses, identify each physical characteristic or property of the Product produced under the Supply Agreement that differed from the Product Samples that HRD approved under the JDA, making sure to identify each person with knowledge of the facts in this allegation, identify any tests or analyses performed by HRD or any third parties that support the allegation, and identify any documents relating to the allegation.

## Interrogatory No. 8.

Define the term "solvents" as used in your Counterclaims and Defenses, such as in Paragraph 103 of your Defenses. If you use more than one definition of the term "solvents" in your Counterclaims and Defenses, please provide each definition of that term and identify the allegations in which you use each definition.

## Interrogatory No. 9.

Define the term "light ends" as used in your Counterclaims and Defenses, such as in Paragraph 103 of your Defenses. If you use more than one definition of the term "light ends" in your Counterclaims and Defenses, please provide each definition of that term and identify the allegations in which you use each definition.

## Interrogatory No. 10.

Identify each person with knowledge of the allegation in Paragraph 104 of your Counterclaims that "[m]anufacturers of these waxes typically remove these volatile light ends from the finished wax," identify each manufacturer of wax that you are aware of that removes such light ends, and identify each document related to your allegation that manufacturers of wax remove such light ends.

8

**Interrogatory No. 11.**

      With respect to the allegations in Paragraph 105 of your Counterclaims, describe how the "manufacturing process was designed to remove" light ends or solvents from the Product and identify each piece of equipment at the Sarnia PDP that HRD paid for in order to remove light ends or solvents from the Product, including the date and amount of each payment made for such equipment.

**Interrogatory No. 12.**

      With respect to Count IV of your Counterclaims, identify each communication between HRD and Dow that you allege was a demand by HRD for adequate assurance of future performance under the Joint Development Agreement and/or the Supply Agreement making sure to identify (a) the date of each communication, (b) the identity of each person making the communication; (c) the identity of each recipient of the communication; and (e) each document reflecting or memorializing the communication.

**Interrogatory No. 13.**

      Identify the person(s) most knowledgeable regarding the document reconstruction effort described on page 2 of the HRD Initial Disclosures, including without limitation the persons most knowledgeable about:

    (a)    the damage sustained to HRD's main offices, warehouse, and plant in Houston, Texas as the result of a fire at those facilities on December 3, 2004;

    (b)    the property, items, electronic information, or documents that HRD salvaged or attempted to salvage from those facilities after the December 3, 2004 fire;

    (c)    any disaster recovery plan, business continuity plan, or other similar plan, procedure or document in place at HRD as of December 3, 2004;

    (d)    HRD's document retention policies;

    (e)    HRD's computer network including the location of all data storage devices, servers, and backup systems employed by HRD attempts to recover any electronic data as a result of the December 3, 2004 fire; and

    (f)    HRD's e-mail system including the identity of any network connectivity vendor utilized by HRD, any backup systems for e-mail, and HRD's attempts to recover e-mail as a result of the December 3, 2004 fire.

MORRIS, NICHOLS, ARSHT & TUNNELL

Kenneth Nachbar (#2067)
David J. Teklits (#3221)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
knachbar@mnat.com
dteklits@mnat.com
*Attorneys for Dow Chemical Canada Inc. and The
Dow Chemical Company*

OF COUNSEL:

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL  60611
(312) 923-2951 (telephone)
(312) 840-7351 (facsimile)

November 23, 2005

10

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on November 23 2005, a copy of the foregoing DCCI'S AND TDCC'S FIRST SET OF INTERROGATORIES was served upon the following in the manner indicated:

**BY HAND**

Richard I. Horwitz
Suzanne M. Hill
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19899-0951

I also certify that a copy was delivered by facsimile to the following persons:

John O'Neill
Sheryl A. Falk
Eleanor Vernon
Howrey, Simon, Arnold & White, LLP
1000 Louisiana, Suite 1800
Houston, TX 77002

Kenneth J. Nachbar (#2067)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
knachar@mnat.com

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA INC. on its own behalf and as assignee of THE DOW CHEMICAL COMPANY,<br><br>   Plaintiff,<br><br>   v.<br><br>HRD CORPORATION (d/b/a Marcus Oil & Chemical)<br><br>   Defendant, Counterclaim Plaintiff,<br><br>   v.<br><br>DOW CHEMICAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY,<br><br>   Counterclaim Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 05-023 (JJF)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF SERVICE

   The undersigned, counsel for Dow Chemical Canada, Inc. and the Dow Chemical Company hereby certifies that true and correct copies of DCCI'S AND TDCC'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS and DCCI'S AND TDCC'S FIRST SET OF INTERROGATORIES were served on November 23, 2005 on the following attorneys of record by hand:

     Richard I. Horwitz
     Suzanne M. Hill
     Potter Anderson & Corroon LLP
     Hercules Plaza, 6th Floor
     1313 North Market Street
     Wilmington, DE  19899-0951

Copies were also sent by facsimile to the following:

John O'Neill
Sheryl A. Falk
Eleanor Vernon
Howrey, Simon, Arnold & White, LLP
1000 Louisiana, Suite 1800
Houston, TX  77002

MORRIS NICHOLS ARSHT & TUNNELL

_(signature)_

Kenneth Nachbar (#2067)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 575-7294
knachbar@mnat.com
*Attorneys for Dow Chemical Canada, Inc. and*
*The Dow Chemical Company*

OF COUNSEL:

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL  60611
(312) 923-2951

November 23, 2005

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DOW CHEMICAL CANADA INC. on its own )
behalf and as assignee of THE DOW CHEMICAL )
COMPANY, )
                                         )
            Plaintiff, )
                                           )
              v. )
                                           )
HRD CORPORATION (d/b/a Marcus Oil &)
Chemical) )    Case No. 05-023 (JJF)
                                           )
        Defendant, Counterclaim Plaintiff, )
                                           )
              v. )
                                           )
DOW CHEMICAL CANADA INC., on its own )
behalf and as assignee of THE DOW CHEMICAL )
COMPANY, and THE DOW CHEMICAL )
COMPANY, )
                                           )
        Counterclaim Defendants. )

**DCCI'S AND TDCC'S FIRST SET OF REQUESTS**
**FOR PRODUCTION OF DOCUMENTS AND THINGS**
**(Requests No. 1 to 50)**

      Plaintiff and Counterclaim-Defendant Dow Chemical Canada Inc. ("DCCI") and

Counterclaim-Defendant The Dow Chemical Company ("TDCC"), by and through their

attorneys, hereby serve their First Request For Production of Documents and Things pursuant to

Fed.R.Civ.P. 34. Pursuant to Fed.R.Civ.P. 34, DCCI and TDCC requests that HRD serve a

written response within 30 days after service of these requests and produce the documents

identified below for inspection and copying at a mutually convenient time and place.

## DEFINITIONS AND INSTRUCTIONS

### A.     Definitions

1.     "Archive" means a long-term storage area, often on magnetic tape, for backup copies of files or for files no longer in active use; or the act of copying files to a long-term storage medium for backup. An archive copy is typically maintained for historical reference.

2.     "Backup" means a snapshot of a data store taken at a specific point in time, typically stored on a second medium such as tape or a disk, and typically made to have another copy of data in case the original copy is unreadable, but also includes any copy of data on any medium in any format.

3.     "Communication" means all interchanges of thoughts, facts, information, and/or opinions between two or more persons or entities, whether written or oral, through any medium whatsoever, including the mails, memoranda, reports, telephones, telegraph, voicemail, facsimile, electronic mail, face-to-face, audiotape, contracts, agreements, solicitations, offers, proposals, financial statements and transcripts.

4.     "Complaint" means the complaint filed by DCCI in the above captioned case on January 18, 2005, or any amendment thereto.

5.     "Computer" means any programmable machine, including, but not limited to, network servers, desktops, laptops, notebook computers, employees' home computers, mainframes, the PDAs (personal digital assistants, such as Palm Pilot, Cassiopeia, HP Jornada, BlackBerry and other such handheld computing devices) of HRD and its employees, digital cell phones, and pagers.

6.     "Correspondence" means any document that either constitutes a communication between two or more entities or persons, or that records, memorializes, reflects, or otherwise summarizes the substance of such a communication whether made directly to the author of the document or otherwise.

7.     "Confidentiality Agreement" means the confidentiality agreement between TDCC and HRD effective January 8, 2001, and any and all amendments thereto.

8.     "Counterclaims" means HRD's First Amended Counterclaims filed in the above captioned matter on June 5, 2005, or any subsequent Amended Counterclaims.

9.     "Counterclaim Defendants" means both DCCI and TDCC, collectively.

10.     "Defenses" means HRD's affirmative defenses filed in the above captioned matter on June 5, 2005, or any subsequent Amended Defenses.

11.     "Defendant," "Counterclaim-Plaintiff," "HRD," "Marcus," "you," "your," and "yourself" means the defendant, HRD Corporation and all of its affiliates, agents, employees, or representatives acting or purporting to act on behalf of HRD for any purpose whatsoever, including without limitation Marcus Oil and Chemical.

2

12.    "Dow" means either DCCI or TDCC, or both, as appropriate in the context of the request.

13.    "Document" or "documents" shall be construed in the broadest sense possible under Fed.R.Civ.P. 34 and shall include all writings as that term is defined in Fed.R.Evid. 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored, on paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium in your possession, custody or control, or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes, memoranda, appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, voicemail, press releases, notices, brochures, pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in computer-readable form, tests, reports, files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, plans, charts, diagrams, drawings, graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith.

These requests encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, included but not limited to "e-mail," digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" shall also include any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda. If a document responsive to any request for production was, but no longer is, in your possession and control, describe in detail the contents of the document, its date of creation and disposition, and its present location and custodian.

14.    "Gregory Borsinger" refers to the consultant identified on page 1 of the HRD Initial Disclosures, including without limitation all affiliates, agents, employees, employers of Gregory Borsinger, or representatives acting or purporting to act on behalf of Gregory Borsinger for any purpose whatsoever, including without limitation New Millennium Associates and New Millennium Development Corp.

15.    "Hard Drive" means the mechanism that reads and writes data on a hard disk. A hard drive is the primary hardware that a computer uses to store information, typically magnetized media on rotating disks.

16.    "HRD Initial Disclosures" means the disclosures served by HRD on November 9, 2005 pursuant to Fed.R.Civ.P. 26(a)(1).

17.    "Individual" or "person" or "affiliate" means any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, or any other form of organization or legal entity, including all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

3

18.    "JDA" means the Joint Development Agreement between HRD and TDCC effective July 1, 2002, which was attached to DCCI's complaint as Exhibit A, and any and all amendments thereto.

19.    "Official," "officer," "director," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

20.    "Plaintiff" and "DCCI" means the plaintiff, Dow Chemical Canada Inc. and all of its affiliates, agents, employees, or representatives acting or purporting to act on behalf of DCCI for any purpose whatsoever.

21.    "Product," "Polyethylene Wax," or "Product" means wax(es) supplied to HRD by Dow pursuant to the JDA and/or the Supply Agreement and any experimental products HRD requested DCCI produce at the Sarnia PDP.

22.    "Product Samples" means any sample of any wax(es) provided to HRD by Dow whether pursuant to the JDA or another agreement.

23.    "Relating to" or "relates to" or "related to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, reflecting and/or in any way pertaining to the subject specified.

24.    "TDCC" means The Dow Chemical Company and all of its affiliates, agents, employees, or representatives acting or purporting to act on behalf of TDCC for any purpose whatsoever.

25.    "Supply Agreement" means the Sarnia Product Supply Agreement between TDCC and HRD effective July 1, 2002, which was attached to DCCI's complaint as Exhibit B, and any and all amendments thereto.

26.    "Sarnia PDP" means DCCI's Sarnia Product Development Plant in Ontario, Canada.

**B.    Instructions**

1.    These requests are continuing and must be supplemented in accordance with Fed.R.Civ.P. 26(e).

2.    When a request calls for an answer in more than one part, separate the parts in the response accordingly so that the response to each separate part of the request is apparent; do not join together and provide a common response or answer to two or more requests or to subparts of a request.

3.    To the extent you consider any of the requests, or their subparts, to be objectionable, answer the portion of the request or subpart to which you have no objection and separately state the portion of the request or subpart to which you object and state with

4

specificity all grounds for your objection. If you object to a request on the basis that it is too broad, provide the response that you believe is within a reasonable scope of the request. If you object to a request on the basis that to provide a response would constitute an undue burden, provide all information that can be supplied without undertaking an undue burden. For those requests or portions thereof that you decline to answer, state the reason for subject objection or declination in sufficient detail to permit the Court to adjudicate the merits of the claim.

4.    If you believe that any of the following requests for production call for the production of documents that you claim contained privileged material, produce so much of the document(s) as is not objected to, and set forth in a privilege log, with respect to each such document as to which a claim of privilege is asserted, the nature of the privilege claimed (e.g. attorney-client and/or work product privileges) and all the reasons upon which you base the claim of privilege. For each document or part of a document as to which you claim privilege, the privilege log should state: (a) the date thereof; (b) the type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid; (c) the name of the person or persons who prepared or signed the document; (d) the name and positions of all intended and actual recipients of the document; and (e) if not previously identified, the nature of the privilege being claimed and all facts relevant to the claim.

5.    Notwithstanding a claim that a document is privileged, any document so withheld must be produced with the portion claimed to be protected excised.

6.    In answering requests for production, furnish all documents, that are within your possession, custody or control or the possession, custody or control of all officials, directors, officers, employees, agents, investigators, contractors, subcontractors, consultants and/or attorneys.

7.    To bring within the scope of these requests all information or documents that might otherwise be construed to be outside of their scope:

    a.    the singular of each word shall include its plural and vice versa, and the root word and other forms thereof shall be construed to include each other;

    b.    "and" as well as "or" shall be used conjunctively as well as disjunctively;

    c.    "any" shall be construed as "all" and vice versa;

    d.    the present tense shall be construed to include the past tense and vice versa;

    e.    the masculine shall be construed to include the feminine and vice versa;

    f.    "include" and "including" shall have their ordinary meaning and shall mean "including but not limited to;"

    g.    "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge,"

5

"information," "possession," "custody," and "control" possessed by such person's agents, representatives, and attorneys.

8.    In general, all terms used herein shall be construed in an ordinary common-sense manner, and not in a  technical, strained, overly literal, or otherwise restrictive manner.

# REQUESTS FOR PRODUCTION

**Request No. 1.**

All documents, correspondence, or communications between or among HRD, TDCC, DCCI, or any other person, or any internal communications within HRD, relating the drafting, negotiation, or performance of the Confidentiality Agreement, the JDA, or the Supply Agreement.

**Request No. 2.**

All documents relating to activities undertaken pursuant to the JDA or Supply Agreement.

**Request No. 3.**

All documents relating to Gregory Borsinger's work in connection with the JDA or the Supply Agreement, including without limitation all communications between or among Mr. Borsinger, HRD, DCCI, TDCC, or any customer of HRD, or any internal communications within HRD.

**Request No. 4.**

All documents relating to HRD's intended uses for Product supplied by TDCC or DCCI, including without limitation HRD's potential customers for Product and/or the potential applications for Product.

**Request No. 5.**

All documents relating to the customers to whom HRD intended supply Product developed pursuant to the JDA and/or supplied pursuant to the Supply Agreement.

**Request No. 6.**

All documents related to product development efforts undertaken pursuant to the JDA

**Request No. 7.**

All documents relating to wax samples provided by HRD to TDCC to evaluate in connection with development efforts undertaken pursuant to the JDA.

**Request No. 8.**

All documents, communications, or correspondence between or among HRD, Gregory Borsinger, DCCI, TDCC or any other person, or any internal communications within HRD, regarding "solvents" or "light ends" as those terms are used in HRD's Counterclaims and Defenses.

7

**Request No. 9.**

All documents relating to the Product Samples provided to HRD pursuant to the JDA.

**Request No. 10.**

All documents relating to the physical properties of the Product Samples HRD requested pursuant to the JDA, including without limitation all communications between or among HRD, TDCC, DCCI, or any other person, or all internal communications within HRD, describing such physical properties.

**Request No. 11.**

All documents relating to any tests or evaluations of Product Samples performed by HRD, Gregory Borsinger, any HRD customer, or any other person.

**Request No. 12.**

All documents, correspondence or communications between or among HRD and its customers relating to Product Samples, including without limitation all documents relating to Product Samples provided to HRD's customers or relating to tests or evaluations performed by HRD's customers.

**Request No. 13.**

All documents relating to the presence of "solvents" or "light ends" in Product Samples, as HRD uses those terms in its Defenses and Counterclaims, including without limitation any tests or other evaluations performed by HRD, or any other person, for the presence of "solvents" or "light ends" in the Product Samples.

**Request No. 14.**

All communications or correspondence among or between HRD, Gregory Borsinger, DCCI, or TDCC, or any other person, or all internal communications within HRD, relating to the presence or absence of "solvents" or "light ends" in Product Samples.

**Request No. 15.**

All documents relating to tests or evaluations that were performed on the Product Samples performed to determine the acceptability of the Product Samples for any HRD customer or any potential intended application.

**Request No. 16.**

All documents relating to the specifications for the Product to be supplied pursuant to the Supply Agreement.

8

**Request No. 17.**

All documents relating to the development and execution of the specifications on Schedule 1 of the Supply Agreement, including without limitation: (a) all communications or correspondence between or among HRD, TDCC, DCCI, or any other person, or any internal communications within HRD, regarding Schedule 1; (b) all drafts of Schedule 1; (c) all documents relating to the version of Schedule 1 executed by HRD on February 28, 2003; and (d) all documents relating to the version of Schedule 1 executed by HRD on April 26, 2004.

**Request No. 18.**

All documents relating to HRD's contention that TDCC or DCCI agreed that Product supplied to HRD would not contain "solvents" as that term is used in HRD's Counterclaims and Defenses.

**Request No. 19.**

All documents relating to HRD's contention that TDCC or DCCI agreed that Product supplied to HRD would not contain "light ends" as that term is used in HRD's Counterclaims and Defenses.

**Request No. 20.**

All documents relating to HRD's contention in Paragraph 104 of its Defenses and Counterclaims that manufacturers of waxes typically remove solvents or light ends from finished Product.

**Request No. 21.**

All documents relating to Product supplied to HRD by DCCI between April 2004 and August 2004.

**Request No. 22.**

All documents, communications or correspondence which HRD claims constitutes notification that Product produced by DCCI at the Sarnia PDP and supplied to HRD from April 2004 through August 2004 did not conform to specifications in schedule 1 to the Supply Agreement, or any other specification which HRD claims applied to such Product.

**Request No. 23.**

All documents relating to HRD's contention that Product produced by DCCI at the Sarnia PDP and supplied to HRD from April 2004 through August 2004 did not conform to the specification in Schedule 1 to the Supply Agreement, or any other specification HRD claims governed production of such Product, including without limitation all documents relating to testing or other evaluations of such Product conducted by HRD or any third person.

9

**Request No. 24.**

    All documents that HRD claims constitute notice by HRD to DCCI or TDCC that its performance was hindered or delayed by Force Majeure.

**Request No. 25.**

    All documents relating to HRD's claim that its performance under the Supply Agreement or JDA was hindered or delayed as a result of the fire and explosion at HRD's main offices, warehouse, and plant on December 3, 2004.

**Request No. 26.**

    All documents relating to instructions given to TDCC or DCCI by HRD regarding Product to be produced at the Sarnia PDP between April 2004 and August 2004, including without limitation all documents, communications or correspondence relating to instructions to DCCI regarding the specifications to which Dow should produce such Product, or requests for production of Product meeting specifications other than those contained in Schedule 1 to the Supply Agreement.

**Request No. 27.**

    All documents relating to any tests or other evaluations performed by HRD, or any third person, on Product supplied to HRD by DCCI between April 2004 and August 2004.

**Request No. 28.**

    All documents relating to any tests or other evaluations performed by Gregory Borsinger on Product supplied to HRD by DCCI between April 2004 and August 2004.

**Request No. 29.**

    All documents relating to any tests or other evaluations performed by HRD's customers on Product supplied to HRD by DCCI between April 2004 and August 2004.

**Request No. 30.**

    All documents, correspondence or communications regarding the suitability of Product supplied to HRD by DCCI between April 2004 and August 2004 for its intended application.

**Request No. 31.**

    All documents relating to the presence of low molecular weight material, volatiles, light ends, and/or solvent material in the Product supplied to HRD by DCCI between April 2004 and August 2004 including without limitation any tests or other evaluations performed by HRD, HRD's customers, Gregory Borsinger, or any other person, for the presence of "solvents" or "light ends" as those terms are used in HRD's Defenses and Counterclaims.

10

**Request No. 32.**

All documents relating to tests or evaluations performed by HRD, HRD's customers, Gregory Borsinger, or any other person on the Product provided to HRD by DCCI between April 2004 and August 2004 which demonstrated that such Product would smoke when used in the intended application for such Product.

**Request No. 33.**

All documents relating to tests or evaluations performed by HRD, and/or any third party on the Product provided to HRD by DCCI between April 2004 and August 2004, which tested and/or evaluated the performance of such Product at the application temperatures utilized in the intended applications for such Product.

**Request No. 34.**

All documents relating to HRD's contention that Product supplied to HRD by DCCI between April 2004 and August 2004 differed from the Product Samples provided to HRD by Dow pursuant to the JDA.

**Request No. 35.**

All documents relating to HRD's contention that Product supplied to HRD by DCCI between April 2004 and August 2004 did not comply with the Supply Agreement.

**Request No. 36.**

All documents relating to HRD's contention, if any, that HRD expected that the Product supplied by DCCI pursuant to the Supply Agreement would differ from Product Samples provided to HRD pursuant to the JDA.

**Request No. 37.**

All documents relating to HRD's contention, if any, that the manufacturing process for Product used by DCCI to manufacture Product at the Sarnia PDP differed from the process used to manufacture Product Samples provided to HRD pursuant to the JDA.

**Request No. 38.**

All documents relating to the September 14, 2004 meeting between HRD and Dow including without limitation any notes or other materials from such meeting.

**Request No. 39.**

All documents which HRD contends constitutes the demand for adequate assurances HRD claims it made in Count IV of its counterclaims.

**Request No. 40.**

All documents relating to any confidential information or other trade secret information provided or disclosed TDCC or DCCI by HRD.

**Request No. 41.**

All documents reflecting transmission of confidential information or trade secret information from HRD to DCCI or TDCC.

**Request No. 42.**

All documents relating to HRD's claims in Counts II and III of HRD's counterclaims that DCCI or HRD misused or misappropriated HRD's confidential information or trade secrets.

**Request No. 43.**

All documents identified in any of HRD's responses to interrogatories.

**Request No. 44.**

All documents that HRD will use to support its defense of this litigation.

**Request No. 45.**

All documents not already requested above that relate to, mention, support, or contradict any allegation in DCCI's compliant.

**Request No. 46.**

All documents, data, assumptions, bases, and any other information communicated to, provided to, given to, or otherwise relied upon or considered by any person or entity who may or will offer expert testimony on behalf of HRD in this action.

**Request No. 47.**

All documents identified on pages 2 and 3 of the HRD Initial Disclosures.

**Request No. 48.**

All documents relating to any patent applications filed by HRD, Abbas Hassan, Aziz Hassan, or Gregory Borsinger covering technology related to work conducted pursuant to the JDA and Supply Agreement.

**Request No. 49.**

All documents related to the reconstruction of records described on page 2 of the HRD initial disclosures, including without limitation any disaster recovery plan, business continuity plan, or similar document, plan, or procedure in effect as of December 3, 2004.

**Request No. 50.**

All documents with reference to or written policies, procedures and guidelines related to HRD's computers, computer systems, electronic data and electronic media, including, but not limited to, the following:

      (a)     Backup tape rotation schedules;

      (b)     Electronic data retention, preservation and destruction schedules;

      (c)     Employee usage policies for company computers, telephones, and other technology;

      (d)     Company-wide monitoring software;

      (e)     File naming conventions and standards;

      (f)     Password, encryption, and other security protocols;

      (g)     Diskette, CD, DVD, and other removable media labeling standards;

      (h)     E-mail storage conventions (e.g., limitations on mailbox sizes/storage locations; schedule and logs for storage);

      (i)     Help features or documentation;

      (j)     Electronic media deployment, allocation, and maintenance procedures for new employees, current employees, or departed employees; and

      (l)     Personal or home computer usage policies for work-related activities.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Kenneth Nachbar*

Kenneth Nachbar (#2067)
David J. Teklits (#3221)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
knachbar@mnat.com
dteklits@mnat.com
*Attorneys for Dow Chemical Canada Inc. and The Dow Chemical Company*

OF COUNSEL:

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL  60611
(312) 923-2951

November 23, 2005

14

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on November 23 2005, a copy of the foregoing DCCI'S AND TDCC'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS was served upon the following in the manner indicated:

**BY HAND**

Richard I. Horwitz
Suzanne M. Hill
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19899-0951

I also certify that a copy was delivered by facsimile to the following persons:

John O'Neill
Sheryl A. Falk
Eleanor Vernon
Howrey, Simon, Arnold & White, LLP
1000 Louisiana, Suite 1800
Houston, TX 77002

Kenneth J. Nachbar (#2067)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
knachar@mnat.com

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DOW CHEMICAL CANADA, INC.<br>on its own behalf and as assignee of<br>THE DOW CHEMICAL COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| HRD CORPORATION<br>(d/b/a Marcus Oil & Chemical), | ) ) ) | C.A. No. 05-23 (JJF) |
| Defendant, Counterclaim Plaintiff, | ) ) | |
| DOW CHEMICAL CANADA, INC.<br>on its own behalf and as assignee of<br>THE DOW CHEMICAL COMPANY and<br>THE DOW CHEMICAL COMPANY, | ) ) ) ) ) | |
| Counterclaim Defendants. | ) | |

<u>**NOTICE OF SERVICE**</u>

The undersigned, counsel for Defendant HRD Corporation, hereby certifies that true and correct copies of HRD Corporation's Responses To Plaintiff/Counterclaim Defendant's First Set of Requests For Production (Requests No. 1 through 50) were caused to be served on August 15, 2006, on the attorneys of record at the following addresses as indicated:

<u>**VIA HAND DELIVERY**</u>

Kenneth Nachbar
David J. Teklits
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

<u>**VIA FACSIMILE**</u>

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael Landrum
William C. Ferebee
O'DONNELL FEREBEE MEDLEY &
KEISER, PC
450 Gears, Eighth Floor
Houston, TX 77067-4512
(281) 875-8200 (telephone)
(281) 875-4962 (facsimile)


Dated: August 15, 2006

746101

By: */s/ W. Harding Drane, Jr.*
    Richard L. Horwitz (#2246)
    W. Harding Drane, Jr. (#1023)
    Suzanne M. Hill (#4414)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    wdrane@potteranderson.com
    shill@potteranderson.com

    *Attorneys for HRD Corporation (d/b/a Marcus
    Oil & Chemical)*

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### <u>CERTIFICATE OF SERVICE</u>

I, W. Harding Drane, Jr., hereby certify that on August 15, 2006, the

attached document was hand delivered and electronically filed with the Clerk of the

Court using CM/ECF which will send notification of such filing(s) to the following and

the document is available for viewing and downloading from CM/ECF:

Kenneth Nachbar
David J. Teklits
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

I hereby certify that on August 15, 2006, I have faxed the documents to

the following non-registered participants:

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611

By:  */s/ W. Harding Drane, Jr.*
Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
Suzanne M. Hill (#4414)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
wdrane@potteranderson.com
shill@potteranderson.com



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOW CHEMICAL CANADA, INC.<br>on its own behalf and as assignee of<br>THE DOW CHEMICAL COMPANY<br>　　　Plaintiff, | §<br>§<br>§<br>§<br>§ | |
| VS. | §<br>§ | C.A. No. 05-23 (JJF) |
| HRD CORPORATION (d/b/a<br>Marcus Oil & Chemical)<br>　　　Defendant, Counterclaim Plaintiff | §<br>§<br>§<br>§ | |
| VS. | §<br>§ | |
| DOW CHEMICAL CANADA, INC.<br>on its own behalf and as assignee of<br>THE DOW CHEMICAL COMPANY and<br>THE DOW CHEMICAL COMPANY,<br>　　　Counterclaim Defendants. | §<br>§<br>§<br>§<br>§ | |

## HRD CORPORATION'S OBJECTIONS AND RESPONSES TO DCCI'S AND TDCC'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS
### (Requests No. 51 to 63)

**TO::** **Plaintiff/Counterclaim-Defendants,** by and through its attorneys of record, David John Teklits and Kenneth J. Nachbar, MORRIS, NICHOLS, ARSHT & TUNNELL, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, on the basis of information now known and without waiving any objections or admitting the relevance or materiality of the information sought, Defendant/Counterclaim-Plaintiff HRD Corporation (d/b/a Marcus Oil & Chemical) ("HRD") serves its responses to Plaintiffs' Second Request for Production, as attached.

## GENERAL OBJECTIONS TO
## SECOND REQUEST FOR PRODUCTION

HRD objects to the definition of "communication" because it includes a request for oral communications that have not been recorded or reduced to writing.

HRD objects to the definition of "computer" because it includes cell phones and pagers which do not have information that can be reduced to writing.

HRD objects to the definition of HRD because it is impermissibly broad by including "agents" and any "representative acting or purporting to act on behalf of HRD".

HRD objects to the definition of "document" because it exceeds the parameters of Federal Rule of Civil Procedure 34.

HRD objects to the definition of "individual" or "person" or "affiliate" because it is impossibly broad, even requiring communications with the dead.

HRD objects to the definition of "official", "officer", "director" or "employee" because it is an attempt to obtain information protected by the attorney client privilege.

HRD objects to the instructions to the extent that they attempt to require HRD to do anything beyond the requirements of the Federal Rules of Civil Procedure.


## OBJECTIONS AND RESPONSES TO
## SECOND REQUEST FOR PRODUCTION


**REQUEST NO. 51:**

All certificates or articles of incorporation, corporate by-laws, and charters for HRD, including all amendments to any such instruments.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence. The Articles of Incorporation will be produced..

**REQUEST NO. 52:**

All corporate minute books, annual reports, agendas and minutes of corporate or directors meetings, and all other records indicating corporate action taken by HRD for the period from January 1, 1998 to the present.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 53:**

All of HRDs financial statements, records, or reports, including, but not limited to, annual reports, including audited annual reports; balance sheets; income statements; profit and loss statements; cash flows, statements of change in financial condition; net worth statements; ledgers or charts of accounts recording assets, liabilities, revenue and expenses; financial projections; and federal and state income tax returns, for the period from January 1, 1998 to the present.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence. In addition this request seeks documents dating back to 1998. HRD did not have any dealings with Dow until 2002, making the scope of the request overbroad. Finally, the documents sought are simply a form of post judgment discovery submitted at a time when Dow does not have a judgment.

**REQUEST NO. 54:**

All documents referring or relating to the ownership or management of HRD including, but not limited to, documents evidencing the ownership of any share of HRD stock and the makeup of the Board of Directors of HRD.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 55:**

All documents referring or relating to the financial condition of HRD.

**RESPONSE:**

> HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence. In addition this request seeks documents dating back to 1998. HRD did not have any dealings with Dow until 2002, making the scope of the request overbroad. Finally, the documents sought are simply a form of post judgment discovery submitted at a time when Dow does not have a judgment.

**REQUEST NO. 56:**

All documents identifying any employee, officer, or director of HRD and/or their respective functions.

**RESPONSE:**

> HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 56**

All documents referring or relating to the identities of any persons or entities that exercise control over HRD.

**RESPONSE:**

> HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 57:**

All documents referring or relating to any bank account maintained by or for the benefit of HRD.

**RESPONSE:**

> HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 58:**

All documents evidencing HRD's compliance with corporate formalities.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 59:**

All documents relied upon by HRD in drafting Count 11 and Count 111 of HRD's counterclaims that DCCI or TDCC misused or misappropriated HRD's confidential information or trade secrets.

**RESPONSE:**

See the documents already produced.

**REQUEST NO. 60:**

All documents relied upon by HRD in making HRD Corporation's Supplemental Responses to Plaintiff/Counterclaim-Defendant's First Set of Interrogatories.

**RESPONSE:**

See the documents already produced.

**REQUEST NO. 61:**

All documents related to HRD's claims in Counts II and III of HRD's counterclaims that DCCI or TDCC misused or misappropriated HRD's confidential information or trade secrets.

**RESPONSE:**

See the documents already produced.

**REQUEST NO. 62:**

All documents related to the purpose and functioning of the devolatizers at the Sarnia plant.

**RESPONSE:**

These documents are in the possession of Dow.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 14, 2006, a copy of the foregoing **HRD CORPORATION'S RESPONSES TO DCCI's and TDCC's SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS** was served upon the following in the manner indicated:

### BY HAND

Kenneth Nachbar
David J. Teklits
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
PO Box 1347
Wilmington, DE 19899-1347

I also certify that a copy was delivered by facsimile to the following persons:

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
Jenner & Block, LLP
One IBM Plaza
Chicago, IL 60611

### POTTER ANDERSON & CORROON LLP

By_____
      Richard L. Horwitz (#2246)
      Suzanne M. Hill (#4414)
      1313 North Market Street
      Hercules Plaza, 6th Floor
      P.O. Box 951
      Wilmington, DE 19889-0951
      (302) 984-6000 (Tel)
      (302) 658-1192 (Fax)
      rhorwitz@potteranderson.com
      shill@potteranderson.com
      *Attorneys for Defendants HRD Corporation d/b/a*
      *Marcus Oil & Chemical, Inc.*

# EXHIBIT 3

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2006, I caused the foregoing DCCI's and

TDCC's Second Set Of Requests for Production of Documents and Things (Request Nos. 51-63)

to be served by hand upon the following counsel for the Defendant, Counterclaim-Plaintiffs:

> Richard L. Horwitz, Esquire
> Suzanne M. Hill, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 N. Market Street
> Wilmington, Delaware 19899-0951

Additionally, I hereby certify that a true and correct copy of the foregoing was

caused to be served on April 19, 2006 upon the following individual by e-mail and Federal

Express:

> William C. Ferebee, Esquire
> Michael Landrum, Esquire
> O'DONELL, FEREBEE, MEDLEY & KEISER, P.C.
> 450 Gears, Eighth Floor
> Houston, Texas 77067-4512

Kenneth J. Nachbar, Esquire (# 2067)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DOW CHEMICAL CANADA INC. on its own )
behalf and as assignee of THE DOW CHEMICAL )
COMPANY, )
                                      )
            Plaintiff,                )
                                      )
      v.                              )         Case No. 05-023 (JJF)
                                      )
HRD CORPORATION (d/b/a Marcus Oil &   )
Chemical)                             )
                                      )
            Defendant, Counterclaim Plaintiff, )
                                      )
      v.                              )
                                      )
DOW CHEMICAL CANADA INC., on its own  )
behalf and as assignee of THE DOW CHEMICAL )
COMPANY, and THE DOW CHEMICAL         )
COMPANY,                              )
                                      )
            Counterclaim Defendants.  )
                                      )

DCCI'S AND TDCC'S SECOND SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS AND THINGS
(Requests No. 51 to 63)

Plaintiff and Counterclaim-Defendant Dow Chemical Canada Inc. ("DCCI") and

Counterclaim-Defendant The Dow Chemical Company ("TDCC"), by and through their

attorneys, hereby serve their Second Set of Requests For Production of Documents and Things

pursuant to Fed.R.Civ.P. 34. Pursuant to Fed.R.Civ.P. 34, DCCI and TDCC requests that HRD

serve a written response within 30 days after service of these requests and produce the

documents or things identified below for inspection and copying at a mutually convenient time

and place.

2

## DEFINITIONS AND INSTRUCTIONS

**A.    Definitions:**

1.    "Communication" means all interchanges of thoughts, facts, information, and/or opinions between two or more persons or entities, whether written or oral, through any medium whatsoever, including the mails, memoranda, reports, telephones, telegraph, voicemail, facsimile, electronic mail, face-to-face, audiotape, contracts, agreements, solicitations, offers, proposals, financial statements and transcripts.

2.    "Computer" means any programmable machine, including, but not limited to, network servers, desktops, laptops, notebook computers, employees' home computers, mainframes, the PDAs (personal digital assistants, such as Palm Pilot, Cassiopeia, HP Jornada, BlackBerry and other such handheld computing devices) of HRD and its employees, digital cell phones, and pagers.

3.    "Correspondence" means any document that either constitutes a communication between two or more entities or persons, or that records, memorializes, reflects, or otherwise summarizes the substance of such a communication whether made directly to the author of the document or otherwise.

4.    "Counterclaims" means HRD's First Amended Counterclaims filed in the above captioned matter on June 5, 2005, or any subsequent Amended Counterclaims.

5.    "Defendant," "HRD," "you," "your," and "yourself" means the defendant, HRD Corporation and all of its affiliates, agents, employees, or representatives acting or purporting to act on behalf of HRD for any purpose whatsoever, including without limitation Marcus Oil and Chemical.

6.    "Dow" means either DCCI or TDCC, or both, as appropriate in the context of the request.

7.    "Document" or "documents" shall be construed in the broadest sense possible under Fed.R.Civ.P. 34 and shall include all writings as that term is defined in Fed.R.Evid. 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored, on paper, cards, tape, film, electronic facsimile, computer storage devices, or any other medium in your possession, custody or control, or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes, memoranda, appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, voicemail, press releases, notices, brochures, pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in computer-readable form, tests, reports, files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, plans, charts, diagrams, drawings, graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith.

3

These requests encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, included but not limited to "e-mail," digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" shall also include any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda. If a document responsive to any request for production was, but no longer is, in your possession and control, describe in detail the contents of the document, its date of creation and disposition, and its present location and custodian.

8.    "Individual" or "person" or "affiliate" means any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, or any other form of organization or legal entity, including all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

9.    "JDA" means the Joint Development Agreement between HRD and TDCC effective July 1, 2002, which was attached to DCCI's complaint as Exhibit A, and any and all amendments thereto.

10.    "Official," "officer," "director," or "employee" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

11.    "Plaintiff" and "DCCI" means the plaintiff, Dow Chemical Canada Inc. and all of its affiliates, agents, employees, or representatives acting or purporting to act on behalf of DCCI for any purpose whatsoever.

12.    "Product," "Polyethylene Wax," or "PE Wax" means wax(es) supplied to HRD by Dow pursuant to the JDA and/or the Supply Agreement and any experimental products HRD requested DCCI produce at the Sarnia PDP.

13.    "Product Samples" means any sample of any wax(es) provided to HRD by Dow whether pursuant to the JDA or another agreement.

14.    "Relating to" or "relates to" or "related to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, reflecting and/or in any way pertaining to the subject specified.

15.    "Supply Agreement" means the Sarnia PE Wax Supply Agreement between TDCC and HRD effective July 1, 2002, which was attached to DCCI's complaint as Exhibit B, and any and all amendments thereto.

16.    "Sarnia PDP" means DCCI's Sarnia Product Development Plant in Ontario, Canada.

4

17.  "TDCC" means The Dow Chemical Company and all of its affiliates, agents, employees, or representatives acting or purporting to act on behalf of TDCC for any purpose whatsoever.

**B.  Instructions:**

1.  These requests are continuing and must be supplemented in accordance with Fed.R.Civ.P. 26(e).

2.  When a request calls for an answer in more than one part, separate the parts in the response accordingly so that the response to each separate part of the request is apparent; do not join together and provide a common response or answer to two or more requests or to subparts of a request.

3.  To the extent you consider any of the requests, or their subparts, to be objectionable, answer the portion of the request or subpart to which you have no objection and separately state the portion of the request or subpart to which you object and state with specificity all grounds for your objection.  If you object to a request on the basis that it is too broad, provide the response that you believe is within a reasonable scope of the request.  If you object to a request on the basis that to provide a response would constitute an undue burden, provide all information that can be supplied without undertaking an undue burden.  For those requests or portions thereof that you decline to answer, state the reason for subject objection or declination in sufficient detail to permit the Court to adjudicate the merits of the claim.

4.  If you believe that any of the following requests for production call for the production of documents that you claim contained privileged material, produce so much of the document(s) as is not objected to, and set forth in a privilege log, with respect to each such document as to which a claim of privilege is asserted, the nature of the privilege claimed (e.g. attorney-client and/or work product privileges) and all the reasons upon which you base the claim of privilege.  For each document or part of a document as to which you claim privilege, the privilege log should state: (a) the date thereof; (b) the type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid; (c) the name of the person or persons who prepared or signed the document; (d) the name and positions of all intended and actual recipients of the document; and (e) if not previously identified, the nature of the privilege being claimed and all facts relevant to the claim.

5.  Notwithstanding a claim that a document is privileged, any document so withheld must be produced with the portion claimed to be protected excised.

6.  In answering requests for production, furnish all documents, that are within your possession, custody or control or the possession, custody or control of all officials, directors, officers, employees, agents, investigators, contractors, subcontractors, consultants and/or attorneys.

7.  To bring within the scope of these requests all information or documents that might otherwise be construed to be outside of their scope:

5

a. the singular of each word shall include its plural and vice versa, and the root word and other forms thereof shall be construed to include each other;

b. "and" as well as "or" shall be used conjunctively as well as disjunctively;

c. "any" shall be construed as "all" and vice versa;

d. the present tense shall be construed to include the past tense and vice versa;

e. the masculine shall be construed to include the feminine and vice versa;

f. "include" and "including" shall have their ordinary meaning and shall mean "including but not limited to;"

g. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed by such person's agents, representatives, and attorneys.

8. In general, all terms used herein shall be construed in an ordinary common-sense manner, and not in a technical, strained, overly literal, or otherwise restrictive manner.

6

## REQUESTS FOR PRODUCTION

**Request No. 51.**

All certificates or articles of incorporation, corporate by-laws, and charters for HRD, including all amendments to any such instruments.

**Request No. 52.**

All corporate minute books, annual reports, agendas and minutes of corporate or directors meetings, and all other records indicating corporate action taken by HRD for the period from January 1, 1998 to the present.

**Request No. 53.**

All of HRDs financial statements, records, or reports, including, but not limited to, annual reports, including audited annual reports; balance sheets; income statements; profit and loss statements; cash flows, statements of change in financial condition; net worth statements; ledgers or charts of accounts recording assets, liabilities, revenue and expenses; financial projections; and federal and state income tax returns, for the period from January 1, 1998 to the present.

**Request No. 54.**

All documents referring or relating to the ownership or management of HRD including, but not limited to, documents evidencing the ownership of any share of HRD stock and the makeup of the Board of Directors of HRD.

**Request No. 55.**

All documents referring or relating to the financial condition of HRD.

**Request No. 56.**

All documents identifying any employee, officer, or director of HRD and/or their respective functions.

All documents referring or relating to the identities of any persons or entities that exercise control over HRD.

**Request No. 57.**

All documents referring or relating to any bank account maintained by or for the benefit of HRD.

**Request No. 58.**

All documents evidencing HRD's compliance with corporate formalities.

**Request No. 59.**

All documents relied upon by HRD in drafting Count II and Count III of HRD's counterclaims that DCCI or TDCC misused or misappropriated HRD's confidential information or trade secrets.

**Request No. 60.**

All documents relied upon by HRD in making HRD Corporation's Supplemental Responses to Plaintiff/Counterclaim-Defendant's First Set of Interrogatories.

**Request No. 61.**

All documents related to HRD's claims in Counts II and III of HRD's counterclaims that DCCI or TDCC misused or misappropriated HRD's confidential information or trade secrets.

**Request No. 62.**

All documents related to the purpose and functioning of the devolatizers at the Sarnia plant.

8

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


_____

Kenneth Nachbar, Esquire (# 2067)
David J. Teklits, Esquire (# 3221)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 575-7294 (Telephone)
(302) 425-3013 (Facsimile)

*Attorneys for Dow Chemical Canada Inc. and
The Dow Chemical Company*

OF COUNSEL:

Donald R. Cassling, Esquire
Christopher Tompkins, Esquire
Zachary V. Moen
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL  60611
(312) 923-2951 (Telephone)
(312) 840-7351 (Facsimile)

Dated:  April 19, 2006

# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

DOW CHEMICAL CANADA, INC.　　　　　 )
on its own behalf and as assignee of　　 )
THE DOW CHEMICAL COMPANY,　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　　　　Plaintiff,　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　　v.　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
HRD CORPORATION　　　　　　　　　 )　　C.A. No. 05-23 (JJF)
(d/b/a Marcus Oil & Chemical),　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　Defendant, Counterclaim Plaintiff, )
　　　　　　　　　　　　　　　　　 )
DOW CHEMICAL CANADA, INC.　　　　　 )
on its own behalf and as assignee of　　 )
THE DOW CHEMICAL COMPANY and　　 )
THE DOW CHEMICAL COMPANY,　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　　　Counterclaim Defendants.　 )

## NOTICE OF SERVICE

The undersigned, counsel for Defendant HRD Corporation, hereby certifies that true and correct copies of **HRD CORPORATION'S OBJECTIONS AND RESPONSES TO DCCI'S AND TDCC'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS** (Requests No. 51 to 63) were caused to be served on July 26, 2006, on the attorneys of record at the following addresses as indicated:

**VIA HAND DELIVERY**
Kenneth Nachbar
David J. Teklits
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

**VIA FACSIMILE**
Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Michael Landrum
William C. Ferebee
O'DONNELL FEREBEE MEDLEY &
KEISER, PC
450 Gears, Eighth Floor
Houston, TX 77067-4512
(281) 875-8200 (telephone)
(281) 875-4962 (facsimile)

By _____

Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
Suzanne M. Hill (#4414)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
wdrane@potteranderson.com
shill@potteranderson.com

Dated: July 26, 2006

*Attorneys for HRD Corporation (d/b/a Marcus Oil & Chemical)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Suzanne M. Hill, hereby certify that on July 26, 2006, the attached document

was hand delivered and electronically filed with the Clerk of the Court using CM/ECF which

will send notification of such filing(s) to the following and the document is available for viewing

and downloading from CM/ECF:

Kenneth Nachbar
David J. Teklits
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

I hereby certify that on July 26, 2006, I have faxed the documents to the following

non-registered participants:

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611

By: _Suzanne M. Hill_
Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
Suzanne M. Hill (#4414)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
wdrane@potteranderson.com
shill@potteranderson.com

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA, INC.<br>on its own behalf and as assignee of<br>THE DOW CHEMICAL COMPANY<br>     Plaintiff,<br><br>VS.<br><br>HRD CORPORATION (d/b/a<br>Marcus Oil & Chemical)<br>     Defendant, Counterclaim Plaintiff<br><br>VS.<br><br>DOW CHEMICAL CANADA, INC.<br>on its own behalf and as assignee of<br>THE DOW CHEMICAL COMPANY and<br>THE DOW CHEMICAL COMPANY,<br>     Counterclaim Defendants. | § § § § § § § § § § § § § § § § § §<br><br>C.A. No. 05-23 (JJF) |

## HRD CORPORATION'S OBJECTIONS AND RESPONSES TO DCCI'S AND TDCC'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS
### (Requests No. 51 to 63)

TO::  **Plaintiff/Counterclaim-Defendants,** by and through its attorneys of record, David John Teklits and Kenneth J. Nachbar, MORRIS, NICHOLS, ARSHT & TUNNELL, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, on the basis of information now known and without waiving any objections or admitting the relevance or materiality of the information sought, Defendant/Counterclaim-Plaintiff HRD Corporation (d/b/a Marcus Oil & Chemical) ("HRD") serves its responses to Plaintiffs' Second Request for Production, as attached.

## GENERAL OBJECTIONS TO
## SECOND REQUEST FOR PRODUCTION

1.      HRD objects to the definition of "communication" because it includes a request for oral communications that have not been recorded or reduced to writing.

2.      HRD objects to the definition of "computer" because it includes cell phones and pagers which do not have information that can be reduced to writing.

3.      HRD objects to the definition of HRD because it is impermissibly broad by including "agents" and any "representative acting or purporting to act on behalf of HRD".

4.      HRD objects to the definition of "document" because it exceeds the parameters of Federal Rule of Civil Procedure 34.

5.      HRD objects to the definition of "individual" or "person" or "affiliate" because it is impossibly broad, even requiring communications with the dead.

6.      HRD objects to the definition of "official", "officer", "director" or "employee" because it is an attempt to obtain information protected by the attorney client privilege.

7.      HRD objects to the instructions to the extent that they attempt to require HRD to do anything beyond the requirements of the Federal Rules of Civil Procedure.

## OBJECTIONS AND RESPONSES TO
## SECOND REQUEST FOR PRODUCTION

**REQUEST NO. 51:**

All certificates or articles of incorporation, corporate by-laws, and charters for HRD, including all amendments to any such instruments.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence. The Articles of Incorporation will be produced.

**REQUEST NO. 52:**

All corporate minute books, annual reports, agendas and minutes of corporate or directors meetings, and all other records indicating corporate action taken by HRD for the period from January 1, 1998 to the present.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 53:**

All of HRD's financial statements, records, or reports, including, but not limited to, annual reports, including audited annual reports; balance sheets; income statements; profit and loss statements; cash flows, statements of change in financial condition; net worth statements; ledgers or charts of accounts recording assets, liabilities, revenue and expenses; financial projections; and federal and state income tax returns, for the period from January 1, 1998 to the present.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence. In addition this request seeks documents dating back to 1998. HRD did not have any dealings with Dow until 2002, making the scope of the request overbroad. Finally, the documents sought are simply a form of post judgment discovery submitted at a time when Dow does not have a judgment.

3

**REQUEST NO. 54:**

All documents referring or relating to the ownership or management of HRD including, but not limited to, documents evidencing the ownership of any share of HRD stock and the makeup of the Board of Directors of HRD.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 55:**

All documents referring or relating to the financial condition of HRD.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence. In addition this request seeks documents dating back to 1998. HRD did not have any dealings with Dow until 2002, making the scope of the request overbroad. Finally, the documents sought are simply a form of post judgment discovery submitted at a time when Dow does not have a judgment.

**REQUEST NO. 56:**

All documents identifying any employee, officer, or director of HRD and/or their respective functions.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 56**

All documents referring or relating to the identities of any persons or entities that exercise control over HRD.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 57:**

All documents referring or relating to any bank account maintained by or for the benefit of HRD.

4

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 58:**

All documents evidencing HRD's compliance with corporate formalities.

**RESPONSE:**

HRD objects to this request because it seeks information that is not relevant to any dispute and is not calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 59:**

All documents relied upon by HRD in drafting Count II and Count III of HRD's counterclaims that DCCI or TDCC misused or misappropriated HRD's confidential information or trade secrets.

**RESPONSE:**

See the documents already produced.

**REQUEST NO. 60:**

All documents relied upon by HRD in making HRD Corporation's Supplemental Responses to Plaintiff/Counterclaim-Defendant's First Set of Interrogatories.

**RESPONSE:**

See the documents already produced.

**REQUEST NO. 61:**

All documents related to HRD's claims in Counts II and III of HRD's counterclaims that DCCI or TDCC misused or misappropriated HRD's confidential information or trade secrets.

**RESPONSE:**

See the documents already produced.

**REQUEST NO. 62:**

All documents related to the purpose and functioning of the devolatizers at the Sarnia plant.

**RESPONSE:**

These documents are in the possession of Dow.

AS TO OBJECTIONS ONLY,

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

By _*Suzanne M. Hill*_

Michael Landrum
William C. Ferebee
O'DONNELL FEREBEE MEDLEY &
KEISER, PC
450 Gears, Eighth Floor
Houston, TX 77067-4512
(281) 875-8200 (telephone)
(281) 875-4962 (facsimile)

Richard L. Horwitz (#2246)
W. Harding Drane, Jr. (#1023)
Suzanne M. Hill (#4414)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
wdrane@potteranderson.com
shill@potteranderson.com

Dated: July 26, 2006

*Attorneys for HRD Corporation (d/b/a Marcus Oil & Chemical)*

742948

6

# EXHIBIT 5

**JENNER&BLOCK**

July 20, 2006

Jenner & Block LLP    Chicago
One IBM Plaza    Dallas
Chicago, IL 60611-7603    New York
Tel 312 222-9350    Washington, DC
www.jenner.com

**VIA FACSIMILE**

Michael L. Landrum
O'Donnell Ferebee Medley & Keiser, P.C.
450 Gears
Eight Floor
Houston, TX  77067-4512

Aaron A. Barlow
Tel  312 923-8308
Fax  312 923-8408
abarlow@jenner.com

Dear Michael:

I am writing in response to your letter of July 17, 2006 to Don Cassling, Chris Tompkins and Ken Nachbar.  With respect to your complaints about our document production, we are in the process of collecting and reviewing many documents in an effort to produce documents to you.  I think when the documents are produced you will see that our objections are not unreasonable. However, I have no problem spending a day with you going over your concerns, although I don't believe it will take a day.

Perhaps you do not realize how broad your requests are in some respects.  For example, your request for various types of documents relating to metallocene polymers would cover hundreds of thousands of documents that are totally irrelevant to any issue in this case and would not conceivably lead to anything admissible.  Consequently, we have objected to these document requests.  I suspect your concern about this objection, as well as all of our other objections is based on a simple misunderstanding that we can clear up when we talk.

However, because your document requests are in many respects so broad, so vague and not reasonably tailored to obtain information relevant to the issues in this case, it has been difficult for us to conduct a manageable search in the time you think we should have.  We are, however, almost ready to produce documents collected in an attempt to find all communications between Dow and HRD.  Those should be produced to you shortly.  The broader search is also underway, but will take longer.

Several of your statements regarding discovery are simply inaccurate.  Your accusation that we are stone walling is completely false.  And your position that the Federal Rules of Civil Procedure require us to conduct all of our document searching before serving our objections and written responses is simply not the law.  However, I think if we discuss this matter, we can move beyond these statements.

Finally, because your document requests seek information that is of a very confidential nature beyond what we anticipated would be sought when we agreed to the protective order in this case, we need to amend the protective order prior to producing these confidential documents. Specifically, the current protective order would allow HRD to show highly confidential Dow

Michael L. Landrum
July 20, 2006
Page 2

**JENNER&BLOCK**

information to any consultant HRD chooses, with Dow having no ability object. This is obviously inadequate for many of the types of documents Dow has agreed to produce. Consequently, we propose adding a provision to the protective order requiring each side to disclose its intended consultants who will be shown highly confidential information at least 14 days prior to doing so, giving the other side time to object. The disclosure must include the recent employment and consulting history of the consultant. This is invariably done in patent cases and in my experience works very well.

Turning to HRD's discovery responses to Dow, we also have a number of concerns with them, and we need to discuss them at the same time we discuss your concerns about Dow's production. These concerns are as follows.

First, you have never provided any written responses or objections to our first or second set of document requests, or our second set of interrogatories. (Copies attached). As you know, under the law, any objections you may have had are waived, including attorney-client privilege and work product objections. Please let us know when you plan to produce the requested documents and answer the interrogatories.

Second, your objections to our third set of document requests are patently unreasonable. For example, Request No. 91 seeks documents relating to "stopping operations at the plant located at the Marcus Oil facility in Houston, Texas from December 3, 2004 to date." You objected to this request on the grounds that it does not seek information relevant to this case. However, HRD in its amended answer raised a *force majeure* defense based on the allegation, "On December 3, 2004, there was an explosion and fire at HRD's main offices…. Any injury or damage Plaintiff claims occurred after December 3, 2004, was caused by an Act of God or Force Majeure for which Defendant cannot be held legally responsible according to the express terms of the parties' agreement." Dow's document request no. 91 obviously seeks documents relevant to this allegation. Please agree to withdraw your objection and produce all relevant documents.

Third, you have objected to our requests seeking information on HRD's business relations with entities outside the United States. Your document requests seek certain discovery of Dow's technology that we believe may trigger concerns regarding obligations to the U.S. Government (Departments of Treasury, State and Justice). These obligations pertain to commodity control issues and the potential for possible overseas disclosure of proprietary information developed in the U.S. Please reconsider your objections to our document requests.

Turning to the issue of the samples, I tried to contact you twice in June regarding these and you never replied. Enclosed is a copy of my email to you from June 30, 2006. We have the samples and have been and are ready to exchange them. When we have our discussion we should talk about a date for exchange. It is premature to discuss joint tests and where to conduct them until we know what tests will be run and what samples to run them on. If you already know what tests you would like to run, please let us know so we can begin considering them. Once we have received the samples from you and had time to examine them, we will be in a position to discuss joint testing.

Michael L. Landrum
July 20, 2006
Page 3

**JENNER&BLOCK**

As for a date for our meeting, you are welcome to come to Chicago and meet with me on July 24, 27 or 31, 2006. Alternatively, I can discuss with you these issues over the phone on any of those days.

Very truly yours,

Aaron A. Barlow

AAB:pts

# EXHIBIT 6

REDACTED

From:    William C. Ferebee [wferebee@ofmklaw.com]
Sent:    Monday, July 31, 2006 1:18 PM
To:      Barlow, Aaron A
Subject: discovery

This document is for working purposes only. It is the attorneys effort to resolve discovery disputes before talking to their clients. Therefore this document is not meant to reflect any final agreement on discovery.

Amend Protective Order??????????

## HRD Request for Production

1. Based on Dow's current understanding the conditional overbroad and burdensome objection are not necessary. Dow will withhold information that is privileged and may withhold irrelevant trade secret and highly confidential commercial information.

2. Same as 1

3. Same. We will deal with third party confidential information once we know the volume of the documents.

4. Same as 1

5. Dow will consider whether it can produce portions of documents that discuss polyethelyne waxes or 2 pack. HRD does not need documents that discuss the business plan for the polymer portion that is not part of the wax portion of an adhesive.

6. Same as 5

7. Same as 5

8. Limit to polyethelyene waxes or 2 pack

9. Omit the words " or metallocene polymers"

10. Same as 1

11. Same as 1

12. Same as 1

13. Same as 1

14. Same as 1

15. Same as 1

16. Same as 1

17. Limit to 2 pack and waxes

18. Ferebee will talk to Dr. Ewen to see if we need this.

19. Same as 1

20. Same as 1

21. HRD is looking for documents "reviewing the status" of the JDA or Supply Agreement

22. Ferebee will reword.

23. Ferebee will reword

24. Ferebee will reword

25. Limited to Marcus

26. See our other agreement

27. Hold until we see other documents

28. For the moment just MOCs that relate to "light ends".

29. Hold until we see other documents

30. Aaron will see if C-18's can be removed and then if we have a problem

31. Ferebee will limit to "actual production of" Marcus material. Aaron will check with client.

32. Same as 31.

33. Same as 31.

34. Same as 31.

35. Same as 1

36. Ferebee will either reword or attempt to limit.

37. Same as 31.

38. Same a 1

39. Same as 1

40. Same as 1

41. Limit to production or quality events

42. Same a 1

43. Dow is not sure of meaning

44. Aaron will see what Dow has

45. Same as 1 for April -- July 2004

46. Same as 45 but Aaron will talk to client.

47. Same as 1

48. Same as 1

49. Same as 1

50. Same as 1

51. Same as 1

52. Same as 1

53. Same as 1

54. Same as 1

55. OK

56. Hold for now

57- 61 We have agreed

62. OK

63. OK

64. OK

65. Same as 1

66. Same as 1

67. Same as 1

68. Same as 1

69. Same as 1

70. Limited to the one unit

71. Same as 1

72. OK

73. Same as 1

74. Same as 1

75. Same as 1

76. Same as 1

77. Same as 1

### Dow's First Request for Production

24. We will withdraw the defense or produce

### Dow Request for Production

51. Articles OK, anything that mentions Dow

52. Gone

53. Financial Statements to prove damages

54. Gone Abbas and Aziz are only ones. Get what we can to show this

55. Same as 53

56. Gone

57. Financial Statements are acceptable

58. Minutes and what we have are OK and then decide

59. OK

60. OK

61. OK

62. None

Dow Third Requests for Production

64 – 87. Aaron will explore this issue.

92. Get pleadings

Interrogatories from HRD

1. OK

2. We now have the samples

3. Ferebee to think about this

4-12. We will await the documents

15. Maybe from the documents

Interrogatory to HRD

3. We will amend

# EXHIBIT 7

**REDACTED**

**From:**   Barlow, Aaron A
**Sent:**   Tuesday, August 22, 2006 9:32 AM
**To:**     'William C. Ferebee'
**Cc:**     Nimrod, Raymond N
**Subject:** RE: Marcus v Dow

Bill,

I am out of the office this week.  I did not send the samples out yesterday.  I have been trying to arrange the sample exchange for several weeks now, with several letters, voice mails and emails asking you or your partner when you wanted to make the exchange, but I never received a response until yesterday, when I was out of the office.  I will try to send them out as soon as possible, but being out of the office it may take time to coordinate. Hopefully, I will try to send them out today.  I will let you know later today whether I can send them out today.

On the confidentiality, my understanding is that all the documents we marked confidential contained information that was either confidential to Dow (albeit previously disclosed to HRD under a confidentiality agreement) or confidential to HRD (also disclosed previously to Dow under a confidentiality agreement) or both.  If you want to expressly waive all of HRD's rights to confidentiality in the documents, we can go through them again and de-designate the ones that only contain what we understand to be HRD confidential information, if any.  However, my understanding is that the current protective order provides client personnel limited access rights for confidential information (although not highly confidential information) that I had thought was adequate for your purposes, so I'm not sure what the issue is.

I disagree with your suggestion that the documents we produced are not meaningful.  We expect to produce more documents over the course of the next month.  But before that we need to revise the protective order as I discussed at our meeting in Chicago.

Aaron

---

**From:** William C. Ferebee [mailto:wferebee@ofmklaw.com]
**Sent:** Tue 8/22/2006 8:36 AM
**To:** Barlow, Aaron A
**Subject:** Marcus v Dow

Aaron

      Yesterday I called to tell you that we were sending our samples.  They are being sent Fed Ex, tracking number 8546 3617 0741.  Hopefully you sent yours yesterday.  Please send me your tracking number.

      On another matter, I received your CD with some documents.  However they appear mostly to be just a copy of the emails we sent you.  When can we expect to receive meaningful documents?

      Also I have a real problem with every document being marked "confidential".  Most of these emails do not contain anything confidential.  Is it Dow's intention to just mark every single document as confidential?

**William C. Ferebee**
O'Donnell, Ferebee, Medley & Keiser, P.C.
450 Gears Road, Suite 800
Houston, TX  77067
(281) 875-8200

12/26/2006

(281) 875-4962 facsimile
wferebee@ofmklaw.com

12/26/2006

# EXHIBIT 8

**REDACTED**

-----Original Message-----
From:    marcusoil@aol.com [mailto:marcusoil@aol.com]
Sent:    Tue Sep 19 18:05:13 2006
To:      Frencham, Tony (AR)
Cc:      borsinger@nmassociates.com
Subject:        Fwd: Dow litigation

Dear Tony,
        I hope all went well. Thanks for the time today with Aziz and myself . Please look at the below email. As promised I have asked all my team of Lawyers to cease all work till we meet on the 9 th .Please make sure that you provide same curtisies . Have a Safe Trip . Kind Regards abbas

-----Original Message-----
From: borsinger@nmassociates.com
To: marcusoil@aol.com
Sent: Tue, 19 Sep 2006 2:57 PM
Subject: FW: Dow litigation

Abbas - I understand you had a good meeting with Tony this morning and that

you put a hold on any further legal actions by HRD related to the suit with

Dow.

1

Please be aware that I am still under a court ordered subpoena to permit

inspection of documents in Houston on September 22 in Houston and at my

home/office on September 28, 2006.

Please advise me if this issue came up in your discussions and what I am to

expect with regards to these subpoenas.


Regards,

Gregory Borsinger


―――――――

 <http://pr.atwola.com/promoclk/1615326657x4311227241x4298082137/aol?redir=http%3A%2F%2Fwww%2Eaol%
2Ecom%2Fnewaol> Check out the new AOL. Most comprehensive set of free safety and security tools, free access to
millions of high-quality videos from across the web, free AOL Mail and more.

# EXHIBIT 9

**O'F M&K**

O'DONNELL
FEREBEE
MEDLEY &
KEISER, P.C.

Michael L. Landrum

**ATTORNEYS AT LAW**

(281) 875-8200

February 9, 2006

Christopher Tompkins
Jenner & Block, LLP
One IBM Plaza
Chicago, IL 60611-7603

*Via Fed Ex*

RE:   C.A. No. 05-23; *Dow Chemical Canada, Inc. on its own behalf and as assignee of The Dow Chemical Company v. HRD Corporation (d/b/a Marcus Oil & Chemical); In the United States District Court for the District of Delaware. Our File No. M313.26*

Dear Mr. Tompkins:

Enclosed please find a CD-R containing production of emails from Marcus Oil. Please call if you have any questions.

Sincerely,

Melinda M. Gover, CLA
Legal Assistant to Michael L. Landrum

:mg
enclosure

450 Gears - Eighth Floor■Houston, Texas 77067-4512■Fax (281) 875-4962■ Email: mlandrum@ofmklaw.com

# EXHIBIT 10

05/15/2006 12:29 FAX                                                    ☑002/002



## O'DONNELL FEREBEE MEDLEY & KEISER, P.C.

William C. Ferebee            **ATTORNEYS AT LAW**            (281) 875-8200

May 10, 2006

Ms. Lisa Spacapan                                    VIA FAX (312) 840-7312
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611-7603

     RE:   Dow v. HRD Corporation; *Our File No. M313.00026.*

Dear Ms. Spacapan:

    Assuming the parties cannot reach a business solution, I thought it best that HRD make its monetary settlement demand prior to mediation. That demand is $2,600,000,000.00.

    The $2.6 billion number is derived as follows: The total global market for all types of adhesives is $25 billion per year. The target market for the venture was hot melt adhesives. That represents about 10-15% of the total adhesive market or $2.5-3.7 billion annual global sales. HRD estimated that its product would enjoy a 50% market share. Its lost profits, reduced to present value, over the next 10 years total the $2.6 billion.

    I realize that your client will immediately point to paragraph 11.4 of the Sarnia PE Wax Supply Agreement which appears to eliminate the recovery of consequential damages. However, Delaware law and numerous courts have held that a seller may not rely on a provision limiting damages if it acted in bad faith. We believe that Dow's intentional inclusion of harmful "light ends" in the product will be determined to be bad faith. This is especially true where HRD paid for three devolitalization units at the Sarnia plant.

    If you have any questions regarding this demand, please do not hesitate to contact me.

    Very Truly Yours,

    O'DONNELL, FEREBEE, MEDLEY & KEISER, P.C.

    WILLIAM C. FEREBEE

cc: CLIENT
WCF/cm

450 Gears - Eighth Floor■Houston, Texas 77067-4512■Fax (281) 875-4962■Email: wferebee@ofmklaw.com

# EXHIBIT 11

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOW CHEMICAL CANADA, INC. | § | |
| on its own behalf and as assignee of | § | |
| THE DOW CHEMICAL COMPANY | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | C.A. No. 05-23 (JJF) |
| | § | |
| HRD CORPORATION (d/b/a | § | |
| Marcus Oil & Chemical) | § | |
| Defendant, Counterclaim Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| DOW CHEMICAL CANADA, INC. | § | |
| on its own behalf and as assignee of | § | |
| THE DOW CHEMICAL COMPANY and | § | |
| THE DOW CHEMICAL COMPANY, | § | |
| Counterclaim Defendants. | § | |

### HRD CORPORATION'S OBJECTIONS AND RESPONSES TO DCCI AND TDCC'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS
### (Answers to Requests No. 99 to 115)

TO:: **Plaintiff/Counterclaim-Defendants,** by and through its attorneys of record, David John Teklits and Kenneth J. Nachbar, MORRIS, NICHOLS, ARSHT & TUNNELL, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, on the basis of information now known and without waiving any objections or admitting the relevance or materiality of the information sought, Defendant/Counterclaim-Plaintiff HRD Corporation (d/b/a Marcus Oil & Chemical) ("HRD") serves its responses to Plaintiffs' Fourth Set of Requests for Production, as attached.

## GENERAL OBJECTIONS TO
## FOURTH REQUEST FOR PRODUCTION

1.   HRD objects to Dow's Definitions to the Extent they require any action or production that exceeds the scope provided by the Federal Rules of Civil Procedure.

2.   HRD objects to Definition 1 because it is overly broad.  For example definition number 1 would require the production of "oral" statements.

3.   HRD objects to Definition 5 because it defines HRD to include an overbroad and undefined group of companies and persons.

4.   HRD objects to Definition 7 to the extent it exceeds the scope of discovery permitted by the Federal Rules of Civil Procedure.

5.   HRD objects to Definition 8 because it defines HRD to include an overbroad and undefined group of companies and persons.

6.   HRD objects to Definition 10 because it defines HRD to include an overbroad and undefined group of companies and persons, including its attorneys.

7.   HRD objects to Definition 14 because it is overly broad and makes responding to any request virtually impossible.

8.   HRD objects to all of the Instructions and will only answer these requests in accordance with the Federal Rules of Civil Procedure.

## OBJECTIONS AND RESPONSES TO
## FOURTH REQUEST FOR PRODUCTION

**REQUEST NO. 99:**

All documents identifying, referring to or relating to any Product Samples, Products, or other material received from DCCI or TDCC.

**RESPONSE:**

Almost all the responsive documents were destroyed as a result of the fire and explosion at Marcus Oil and Chemical.  Generally the only remaining documents were emails which have been produced.

**REQUEST NO. 100:**

All documents identifying, referring to or relating to any testing performed by HRD, or any agent, employee, or consultant on any Product Samples, Products, or other material received from DCCI or TDCC.

**RESPONSE:**

Almost all the responsive documents were destroyed as a result of the fire and explosion at Marcus Oil and Chemical.  Generally the only remaining documents were emails which have been produced.


**REQUEST NO. 101:**

All certificates of analysis, packing lists, or other notifications received by HRD and any of its agents, employees, or consultants for Product Samples or Products, or other materials received from DCCI or TDCC.

**RESPONSE:**

Almost all the responsive documents were destroyed as a result of the fire and explosion at Marcus Oil and Chemical.  Generally the only remaining documents were emails which have been produced.


**REQUEST NO. 102:**

A 50 gram sample of any Product Sample, Product, or other material received from DCCI or TDCC.

**RESPONSE:**

The responsive samples have been produced.


**REQUEST NO. 103:**

All documents identifying, referring to or relating to any testing or feedback received from HRD from any customer on any Product Sample, Product, or other material received from DCCI or TDCC.

**RESPONSE:**

Almost all the responsive documents were destroyed as a result of the fire and explosion at Marcus Oil and Chemical.  Generally the only remaining documents were emails which have been produced.

**REQUEST NO. 104:**

Any documents that support HRD's allegations in Par. 104 of Defendant's First Amended Answer and Counterclaims that "[l]ight ends are waste byproducts of the manufacturing process for polyethylene wax."

**RESPONSE:**

The responsive documents, if any, will be produced.

**REQUEST NO. 105:**

Any documents that support HRD's allegations in Par. 104 of Defendant's First Amended Answer and Counterclaims that "[m]anufacturers of these waxes typically remove these volatile light ends from the finished wax because the presence of this impurity results in a product that is far more likely to smoke and/or catch fire under the elevated temperatures used in transportation, storage, and end use of the product."

**RESPONSE:**

The responsive documents, if any, will be produced.

**REQUEST NO. 106:**

Any documents that support HRD's definition of "Light Ends" as "the waste byproducts of the manufacturing process for polyethylene wax" in HRD Corporation's Request for Production of Documents to Dow Chemical Canada Inc. and The Dow Chemical Company.

**RESPONSE:**

The responsive documents, if any, will be produced.

**REQUEST NO. 107:**

Any documents relating to any contacts or communications from January 1, 2005 to the present between HRD (or its principals, consultants or agents) and any third party regarding any possibility, plan, request, proposal or inquiry to develop, manufacture, design or sell any 2-pack product or any polyethylene wax.

**RESPONSE:**

Almost all the responsive documents were destroyed as a result of the fire and explosion at Marcus Oil and Chemical.  Generally the only remaining documents were emails which have been produced.

**REQUEST NO. 108:**

Any documents from the period January 2004 up to and including the present relating to HRD's plans, proposals, marketing activities, offers, agreements, or business in the area of the manufacture, extraction and/or sale of waxes, including but not limited to polyethylene waxes.

**RESPONSE:**

Almost all the responsive documents were destroyed as a result of the fire and explosion at Marcus Oil and Chemical.  Generally the only remaining documents were emails which have been produced.

**REQUEST NO. 109:**

Any documents from the period January 2004 up to and including the present relating to HRD's plans, proposals, marketing activities, offers, agreements, or business in the area of the manufacture and/or sale of products for use in hot melt adhesives.

**RESPONSE:**

HRD objects to this request because it is overly broad and as such cannot be answered. In addition, this request is objectiontionable because it inquires of confidential business information of HRD

**REQUEST NO. 110:**

Any documents relating from the period January 2004 up to and including the present relating to HRD's plans, proposals, marketing activities, offers, agreements, or business in the area of the design, manufacture and/or sale of 2-pack products.

**RESPONSE:**

Since this litigation began there are not responsive documents.

**REQUEST NO. 111:**

Any documents relating to any damages claim HRD has in this case, including but not limited to the damages claims referred to in the May 10, 2006 letter from William C. Ferebee to Lise Spacapan.

**RESPONSE:**

Any responsive documents will be produced by HRD's damage expert.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on December 5th, 2006, a copy of the foregoing **HRD CORPORATION'S RESPONSES TO DCCI's and TDCC's FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS** was served upon the following in the manner indicated:

**BY HAND**

Kenneth Nachbar
David J. Teklits
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
PO Box 1347
Wilmington, DE 19899-1347

I also certify that a copy was delivered by facsimile to the following persons:

Donald R. Cassling
Christopher Tompkins
Zachary V. Moen
Jenner & Block, LLP
One IBM Plaza
Chicago, IL 60611

**POTTER ANDERSON & CORROON LLP**

By _____
for    Richard L. Horwitz (#2246)
       Suzanne M. Hill (#4414)
       1313 North Market Street
       Hercules Plaza, 6th Floor
       P.O. Box 951
       Wilmington, DE 19889-0951
       (302) 984-6000 (Tel)
       (302) 658-1192 (Fax)
       rhorwitz@potteranderson.com
       shill@potteranderson.com
       *Attorneys for Defendants HRD Corporation
       d/b/a Marcus Oil & Chemical, Inc.*

Page 7 of 7