UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA INC. on its own behalf and as assignee of THE DOW CHEMICAL COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HRD CORPORATION (d/b/a Marcus Oil & Chemical)<br><br>Defendant, Counterclaim Plaintiff,<br><br>v.<br><br>DOW CHEMICAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY,<br><br>Counterclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 05-023 (JJF)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DOW'S BRIEF IN SUPPORT OF ITS MOTION
FOR A PROTECTIVE ORDER REGARDING HRD'S NON-INDEPENDENT EXPERTS
AND APPROVAL PROCEDURE FOR INDEPENDENT EXPERTS**

Harry J. Roper
Raymond N. Nimrod
Aaron A. Barlow
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
Telephone: 312 222-9350

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Kenneth Nachbar (#2067)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
   Attorneys for Plaintiff Dow Chemical Canada Inc.
   and Counterclaim Defendant The Dow Chemical Company

December 27, 2006

## TABLE OF CONTENTS

I. NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

II. SUMMARY OF THE ARGUMENT .......................................................................... 1

III. BACKGROUND ........................................................................................................ 2

IV. ARGUMENT .............................................................................................................. 4

    A. The Nature Of HRD's Discovery Requests Justifies A Modification Of The Current Protective Order ................................................................. 4

    B. Consultants for HRD's Ongoing Business Operations Should Not Have Access To Dow's Highly Confidential Information ................................... 5

    C. The Protective Order Should Give Both Parties Prior Notice And the Right to Object to the Other Side's Proposed Experts ............................... 6

CONCLUSION .................................................................................................................. 7

## TABLE OF AUTHORITIES

**Cases**

*Biovail Corp. Int'l v. Hoechst Aktiengesellschaft,*
  1999 WL 33454801 (D.N.J.) .................................................................................... 4

*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers,*
  2002 WL 32349383 (E.D. Penn.) ............................................................................. 4

*Nippon Chemicals Sales Co. v. Texaco Inc.,*
  1996 WL 33167789 (Del. Ch. 1996) ........................................................................ 6

*Pansy v. Borough of Stroudsburg,*
  23 F.3d 772 (3rd Cir. 1994) ...................................................................................... 4

*Pennzoil Shareholders Litig., In re,*
  1997 WL 770663 (Del. Ch. 1997) ......................................................................... 5, 6

*Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.,*
  682 F. Supp. 20 (D. Del. 1988) .............................................................................. 5, 6

Dow Chemical Canada Inc. and The Dow Chemical Company (collectively "Dow") seek a protective order precluding HRD's regular and ongoing consultants in business endeavors from having access to Dow's "Highly Confidential" information. Dow also seeks the adoption of the typical procedure used to approve an independent expert in litigation when discovery involves the type of highly sensitive technical information HRD now seeks. The grounds for this motion are separate and independent from Dow's motion relating to exportation of technology to Iran.

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Dow Chemical Canada filed its Complaint on January 18, 2005 against HRD seeking recovery of payments expressly set forth in a supply agreement between Dow Chemical Canada and HRD, as well as other relief. On March 31, 2005, HRD counterclaimed for breach of the supply agreement, breach of a related joint development agreement, and misappropriation of HRD's alleged trade secrets.

In January 2006, the parties entered into a stipulated protective order. (D.I. 43). That protective order allows HRD's counsel to disclose Dow's Highly Confidential information to any consulting expert who is not an employee of HRD.

On April 19, 2006, one month before fact discovery was scheduled to close, HRD served document requests on Dow that sought detailed manufacturing process information and detailed catalyst information. The parties agreed to extend the close of fact discovery until November 17, 2006 and the Scheduling Order was amended accordingly. (D.I. 57). In July 2006, the parties met and conferred on HRD's discovery requests, as well as Dow's requests to HRD.

## II.   SUMMARY OF THE ARGUMENT

1. HRD has requested production of Dow's highly sensitive technical information. Dow would suffer substantial economic harm if this confidential information were placed in the hands of HRD or Dow's competitors. A modification to

the Protective Order to protect Dow's highly sensitive technical information is appropriate.

2. HRD's regular and ongoing consultants should not have access to the highly sensitive information HRD now seeks. This Court has recognized the difficulty--if not impossibility--for persons to mentally segregate their own technical knowledge from what they learn in litigation under a protective order. Courts have applied this logic to non-independent consultants who attempt to put on the dual hats of advising a party during litigation and also advising the party in business endeavors.

3. With respect to potential disclosure of truly independent experts, the Court should require the standard approval procedure followed in Delaware courts for qualifying an expert for disclosure of highly sensitive technical information.

### III. BACKGROUND

At the time that the parties agreed on the current protective order, HRD had not indicated that it would seek the type of highly sensitive technical information that it now requests. HRD's pleadings raised the issues of whether the wax products made by Dow contained alleged waste materials and/or whether Dow personnel deliberately added waste materials into the wax product. These issues could be resolved by testing the final wax products and by determining if the operators at Dow's manufacturing plant deliberately added waste materials into the wax product. None of these issues required an inquiry into any details of the design of Dow's devolatilizers or other aspects of Dow's commercial manufacturing process.

One month prior to the scheduled close of fact discovery, HRD served broad discovery requests, seeking reams of information on Dow's manufacturing process and catalysts, as well as agreements that Dow has made on these catalysts and metallocene polymers. (Exh. 1 at Req. Nos. 7, 22-24, 27 & 31-33). Many of those requests had no conceivable relation to any issue in this case, and Dow objected.

2

In July 2006, the parties met and conferred on outstanding discovery requests of both parties. HRD agreed to not pursue many of its requests at least for the time being; however, the remaining requests still sought the production of highly sensitive technical information. (D.I. 71 [Exh. F]). For example, HRD seeks the details of portions of Dow's devolatilization units for its solution process technology, the equations of state Dow uses to predict performance of those units, and other details of Dow's manufacturing process. (Exh. 1 at Req. Nos. 30, 34, 35 & 43-46). Dow would suffer substantial economic harm if this information were placed in the hands of its competitors. (Kolthammer Dec. ¶6). Dow has invested at least tens of millions of dollars into its process. (*Id.* at ¶5). Dow makes about seven billion pounds of polyethylene a year using its proprietary solution process technology, which it keeps confidential. (*Id.* ¶4). Just as an example, the identity and design of Dow's devolatilization units is an important aspect of Dow's solution technology. (*Id.* ¶4).

In July 2006, Dow advised HRD that even based on the scope of requested documents that Dow was willing to produce, Dow could not place them in the hands of consultants who worked for HRD in its ongoing business operations. On July 20, 2006, Dow expressly informed HRD that "we need to amend the protective order" to allow Dow to object to non-independent consultants. (Exh. 2). On August 22, 2006, Dow reminded HRD that the change had to occur before other confidential documents could be produced. (Exh. 3). HRD did not get back to Dow on this issue until November.

In November, HRD advised Dow that HRD would not agree to limit the disclosure of "Highly Confidential" information. HRD still insisted on disclosing Dow's "Highly Confidential" information to Greg Borsinger, HRD's technical consultant for its ongoing business operations since at least 2001. HRD's business includes the development of polyethylene waxes. HRD does not currently sell metallocene waxes, but has sought to develop such waxes. (D.I. 73 [Exh. 6] at ¶3.5). Mr. Borsinger is integrally involved in all technical aspects of HRD's business, including every aspect of HRD's

3

efforts to develop wax products and manufacturing processes for such products. (D.I. 74 at ¶4).

IV.   **ARGUMENT**

    A.   **The Nature Of HRD's Discovery Requests Justifies A Modification Of The Current Protective Order**

In the Third Circuit, "there is no doubt that only good cause is required for modification of a protective order." *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 1999 WL 33454801, *6 (D.N.J.) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 789-90 (3rd Cir. 1994)) (attached as Exh. 4); *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers*, 2002 WL 32349383, *2 (E.D. Penn.) (attached as Exh. 5). Thus, the court "should employ the same factors that are 'used in determining whether to grant such orders in the first instance.'" *Biovail*, 1999 WL 33454801, *6 (quoting *Pansy*, 23 F.3d at 790).

In *Biovail,* a party moved to modify a protective order to require identification of non-testifying experts, and an opportunity to object, prior to disclosure of the highly confidential information. The parties had previously agreed upon the terms of a Protective Order that did not provide for identification of non-testifying experts prior to disclosure of the other party's highly confidential information. *Biovail*, 1999 WL 33454801, at *2-3. In *Biovail,* the moving party noted that the other party could even hire the moving party's competitor as an expert, without any opportunity to object. *Id.* at *4. The court granted the modification due to the highly sensitive nature of the information at issue and the risk of harm to plaintiff's business posed by potential disclosure of sensitive information. *Id.* at *8.

The same risk of harm exists here. Dow has agreed to produce certain highly sensitive technical information based on compromises resulting from the parties' meet and confer. However, the current protective order is inadequate to protect Dow's information from disclosure to HRD and Dow's competitors. Mr. Borsinger, HRD's

4

regular consultant, can view even "Highly Confidential" Dow technical information. In addition, HRD's counsel could retain experts employed by Dow's direct competitors, and Dow has no procedure to object under the current protective order.

Dow has invested tens of millions of dollars in developing its solution process polyethylene technology. Dow would suffer enormous economic injury if this information were placed in the hands of its competitors. (Kolthammer Dec. ¶6). This Court has recognized the need for protection where confidential technological information is involved. *See Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988). "Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." *Id.* The Court should therefore modify the Protective Order to protect Dow's highly sensitive technical information.

### B. Consultants for HRD's Ongoing Business Operations Should Not Have Access To Dow's Highly Confidential Information

This Court has recognized the difficulty--if not impossibility--for persons to mentally segregate their own technical knowledge from what they learn in litigation under a protective order. *Safe Flight*, 682 F. Supp. at 22. The *Safe Flight* court rejected the plaintiff's request to have its president, an engineer, examine the defendant's confidential documents. The Court noted that he "might (whether consciously or subconsciously) abuse the confidential scientific information revealed to [the defendant's] competitive disadvantage." *Id.* at 21.

Other Delaware courts have recognized the same problem facing consultants who attempt to put on the dual hats of advising a party during litigation, and advising the party in business endeavors. *In re Pennzoil Shareholders Litig.*, 1997 WL 770663 (Del. Ch. 1997) (attached as Exh. 6). In *Pennzoil*, the plaintiff argued that its current financial advisors could also act as litigation consultants, as long as they signed an agreement not to use the highly confidential information they saw during the litigation

5

for the purpose of providing financial advice to any party. *Id.* at *3. The *Pennzoil* court viewed a consultant's purported ability to mentally segregate information as "an epistemological leap of heroic proportions." *Id.*

Similarly, HRD cannot realistically believe that Mr. Borsinger, or any other consultant who sees Dow's confidential information, would be able to mentally segregate that information, or avoid being subconsciously influenced by it, when advising HRD or one of Dow's competitors in the future.

### C. The Protective Order Should Give Both Parties Prior Notice And the Right to Object to the Other Side's Proposed Experts

When discovery involves the disclosure of highly sensitive technical information, it is standard procedure to adopt an approval process for disclosure to prospective experts in the litigation. Such a procedure would include identification of the expert, and a time period for the disclosing party to object. Without such an approval procedure, Dow cannot timely object if an expert currently works for one of Dow's direct competitors, or a risk otherwise exists of compromising Dow's confidential information.

Courts have validated this practice, and granted protective orders requesting advance notice of independent experts. *See, e.g., Nippon Chemicals Sales Co. v. Texaco Inc.*, 1996 WL 33167789, *2 (Del. Ch. 1996) (attached as Exh. 7); *Safe Flight*, 682 F. Supp. at 22 (practice followed in both federal and state Delaware courts that technical information be disclosed to "independent experts assisting the trial attorneys" only "with prior approval of the disclosing party and written assurances").

## CONCLUSION

For all of the foregoing reasons, the Court should grant Dow's motion for a Protective Order regarding HRD's non-independent experts and approval procedure for independent experts.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Samuel T. Hirzel
Kenneth Nachbar (#2067)
Samuel T. Hirzel (#4415)
1201 N. Market Street
Wilmington, DE  19899-1347
(302) 658-9200
Attorneys for Plaintiff
  Dow Chemical Canada Inc.
and Counterclaim Defendant
  The Dow Chemical Company

Harry J. Roper
Raymond N. Nimrod
Aaron A. Barlow
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
Telephone: 312 222-9350

7