**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DOW CHEMICAL CANADA INC. on its own behalf and as assignee of THE DOW CHEMICAL COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HRD CORPORATION (d/b/a Marcus Oil & Chemical)<br><br>Defendant, Counterclaim Plaintiff,<br><br>v.<br><br>DOW CHEMICAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY,<br><br>Counterclaim Defendants. | Case No. 05-023 (JJF) |

**DOW'S REPLY BRIEF IN SUPPORT OF ITS MOTION**
**FOR A PROTECTIVE ORDER REGARDING INDEPENDENT EXPERTS**

Harry J. Roper
Raymond N. Nimrod
Aaron A. Barlow
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
Telephone: 312 222-9350

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Kenneth Nachbar (#2067)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
Attorneys for Plaintiff Dow Chemical Canada Inc. and Counterclaim Defendant The Dow Chemical Company

February 6, 2007

**TABLE OF CONTENTS**

I. SUMMARY OF ARGUMENT ........................................................................... 1

II. ARGUMENT ........................................................................................................ 3

A. Dow does not object to Dr. Ewen or any other truly independent expert ................ 3

B. Borsinger's unique insight does not justify the risks of giving him access ............. 4

C. HRD's contention that the proposed protections are unnecessary ignores the relevant case law ........................................................................................ 6

D. As HRD admits, the scope of discovery expected by Dow has changed ................ 8

CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*,
1999 WL 33454801, *6 (D.N.J.) .......... 8

*Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv.*,
1994 Del. Ch. LEXIS 105 (Del.Ch. June 30, 1994) .......... 6

*E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*,
1982 U.S. Dist. LEXIS 10258 (D.Del. May 17, 1982) .......... 5

*Fisher v. Borden, Inc.*,
1994 U.S. Dist. LEXIS 21273 (D.N.J. Oct. 26, 1994) .......... 5, 6

*Heintz Corp. v. Judson*,
1995 U.S. Dist. LEXIS 16328 (E.D.Pa November 3, 1995) .......... 7, 8

*In re Plastics Additives Antitrust Litig.*,
2005 U.S. Dist. LEXIS 23771 (E.D.Pa. Aug. 24, 2005) .......... 4

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3rd Cir. 1994) .......... 8

*Pennzoil Co. Shareholders Litig., In re*,
1997 Del. Ch. LEXIS 165 (Del.Ch. Oct. 27, 1997) .......... 6

*Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*,
682 F. Supp. 20 (D.Del. 1988) .......... 6, 7, 8

Plaintiffs/Counterclaim Defendants Dow Chemical Canada and The Dow Chemical Company ("Dow") submit this reply in support of their motion for a protective order limiting HRD's access to Highly Confidential materials to its outside counsel and independent experts.

The grounds for this motion are separate and independent from the grounds for the protective order regarding exportation of technology to Iran. (D.I. 73 at 1-2). However, if the motion relating to Iran is granted, this motion will be moot.

## I. SUMMARY OF ARGUMENT

HRD's response to Dow's motion presents four meritless arguments.

1. First, HRD asserts, with no basis, that Dow will unreasonably "veto" all experts HRD chooses, including Dr. John Ewen. Dow has never objected to Dr. Ewen having access to any documents produced by Dow. And Dow now affirmatively states that it will not object to Dr. Ewen having access to Dow's Confidential and Highly Confidential documents under the proposed protective order. Furthermore, the proposed protective order does not, as HRD erroneously argues, give Dow any kind of "veto" power over HRD. Instead, the proposed protective order, like the standard protective orders approved time and time again in this district, allows Dow to object to a proposed HRD expert, and requires Dow to bring a motion to this Court if the parties cannot resolve that objection.

2. Second, HRD asserts that it needs to have Mr. Gregory Borsinger, a fact witness in this case who plays "an integral role" in HRD's wax business, be allowed to review Dow's Highly Confidential documents for two reasons.

a. HRD argues that because most of HRD's own documents were destroyed when its plant was destroyed in a fire, it is handicapped vis-à-vis Dow because Dow has its copies of those documents. However, those documents will be

marked Confidential, not Highly Confidential. This motion only seeks to preclude Mr. Borsinger from reviewing Dow's Highly Confidential documents.

b. HRD argues Mr. Borsinger should see Highly Confidential documents because of the insight he can provide to the relevance of business documents on the issues in this case. However, as Dow explained in its opening brief, the Highly Confidential documents Dow is concerned about are not the kinds of business documents that Mr. Borsinger would have any familiarity with, but instead are technical documents related to the operation of Dow's commercial manufacturing process or business documents related to Dow's non-wax business or its future business plans.

3. Third, HRD argues that the existing protective order is sufficient, because Mr. Borsinger will not intentionally disclose Dow's Highly Confidential information. However, as Dow pointed out in its opening brief, the courts recognize the impossibility of a consultant mentally segregating confidential technical information from the consultant's other knowledge where working in the same field. HRD argues that Mr. Borsinger "has no interest" in working in metallocene waxes and therefore, HRD asserts, courts recognize that disclosure is permissible. However, the only case HRD cites is one where it was ***impossible*** for the proposed expert to ever work in the field of the information he was viewing because the party to the litigation was ***in bankruptcy*** and would never practice in that field again. Here, by contrast, HRD has demanded that Dow teach HRD or its manufacturer "***how to manufacture*** Two Pack products using metallocene technology." Mr. Borsinger will certainly be involved in this effort and therefore, under the cases cited by Dow, should not be permitted access to Dow's Highly Confidential information.

4. Fourth, HRD argues that Dow already agreed to a protective order and there are no changed circumstances justifying a different one. However, as Dow pointed out in its opening brief, the Third Circuit's standard for modifying protective orders is the same as that used in determining whether to grant such orders in the first

instance. Under that standard, modification is appropriate for the reasons set forth in the preceding paragraph. Even if changed circumstances were required, that standard is met here. Specifically, HRD admits that when Dow agreed to the original protective order, Dow expected highly confidential "business plans" to be the only highly confidential documents called for in discovery. However, Dow now expects to have to produce certain detailed information about its manufacturing process, such as information about Dow's devolatilization units, the equations of state Dow uses to predict performance in those units and other details.

## II. ARGUMENT

HRD presents a number of objections to Dow's proposal to limit access to Dow's Highly Confidential information to independent experts. As discussed in the sections below, none of these objections has any merit.

### A. Dow does not object to Dr. Ewen or any other truly independent expert

HRD repeatedly characterizes Dow's proposal as giving Dow "sweeping and unjustified veto power" over HRD's choice of expert. (D.I. 82 at 16). HRD even asserts, with no basis whatsoever, that "HRD has reason to believe Dow may, for reasons unknown to HRD, voice objections to Dr. Ewen as well." (*Id.*).

However, Dow has never suggested it would object to Dr. Ewen having access to Dow's Highly Confidential and Confidential information. And, in fact, hereby states that it will not object to Dr. Ewen being designated an independent expert under Dow's proposed protective order.

Furthermore, Dow's proposed protective order does not give Dow "veto power." Dow may only object to HRD's choice of independent experts--not veto them--and Dow must provide its basis for the objection. (D.I. 77 [Proposed Order ¶ 2]). If the

parties cannot resolve that objection, Dow has a limited time to bring the matter to the Court, and the burden is on Dow to show that its objection is justified. (*Id.*)

HRD argues that courts reject giving parties "veto power" over litigation consultants, citing *In re Plastics Additives Antitrust Litig.*, 2005 U.S. Dist. LEXIS 23771, at *11 (E.D.Pa. Aug. 24, 2005) (D.I. 82 [Exh. G]). However, in that case, the protective order only allowed consultants access to confidential documents if the producing party gave its "permission." *Id*. at *5-6. If permission was withheld, no recourse to the Court was contemplated. Here, however, Dow has already approved Dr. Ewen, and any objection to other experts, if necessary, must be followed up with a motion to the Court on which Dow bears the burden of proof.

**B. Borsinger's unique insight does not justify the risks of giving him access**

HRD also asserts that it needs Mr. Borsinger to have access to Dow's Highly Confidential information because HRD has no in-house counsel and because of the unique role Mr. Borsinger played during the events that led to the underlying dispute. Essentially, HRD argues that a key fact witness should have access to the other side's Highly Confidential information because it would help outside counsel prepare for the case.

However, HRD cites no case that supports the theory that an individual's involvement in the subject matter of litigation presents compelling reasons to force the other side to disclose its confidential information to that individual.

Furthermore, HRD has the benefit of attorneys at HRD's Texas counsel, who have access to all documents Dow produces and were heavily involved in the subject matter of this lawsuit. For example, HRD's Texas counsel negotiated the agreements at issue in this case, initiated and participated in the discussions between the parties in 2004 when relations were breaking down, and have been HRD's counsel for years, giving them at least as much insight into HRD's business as Mr. Borsinger. (Exhs. 1, 2).

HRD also argues that because its own documents were destroyed in a fire, Mr. Borsinger should have access to all the documents that Dow produces that include "business records pertaining to the dealings between Dow and HRD at issue in this case." (D.I. 82 at 17). However, almost all documents of that nature will be produced as Confidential, not Highly Confidential. Consequently, under the protective order proposed in this motion, not only Mr. Borsinger, but the Hassans as well, will be able to review those documents and assist HRD's counsel.

Indeed, most of the documents Dow expects to mark as Highly Confidential are those containing technical information related to the operation of Dow's commercial manufacturing process or documents relating to business plans unrelated to the metallocene wax business between the parties. Consequently, Mr. Borsinger's allegedly unique "insight" will not have any value in reviewing these documents in any event.

HRD also cites a number of cases that HRD argues show the courts' recognition of the necessity of allowing insiders to have access to confidential information of the other side. However, none of these cases support this approach. In *E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 1982 U.S. Dist. LEXIS 10258, (D.Del. May 17, 1982), one basis for the court's ruling was its understanding that DuPont would not allow the insiders to work in the technology of the case after the completion of the litigation, but instead would "arrange their work and project assignments in such a way as to avoid the possibility of … abuses." *Id.* at *5; (D.I. 82 [Exh. B]). Here, however, Mr. Borsinger is HRD's only non-litigation wax consultant and will undoubtedly be involved in HRD's wax business in the future.

Further, HRD completely mischaracterizes *Fisher v. Borden, Inc.*, 1994 U.S. Dist. LEXIS 21273, at *11 (D.N.J. Oct. 26, 1994), when it says this case found that "plaintiff's need for expert with specialized and extensive experience outweighed defendant's need for protection of documents against disclosure, even when expert was

employed by competitor." (D.I. 82 [Exh. C]). Contrary to HRD's false statement, the *Fisher* court found that the alleged confidential information was not in fact confidential, in part because it had been published in the newspaper. *Fisher*, 1994 U.S. Dist. LEXIS 21273 at *10-11.

In the next case, *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv.*, 1994 Del. Ch. LEXIS 105, at *6 (Del.Ch. June 30, 1994), the court found that the party seeking to disclose the information to its insider "is not a competitor in the areas to which the information sought pertains." *Id*. at *5; (D.I. 82 [Exh. D]). Here, however, HRD has made clear its intention to manufacture metallocene waxes, either alone or with a partner. (D.I. 73 [Exh. 6]).

Thus, HRD's contention that Mr. Borsinger's unique insight justifies giving him access to Dow Highly Confidential information is meritless.

### C. HRD's contention that the proposed protections are unnecessary ignores the relevant case law

HRD also argues that the existing protective order is sufficient, because Mr. Borsinger will not intentionally disclose Dow's Highly Confidential information. (D.I. 82 at 18, 20). However, Dow has never suggested that Mr. Borsinger will intentionally violate the terms of the protective order. On the contrary, Dow pointed out that, as courts recognize, it is impossible for a consultant to forget or "segregate" information in his mind when working in the field of that technology. (D.I. 78 at 5-6); *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22 (D.Del. 1988); *In re Pennzoil Co. Shareholders Litig.*, 1997 WL 770663, at *3, (Del.Ch. Oct. 27, 1997) (D.I. 78 [Exh. 6]).

HRD completely ignores the *Pennzoil* case in their Opposition Brief, and HRD's only reference to the *Safe Flight* case is to argue that this case only applies to insiders who are actually employees of the company, not insiders such as Mr. Borsinger who are paid consultants. However, as Dow pointed out, and HRD does not dispute, Mr.

Borsinger is integrally involved in all technical aspects of HRD's wax business. (D.I. 74 at ¶4). In fact, HRD itself admits this:

> During each phase of the parties' negotiation and agreement, HRD's consultant Mr. Borsinger played an integral role, assisting the Hassans with determining the potential needs of the end-users and the desired chemical properties of the ultimate products to be developed.

(D.I. 82 at 4). Significantly, HRD does not dispute that Dow's Highly Confidential trade secrets are extremely valuable, even pointing out that the value of a plant is in the hundreds of millions of dollars. (D.I. 82 at 20). Thus, HRD's attempt to distinguish *Safe Flight* is meritless.

HRD also argues that Mr. Borsinger should have access to Dow's Highly Confidential documents because Mr. Borsinger states that he has "no interest in ever participating in the production of metallocene wax," citing the case of *Heintz Corp. v. Judson*, 1995 U.S. Dist. LEXIS 16328, at *1-2 (E.D.Pa November 3, 1995) (D.I. 83 at 3). However, in that case it was impossible for the consultant to later consult for a competitor in the field of the technology. Specifically, the party for whom the consultant worked was in bankruptcy and "would never again become a competitor." The consultant was contractually bound only to work for this party, and the consultant's agreement prevented him from working in this field in the future, except for the now bankrupt party. *Heintz Corp.*, 1995 U.S. Dist. LEXIS 16328 at *15, 21-22. Indeed, the consultant testified that "he would not accept a job" having to do with the technology. *Id.* at *20.

Furthermore, in *Heintz*, unlike here, the consultant's employer, the party seeking disclosure of the documents, no longer used the technology at issue and the objecting party had routinely disclosed its confidential information to its customers and even the public. *Id.* at *12-16. Here, however, as Dow showed in its opening brief, the Highly Confidential information at issue relates to Dow's current manufacturing process and Dow does not disclose this information to customers or the public. (D.I. 78 at 3).

Finally, the *Heintz* court noted that there was no alternative expert on the technical information for the defendant to use. *Id.* at *23. Here, however, Dow has already agreed that HRD can use Dr. Ewen, and Mr. Borsinger admits he is not qualified to help HRD on the technical information. (D.I. 83 at 2).

**D. As HRD admits, the scope of discovery expected by Dow has changed**

HRD next argues that Dow already agreed to a protective order and there are no changed circumstances justifying a different one. However, as Dow pointed out in its opening brief, the Third Circuit standard for modifying protective orders uses the same factors used in determining whether to grant such orders in the first instance. *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 1999 WL 33454801, *6 (D.N.J.) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3rd Cir. 1994) (D.I. 78 [Exh. 4]). This standard is met because, based on the rationale of *Safe Flight*, in future work in the field relating to the Highly Confidential information, Mr. Borsinger will not be able to segregate in his mind the information he learns from Dow's documents.

Furthermore, even if changed circumstances were required, that standard is met here. Indeed, HRD admits that when Dow agreed to the original protective order, Dow expected highly confidential "business plans" to be the only highly confidential documents called for in discovery. (D.I. 82 at 15 n.5). However, Dow now expects to have to produce certain detailed information about its manufacturing process, such as information about Dow's devolatilization units, the equations of state Dow uses to predict performance in those units and other details.

Moreover, HRD argues that its reliance on the existing protective order is a factor precluding modification here. Specifically, HRD claims that it "produced nearly 5,000 e-mails in reliance on the parties' agreement." (D.I. 82 at 12-13). Where reliance exists, it is a factor. *Pansy*, 23 F.3d at 790 ("The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to

allow discovery or to settle the case.") However, HRD cannot show that in allowing discovery it relied on the provisions of the current protective order Dow seeks to modify here. All of the documents produced by HRD that were designated under the current protective order were marked "Confidential," not Highly Confidential. Here, Dow seeks only to modify the portions of the current protective order relating to the treatment of Highly Confidential documents. Because HRD did not produce any Highly Confidential documents, it cannot have relied on them in providing discovery in this case. Consequently, HRD cannot argue that it was prejudiced by its alleged reliance on the current protective order.

**CONCLUSION**

For all of the foregoing reasons, Dow's motion for a protective order should be granted. The Court should enter an order limiting access to Dow's Confidential information and Highly Confidential information to outside counsel and approved independent experts, such as Dr. Ewen.

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

/s/ Samuel T. Hirzel

Kenneth Nachbar (#2067)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
Attorneys for Plaintiff
Dow Chemical Canada Inc.
and Counterclaim Defendant
The Dow Chemical Company

OF COUNSEL:

Harry J. Roper
Raymond N. Nimrod
Aaron A. Barlow
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

Dated: February 6, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2007 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Richard L. Horwitz
W. Harding Drane, Jr.
Susanne M. Hill
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000 (Tel)
(302) 658-1192 (Fax)

I also certify that copies were caused to be served on February 6, 2007 upon the following by Federal Express and Facsimile:

William Ferebee
Michael Landrum
O'DONNELL FEREBEE MEDLEY & KEISER, PC
450 Gears, Eighth Floor
Houston, TX 77067-4512
(281) 875-8200 (Tel)
(281) 875-4962 (Fax)

***/s/ Samuel T. Hirzel***
Samuel T. Hirzel (#4415)