IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DOW CHEMICAL CANADA INC. on its          :
own behalf and as assignee of THE        :
DOW CHEMICAL COMPANY,                     :
                                          :
      Plaintiff,                          :
                                          :
   v.                                   :   Civil Action No. 05-23-JJF
                                          :
HRD CORPORATION (d/b/a Marcus Oil        :
& Chemical),                              :
                                          :
      Defendant, Counterclaim             :
      Plaintiff,                          :
                                          :
   v.                                   :
                                          :
                                          :
DOW CHEMICAL CANADA INC. on its          :
own behalf and as assignee of THE        :
DOW CHEMICAL COMPANY, and THE            :
DOW CHEMICAL COMPANY,                     :
                                          :
      Counterclaim Defendants.  :
                                          :

**MEMORANDUM ORDER**

Pending before the Court are three discovery Motions in the above-captioned case: (1) a Motion To Compel filed by HRD Corporation ("HRD") (D.I. 71); (2) a Motion For A Protective Order Regarding HRD's Exporting To Iran (D.I. 72) filed by Dow Chemical Canada Inc. and its parent The Dow Chemical Company (collectively, "Dow"); and (3) a Motion For A Protective Order Regarding HRD's Non-Independent Experts And Approval Procedure For Independent Experts (D.I. 77) filed by Dow. For the reasons discussed, the Court will grant HRD's Motion To Compel and deny Dow's Motions For Protective Orders.

I.    **THE PARTIES' CONTENTIONS**

    A.    HRD's Motion To Compel

    By its Motion, HRD requests the Court to issue an order requiring Dow to respond to HRD's Request For The Production Of Documents ("Document Requests").  According to HRD, its Document Requests have been met with generalized objections and unfounded concerns by Dow that HRD might export technology to Iran.  Dow has also expressed concern with HRD's intention to share disclosed documents with its consultant and expert, Greg Borsinger.  HRD contends that it attempted to resolve these concerns with Dow and agreed not to share Dow's documents with Mr. Borsinger until the Court rendered a decision on the issue, but Dow has still refused to produce any documents for HRD's review.

    In response, Dow contends that it has legitimate concerns as to whether it can legally produce documents to HRD, its owners and its consultants given certain "red flags" suggesting that HRD will export Dow's metallocene wax technology to Iran in violation of U.S. export control laws.  Dow's concerns are set forth in the related Motion For A Protective Order Regarding HRD's Exporting To Iran.  Dow also contends that HRD has engaged in a pattern of delay and dilatory tactics regarding its discovery obligation.

    B.    Dow's Motions For Protective Orders

    Dow has filed two Motions related to HRD's Motion To Compel,

2

both of which seek modifications to the existing Protective Order in this case. By its Motion For A Protective Order Regarding HRD's Exporting To Iran, Dow seeks a protective Order precluding HRD, its owners, Abbas and Aziz Hassan (the "Hassans") and its business consultants from having access to Dow's confidential documents, because such disclosure may violate the Iranian Transactions Regulations. According to Dow, it is prohibited from disclosing its technology to HRD unless HRD can explain certain suspicious red flags including: information about the Hassans' Iranian company called Marcus Oil & Chemical (Iran); the Hassans' plans, if any, for manufacturing metallocene waxes; inconsistencies between HRD's representations to the Court and its representation in a document filed with the U.S. Treasury Department's Office of Foreign Assets Control concerning whether its facilities manufacture wax; the Hassans' alleged admitted violation of the Iranian Transactions Regulations in connection with different technology and the Hassans' alleged misrepresentations in agreements with Dow. Dow contends that if its confidential information is disclosed to HRD's consultants, those consultants and their work product can later be used by HRD for projects in India or Iran. Thus, Dow contends that a protective order should be entered which limits access to Dow's Confidential information and Highly Confidential information to outside counsel and approved independent experts.

3

In its second motion, the Motion For A Protective Order Regarding HRD's Non-Independent Experts And Approval Procedure For Independent Experts, Dow seeks a protective order precluding HRD's regular and ongoing consultants in business endeavors from having access to Dow's "Highly Confidential" information.  Dow contends that its second motion is based upon reasons separate from the exportation of technology to Iran.  Specifically, Dow contends that it would suffer substantial economic harm if its highly sensitive technical information were given to HRD or its competitors.  Dow seeks a modification to the Protective Order already in place to prohibit HRD's regular and ongoing consultants from having access to this information, because they cannot successfully segregate their dual roles of advising HRD in this litigation and advising HRD in its business endeavors. Thus, Dow requests the Court to require the "standard approval procedure followed in Delaware courts for qualifying an expert for disclosure of highly sensitive technical information."  (D.I. 78 at 2).

HRD has filed a joint response to the Dow's Motions.  In its response, HRD points out that Dow and HRD collaborated on several technological endeavors including the metallocene wax production that is the subject of this litigation and the propriety of converting natural gas to ethylene.  HRD contends that the issues related to Iran involve solely the methane to ethylene

4

manufacturing process which is distinct from the subject of this
litigation, the production of polyethylene wax, and that Dow had
full knowledge of HRD's Iranian activities yet never suggested
that HRD's conduct was unlawful.  HRD also contends that Marcus
Oil & Chemical (Iran) is a rented office for the purpose of
maintaining a minimal presence in Iran and that it has no
contracts with Iranian entities, conducts no business and
generates no income.  HRD further maintains that all of its
activities undertaken in Iran have been done with the advice of
counsel.  With respect to its India-based company, HRD similarly
contends that Dow has full knowledge regarding the nature of
those operations and that its plant in India is incapable of
manufacturing wax, and instead only refines and packages wax
products.

HRD contends that Dow has not demonstrated the good cause
necessary to justify a modification of the current Protective
Order which has been in place since January 2006.  HRD contends
that it lost most of its documents at an explosion at its Houston
headquarters and that it would be severely prejudiced if its
consultant, Mr. Borsinger, was precluded from reviewing Dow's
documents.  Thus, HRD contends that it is entitled to the
documents it has requested under the contours of the current
Protective Order, without the proposed modifications sought by
Dow.

## II. DISCUSSION

### A. Standard of Review

The standard governing modification of a protective order is the same standard used to determine its propriety in the first instance. Specifically, the movant must demonstrate good cause for either the order or its modification. Good cause is demonstrated by a showing that disclosure will cause a clearly defined and serious injury to the party seeking to preserve the documents' confidentiality. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). In determining whether good cause for a modification of the protective order exists, the Court must balance the interests of the parties and the public. Id. at 787. A party's reliance on the original protective order is a relevant consideration; however, it is not outcome determinative and must be considered in light of the circumstances and interests at issue. Id. at 790.

### B. Whether Dow Is Entitled To A Protective Order Based On Its Concerns Regarding HRD's Alleged Exportation To Iran

Under the Iranian Transactions Regulations "the exportation, reexportation, sale or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited . . ." 31 C.F.R. § 560.204. This prohibition is violated if the person knows or has "reason to know" that the

6

technology is intended for Iran or its Government.  31 C.F.R. §

560.418.  Federal agencies enforcing these rules have further

defined "reason to know" and provided a list of "red flags"

which, if left unanswered, may demonstrate that a party had

knowledge of a violation of the Regulations.  Specifically,

> "[r]eason to know" that the seller's goods are intended
> for Iran can be established through a variety of
> circumstantial evidence, such as:  course of dealing,
> general knowledge of the industry or customer
> preferences, working relationships between the parties,
> or other criteria far too numerous to enumerate.

Office of Foreign Assets Control ("OFAC"), "Guidance on

Transshipments to Iran," Ref. 020722-IR-01 (Jul. 22, 2002).

In support of its Motion, Dow cites several "red flags"

which it contends demonstrate that production of documents to HRD

would place Dow in the Catch-22 of violating federal law and

risking prosecution by the OFAC or violating its discovery

obligations in this case.  The Court has reviewed the red flags

cited by Dow in the circumstances of this case and concludes that

the risk perceived by Dow is overstated.  As HRD points out, the

alleged Iranian connection cited by Dow arises in the context of

the methane to ethylene technology that is not a part of this law

suit.  Further, the Court is persuaded that Dow knew of and

evaluated several of the issues it now cites as red flags when it

entered into the Evaluation Agreement related to the parties'

venture in the methane to ethylene technology.  That Dow raised

no objection under federal law at the time, and in fact supported

7

the issuance of an OFAC license to HRD for its interest in dealing with Iran, suggests to the Court that Dow's current concerns are unsupportable. Further, as HRD points out Dow requested and was provided an opinion letter by Baker Botts LLP that HRD was acting lawfully. Moreover, HRD has represented to the Court that it has never had any plans to manufacture metallocene wax and that its Iranian-based business is essentially a non-operational shell, thereby further minimizing what Dow has identified as red flags.

In sum, the Court concludes that Dow's suspicions regarding HRD's potential to use disclosures in this case in violation of the Iranian Transactions Regulations are based on speculation, and therefore, those suspicions are insufficient to warrant entry of a protective order. Accordingly, the Court will deny Dow's Motion For A Protective Order Regarding HRD's Exporting To Iran.

C. <u>Whether Dow Is Entitled To A Protective Order Regarding HRD's Non-Independent Expert And Approval Procedure For Independent Experts</u>

The Court has reviewed the circumstances related to Dow's request for modification of the Protective Order and concludes that Dow has not demonstrated good cause justifying a modification. Dow was aware of HRD's trade-secret counterclaims well before the parties entered into the January 2006 Protective Order. Dow was also aware of Mr. Borsinger's involvement in this case.

Among other cases, Dow relies on Safe Flight Instrument
Corp. v. Sunstrand Data Control, Inc., 682 F. Supp. 20, 22 (D.
Del. 1988), for the proposition that company "insiders" cannot
mentally segregate confidential information from the party they
represent.  However, in Safe Flight, the individual whose access
to documents was questioned was the president of the company.  In
contrast, Mr. Borsinger is not an officer or employee of HRD and
is a part-time consultant.

Dow also raises concerns that disclosure of its documents to
HRD will place Dow at a competitive disadvantage.  In the Court's
view, however, Dow's concerns are speculative.  HRD has
represented to the Court that its facilities are not capable of
producing metallocene wax and are only capable of refining
polyethylene.  Metallocene wax production is highly specialized
and costly, and Dow has patent protection for its work in this
area.  In these circumstances, the Court concludes that Dow has
not shown a clearly defined and serious injury justifying
modification of the Protective Order, and the Court is persuaded
that the prejudice HRD would suffer if it were not permitted to
share Dow's disclosures with Mr. Borsinger outweighs Dow's
concerns.

Further, the Court concludes that the structure of the
current Protective Order is sufficient to address Dow's concern's
regarding production of sensitive material to the Hassans.  Under

9

the terms of the Protective Order documents are separated into
two designations, "Confidential" and "Highly Confidential."
Information marked "Confidential" may be viewed by the parties'
employees and owners; however, information marked "Highly
Confidential" is restricted to the parties' counsel, experts and
consultants.  Thus, Dow can adequately regulate the information
shared with the Hassans through this mechanism.  Accordingly, the
Court will deny Dow's Motion For A Protective Order Regarding
HRD's Non-Independent Expert And Approval Procedure For
Independent Experts.

     D.   <u>HRD's Motion To Compel</u>

     In relevant part, Federal Rule of Civil Procedure 26
provides that the "[p]arties may obtain discovery regarding any
matter, not privileged, that is relevant to the claim or defense
of any party."  As long as the information sought is reasonably
calculated to lead to the discovery of admissible evidence it is
discoverable, even if it is ultimately not admissible at trial.
In the Third Circuit, "it is well recognized that the federal
rules allow broad and liberal discovery."  <u>Pacitti v. Macy's</u>, 193
F.3d 766, 777-78 (3d Cir. 1999) (citations omitted).

     Dow's primary objections to HRD's document requests concern
the Iranian export issue and the disclosure of sensitive
confidential information to Mr. Borsinger.  The Court has
addressed both of these objections in the context of Dow's

related Motions For Protective Order and concluded that Dow is

not entitled to a protective order shielding the discovery sought

by HRD.  Accordingly, the Court will grant HRD's Motion To

Compel.

NOW THEREFORE, IT IS HEREBY ORDERED that:

1.   The Motion To Compel (D.I. 71) filed by HRD Corporation

is **GRANTED**.

2.   The Motion For A Protective Order Regarding HRD's

Exporting To Iran (D.I. 72) filed by Dow Chemical Canada Inc. and

The Dow Chemical Company is **DENIED**.

3.   The Motion For A Protective Order Regarding HRD's Non-

Independent Experts And Approval Procedure For Independent

Experts (D.I. 77) filed by Dow Chemical Canada Inc. and The Dow

Chemical Company is **DENIED**.

  May 25, 2007                     _____
       DATE                        UNITED STATES DISTRICT JUDGE