# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA INC. on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| HRD CORPORATION (d/b/a Marcus Oil & Chemical) | ) ) )  Case No. 05-023 (JJF) ) |
| Defendant, Counterclaim Plaintiff, | ) ) ) |
| v. | ) ) |
| DOW CHEMICAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY, | ) ) ) ) ) |
| Counterclaim Defendants. | ) |

## DOW'S SUPPLEMENTAL PAPER IN SUPPORT OF ITS
## OPPOSITION TO HRD'S SECOND MOTION TO COMPEL AND FOR SANCTIONS

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | Kenneth J. Nachbar (#2067) |
|  | Samuel T. Hirzel (#4415) |
| OF COUNSEL: | 1201 N. Market Street |
|  | Wilmington, DE  19899-1347 |
| Harry J. Roper | (302) 658-9200 |
| Raymond N. Nimrod | *Attorneys for Plaintiff* |
| Aaron A. Barlow | *The Dow Chemical Company* |
| JENNER & BLOCK LLP |  |
| 330 N. Wabash Ave. |  |
| Chicago, IL 60611 |  |
| (312) 222-9350 |  |

Dated:   January 11, 2008

1. Dow submits this paper in further support of its opposition to HRD's second motion to compel. In its initial opposition, Dow pointed out that HRD never engaged in a good faith meet and confer on the issue of redactions, which burdened this Court with a likely unnecessary motion. HRD's actions since then confirm that HRD still has not conducted a proper meet and confer under Local Rule 7.1.1.

2. To conduct a good faith meet and confer, the parties would need to discuss the very issue raised in HRD's motion, namely whether the redacted information relates to issues in the case. For its part, Dow would need to identify the categories of information that it redacted-- and it has done so. HRD on the other hand would need to explain its basis for alleging that a category of redacted information somehow related to an issue in the case. In light of those explanations, the parties could then discuss whether certain information should be unredacted. However, the parties' recent discussions and correspondence confirm that HRD is either unwilling or unable to provide any good faith explanation as to why it needs discovery of the redacted information. Therefore, as Dow suspected, HRD is likely using its motion to compel completely irrelevant information as a way to pressure Dow by putting its trade secrets at risk.

3. Subsequent to the completion of briefing on HRD's second motion to compel, Dow requested that the parties discuss the potential relevance of the categories of redacted information. (Ex. 1, 2). As Dow pointed out in its initial filing, HRD's very first attempt at explaining the relevance of any of the categories of redacted information was in its motion to compel. Prior to that motion, HRD refused to provide any explanation at all. Dow's opposition demonstrated that HRD's motion did not contain any support for the relevance of the redacted information and that the parties had never conducted a proper meet and confer. (D.I. 98).

4. In a telephone conference held at Dow's request on September 28, 2007, the parties discussed HRD's basis for contending that categories of redacted information were relevant to the lawsuit or otherwise discoverable. (Ex. 3, 4). Obviously, without knowing the basis for HRD's contention that the information is relevant, Dow could not evaluate whether it

1

should unredact this category of information. However, HRD's counsel could not explain why the redacted information was relevant. Throughout the parties' telephone conference, instead of attempting to articulate any basis for the relevance of the categories of information redacted by Dow, HRD's attorney deferred to his expert's alleged blanket statement that the information redacted by Dow might be relevant to the case. (Ex. 4).

      5.      For example, HRD sought to unredact information relating to blenders. (D.I. 95 at ¶ 12). Dow explained to HRD that the blenders were not used to manufacture HRD's products, and requested that HRD explain in good faith how the redacted blender information could possibly have any bearing on this case. (Ex. 4). HRD's attorney was unable to articulate any basis for the relevance of the blender information. Dow sent HRD a letter further explaining why blender information could not be relevant, and HRD's counsel responded, but did not provide any basis for contending that the blender information was relevant. (Exs. 5, 6). However, significantly, HRD has refused to drop its demand that Dow unredact the blender information.

      6.      During the parties' telephone conversation, the parties also discussed HRD's contention that redacted information relating to Dow's catalysts and reactor conditions was potentially relevant. HRD's attorney once again could not explain how this information was potentially relevant. Dow confirmed in a subsequent letter that HRD's attorney could not articulate any reason for the relevance of the catalyst/reactor information, but instead was relying on the conclusory statements of its experts. (Ex. 5). In response, HRD's attorney did not dispute that he was unable to explain the relevance of this information to issues in the case. (Ex. 6).

      7.      Merely relying on an expert's conclusory statements of relevance without providing any explanation as to why this information is relevant does not fulfill the obligation to meet and confer. Nor does it assist in an attempt to resolve the dispute in good faith.

      8.      When it became clear that HRD's attorneys were unable to explain any basis for the relevance of any of the redacted information, Dow proposed a meeting with the experts to discuss the potential relevance of any of the categories of redacted information. (Ex. 3).

2

9. HRD agreed to consider Dow's proposal, but never confirmed any of the dates Dow proposed. Eventually, HRD refused to meet, and claimed that its experts need access to every document, in unredacted form, to which Dow employees have had access. Dow sent two letters to HRD confirming that Dow's witnesses will only have access to the same documents in the same form as HRD's experts. (Exs. 4, 5). HRD's counsel still refused to meet, and despite the fact that he did not deny that he was unable to articulate any basis for the relevance of the information redacted by Dow, he stated that he did not know what could be accomplished at a meeting of the experts. (Ex. 6). Dow explained once again that the purpose of the proposed meet and confer would be to allow HRD's experts to discuss any basis they have for believing that any of the categories of redacted information are relevant, so that Dow could potentially make a decision to unredact certain information. (Ex. 7). HRD did not respond.

10. HRD's reasoning for refusing to meet with Dow is disingenuous. Dow employees obviously have personal knowledge of an assortment of products and processes that are not related to this litigation, but will only see documents in the same form as HRD's witnesses in preparation for depositions or trial. Dow's experts will also only be shown documents in the same form as they are produced to HRD, so both parties' experts will have access to the same information.

11. HRD clearly failed to engage in good faith meet and confers regarding the redactions at issue in this case. By failing to do so HRD appears to be using its motion in an attempt to force Dow to engage in unnecessary discovery as a litigation tactic. The Court should deny HRD's second motion to compel.

                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                          */s/ Kenneth J. Nachbar*
                          Kenneth J. Nachbar (#2067)
OF COUNSEL:              Samuel T. Hirzel (#4415)
                          1201 N. Market Street
Harry J. Roper              Wilmington, DE  19899-1347
Raymond N. Nimrod     (302) 658-9200
Aaron A. Barlow          *Attorneys for Plaintiff*
JENNER & BLOCK LLP    *The Dow Chemical Company*
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

Dated:   January 11, 2008

4