# EXHIBIT A

1

1              IN THE UNITED STATES DISTRICT COURT

2            IN AND FOR THE DISTRICT OF DELAWARE

3                         - - -

4   DOW CHEMICAL CANADA, INC.      :      CIVIL ACTION
                                   :
5                                  :
            Plaintiff              :
6                                  :
         vs.                       :
7                                  :
    HRD CORPORATION                :
8                                  :
            Defendant              :      NO. 05-23 (JJF)
9
                            - - -
10
                                   Wilmington, Delaware
11                                 January 23, 2008
                                   9:30 o'clock, a.m.
12

13                          - - -

14  BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.

15                          - - -

16  APPEARANCES:

17          MORRIS, NICHOLS, ARSHT & TUNNELL
            BY:  KENNETH NACHBAR, ESQ
18
                    Counsel for Plaintiff
19
            POTTER, ANDERSON & CORROON
20          BY:  W. HARDING DRANE, JR., ESQ

21
                    Counsel for Defendant
22

23                                 Leonard A. Dibbs
                                   Official Court Reporter
24

25

1                    P R O C E E D I N G S.

2              (Proceedings commenced at 9:32 o'clock a.m.)

3              THE COURT:  Good morning.  Be seated, please.

4              All right.  We're here in the matter of 05-23.

5              Do you want to announce your appearances.

6              MR. NACHBAR:  Ken Nachbar, Morris, Nichols, Arsht

7    & Tunnell here on behalf of the DOW plaintiffs, Counterclaim

8    Defendants.

9              MR. DRANE:  Harding Drane from Potter, Anderson &

10   Corroon for the defendant and counsel for Counterclaim

11   Plaintiff HRD.

12             THE COURT:  All right.

13             This is a motion filed on an emergency basis by

14   DOW alleging various acts by HRD which DOW claims to be

15   unlawful to the extent that they are criminal in nature and

16   in some respects involves extortionist conduct.

17             Mr. Nachbar?

18             MR. NACHBAR:  Yes, your Honor.

19             Our position is that in our motion -- one of the

20   things I enjoy about the practice of law is that you always

21   get to see new things.  And in 27 years of practice, in doing

22   corporate cases of this type, this is conduct the likes of

23   which I have never seen before.

24             We had settlement discussions.  They didn't go

25   the way the plaintiff -- Counterclaim Plaintiff would have

1   like them to go.  And we get a letter saying we believe that

2   you violated Sarbanes Oxley by not disclosing the 2.6 billion

3   dollar damage claim in this very case, the one that they are

4   trying to get us to pay them money on.

5         Now, the background is that we submitted

6   interrogatories saying where did you get this 2.6 billion

7   dollar figure from.

8         This is a contract that was like a $10,000,000

9   contract.  It was terminable for a $7,000,000 payment.  It's

10  that order of magnitude.

11        2.6 billion dollars is sort of from our

12  perspective, way out of left field.

13        . As a litigant, we're entitled to get information

14  about damages claimed.  That is what discovery is about.

15  It's about ferreting out, uncovering the basis for peoples

16  litigation contentions.

17        So, we get pretty much stonewalled on discovery.

18  The answer that was given is in our papers.  It's very plain,

19  can we assume we would have had a 50 percent share of some

20  market.  It's 2.6 billion dollars based on profit margin from

21  what we can tell is completely out in left field.  It's

22  literally, you know, one paragraph to justify a 2.6 billion

23  dollar claim.  We said what's the basis for this claim.

24        Rather than answer the interrogatory and go

25  through it, they prepare a letter for submission to our

4

1  auditors saying that geez, it looks like there's a violation

2  of Sarbanes Oxley here, you know, how can DOW justify not

3  disclosing our 2.6 billion dollar claim.

4          They don't send that letter to Delotte and

5  Touche.  Had they merely sent the letter, you know, we

6  probably wouldn't have been here.

7          In fact, we sent the letter to Delotte-Touche.

8  Delotte already has it.  As soon as we received it we gave it

9  to our auditors.  That was not the type of thing that DOW was

10  going to sit on.

11          Rather than sending it to our auditors, they sent

12  us a letter and left several voice mails for us saying if you

13  don't get reasonable in settlement this is what we're going

14  to do.  We're going to disclose this letter to your

15  auditors.  We've got investigative reporters from the Wall

16  Street Journal.  We're going to sic them on you.

17          Then we have events scheduled up for Wednesday,

18  Thursday and Friday, further mischief.

19          That is extortion.  That's the definition of

20  extortion.

21          They want to get us to make a better settlement

22  offer.  Instead of sitting down and convincing us that, you

23  know, here's our damage claim; here's what it is, here's the

24  basis for it, and if you go to Court you might lose, so it's

25  in your interest to settle.

1       That's how responsible people do it.  That's not

2   what they did.  Instead they said, well, we have a 2.6

3   billion dollar damage claim.  We're not going to tell you the

4   basis for it, instead we're going to go through investigative

5   reporters at the Wall Street journal.  We're going to go to

6   your auditors.  We're going to go to the Wall Street

7   Journal.  We're going to go to the investment community and

8   we're going to wreak havoc for you unless you get more

9   generous in your settlement offer.  That's extortion.  Plain

10  and simple.

11      They are threatening to make claims that we have

12  violated the federal securities law, specifically, the

13  Sarbanes Oxley Act if we don't became more accommodating to

14  them in settlement.

15      Where we go from here is the question.  We've

16  asked for very, very modest relief.  All we've asked for is

17  discovery that we're entitled to anyway, frankly.

18      We want to take the depositions of the Hassan

19  brothers.  We want to take the deposition of their CFO who is

20  also involved in these communications.  And we want to find

21  out the basis for their damage contentions and also find out

22  more about what we consider to be acts of extortion.  And we

23  want that for two reasons.

24      First, we're entitled to it as a matter of

25  discovery.  As a civil litigant we're entitled to know the

1    other side's damage contention.  They haven't answered

2    interrogatories.  They refuse to.  Let's get their

3    depositions.  Let's get them under oath.  We also would like

4    the document and then the interrogatory response as well --

5    let's find out what this damage claim is about.

6              We're entitled to that as a civil litigant and it

7    will move this case forward.

8              If they have a real 2.6 billion dollar damage

9    claim, my client isn't stupid, I think that would cause us to

10   modify our settlement posture.

11             If, on the other hand, as we suspect, there is

12   absolutely no basis for the damage claim, I would hope that

13   the Counterclaim Plaintiff would modify its damage position.

14   I think that's discovery that is appropriate, in any case.

15             The second reason is that it's appropriate.  Now

16   this has been elevated to our auditors.  It has been put out

17   there, not publicly yet, but it certainly is before this

18   Court and certainly before our auditors.  And our auditors

19   are going to be asking us what's the basis for this claim, if

20   there's a basis for it.  We don't think there is.  But we

21   would like to know what the facts are so that we can comply

22   with the securities laws.  That's the relief we seek.

23             I think it's very modest relief under the

24   circumstances, and it's entirely appropriate.

25             I think the conduct here is outrageous, the likes

1   of which I have never seen during my 27 years of practicing
2   law.  I have never seen anybody do this.  That's what makes
3   law interesting, always something new.

4              Unless your Honor has some questions, I'll let
5   Mr. Drane address the motion.

6              THE COURT:  All right.  Thank you.

7              Mr. Drane?

8              MR. DRANE:  Thank you, your Honor.

9              May it please the Court, I'm not sure exactly
10  where to start.  I don't think this is anything new in this
11  case.

12              Let me just step back for a minute and try to put
13  this in context.  This dispute that's been set forth in the
14  motion arises from communications between the parties.  It's
15  not something that the lawyers have been involved in.  And I
16  think this motion could have been obviated entirely if there
17  had been a meet and confer.  There was no meet and confer
18  about the discovery that they are talking about.

19              Mr. Nachbar did call me a day before he filed the
20  motion and asked if we would agree to the relief.  And I knew
21  nothing about any of the background.  It wasn't let's discuss
22  the discovery.  It was will you agree to the relief.  And we
23  don't agree to the relief.

24              I think we're lawyers.  We're here to try the
25  case.  We're here to do discovery.  They are entitled to

1    discovery on damages.  There's no question about that.  We're

2    prepared to give that to them.

3          We would look to litigate the case in an orderly

4    fashion.  I think your Honor has rendered a ruling about

5    redaction of documents and so on.

6          The 2.6 billion dollar damage claim is on HRD's

7    Counterclaim.  It's not on a contract claim.

8          When Mr. Nachbar mentioned the $7,000,000 clause

9    in the contract, that is in the contract DOW is suing HRD on,

10    that real doesn't relate to the Counterclaim.

11          Although, we didn't meet and confer and discuss

12    these things ahead of time, I have learned since we received

13    the motion the following:  This relates, I think, to some of

14    the statements in the declaration that they have filed along

15    with their motion.

16          There was a settlement meeting as I understand it

17    on January 6 of 2008.  On behalf of DOW there was a gentleman

18    there by the name of Kurt Swogger.  Dr. Swogger's name I

19    think is mentioned in the declaration.

20          I'm told that he retired from DOW as of the first

21    of this year.  He has been a key player throughout this

22    case.  Although, he's no longer officially a DOW employee,

23    I'm told he's a consultant and he has been engaged in

24    settlement negotiations with the Hassan brothers, the

25    brothers that everybody refers to them.

9

1          During that meeting on January 6, Dr. Swogger

2    said to the Hassan brothers apparently in these words or

3    similar words, DOW is going to bury you in legal fees.  You

4    will be bankrupt due to the countless motions that we will

5    file.

6          The Hassan brothers and HRD don't have the

7    billions of dollars that DOW has.  Rightly or wrongly, I

8    think this letter arose out of an attempt to try to level the

9    playing field.

10          I think that HRD's view is that DOW has released

11    press releases in this litigation both when they cancelled

12    the contract and when they sued HRD.  At least in HRD's view

13    this letter was simply responding to some degree in kind.

14    This was a way to try to lower the heat.

15          There are allegations here of extortion and

16    allegations of securities fraud, I think was the term.  There

17    is nothing like that.  If you look at the letter --

18          Let me say first of all, the letter has not been

19    sent either to Delotte or to the Wall Street Journal.

20          If you look at the letter, it's attached to Mr.

21    Levinson's declaration as exhibit C.  I think it really poses

22    a question.  It mentions the 2.6 billion dollar

23    Counterclaim.  It mentions the annual statements, the SEC

24    filings of DOW.  It says that Sarbanes, I guess, referring to

25    Sarbanes Oxley Act, is intended to create more transparency

1    and concludes by saying I would appreciate a response as to

2    why this potential liability was not included in the SEC

3    filings.

4              There is no allegation that they have violated

5    Sarbanes Oxley.  It's a question.  And I would guess that

6    companies, particularly in litigation, get these questions

7    all the time.  They write back to investors and others and

8    saying management has looked at this claim and we've

9    concluded the following, either it's material or not

10   material.

11             If you look at the letter it simply doesn't

12   support the kind of, I think, outside rhetoric that has been

13   used here.

14             So, I think it was attempt, a modest attempt

15   perhaps to try to level the playing field.  In any event, I

16   do agree with Mr. Nachbar where do we go from here.

17             Although there was no meet and confer before this

18   motion was filed, Mr. Ferebee, who is my co-counsel for HRD

19   who was not involved in any of these decisions here,

20   contacted Mr. Barlow, who is the attorney at Jenner & Block

21   for DOW, and Mr. Nachbar's co-counsel, proposed a solution

22   which basically would say DOW would withdraw its motion, HRD

23   will not send the letters.  And I think most importantly, for

24   practical purposes, that all communications regarding

25   settlement from here on in are going to go through the

11

1  lawyers so we don't have this kind of, at least as a lawyer,

2  you know, this is not what we want to do in this case.

3        We want to try the case.  Get discovery.  We get

4  their documents that they have redacted, hopefully, either

5  unredacted or with explanation so that we can have full

6  discovery on our Counterclaim.  And they are, I think,

7  entitled to damages that we're claiming.

8        Mr. Ferebee has outlined for them in a letter,

9  you know, the basis of the 2.6 billion dollar claim.  It's

10  based on market share.  It's based on the value of certain

11  markets that I'm sure DOW understands and certain percentages

12  of those markets.  They may disagree with that.  They may say

13  those markets are not worth that much.  We disagree.  This is

14  not a claim.  That is something we can litigate about.

15        I think to try to intimidate HRD with charges of

16  securities fraud and extortion and criminal violation is sort

17  of an echo of a prior motion that was filed in this case

18  where there were allegations that there were violations of

19  export controls.

20        It turns out that the activity they allege was

21  something that DOW and HRD had done together and it was not a

22  violation of those laws.  I think we need to lower the

23  temperature.

24        I would suggest that the solution that Mr.

25  Ferebee has proposed is a good one.  And that is that we

12

1    lower the temperature.  We go forward with discovery and we

2    litigate the case on its merits rather than with too high a

3    temperature on really extraneous matters.

4              My proposal, your Honor, would be that we go

5    along the lines that Mr. Ferebee has suggested.  Mr. Nachbar

6    had not seen the letter yet.  I don't mean to make him take a

7    position here.  He indicated at least on an initial basis

8    that that was not an acceptable proposal.

9              If it's not an acceptable proposal and we need to

10   go forward on this motion, I guess I would ask for sometime

11   -- additional time to respond to it.

12             It's sort of a funny motion in the sense that

13   says it's a report to the Court.  It really is a motion to

14   compel discovery.  It exceeds the four page limit that your

15   Honor had set, eleven or twelve pages.

16             As I say, there was no meaningful meet and

17   confer.  I would suggest if we can't make the motion go away,

18   at least the parties be required to meet and confer and

19   certify they have done so and unable to reach accommodation

20   and that then they either refile their motion in four pages

21   or ask the Court for additional pages to exceed that and then

22   have a schedule where we can respond to it.  Hopefully, we

23   won't have to do that.

24             THE COURT:  Thank you.

25             Who is your corresponding counsel?

1         MR. DRANE: My corresponding counsel is William.

2  C. Ferebee of the firm of O'Donnell, Ferebee, Medley &

3  Keiser. He represents HRD, the defendant. He's based in

4  Houston. He was here during the mediation with Judge Thygne.

5         THE COURT: What I understand from listening to

6  you this morning and also from reading the papers is that

7  apparently DOW and HRD through Dr. Swogger and one of the

8  Hassan brothers had a meeting which is fairly described as

9  part of an ongoing process to try and settle the litigation?

10        MR. DRANE: That's correct.

11        THE COURT: Now, that meeting was known or

12  unknown to the attorneys?

13        MR. DRANE: The attorneys were not involved in

14  that.

15        I guess I don't know for sure that the attorneys

16  on both sides were not aware that generally the clients were

17  talking. I suspect, although, I don't know, attorneys on

18  both sides were aware that they were talking. The attorneys

19  were not involved in those discussions -- at least the

20  attorneys for HRD were not. I don't know about the DOW

21  attorneys.

22        THE COURT: As I understand it, whether or not

23  there was awareness, can I understand that there was no

24  discussion about the substance that would be present at that

25  meeting with the attorneys in the case?

1          MR. DRANE:  That's my understanding, your Honor.

2          THE COURT:  They have this meeting between the

3    parties and allegedly Dr. Swogger says we'll bury you with

4    depositions.  Now, he's not a lawyer?

5          MR. DRANE:  That's my understanding, your Honor.

6    He's some sort of executive, an executive with DOW and now a

7    consultant since the first of the year.

8          THE COURT:  Your clients, I guess in the exchange

9    say some things back, whatever.  Then there's this email that

10   follows up with this proposed attached letter?

11         MR. DRANE:  Yes.

12         THE COURT:  Now, we as lawyers understand that

13   the kind of allegation that's in the letter that was

14   forwarded is Sarbanes Oxley and that some of the other SEC

15   rules have criminal penalties attached to it.

16         So, in the corporate world today being advised

17   that you face some sort of information being relayed to the

18   quote unquote authorities, to read the literature out there,

19   strikes fear in the heart of corporate executives.

20         Your view is that the letter is a suggestion, not

21   an act?

22         MR. DRANE:  Yes, your Honor.

23         THE COURT:  Here's the important part.

24         Whether it's a fair or unfair characterization,

25   we would understand that as lawyers you could never use the

15

1    threat of a criminal prosecution to advantage a position or

2    to relate to a position in a pending civil lawsuit.

3             MR. DRANE:  That's correct.

4             THE COURT:  That's the kind of thing that raises

5    the flag here.  And it was hard to tell from the papers

6    whether attorneys were involved or not involved.

7             MR. DRANE:  They were not.

8             THE COURT:  I'm taking for todays purposes that

9    they weren't involved.  I'm also going to assume that DOW in

10   some way reported this lawsuit.  I know when I represented

11   government and one publicly traded company, there was a

12   lawsuit, the auditors ask you to write up a little

13   paragraph. You don't have to even assess the damages.  You

14   have to tell them that it existed and this is what you are

15   doing.

16            I'm assuming to that minimal degree the lawsuit

17   was not a hidden fact and a off the book contingent

18   liability.

19            Would you growth agree with that?

20            MR. NACHBAR:  Yes, your Honor, absolutely.

21            Indeed we sent the letter on to Delotte.  They

22   got it a day after.

23            THE COURT:  That letter would be racheting up the

24   litigation of any kind, any part of an audit that would

25   disclose the existence of the lawsuit.  Anybody looking at it

16

1    could look at the docket and see what was going on.

2           We all understand and Mr. Drane agrees that if

3    lawyers were involved in this, it would be a different set of

4    facts because it would be that effort to raise the heat level

5    by threatening a criminal referral to in some way gain a

6    civil advantage.

7           I don't think that's the case here.  I accept

8    your representation.  I think a fair reading of what went on

9    is that its some business people getting involved in a heated

10   discussion at a settlement effort.

11          Now, but it does -- we can put that aside and we

12   could assume that Mr. Hassan doesn't know a whole lot about

13   the practice of law and Dr. Swogger doesn't know a whole lot

14   about the practice of law or the court system because as you

15   both know, if someone did what Dr. Swogger is suggesting,

16   there are remedies in Court that would reduce them to short

17   pants very quickly and the ability to try and bury the other

18   side with senseless motions would became quite expensive for

19   the party that brought them.  They would pick up a lot of

20   court costs and attorneys' fees.

21          I think the way to resolve the impasse that is in

22   place is to get to the bottom of what supports -- whatever

23   the damage claim of HRD is by way of its Counterclaim which

24   is aside from the contract claims of DOW and HRD.

25          So, I'm going to order that the parties get

1   together.  And I will allow both sides the freedom to

2   negotiate with lawyers about what discovery is necessary to

3   try and understand the assertion of the Counterclaim amount

4   and the Counterclaim in principal.

5           It seems to me that probably it's going to be in

6   the range that you already, between yourself, Mr. Drane, and

7   Mr. Nachbar talked about, a couple of depositions, if any

8   document production, and if there is any expert floating

9   around there who is willing to talk about what the market

10  loss can be calculated to be.

11          I'm going to let you come up with that discovery

12  compromise.  If you can't agree on what the discovery should

13  be, then you'll come back to me, you'll present your counter

14  proposals and I will decide the disputes.

15          It seems to me from the little bit I read, the

16  HRD position in settling with DOW is largely contingent on

17  their pushback of this couple billion dollar claim.

18          I think once that is kind of ferreted out, it

19  will possibly facilitate one way or the other, more

20  meaningful settlement discussions.

21          MR. DRANE:  I think that's very reasonable, your

22  Honor.  We certainly would accept that.

23          THE COURT:  We'll retire this motion with the

24  understanding that my last words would be somebody ought to

25  inform the litigants that there are serious consequences for

1   these kinds of effort on both sides, that I would take that

2   kind of conduct, particularly the part about threatening a

3   criminal action, very seriously and it would make this

4   lawsuit look like a pitbull compared to a boil.  And

5   sometimes we as lawyers have to help our clients understand

6   that.

7          You don't have to tell them you're saying it. I

8   want to make it clear it's me saying it.  They ought to get

9   away from that and get to work toward factual discovery that

10  will allow people to rationally discuss the lawsuit whether

11  to settle or get to trial.

12          Is there anything that I could add to move it

13  along?

14          MR. DRANE:  No, your Honor.  I think that's very

15  helpful.  I don't want to predict how these decisions will

16  go.

17          I guess one difficulty I have is in giving them

18  full discovery on the damages at this point.  We don't have

19  all the discovery from them that relate to our allegation of

20  misappropriation.  That is something we'll talk about.

21          THE COURT:  It's better for the two of you who

22  are rational Delaware attorneys to sit down and have that

23  exchange.  You can probably go so far and then Mr. Nachbar

24  probably has to give you a little information so you can get

25  the rest.  That's for you to work out.

1    Again, if you can't agree because of the clients

2  or corresponding counsel have different views, then come back

3  to me.  I'll take the competing views.  I'll sort it out.

4  I'll make what I think in this kind of litigation is the

5  worse decision available, an arbitrary decision.  What do I

6  know?  I have 300 cases.  I'll listen to you.  I'll say okay,

7  on that date that was my best judgement.  Not the best way

8  for litigants to get things resolved.

9    I can do that for you and in short order.  I got

10  you here pretty quickly this morning.  I want you to get on

11  with that discovery.  I think it will facilitate moving the

12  case.  I can get you back quickly.

13    MR. DRANE:  Thank you very much, your Honor.

14    MR. NACHBAR:  Thank you very much, your Honor.

15  One thing I need to say for the record.

16    We don't concede that Dr. Swogger said the things

17  that are attributed to him.

18    That's the first I heard of it.  There is no

19  affidavit.  I understand your Honor's ruling.  That's fine.

20  Just for the record, I need to say there's no evidentiary

21  support for such a statement.  I don't know if it was made or

22  not. I suspect it wasn't.  I don't actually know.

23    THE COURT:  Did you just call Mr. Drane a liar?

24    MR. NACHBAR:  No, not at all.

25    THE COURT:  I understand what you're saying.  I

1    don't know either.  You take what you have at the moment.  It

2    sounds like it was pretty heated on both sides.  In your 27

3    years of litigation you probably have heard I'll bury you

4    with litigations costs?

5                MR. NACHBAR:  I have heard that, absolutely.

6                THE COURT:  That is not an unknown assertion.

7    Whether Swogger said it, I don't know.  I was putting it in

8    context for where I want you to go.

9                MR. NACHBAR:  I understand that.

10                THE COURT:  We don't want to disdain Dr. Swogger

11    at a hearing.

12                MR. NACHBAR:  Exactly.

13                If somebody wants to make an accusation, they

14    should at least put it in affidavit and under oath with

15    penalty of perjury.  That didn't happen here.  That's my only

16    point.

17                THE COURT:  I agree with you.

18                I used to do this every day.  After 37 years of

19    practice it continues to amaze me, people try.

20                I actually am amazed, not on this Court but when

21    I read some things that other courts do.  I don't understand

22    any of it.

23                There is a timely article in the periodical,

24    literature.  It's one of the ABA Journals of recent vintage.

25    What is causing all this?  Is it the money that has to change

1  hands between clients?  Is it the volume of cases?  Is it the

2  laxity of civility among attorneys?

3            One of the people suggested that it's our fault,

4  the judges fault because we're not willing to enforce, when

5  appropriate, the kind of rules that would stop these kinds of

6  things.  It's a really interesting article.

7            Of course, it talks about the stress on you

8  lawyers because of the way the practice has escalated in the

9  wrong kind of direction and how difficult it is in today's

10  world.

11            It motivated me.  I'm going to go down to the

12  Richmond court in DC to give a talk about this very thing.

13            I do see it.  You've both been around long enough

14  to see how it has changed.

15            I was reading a Chancery Court case.  I'm like

16  shocked about everything in the opinion.  I just don't get

17  it.

18            I think you two are reasonable enough to get this

19  done.  If you can't, get back to me and I will get the

20  decided for you.  Maybe we can ratchet down the heat in this

21  case and get it to point where you can get it to trial or get

22  the information you need to the extent that you can settle

23  it.

24            Okay?

25            MR. DRANE:  Fine, your Honor.  I would like to

22

1  say that we haven't submitted an affidavit. We haven't had a

2  chance to submit one. I don't know that we wouldn't say that

3  or the client wouldn't say something under oath.

4          I don't know. Mr. Nachbar me he hasn't talked to

5  Dr. Swogger, your Honor.

6          MR. NACHBAR: I have not, your Honor.

7          My only point was that we're all assuming for

8  purposes of this argument that Dr. Swogger said what is

9  attributed to him.

10         Your Honor's ruling is fine. I'm not seeking to

11 change it in anyway. My only point is that I don't know if

12 Dr. Swogger said that. Mr. Drane doesn't know other than his

13 clients non-sworn say so and your Honor doesn't know.

14         THE COURT: I appreciate your thinking my ruling

15 is fine. That will allow me to sleep tonight.

16         I understand what you're saying. Mr. Drane is

17 trying to respond. We don't need that here. I'm going do

18 retire the motion. We're going to move on and try to get it

19 done. I do want you to instruct your clients though that

20 this kind of thing on either side, if it did occur, is not

21 something that can be countenanced, particularly in a Federal

22 Court. I would jump all over it if the came back and I

23 thought lawyers were involved and it wasn't just uninformed

24 clients action.

25         I think it was you, Mr. Nachbar, where I had one

1   of my fund experiences as a Federal Judge.

2            Were you the one involved when everybody was

3   running to Chancery in those hostile takeovers.  They would

4   run over here to get the order signed?

5            MR. NACHBAR:  I was involved in many of those.

6            THE COURT:  I said one time I wasn't going to

7   sign them anymore.  Was it you?  I did sign it.  That was the

8   last one I signed.  The last one the Court did.

9            Do you remember your persuasive argument?

10           MR. NACHBAR:  I don't.

11           THE COURT:  Let this end on somebody elses case.

12           You argued we take the position on somebody elses

13   watch.  I don't need to take this back to the client now that

14   there is notice out there.

15           We stopped that practice, actually, which was

16   again another thing that was winding the clock and made no

17   sense.

18           Hopefully, you'll get this resolved.  I'll look

19   for your letter that says you resolved it and you're on to

20   the discovery or your letter that says you need to get back

21   to see me so we can resolve whatever the disputes are.

22           MR. DRANE:  Thank you, your Honor.

23           MR. NACHBAR:  Thank you, your Honor.

24           THE COURT:  Okay.  Thank you.

25           We stand in recess.

24

1                Court proceedings concluded at 10:07 o'clock

2    a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

## Drane, Jr. W. Harding

**From:** Nachbar, Kenneth [KNachbar@MNAT.com]
**Sent:** Friday, January 25, 2008 12:12 PM
**To:** Drane, Jr. W. Harding
**Subject:** RE: Dow v. HRD

Hardy,

I have not heard anything from you beyond the e-mail below. If there is some problem with the breadth of the discovery that we have propounded, please tell us, *now*, what it is. If you do not contest the breadth of that discovery, please tell us when we can expect to receive documents and interrogatory responses, and when and where the deponents will be available. I continue to think that it is important to resolve the matter this promptly, and I am available to do so.

Ken

---

**From:** Drane, Jr. W. Harding [mailto:wdrane@potteranderson.com]
**Sent:** Wednesday, January 23, 2008 6:04 PM
**To:** Nachbar, Kenneth
**Subject:** RE: Dow v. HRD

Ken:

I am getting ready to go to a board meeting this evening. I do not expect to be able to discuss your lengthy email with my clients and co-counsel until at least sometime tomorrow. I did not hear the Court say that we needed to resolve this matter on an emergency basis as you seem to suggest, but I will try to get back to you promptly.

Hardy

---

**From:** Nachbar, Kenneth [mailto:KNachbar@MNAT.com]
**Sent:** Wednesday, January 23, 2008 5:49 PM
**To:** Drane, Jr. W. Harding
**Subject:**

Hardy,

In court today, Judge Farnan ruled that Dow may have discovery on counterclaimant's $2.6 billion damage claim. The *only* discovery we seek are are (i) a full response to a single interrogatory; (ii) documents responsive to four document requests and (iii) the depositions of Aziz Hassan, Abbas Hassan and Craig Cawley, all of whom have apparently been involved in assertion of HRD's damages and the events that led to our recent report and motion. In addition, if your $2.6 billion claim is based on expert advice, then we need to depose your expert(s), as Judge Farnan suggested. As the transcript from today's hearing confirms, Judge Farnan said that the appropriate discovery was likely to be " in the range that you already, between yourself, Mr. Drane, and Mr. Nachbar talked about, a couple of depositions, if any document production, and if there is any expert floating around who is wiling to talk about what the market loss can be

calculated to be." Tr. at 17. Judge Farnan indicated that the parties should confer and try to agree upon the appropriate discovery. *Id.* Judge Farnan emphasized that he was able to get the parties together quickly in response to the emergency motion, and would resolve any dispute between the parties about the scope of discovery "in short order." *Id.* at 19

Thus, I was very surprised to receive your voice mail proposing that the parties meet to discuss the appropriate scope of discovery on February 11 or February 13 - just over, or just under, three weeks from now. That is simply too long to wait to even discuss this matter.

The issues to be discussed are not complicated. We have one very straightforward interrogatory, four straightforward document requests and depositions of just three of deponents, who we believe to be knowledgeable concerning the damage claims, and who we *know* are knowledgeable concerning the matters alleged in our emergency motion. If there is some problem with the scope of this discovery, we can talk about that this evening, tomorrow or Friday. There is simply no reason to delay matters for three weeks to have an in-person meeting that multiple lawyers need to travel on airplanes to attend.

In court, you indicated that you may need discovery from Dow to respond to our discovery. There is no basis for this contention. Your client has asserted a $2.6 billion damage claim, and has essentially threatened my client with criminal sanction if it does not properly disclose that claim. Your client *did not* say that it *might* have a $2.6 billion claim, depending on what Dow's documents show. Rather, your client elected to assert a *present, liquidated* claim for $2.6 billion. We are entitled to know the basis for that claim. That claim, by definition, can not depend upon future occurrences, including your receipt of documents from Dow.

If there is some problem with the breadth of the discovery that we have propounded, please tell us, now, what it is. If you do not contest the breadth of that discovery, please tell us when we can expect to receive documents and interrogatory responses, and when and where the deponents will be available. I think it is also important to resolve the matter this week, and I am free to talk at virtually any point tonight, tomorrow or Friday to try to do so. You may call me in the office at 203-351-9294, or at home at 302-234-9313.

Ken

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents

or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

# EXHIBIT C



**W. Harding Drane, Jr.**
Partner
Attorney at Law
wdrane@potteranderson.com
302 984-6019  Direct Phone
302 778-6019  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

January 25, 2008

**BY EMAIL AND HAND**
Mr. Kenneth Nachbar
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Re:    Dow Chemical Canada, Inc. v. HRD Corporation; C.A. No. 05-23 (JJF)

Dear Ken:

HRD is disappointed that you have rejected its proposal for a face to face meeting on February 11, 2008, to include Jenner & Block, you, Bill Ferebee, and me. I believe that a face to face meeting could resolve a number of existing discovery issues, and hopefully "lower the temperature" a bit. However, if Dow does not want to participate in such a meeting, HRD proposes to resolve your request for additional information on damages in one of the following two ways:

1. a. HRD will produce Craig Cawley, Abbas Hassan and Aziz Hassan for deposition in Houston, Texas, on Monday, February 11, 2008. These are the individuals you sought to depose in Dow's Motion. You should be advised in advance that Mr. Cawley does not have any knowledge about HRD's damage calculations. In addition, he is not an accountant or an economist and will not be designated as an expert witness in this case. Likewise, Abbas Hassan and Aziz Hassan are not accountants and are not economists. In addition, they will not be presented at trial as expert witnesses on the dollar amount of damages suffered by HRD.

b. The documents Abbas and Aziz used to calculate HRD's damages will be produced within five business days of when you make your selection of this option.

c. HRD will amend its Answer to Interrogatory 23 within five business days of your selection of this option.

OR

Mr. Kenneth Nachbar
January 25, 2008
Page 2

      2.  HRD will produce an expert witness who will testify regarding HRD's damages.  This witness can only be produced after Dow has provided, at a minimum, the following unredacted documents for review by HRD's expert:

      a.  Documents, including without limitation email correspondence between Dow and HRD, which set forth the additional manufacturing facilities Dow was willing to construct for HRD; and

      b.  Dow's sales of resin to the hot melt adhesive market for the years 2003-2007; and

      c.  Dow's share of the hot melt adhesive market for the years 2003-2007; and

      d.  Dow's gross sales and gross profits for sales to the hot melt adhesive industry for 2003-2008; and

      e.  Dow's use of the patent it filed simultaneously with the HRD patent application.

      The emails and other documents are relevant to show that HRD and Dow had active plans to expand the manufacture of wax products in accordance with the HRD damage model.  Items b, c, and d are relevant because Dow has actively sold resins for the hot melt adhesive industry for a number of years.  The resin is approximately one third of a hot melt adhesive and the wax is approximately one third of the hot melt adhesive.  Documents b, c and d are therefore important to show that HRD's projections of sales truly reflect what has occurred in the market for the last four years.  Item e is relevant to show that the development of the waxes as set forth in the patents is valuable and Dow continues to pursue this market.

      HRD has requested that Dow produce these documents, but Dow either has not produced them at all, or has produced them in redacted form that renders them meaningless or largely so.  Without the information listed above, any deposition of an expert would be premature, because he necessarily would answer every question "I don't have enough information to give you an opinion at this time."

      Please let me know which of these two alternatives Dow would like to pursue.

      On another matter, we have not had any response to our request to physically inspect the Sarnia facility where the waxes were manufactured.  When will Dow allow HRD to visit the site with its experts?

Mr. Kenneth Nachbar
January 25, 2008
Page 3

       In addition, the Court has ordered Dow to provide to HRD a page by page explanation of the reasons for each of its thousands of redactions. Perhaps we could agree the Dow will produce all of the documents in unredacted form and the parties would jointly ask the Court to find that the requirement of a page by page explanation is moot. In the alternative, perhaps we could agree that Dow would produce unredacted copies of certain categories of documents, thereby eliminating the need to provide explanations with regard to many of the documents.

       We look forward to receiving your response.

                     Sincerely,

                     W. Harding Drane, Jr.

WHD/mho

cc:    Aaron A. Barlow, Esquire (by e-mail)
       William C. Ferebee, Esquire (by e-mail)
       Michael Landrum, Esquire (by-email)

844590

# EXHIBIT D

FW: Dow

## Drane, Jr. W. Harding

| | |
|---|---|
| **From:** | Nachbar, Kenneth [KNachbar@MNAT.com] |
| **Sent:** | Monday, January 28, 2008 6:00 PM |
| **To:** | Drane, Jr. W. Harding |
| **Subject:** | FW: Dow |
| **Attachments:** | image-1281852-0001.pdf |

Hardy,

Please see attached.  Any word yet on deposition dates?

. Ken

&lt;&lt;image-1281852-0001.pdf&gt;&gt;

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

KENNETH J. NACHBAR
302 351 9294
302 425 3013 FAX
knachbar@mnat.com

January 28, 2008

**BY EMAIL AND BY HAND**

W. Harding Drane, Jr., Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19899-0951

Re:  Dow Chemical Canada, Inc. v. HRD Corporation
     Case No. 05-023 (JJF)

Dear Hardy:

As we discussed earlier today, we would like to opt for the general framework of your option 1 set forth in your letter of January 25, although we believe that it is too limited with respect to documents. Based on our discussion, you agreed to check on dates of availability for two days of depositions during the weeks of February 11th and 18th.

In view of your letter, we understand that there is no need for a deposition of a damages expert because HRD has not relied on any experts in calculating its $2.6 billion damages claim. In fact, we understand that HRD does not have an expert opinion on its damages claim at this point. Please let us know if our understanding is incorrect. Please also check with your client to determine if Mr. Borsinger had any involvement in the determination of the $2.6 billion damages claim, or if the Hassans relied on any information or opinions of Mr. Borsinger in any way to arrive at that calculation, or if Mr. Borsinger had any involvement in the activities identified in our report to the Court dated January 18, 2008. If so, we would like to schedule his deposition as well.

As you proposed in your letter, we will anticipate receiving your amended answer to Interrogatory No. 23, as well as any documents that are relevant to this issue. For the interrogatory, please provide all of the information that we have requested in our prior correspondence on this issue.

With respect to the documents, you proposed to produce "the documents Abbas and Aziz used to calculate HRD's damages." However, the documents that we sought in our motion would include all of the documents used to calculate HRD's damages, all documents

W. Harding Drane, Jr., Esquire
January 28, 2008
Page 2

relating to HRD's business plans and activities concerning hot melt adhesive products or components and documents relating to HRD's financial condition, including copies of HRD's tax filings. All of these documents are relevant to assessing HRD's damages, including its alleged ability to attain the hot melt adhesive market shares and profits used in HRD's damages calculation. Please send the interrogatory response by email within five days of receipt of this letter, and overnight the documents or a disc containing the document images to Jenner & Block in Chicago on the same timeframe.

In addition, within five days of receipt of this letter please produce all documents relating to the activities described in Dow's Report to the Court Concerning Unlawful Activity and Emergency Motion to Compel Discovery up until the date of the filing on January 17, 2008. This includes all documents related to the drafting of and decision to send Craig Cawley's letter addressed to Deloitte & Touche, any phone calls made to current or former Dow employees, any emails sent to current or former Dow employees, any communications with attorneys regarding the preparation of Craig Cawley's letter and any internal communications at HRD regarding these activities, including but not limited to its strategy in sending such letters or faxes and making phone calls to internal executives and/or external auditors concerning actual or potential investments in publicly traded companies. This request would include any emails relating to the activities, as well as any communications with attorneys up to January 17, 2008. It would also include drafts of the letter and other documents in any form, including electronic.

Please let me know if HRD agrees to the deposition and document production schedule described above.

Very truly yours,

Kenneth J. Nachbar

KJN/dmd

# EXHIBIT E



Potter
Anderson
& Corroon LLP

W. Harding Drane, Jr.
Partner
Attorney at Law
wdrane@potteranderson.com
302 984-6019 Direct Phone
302 658-1192 Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

January 30, 2008

**VIA EMAIL AND BY HAND**

Mr. Kenneth Nachbar
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

    Re: <u>Dow v. HRD Corporation</u>

Dear Ken:

   I am in receipt of your letter dated January 28, 2008. It appears that there are still issues to be resolved regarding the damage depositions.

   First, as to timing, I don't see how these depositions could possibly last longer than one day. If they can be taken in one day, then HRD and its witnesses are available February 11, 13 and 15, 2008. If Dow insists on scheduling two days, then HRD's availability is February 18 and 19, 2008, in Houston, at Mr. Ferebee's office.

   Second, your letter did not address Craig Cawley. Does Dow want to depose him?

   Third, with regard to Greg Borsinger, Dow's Motion did not seek to take his deposition. However he did have some input into the damage calculations. As a result HRD is willing to produce him for deposition.

   Fourth, with regard to amending answers to Interrogatory 23 and producing documents, HRD will do this within five business days of an agreement on how to proceed.

   Last, and most important, HRD was disappointed with the last paragraph of your letter. We thought the Court made it clear that it wanted to reduce any antagonism between the parties and get back to addressing the legal issues. ("I think the way to resolve the impasse that is between the parties is to get to the bottom of what supports – whatever the damage claim of HRD is by way of its counterclaim…. And I will allow both sides the freedom to negotiate with lawyers about what discovery is necessary to try and understand the assertion of the counterclaim amount and the counterclaim in principal.") (Transcript of

January 23, 2008 Hearing, pp. 16-17)   The Court also stated that the parties "ought to get away from" any threatening conduct, "and get to work toward factual discovery that will allow people to rationally discuss the lawsuit[,] whether to settle or go to trial." (Id.p.18)   The last paragraph of your letter seems to indicate that Dow is determined to conduct discovery on the Sarbanes Oxley inquiry letter that was sent only to Dow.  That should be a dead issue and not part of this lawsuit.  If Dow were to insist on pursing this path, it can only be counter-productive by leading to discovery by each side as to the other side's allegedly threatening conduct in settlement negotiations,  and the parties will spend countless hours and thousands of dollars in depositions pursing information that will never be relevant at trial.

    HRD believes we should devote our best efforts into getting back to the real issues in the case.  The depositions should be strictly limited to the damages claimed by HRD.  If it is Dow's intention to question the witnesses on anything else, please identify any additional subjects.  We will then let you know if we can agree to expand the subject matter of the depositions.

                        Sincerely,

                        W. Harding Drane, Jr.

WHD/rb
845629/28882

2

# EXHIBIT F

## Drane, Jr. W. Harding

| | |
|---|---|
| **From:** | Drane, Jr. W. Harding |
| **Sent:** | Friday, February 01, 2008 7:12 PM |
| **To:** | 'Nachbar, Kenneth' |
| **Subject:** | RE: HRD deps |

Ken:

Thanks for your response.  Does your message mean that Dow agrees to limit the scope of
the depositions to the damages claimed by HRD in its counterclaim, as set forth in my
letter to you of January 30?  Please let me know so we can know if we have an agreement.
I will check with Bill Ferebee on your proposal for the location for the depositions, and
will get back to you.

Hardy

-----Original Message-----
From: Nachbar, Kenneth [mailto:KNachbar@MNAT.com]
Sent: Friday, February 01, 2008 5:22 PM
To: Drane, Jr. W. Harding
Subject: RE: HRD deps

Hardy,

Sorry for the delay in getting back to you - I had a TRO that kept me occupied the past
two days.

Because we don't think we can complete the depositions in one day, we accept your proposal
to do the depositions on February 18 and 19 in Houston.  We'd like the order of the deps
to be Aziz Hassan, Abbas Hassan, Cawley and finally Borsinger.  Because of some travel
needs on the 19th, we'd like to do any deps on that day at the airport Marriott - we will
arrange for a conference room.  We'd be happy to do the deps on the 18th there as well,
but can do those at Bill's office if you prefer.

Tues afternoon will not work for us for a meet and confer.  Can you do Wednesday (Feb 6)?
I think anytime that day will work for us.

Ken

-----Original Message-----
From: Drane, Jr. W. Harding [mailto:wdrane@potteranderson.com]
Sent: Wednesday, January 30, 2008 5:05 PM
To: Nachbar, Kenneth
Subject: RE: HRD deps

Ken:

I have replied by letter to your request for alternative deposition dates.

Bill Ferebee and I can be available on Tuesday afternoon (2/5) for a teleconference to
discuss issues related to the pretrial conference and discovery cutoff, etc.  Please let
me know if Dow is available that afternoon and what time is convenient.  Thanks.

Hardy

-----Original Message-----
From: Nachbar, Kenneth [mailto:KNachbar@MNAT.com]
Sent: Tuesday, January 29, 2008 7:34 PM
To: Drane, Jr. W. Harding
Subject: FW: HRD deps

Hardy,

Can you please respond to our request for alternative dates for the depositions as to damages that were the subject of the Court's ruling last week?

I view of the Court's setting of a Pretrial Conference date, there are several items to discuss - moat notably, the path forward to a fact discovery cut-off and expert disclosures and discovery.  Is there a time that we and our co-counsel can have a conference call to discuss these matters?  Please advise what will work for you.

Ken

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

# EXHIBIT G

**Drane, Jr. W. Harding**

| | |
|---|---|
| From: | Nachbar, Kenneth [KNachbar@MNAT.com] |
| Sent: | Tuesday, February 05, 2008 8:04 PM |
| To: | Drane, Jr. W. Harding |
| Subject: | RE: HRD deps |

Hardy,

Got it - I was waiting to hear back from you as to location (but I've now heard).  I'll get back to you re location for the second day, but we will plan on being at Bill's office on the morning of the 18th.  We'll be getting in the night before, so would a 9 am start be ok?  We'll arrange for a court reporter.

As to scope, we don't intend to make the questioning about how the Marcus representatives came to write and use their proposed letter to our auditors a major focus of the depositions, but I do think there will be, and should be, some questioning on that subject.  Indeed, you made representations to the Court about that subject.  Thus, I think that you must allow at least some questions at the deps; if you think we are going too far, we can discuss it then, or you can instruct the witness not to answer pending some involvement by the Court.  However, I really hope such court involvement will be necessary.

Can you guys to a telephonic meet and confer re: trial schedule tomorrow afternoon, or failing that, later this week?

Ken

-----Original Message-----
From: Drane, Jr. W. Harding [mailto:wdrane@potteranderson.com]
Sent: Tuesday, February 05, 2008 7:49 PM
To: Nachbar, Kenneth
Subject: Re: HRD deps

Ken:  I responded to that email on Friday at 7:12 p.m.  See chain below.

Hardy
-------------------------
W. Harding (Hardy) Drane, Jr.
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street
Wilmington, DE 19801 (Federal Express and Hand Deliveries) or P.O. Box 951 Wilmington, DE
19899 (U.S. Mail)
302-984-6019 (Telephone)
302-778-6019 (Desktop Facsimile)
302-658-1192 (Mailroom Facsimile)
Email: wdrane@potteranderson.com
Web page: www.potteranderson.com
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein THIS ELECTRONIC MAIL TRANSMISSION AND ANY ATTACHMENTS MAY CONTAIN PRIVILEGED, CONFIDENTIAL, OR PROPRIETARY INFORMATION INTENDED ONLY FOR THE PERSONS(S) NAMED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE AUTHORIZED REPRESENTATIVE OF THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISTRIBUTION, COPYING, OR DISCLOSURE OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

----- Original Message -----

From: Nachbar, Kenneth <KNachbar@MNAT.com>
To: Drane, Jr. W. Harding
Sent: Tue Feb 05 17:33:30 2008
Subject: RE: HRD deps

Hardy,  I emailed you at 5:22 pm on Friday.  I'll resend in case you accidentally deleted it.

Ken

-----Original Message-----
From: Drane, Jr. W. Harding [mailto:wdrane@potteranderson.com]
Sent: Tuesday, February 05, 2008 5:00 PM
To: Nachbar, Kenneth
Subject: RE: HRD deps
Importance: High

  Ken:

We are still waiting to hear your response to my email of last Friday, 2/1, so we know whether we have agreement on the depositions.

We have held the dates -- February 18 and 19 -- but we need to confirm an agreement soon, as scheduling is becoming an issue.

HRD is willing to have the depositions in Bill Ferebee's office on 2/18 and at the airport Marriott on 2/19, but you should know that Bill's office is only 10 minutes from the airport, so it may be more cost effective to do both days at his office.

We will wait to hear from you.  Thanks.

  Hardy

-----Original Message-----
From: Drane, Jr. W. Harding
Sent: Friday, February 01, 2008 7:12 PM
To: 'Nachbar, Kenneth'
Subject: RE: HRD deps

Ken:

Thanks for your response.  Does your message mean that Dow agrees to limit the scope of the depositions to the damages claimed by HRD in its counterclaim, as set forth in my letter to you of January 30?  Please let me know so we can know if we have an agreement.  I will check with Bill Ferebee on your proposal for the location for the depositions, and will get back to you.

  Hardy

-----Original Message-----
From: Nachbar, Kenneth [mailto:KNachbar@MNAT.com]
Sent: Friday, February 01, 2008 5:22 PM
To: Drane, Jr. W. Harding
Subject: RE: HRD deps

Hardy,

Sorry for the delay in getting back to you - I had a TRO that kept me occupied the past two days.

Because we don't think we can complete the depositions in one day, we accept your proposal to do the depositions on February 18 and 19 in Houston.  We'd like the order of the deps to be Aziz Hassan, Abbas Hassan, Cawley and finally Borsinger.  Because of some travel needs on

2

the 19th, we'd like to do any deps on that day at the airport Marriott -
we will arrange for a conference room. We'd be happy to do the deps on
the 18th there as well, but can do those at Bill's office if you prefer.

Tues afternoon will not work for us for a meet and confer. Can you do
Wednesday (Feb 6)? I think anytime that day will work for us.

Ken

-----Original Message-----
From: Drane, Jr. W. Harding [mailto:wdrane@potteranderson.com]
Sent: Wednesday, January 30, 2008 5:05 PM
To: Nachbar, Kenneth
Subject: RE: HRD deps

Ken:

I have replied by letter to your request for alternative deposition
dates.

Bill Ferebee and I can be available on Tuesday afternoon (2/5) for a
teleconference to discuss issues related to the pretrial conference and
discovery cutoff, etc. Please let me know if Dow is available that
afternoon and what time is convenient. Thanks.

Hardy

-----Original Message-----
From: Nachbar, Kenneth [mailto:KNachbar@MNAT.com]
Sent: Tuesday, January 29, 2008 7:34 PM
To: Drane, Jr. W. Harding
Subject: FW: HRD deps

Hardy,

Can you please respond to our request for alternative dates for the
depositions as to damages that were the subject of the Court's ruling
last week?

I view of the Court's setting of a Pretrial Conference date, there are
several items to discuss - moat notably, the path forward to a fact
discovery cut-off and expert disclosures and discovery. Is there a time
that we and our co-counsel can have a conference call to discuss these
matters? Please advise what will work for you.

Ken

This message, including any accompanying documents or attachments, may
contain information that is confidential or that is privileged. If you
are not the intended recipient of this message, please note that the
dissemination, distribution, use or copying of this message or any of
the accompanying documents or attachments is strictly prohibited. If you
believe that you may have received this message in error, please contact
me at (302) 658-9200 or by return e-mail.

# EXHIBIT H

Drane, Jr. W. Harding

**From:** Nachbar, Kenneth [KNachbar@MNAT.com]
**Sent:** Saturday, February 09, 2008 3:03 PM
**To:** Drane, Jr. W. Harding
**Subject:** RE: HRD deps

**Attachments:** Dow_HRD_Notice of Depositon.DOC



Dow_HRD_Notice
of Depositon.DO...    H <<Dow_HRD_Notice of Depositon.DOC>> ardy,

This will confirm the depositions on February 18 and 19. A formal notice of depositions is attached.

You advised the Court that we would confer regarding discovery, and that you would respond to written discovery requests within 5 business days.
We conferred, and we accepted your "option 1" in writing on January 28.
Thus, your clients are in default on their obligation to respond to written discovery. Please provide answers to our interrogatories and a written response to our requests for production, and produce all responsive documents by the close of business on Monday. We need these materials by then to prepare for the depositions.

As previously communicated, we do not intend to make the circumstances of your clients' extortionate letter to our auditors and the press a major focus of the depositions, but we do intend to ask some questions concerning it as it is entirely relevant (and you may of course inquire similarly of Dr. Swogger if he is deposed regarding any alleged threats your clients are claiming he made). As indicated in my prior e-mail, arguing about this at the deposition, will lengthen, not shorten proceedings. Moreover, giving instructions not to answer such questions is not the proper procedure in any event, as opposed to noting your objection on the record. If you feel strongly about this issue, you can of course move for a protective order, but should do so on Monday; we will respond very promptly, so that a ruling can be obtained before the first depositions on the 18th.

Ken

-----Original Message-----
From: Drane, Jr. W. Harding [mailto:wdrane@potteranderson.com]
Sent: Wednesday, February 06, 2008 8:25 AM
To: Nachbar, Kenneth
Subject: RE: HRD deps

Ken:

Based on the Judge's comments, and in order to focus on the damages issue and avoid antagonism, we intend to instruct our witnesses not to answer any question regarding the Sarbanes/Oxley letter. On the same note, we will not question Dr. Swoggar about any threats when we depose him.

On that basis, we understand that we have an agreement, and we will provide the written discovery responses five business days from today.
We would prefer to start at 9:30 a.m. at Bill Ferebee's office on Monday, 2/18.

There are two hotels very close to Bill's office; the Marriott Greenspoint and the Wyndham Greenspoint (the latter may not be as nice as the Marriott). Both are less than a mile from Bill's office; however, because a freeway separates them they are not in walking distance.

I am in depositions all this week, and it will be difficult for me to find a time for the meet and confer this week. We suggest that we take some time while we are together in

. Houston to discuss those issues.
Please let me know if that is ok with you and your colleagues.   Thanks.

Hardy


-----Original Message-----
From: Nachbar, Kenneth [mailto:KNachbar@MNAT.com]
Sent: Tuesday, February 05, 2008 8:04 PM
To: Drane, Jr. W. Harding
Subject: RE: HRD deps

Hardy,

Got it - I was waiting to hear back from you as to location (but I've now heard).  I'll
get back to you re location for the second day, but we will plan on being at Bill's office
on the morning of the 18th.  We'll be getting in the night before, so would a 9 am start
be ok?  We'll arrange for a court reporter.

As to scope, we don't intend to make the questioning about how the Marcus representatives
came to write and use their proposed letter to our auditors a major focus of the
depositions, but I do think there will be, and should be, some questioning on that
subject.  Indeed, you made representations to the Court about that subject.  Thus, I think
that you must allow at least some questions at the deps; if you think we are going too
far, we can discuss it then, or you can instruct the witness not to answer pending some
involvement by the Court.  However, I really hope such court involvement will be
necessary.

Can you guys to a telephonic meet and confer re: trial schedule tomorrow afternoon, or
failing that, later this week?

Ken

-----Original Message-----
From: Drane, Jr. W. Harding [mailto:wdrane@potteranderson.com]
Sent: Tuesday, February 05, 2008 7:49 PM
To: Nachbar, Kenneth
Subject: Re: HRD deps

Ken:  I responded to that email on Friday at 7:12 p.m.  See chain below.

Hardy
---------------------------
W. Harding (Hardy) Drane, Jr.
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street
Wilmington, DE 19801 (Federal Express and Hand Deliveries) or P.O. Box
951 Wilmington, DE 19899 (U.S. Mail)
302-984-6019 (Telephone)
302-778-6019 (Desktop Facsimile)
302-658-1192 (Mailroom Facsimile)
Email: wdrane@potteranderson.com
Web page: www.potteranderson.com
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we
inform you that any U.S. federal tax advice contained in this communication (including any
attachments) is not intended or written to be used, and cannot be used, for the purpose of
(a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or
recommending to another party any transaction or matter addressed herein THIS ELECTRONIC
MAIL TRANSMISSION AND ANY ATTACHMENTS MAY CONTAIN PRIVILEGED, CONFIDENTIAL, OR PROPRIETARY
INFORMATION INTENDED ONLY FOR THE PERSONS(S) NAMED. IF THE READER OF THIS MESSAGE IS NOT
THE INTENDED RECIPIENT OR THE AUTHORIZED REPRESENTATIVE OF THE INTENDED RECIPIENT, YOU ARE
HEREBY NOTIFIED THAT ANY DISTRIBUTION, COPYING, OR DISCLOSURE OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.

----- Original Message -----
From: Nachbar, Kenneth <KNachbar@MNAT.com>
To: Drane, Jr. W. Harding
Sent: Tue Feb 05 17:33:30 2008
Subject: RE: HRD deps

Hardy, I emailed you at 5:22 pm on Friday.  I'll resend in case you accidentally deleted it.

Ken

-----Original Message-----
From: Drane, Jr. W. Harding [mailto:wdrane@potteranderson.com]
Sent: Tuesday, February 05, 2008 5:00 PM
To: Nachbar, Kenneth
Subject: RE: HRD deps
Importance: High

    Ken:

We are still waiting to hear your response to my email of last Friday, 2/1, so we know whether we have agreement on the depositions.

We have held the dates -- February 18 and 19 -- but we need to confirm an agreement soon, as scheduling is becoming an issue.

HRD is willing to have the depositions in Bill Ferebee's office on 2/18 and at the airport Marriott on 2/19, but you should know that Bill's office is only 10 minutes from the airport, so it may be more cost effective to do both days at his office.

We will wait to hear from you.  Thanks.

    Hardy

-----Original Message-----
From: Drane, Jr. W. Harding
Sent: Friday, February 01, 2008 7:12 PM
To: 'Nachbar, Kenneth'
Subject: RE: HRD deps

    Ken:

Thanks for your response.  Does your message mean that Dow agrees to limit the scope of the depositions to the damages claimed by HRD in its counterclaim, as set forth in my letter to you of January 30?  Please let me know so we can know if we have an agreement. I will check with Bill Ferebee on your proposal for the location for the depositions, and will get back to you.

    Hardy

-----Original Message-----
From: Nachbar, Kenneth [mailto:KNachbar@MNAT.com]
Sent: Friday, February 01, 2008 5:22 PM
To: Drane, Jr. W. Harding
Subject: RE: HRD deps

    Hardy,

Sorry for the delay in getting back to you - I had a TRO that kept me occupied the past two days.

Because we don't think we can complete the depositions in one day, we accept your proposal to do the depositions on February 18 and 19 in Houston.  We'd like the order of the deps to be Aziz Hassan, Abbas Hassan, Cawley and finally Borsinger.  Because of some travel needs on the 19th, we'd like to do any deps on that day at the airport Marriott - we will

3

arrange for a conference room. We'd be happy to do the deps on the 18th there as well, but can do those at Bill's office if you prefer.

Tues afternoon will not work for us for a meet and confer. Can you do Wednesday (Feb 6)? I think anytime that day will work for us.

Ken

-----Original Message-----
From: Drane, Jr. W. Harding [mailto:wdrane@potteranderson.com]
Sent: Wednesday, January 30, 2008 5:05 PM
To: Nachbar, Kenneth
Subject: RE: HRD deps

Ken:

I have replied by letter to your request for alternative deposition dates.

Bill Ferebee and I can be available on Tuesday afternoon (2/5) for a teleconference to discuss issues related to the pretrial conference and discovery cutoff, etc. Please let me know if Dow is available that afternoon and what time is convenient. Thanks.

Hardy

-----Original Message-----
From: Nachbar, Kenneth [mailto:KNachbar@MNAT.com]
Sent: Tuesday, January 29, 2008 7:34 PM
To: Drane, Jr. W. Harding
Subject: FW: HRD deps

Hardy,

Can you please respond to our request for alternative dates for the depositions as to damages that were the subject of the Court's ruling last week?

I view of the Court's setting of a Pretrial Conference date, there are several items to discuss - moat notably, the path forward to a fact discovery cut-off and expert disclosures and discovery. Is there a time that we and our co-counsel can have a conference call to discuss these matters? Please advise what will work for you.

Ken

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

# EXHIBIT I

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA INC. on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> HRD CORPORATION (d/b/a Marcus Oil & Chemical) <br><br> Defendant, Counterclaim Plaintiff, <br><br> v. <br><br> DOW CHEMICAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY, <br><br> Counterclaim Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 05-023 (JJF) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## NOTICE OF DEPOSITIONS

PLEASE TAKE NOTICE THAT, pursuant to the Federal Rules of Civil Procedure, plaintiffs and counterclaim defendants The Dow Chemical Company and Dow Chemical Canada Inc., on its own behalf and as assignee of The Dow Chemical Company, will take the depositions upon oral examination of the following persons beginning at 9:30 a.m. CST on February 18, 2008 and continuing thereafter until completed. The depositions on February 18 will be taken at the offices of O'Donnell, Ferebee, Medley & Keiser, P.C., 450 Gears - Eighth Floor, Houston, Texas 77067-4584. The depositions on February 19 will be taken at The Houston Airport Marriott Hotel, 18700 John. F. Kennedy Blvd., Houston, Texas 77032. The

depositions will be taken before a notary public or other officer duly authorized by law to administer oaths and may be videotaped.

| Deponent | Date and Time |
|---|---|
| Aziz Hassan | February 18, 2008 at 9:30 a.m. CST |
| Abbas Hassan | Immediately following completion of the deposition of Aziz Hassan |
| Craig Cawley | Immediately following completion of the deposition of Abbas Hassan |
| Gregory Borsinger | Immediately following completion of the deposition of Craig Cawley |

You are invited to attend and cross examine.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Kenneth J. Nachbar*
Kenneth Nachbar (#2067)
Samuel T. Hirzel (#4415)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
knachbar@mnat.com
Attorneys for Plaintiff and Counterclaim
Defendants The Dow Chemical Company and
Dow Chemical Canada Inc., on its own behalf and
as assignee of The Dow Chemical Company

OF COUNSEL:

Harry J. Roper
Raymond N. Nimrod
Aaron A. Barlow
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

Dated:   February 9, 2008

2

# EXHIBIT J

## Drane, Jr. W. Harding

**From:**     Nachbar, Kenneth [KNachbar@MNAT.com]
**Sent:**     Tuesday, February 12, 2008 3:41 PM
**To:**       Drane, Jr. W. Harding
**Subject:** RE: Dow v. HRD

Hardy,

We intend to proceed with the depositions scheduled for February 18th and 19th as evidenced in our February 1st acceptance. With regard to the scope of those depositions, we are trying to be reasonable but your email is simply not acceptable as it offers absolutely no middle ground. In spite of the admonitions from the Court weeks ago, we still do not have documents from you or a commitment as to depositions. As we have said repeatedly, we intend to focus on the damage issues, and expect to spend limited time on the circumstances of your clients' threats, which clearly are relevant as they go to credibility, motive, and bias. Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and "impeachment evidence is almost always relevant, for discovery purposes, to the claims or defenses of a party." *Moore's Federal Practice*, § 6-26[9][a][i]; *see also United States v. Abel*, 469 U.S. 45, 52 (1984). If you think otherwise, we have offered to cooperate in an expedited approach to the Court to resolve this.

Rather than negotiate, or agree to ask the Court for guidance, you have:

1.    Unilaterally stated that you will not agree to *any questioning* about the circumstances of your clients' threats, even though that is not the proper procedure for objecting at a deposition to questions calling for non-privileged information.

2.    Threatened not to proceed with the depositions ordered by the Court - and that you "do not expect that re-scheduling will not be easy" - if we do not accede to the terms you have unilaterally imposed.

3. Taken the position that you have not had adequate notice of the depositions, even though *you offered* the February 18 and 19 dates, and we accepted those dates, in writing, on February 1.

4.    Not produced documents, and avoided our making an application to the Court by representing, in writing, that you would respond to written discovery and produce documents "within 5 business days," then failed to do so on the ground that there is a dispute over the scope of the *deposition topics* (but *not* the documents).

We do not consider any of these positions to be tenable. We are trying, in good faith, to resolve the issue of the scope of the depositions without resort to the Court. Please confirm that when your witnesses appear for their depositions on February 18th and 19th, they will be permitted to testify within the scope we have set forth, or propose some reasonable  scope.

Ken

**From:** Drane, Jr. W. Harding [mailto:wdrane@potteranderson.com]
**Sent:** Monday, February 11, 2008 4:59 PM
**To:** Nachbar, Kenneth
**Subject:** Dow v. HRD

Dear Ken:

Despite HRD's efforts to resolve the proper scope of discovery, it is apparent from the email that you sent on Saturday afternoon, February 9, that the parties have not reached a meeting of the minds regarding the scope of discovery. Therefore, your assertion that HRD is "in default" is incorrect. Although you stated in your January 28 letter that "[Dow] would like to opt for the general framework of .. Option 1 set forth in [my] letter of January 25," you did not accept Option 1. Rather, you imposed additional conditions, including seeking  documents "relating to the activities described in Dow's [January 17, 2008 filing]."  I explained in my letter to you of January 30, referring to excerpts from the January 23 Hearing transcript, that "HRD believes we should devote our best efforts into getting back to the real issues in the case" and "[t]he depositions should be strictly limited to the damages claimed by HRD."  In my February 6 email, I indicated the basis on which I understood we had an agreement, i.e. the depositions would be limited to damages sought by HRD, and based on that understanding, HRD was prepared to produce documents within 5 business days from February 6.  As indicated above, Dow now has rejected that understanding, and we remain without any agreement.  My suggestion is that Dow agree to go forward with the depositions, limited to damages.  If you agree, HRD will endeavor to produce responses to the damage interrogatories and production requests promptly.  If not, your deposition notices are untimely under the Local Rules, and are not effective.  I do not expect that re-scheduling the depositions will be easy, given conflicting schedules.

In closing, please let me reiterate that HRD believes Dow is unnecessarily seeking to inject into discovery matters that are not part of this suit.  HRD remains willing to provide discovery regarding damages in a prompt and orderly fashion if Dow will limit the issues as discussed.

Hardy


W. Harding (Hardy) Drane, Jr.
Potter Anderson & Corroon LLP
302-984-6019  wdrane@potteranderson.com
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein

THIS ELECTRONIC MAIL TRANSMISSION AND ANY ATTACHMENTS MAY CONTAIN PRIVILEGED, CONFIDENTIAL, OR PROPRIETARY INFORMATION INTENDED ONLY FOR THE PERSONS(S) NAMED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE AUTHORIZED REPRESENTATIVE OF THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISTRIBUTION, COPYING, OR DISCLOSURE OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

# EXHIBIT K

## Drane, Jr. W. Harding

| | |
|---|---|
| **From:** | Nachbar, Kenneth [KNachbar@MNAT.com] |
| **Sent:** | Wednesday, February 13, 2008 11:13 AM |
| **To:** | Drane, Jr. W. Harding |
| **Subject:** | RE: draft email to defense – PRIVILEGED |

Hardy,

As I understand matters form our telephone conversation, the depositions of your clients that we have notice for Houston on Monday (Feb 18) and Tues (Feb. 19) will go forward as noticed, and you intend to approach the Court to seek resolution of the question of the scope of examination at those depositions - in particular, whether we can ask any questions about the circumstances of your clients' threats to communicate with our accountants and others - prior to the depositions.

As to discovery, you advised me that you have a "small" number of documents, and that will try to produce them today, but will produce by tomorrow in all events. We did not discuss interrogatory responses or written responses to the document requests - but I assume that since there are no logistical issue about shipping them, they can be provided today. Please confirm, and please advise if I misapprehend what you told me in any respect.

Ken


### REMAINDER OF PAGE REDACTED