# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA, INC.<br>on its own behalf and as assignee of<br><br>THE DOW CHEMICAL COMPANY<br><br>Plaintiff,<br><br>v.<br><br>HRD CORPORATION (d/b/a<br>Marcus Oil & Chemical)<br><br>Defendant, Counterclaim Plaintiff | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  C.A. No. 05-23 (JJF)<br><br>**PUBLIC VERSION** |

---

## HRD CORPORATION'S EMERGENCY MOTION TO TAKE PHOTOGRAPHS AT ITS PLANT INSPECTION, MOTION TO COMPEL PRODUCTION OF DOCUMENTS, MOTION TO RE-INSPECT PLANT AND FOR SANCTIONS

OF COUNSEL:

William C. Ferebee
Michael Landrum
O'DONNELL FEREBEE MEDLEY &
KEISER, PC
450 Gears, Eighth Floor
Houston, TX 77067-4512
(281) 875-8200 (telephone)
(281) 875-4962 (facsimile)

Dated: April 10, 2008
Public Version Dated:  April 23, 2008

W. Harding Drane, Jr. (#1023)
Suzanne M. Hill (#4414)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 N. Market Street
Wilmington, DE  19899-0951
302) 984-6000
wdrane@potteranderson.com
shill@potteranderson.com

*Attorneys for HRD Corporation*

Pursuant to Fed. R. Civ. P. 26, 34 and 37, Defendant/Counter Claim Plaintiff HRD hereby files this Emergency Motion to take photographs at its plant inspection, to compel production of documents, to re-inspect plant, and for sanctions.

1. On April 8, 2008, HRD's counsel, HRD employee, Craig Cawley, and two of HRD's experts, Dale Joy and Greg Borsinger, made a pre-arranged inspection visit to Dow's plant in Sarnia, Ontario ("Plant"), where the wax product ("Product") that is the subject of this dispute was manufactured. Upon arrival at the plant HRD was informed that it would not be allowed to photograph any portion of the plant.

2. HRD first asked Dow for permission to visit the Plant in late 2007. Dow ignored this request. HRD again requested an inspection of the plant in early 2008. Dow ignored the second request. In February 2008, HRD learned that Dow was dismantling the Plant. HRD renewed its request for an inspection. In March 2008, Dow finally agreed to the inspection. Because HRD's counsel was in trial from March 14-28, 2008, the inspection was delayed until April 8, 2008. As of HRD's visit on April 8, 2008, key portions of the Plant had already had been demolished or removed, including all instruments in the control room, strategic temperature gauges and pressure gauges in the plant, and significant portions of the devolatilization units. *See* Declaration of Dale Joy ¶4 ("Joy Decl.") (Ex. A hereto). It also appeared that vital information regarding temperature and pressure ratings had been recently removed from vessel identification plates by grinding or a wire-brush. *Id.* ¶5.

3. HRD's counsel and experts planned to take photographs and videotapes of the Plant for use in developing its defenses and counterclaims in this case. They brought high-quality

cameras and video equipment to the Plant.[1]  Such photography and videography was particularly important, because of the demolition of the Plant.  When HRD's counsel and experts arrived at the Plant, however, they were advised by Dow's counsel (one a lawyer from the Dow in-house Legal Department and the other from Dow's outside law firm Jenner & Block) that HRD would not be allowed to take any photographs or videos of the Plant.  HRD's counsel immediately complained and cited Rule 34 as authority for photographing the plant.  Dow's counsel refused to accede to HRD's demand.  Later *Dow's* counsel proposed to take photos with Dow's small digital camera, and, after Dow's review, deliver the photos to HRD.  HRD's counsel refused to accept this proposal as a reasonable compromise, not only because of the inferiority of the camera, but also because Dow's proposal would invade HRD's confidential work product.  For example, it would interfere with HRD's decisions as to what should be photographed or videotaped, what should be the focus and emphasis of the images, and what confidential attorney work product audio notes HRD's counsel would record on the videotape during the inspection. While some photographs were ultimately taken with Dow's camera, Dow remains in possession of the camera and the photographs.  Without the ability to freely photograph the facility with both still photographs and video equipment, the April 8, 2008, inspection was largely meaningless.

   4.  HRD's inspection was further hampered by Dow's refusal to produce vital plant documents, such as (1) process and instrument diagrams (P&ID's), (2) flow diagrams, (3) mechanical flow diagrams, (4) operators shift logs, (5) plant operating data, (6) normal operating procedures, and (7) minutes of daily meetings or reports generated as a result of the meetings.

---

[1]  Although Dow apparently contends that the design of the plant is a trade secret, the design of the Sarnia plant is not unusual, and is typical of polyethylene plant designs that have existed for years.  Moreover, the plant apparently has not operated in four years and is being dismantled. Joy Decl. §8.  In any event, a protective order is in place to protect confidential material.

*See* Joy Decl. ¶s 6, 7. Complete and unredacted copies of these documents are particularly vital to any attempt to reconstruct the operation of the plant since most of the operational parts are gone. *Id.* HRD has evidence that these documents exist, even though Dow has failed to produce all of them, or has redacted key information *See e.g.* Ex. B (    **REDACTED**

); Ex. C (

)[2]; Ex. D (    **REDACTED**

**REDACTED**

**REDACTED**

); Ex. E (

)[3] Dow should produce these documents to HRD, in unredacted form, at least seven days before a subsequent inspection of the plant.

5.  Dow is actively dismantling the plant. It is already very difficult to reconstruct many of the functions and impossible to photograph critical components since they have been removed. However, there are portions of the plant that can be inspected and photographed and used at trial to explain the processes and issues involved in this litigation. This will not be true if Dow is allowed to dismantle the plant further before HRD can conduct a second and meaningful inspection. In addition, Dow has removed two components of the devolitization units, has them sitting on the ground near the plant but they have been wrapped in opaque orange plastic.

---

[2]    **REDACTED**

[3] HRD's review of Dow's documents, which is ongoing, has been hampered severely by the organization and format of the documents as produced. For example, many of the documents contain significant redactions of key data, and documents have been produced in a random manner (such as the    **REDACTED**
    **REDACTED**    ). Dow's most recent production on March 31, 2008 included approximately 14,000 pages, many with significant redactions of relevant information. On April 4, 2008, HRD asked Dow's counsel if more documents will be produced, but has not received a response. The Court has ordered Dow to provide "specific explanations" "on a page by page basis" for their redactions by April 18, 2008. (D.I. 121) The summary explanations that Dow has provided to date fail to support Dow's contention that the redacted information is irrelevant.

6. If Dow began dismantling the plant prior to HRD's request to inspect the facility, then Dow is guilty of spoliation of evidence. HRD should be allowed to immediately conduct a limited Rule 30(b)(6) deposition of a Dow corporate representative to determine when Dow began dismantling the plant and if Dow continued to dismantle the plant after HRD first requested an inspection. This deposition could help the court determine if sanctions are appropriate and the magnitude of the sanctions.

7. The Court should order Dow to stop dismantling the plant, to produce complete documents, in unredacted form, within 7 days, to allow HRD to re-inspect the plant and take photographs and videotapes without interference by Dow, should allow a limited Rule 30(b)(6) examination of Dow, should award HRD its counsel fees for this motion, and any other sanctions that the Court may deem appropriate.

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

By: ___/s/ W. Harding Drane, Jr._____

William C. Ferebee
Michael Landrum
O'DONNELL FEREBEE MEDLEY & KEISER, PC
450 Gears, Eighth Floor
Houston, TX 77067-4512
(281) 875-8200 (telephone)
(281) 875-4962 (facsimile)

W. Harding Drane, Jr. (#1023)
Suzanne M. Hill (#4414)
1313 N. Market Street
Wilmington, DE 19899-0951
(302) 984-6000
wdrane@potteranderson.com
shill@potteranderson.com

Dated: April 10, 2008
Public Version Dated: April 23, 2008

*Attorneys for HRD Corporation*

860519/28882

4

# EXHIBIT A



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DOW CHEMICAL CANADA, INC.  §
on its own behalf and as assignee of  §
§
THE DOW CHEMICAL COMPANY  §
§
Plaintiff,  §
§
v.  §          C.A. No. 05-23 (JJF)
§
HRD CORPORATION (d/b/a  §     PUBLIC VERSION
Marcus Oil & Chemical)  §     DATED:  APRIL 23, 2008
§
Defendant, Counterclaim Plaintiff  §

## DECLARATION OF DALE JOY

I, Dale Joy, do declare and state as follows:

1.      I received a Bachelor of Science in Chemical Engineering degree from Texas Tech University in 1962.

2.      For the next forty plus years I worked for Exxon Mobil Chemical Company and its predecessors.  During that time I worked in a number of positions including as a designer and troubleshooter of polymer manufacturing facilities.  I have worked in the large scale production of polypropylene plastics, the batch production of specialty chemicals, batch production of polyethylene catalysts, and the large scale continuous production of high density polyethylene.

3.      On April 7-8, 2008, at the request of HRD, Inc., dba Marcus Oil and Chemical, I traveled to Sarnia, Canada to inspect the manufacturing facility where the Marcus polyethylene waxes were manufactured.

1

4.    The plant was in the process of being dismantled. Critical parts of the plant had already been removed or destroyed. These included all of the instrumentation in the control room, most of the pumps in the plant and most of the local instrumentation involving pressures and temperatures. The three devolitilization units were partially dismantled and piping had been removed.

5.    Many of the vessels in the plant contain a vessel identification plate. This plate contains vital information about its temperature and pressure rating. Many of these plates had been ground off or wire brushed so that much of the information could not be read. Based on the shiny nature of the brushed condition, it appears that the information had been destroyed recently.

6.    Because all of the pumps have been removed, many of the instruments are gone, and other parts and piping are missing, it is difficult, if not impossible, to determine how the plant operated without certain plant documents. These include the process and instrument diagrams, the flow diagrams, the mechanical flow diagrams, the operator logs, the plant operating data, and a copy of the normal operating procedures. These are standard plant documents. I have not been provided with any of these documents unless they contained critical redactions.

7.    In addition, Dow had daily meetings of its operations personnel. These minutes were reduced to writing. If I had a copy of these documents I could examine the parts of the plant where problems were occurring. I was told that Dow has only produced 9 days of these reports. There should be 60-90 days of reports.

8.    I have been told that Dow claims the design of its plant is a trade secret. I have signed Dow's confidentially agreement and I will keep the design a secret.

2

However the design is not unusual. In fact it is a typical design for a polyethylene plant. This design is typical of the designs that have existed for years. In fact, there is evidence that this plant has not been in operation for several years. I saw what appeared to be solid polyethylene wax in the last devolitization unit bottom piping. I understand Marcus stopped production in 2004.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Dale Joy

Dated: _April 10, 2008_

PUBLIC VERSION
DATED: APRIL 23, 2008

3

# EXHIBIT B

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT C

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT D

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT E

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, W. Harding Drane, hereby certify that on April 23, 2008, the attached document was hand delivered and electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Kenneth Nachbar
Samuel Taylor Hirzel, II
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

I hereby certify that on April 23, 2008, I have Electronically Mailed the documents to the following non-registered participants:

Aaron Barlow
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611

By: */s/ W. Harding Drane, Jr.*
       Richard L. Horwitz (#2246)
       W. Harding Drane, Jr. (#1023)
       Suzanne M. Hill (#4414)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE 19899-0951
       (302) 984-6000
       rhorwitz@potteranderson.com
       wdrane@potteranderson.com
       shill@potteranderson.com

860519/28882