IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMCIAL CANDA INC. on its own behalf and as assignee of THE DOW CHEMICAL, COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HRD CORPORATION (d/b/a Marcus Oil & Chemical),<br><br>Defendant, Counterclaim Plaintiff,<br><br>v.<br><br>DOW CHEMCIAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY,<br><br>Counterclaim Defendants. | C.A. No. 05-023-JJF<br><br>**PUBLIC VERSION** |

**DOW'S OPPOSITION TO HRD'S MOTION TO COMPEL DOW TO REMOVE ALL
REDACTIONS FROM THE DOCUMENTS IT HAS PRODUCED**

Andrew Weissman
Katya Jestin
JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022-3902

Aaron A. Barlow
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Kenneth J. Nachbar (#2067)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
knachbar@mnat.com
*Attorneys for Dow Chemical Canada Inc.
And The Dow Chemical Company*

May 28, 2008
Public Version Dated: September 12, 2008

## TABLE OF CONTENTS

| | | |
|---|---|---|
| A. | The Redacted Sarnia Process Information in Categories B and E-N is Not Relevant | 3 |
| B. | The Redacted Sarnia Process Information in Categories B and E-N Contains Dow's Trade Secrets | 6 |
| C. | Redaction Keys C, D and O Concern Unrelated Products and Projects | 8 |
| D. | The JDA Provides No Contractual Basis for Production of Dow's Trade Secrets | 10 |

# TABLE OF AUTHORITIES

**Cases**

*Autotech Tech. Ltd. P'ship v. Automation.com, Inc.*,
  237 F.R.D. 405 (N.D. Ill. 2006) .................................................................................... 7

*Beauchem v. Rockford Products Corp.*,
  No. 01 C 501345, 2002 WL 1870050 (N.D.Ill. Aug. 13, 2002) ................................... 6

*Eli Lilly & Co., In re,*
  142 F.R.D. 454 (S.D. Ind. 1992) .................................................................................. 6

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*,
  138 F.R.D. 530 (C.D. Ill. 1991) ................................................................................... 7

*Grother v. Union Pac. RR. Co.*,
  No. H-04-3279, 2006 WL 1662936 (S.D. Tex. June 9, 2006) ..................................... 3

*Heredia v. Heyman,*
  203 F.R.D. 112 (S.D.N.Y. 2001) ................................................................................. 3

*Hughes v. LaSalle Bank,*
  No. 02 Civ. 6384, 2004 WL 414828 (S.D.N.Y. Mar. 4, 2004) .................................... 3

*Iseley v. Talaber,*
  Civil No. 1:CV-05-0444, 2007 WL 2903340, (M.D.Pa. Sept. 28, 2007) ................. 3, 5

*Kewanee Oil Co. v. Bicron Corp.*,
  416 U.S. 470 (1974) ..................................................................................................... 8

*Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*,
  129 F.R.D. 528 (E.D. Wis. 1990) ................................................................................. 7

*Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  Nos. Civ. 98-0080-SLR, 2004 WL 115594 (D.Del. Jan. 13, 2004) ............................ 6

**Statutes**

DEL. CODE ANN. TIT. 6 § 2001(4) ....................................................................................... 6

FED. R. CIV. PROC. 26(b)(1) .............................................................................................. 3

FED.R.CIV.PROC. 26(c)(7) ............................................................................................ 6, 8

1.      Dow Chemical Company Canada, Inc., on its own behalf and as assignee of The Dow Chemical Company, and The Dow Chemical Company (collectively "Dow") respectfully submit this motion in opposition to HRD (d/b/a Marcus Oil & Chemical) ("HRD")'s Motion to Compel Dow to Remove all Redactions from the Documents it has Produced. Additionally, to facilitate a timely resolution of this dispute, Dow consents to an *in camera* review of the documents at issue to establish the propriety of Dow's redactions and will provide expert witness testimony if so requested by the Court.

2.      HRD's motion is merely its latest attempt to obtain an order requiring Dow to produce documents containing proprietary trade secret information that is completely irrelevant to the pending claims, but that is crucial to Dow's multi-billion dollar polyethylene business. More troubling still has been HRD's pattern of seeking to impose extrajudicial costs and risks on Dow in an effort to extort Dow into paying HRD on a baseless claim, here, by putting the secrecy of its technology at risk. *See* Dow's Report to the Court Concerning Unlawful Activity and Emergency Motion to Compel Discovery for a more complete explanation of HRD's previous efforts. (D.I. 119).

## NATURE AND STAGE OF THE PROCEEDINGS

3.      Dow filed its Complaint on January 18, 2005 against HRD for breach of a supply contract between Dow and HRD ("Supply Agreement") for the production of wax products. Dow contends that the products it produced under the Supply Agreement met the specifications agreed upon by the parties, and that HRD failed to make payments required for those products. HRD counterclaimed on March 31, 2005, alleging that Dow intentionally added or failed to remove low molecular weight components it calls "light ends" from the products. Significantly, the Supply Agreement is an integrated contract and does not include any requirement relating to

light ends. Further, Dow expressly disclaimed any warranties of quality, fitness or merchantability in the contract.

4.     HRD filed the present motion seeking production of unredacted documents containing details of the process Dow used to produce HRD's products. On January 17, 2008, the Court ordered Dow to provide HRD with page by page explanations of the information Dow redacted in its documents. (D.I. 121). To comply with the Court's order, Dow's attorneys consulted with a Dow scientist and spent hundreds of hours reviewing each redaction on Dow's documents and created a log explaining what information was redacted from each page of every document produced by Dow. (*See* D.I. 148). Subsequently, HRD filed the instant motion which contends that Dow's redaction log describes details of the manufacturing process that are relevant to its claim that Dow added or failed to remove light ends.

## DISCUSSION

5.     At the outset, HRD mischaracterizes the volume of redactions on Dow's documents and the quality of the explanations provided in Dow's redaction log and key. (D.I. 152 at ¶ 1). The redactions remaining in Dow's documents are anything but a "massive concealment" of information as HRD contends. (Id.). As set forth in Dow's Notice of Compliance, filed on April 25, 2008, no more than eight percent of the over 150,000 pages of documents produced by Dow contain any redactions whatsoever, and many of those pages contain but a few redactions. (D.I. 148). HRD's claim that Dow's redaction key lists only "broad categories" is similarly unfounded; each category on the redaction key sufficiently explains the basis for the redactions.[1] (D.I. 152 at ¶ 3).

---

[1] HRD also complains that some pages on Dow's redaction log have multiple redaction codes making it "impossible to determine the reason for individual redactions." (D.I. 152 at ¶ 3). The pages to which HRD refers have multiple codes because the redacted information on those pages

2

### A. The Redacted Sarnia Process Information in Categories B and E-N is Not Relevant

6. The Court should deny HRD's motion on the merits because the redacted information is irrelevant to HRD's claims and defenses. *See* FED. R. CIV. PROC. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is *relevant* to any party's claim or defense.") (emphasis added). This standard requires that "the parties and the court focus on the actual claims and defenses involved in the action," so as to limit the "sweeping and contentious discovery" that was available under the prior version, which permitted discovery of any information "relevant to the subject matter involved in the action." *Id.* (2000 Adv. Comm. Notes); *see also Iseley v. Talaber*, Civil No. 1:CV-05-0444, 2007 WL 2903340, *2 (M.D.Pa. Sept. 28, 2007) ("The polestar of discovery is relevance to a claim or defense."). Accordingly, a complaint that focuses on a narrow range of allegedly improper conduct "circumscribe[s] the scope of relevant discovery." *Grother v. Union Pac. RR. Co.*, No. H-04-3279, 2006 WL 1662936, *12 (S.D. Tex. June 9, 2006). Consequently, a motion to compel is properly denied where it seeks information "outside the scope" of the party's pleading. *Heredia v. Heyman*, 203 F.R.D. 112, 113 (S.D.N.Y. 2001); *see also Hughes v. LaSalle Bank*, No. 02 Civ. 6384, 2004 WL 414828, *1 (S.D.N.Y. Mar. 4, 2004) ("The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists.").

7. HRD seeks to obtain unredacted documents[2] that provide details of the process used to produce HRD's products at Dow's plant in Sarnia, Ontario ("Sarnia"). (D.I. 152 at ¶ 4-7, Ex. B). However, the information that Dow has redacted is completely irrelevant to the claims

---

falls into more than one category. Dow's log is consistent with Court's Order of January 17, 2008 which required Dow to explain its redactions on a "page by page basis." (D.I. 121 at 4).
[2] Specifically, HRD seeks unredaction of categories B and E-N on Dow's Redaction Key. (Ex. 1).

3

and defenses in HRD's pleadings. Specifically, Dow alleges that HRD breached the Supply Agreement by failing to make payments required for products it purchased from Dow. HRD's pleadings claim that its breach was justified, or that Dow breached the Supply Agreement, because Dow intentionally "either dumped . . . waste material [*i.e.*, the light ends] back into the product, failed to remove it, or both." (D.I. 25 at ¶ 105). Thereafter, the principals of HRD, Aziz and Abbas Hassan, appeared to have abandoned their claim that Dow failed to remove the light ends when they affirmed in sworn deposition testimony that HRD's claim is based on Dow adding light ends back into the products produced at Sarnia. Specifically, when asked about the deficiency in the products produced at Sarnia, Abbas Hassan claimed that HRD "did not know before with 100 percent accuracy that the product had the light-ends until Dave Edwardes [Dow project manager for the Sarnia conversion] said we were *putting it back in*." (Deposition of Abbas Hassan, Feb. 8, 2008, Tr. 112:8-11) (Ex. 2) (emphasis added). Similarly, Aziz Hassan explained that "Dave Edwardes is the one that told [HRD] that they were *adding in the low-ends or light-ends back in the product*." (Deposition of Aziz Hassan, Feb. 8, 2008 Tr. 51:3-5) (Ex. 3) (emphasis added). Thus, according to HRD's principals, Dow's purported deliberate recombination of the light ends into the wax product was the relevant conduct giving rise to its breach of contract claim. Similarly, in response to an Interrogatory asking HRD to identify communications relating to its counterclaim of failure to provide adequate assurances, HRD stated that it demanded products with lower light ends "as soon as HRD learned that Dow re-combined light ends with Products before loading them into tank cars." (Ex. 4 at Resp. to Interrog. No. 12).

8.   Dow has provided full discovery on HRD's claims both as set forth in the pleadings, and as testified to by HRD's principals. Dow has produced all documents relating to

discussions about light ends. Specifically, with respect to HRD's contention that Dow failed to remove light ends from the wax products produced under the Supply Agreement, ███████ ███████████████████████████████████████████ (Declaration of Brian Kolthammer ("Kolt. Decl.") ¶ 20).[3] Further, ███████████████████ ███████████████████████████████████████████ (*See* Id. ¶ 25). As for HRD's contention that Dow dumped light ends back into the products, █████ ███████████████████████████████████████████ (Id.). Therefore, the processing at Sarnia that occurred ███████████████████ *whatsoever* on whether or not Dow failed to remove the light ends or added light ends back into HRD's products. Notably, Dow has produced information on the equipment that processes the ██████████

    9.    In asserting its entitlement to the details of the Sarnia manufacturing process ████████████ HRD merely relies on conclusory assertions that the information is "critical," "clearly relevant," "extremely relevant" or "critically important." (D.I. 152 at ¶ 7, Ex. B). These conclusory allegations fail to satisfy HRD's burden of demonstrating discoverability. *See Iseley*, 2007 WL 2903340, *2 ("The party moving to compel must demonstrate the relevance of the information sought to a particular claim or defense."). Dr. Kolthammer's declaration

---

[3] HRD's definition of light ends includes volatiles as well. ██████████████████████ ███████████████████████████████████████████████

details why each of HRD's relevance explanations is unfounded and why each of these categories has nothing to do with light ends. (*See* Kolt. Decl. ¶¶ 16-29).

**B.  The Redacted Sarnia Process Information in Categories B and E-N Contains Dow's Trade Secrets**

10.  In addition to being irrelevant to the instant case, the redacted material sought by HRD contains Dow's trade secrets, which Rule 26(c) protects from discovery. FED.R.CIV.PROC. 26(c)(7) ("The court may, for good cause, require[] that a trade secret . . . not be revealed."). It is well-settled that trade secrets are not discoverable if (a) their disclosure would cause harm to the producing party, and (b) they are irrelevant and not necessary for the requesting party to prepare its case for trial. *Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*, Nos. Civ. 98-0080-SLR, 2004 WL 115594, *2 (D.Del. Jan. 13, 2004); *see also In re Eli Lilly & Co.*, 142 F.R.D. 454, 460 (S.D. Ind. 1992). In other words, valuable trade secrets which are not relevant to any claim or defense in a case are not discoverable. As set forth above, the information sought by HRD is irrelevant to any issue identified in the pleadings, so one prong of the standard established for Rule 26(c) has been satisfied. *See, e.g., Beauchem v. Rockford Products Corp.*, No. 01 C 501345, 2002 WL 1870050, *1-2 (N.D.Ill. Aug. 13, 2002) (holding redactions were appropriate where relevance was not "closely tied to the actual allegation contained in the complaint").

11.  Turning to the second prong of Rule 26(c), disclosure of the redacted information would cause irreparable harm to Dow. The redacted information is of the type that courts have recognized as being at risk, even when produced pursuant to a protective order.[4] *See Autotech*

---

[4] The information HRD seeks includes valuable trade secrets, such as formulas, manufacturing processes, and techniques that Dow uses to make its polyethylene products. These processes and techniques are unknown to Dow's competitors and provide Dow a competitive advantage. (Kolt. Dec. ¶ 9). Such information is recognized to be a trade secret under Delaware law. DEL. CODE ANN. TIT. 6 § 2001(4).

6

*Tech. Ltd. P'ship v. Automation.com, Inc.*, 237 F.R.D. 405 (N.D. Ill. 2006). Indeed, courts have recognized the risk inherent in revealing such information even to outside experts and consultants who are regularly called upon for assistance in the industry. *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 537-38 (C.D. Ill. 1991); *Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*, 129 F.R.D. 528, 531 (E.D. Wis. 1990). For many years, Dow has taken extra precautions for protection of the very information at issue here. (Kolt. Decl. ¶¶ 5-9, 14). Accordingly, Dow does not disclose such information to outside consultants, even under the terms of a secrecy agreement. As Dr. Kolthammer explains, this type of information, once learned by an expert in chemical engineering, could never be forgotten and could easily be inadvertently revealed by the expert when consulting with other companies on chemical engineering issues. (Id.). Thus, a secrecy agreement or protective order simply cannot protect Dow from harm.

12.   HRD claims that disclosure of the redacted material will not harm Dow's business as a whole because the Sarnia process designed for HRD was different from the production process employed at Dow's other facilities. (D.I. 152 at ¶ 4-5). Although some details of the Sarnia plant were unique to the production of wax for HRD, many aspects of the plant *are* consistent with the proprietary Solution Process Technology used in Dow's other polyethylene plants. (Kolt. Decl. ¶ 14). Accordingly, Dow has redacted information which is generally applicable to its solution processing business, but has not redacted details specific to the wax handling and back-end changes made for HRD at Sarnia. (Id.).

13.   HRD additionally asserts that it is entitled to information about the Sarnia process because the information "is not new" and because the design of Sarnia is "typical for a polyethylene plant." (D.I. 152 at ¶ 6). This is factually incorrect and, in any event, provides no

legal basis for production of the information. First, "newness" is not a requirement for information to constitute a trade secret. *See, e.g. Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974) ("Novelty, in the patent law sense, is not required for a trade secret."). Indeed, Dow's careful protection of its trade secrets over many years has allowed Dow's successful polyethylene business to endure. And finally, Dow's production of polyethylene using the solution process that was employed at Sarnia is not typical; instead, it represents a small fraction of global polyethylene production. (Kolt. Decl. ¶ 12). Therefore, the details of the equipment and conditions at the Sarnia plant are anything but typical of polyethylene plants in the industry, are used by Dow in its polyethylene business, are proprietary in nature, and are eligible for trade secret protection.

14. Thus, the information identified by Dow is not only irrelevant to the pending claims, but also constitutes valuable trade secret information. Accordingly, it should be precluded from discovery under Rule 26(c). FED.R.CIV.PROC. 26(c)(7).

C.  **Redaction Keys C, D and O Concern Unrelated Products and Projects**

15. HRD argues that "Dow's redaction Keys C, D and O allege categories that facially might appear legitimate, but the documents redacted under those headings are relevant and discoverable." (D.I. 152 at ¶ 8). These categories pertain to: "[i]nformation on Dow commercial and experimental catalysts not used at either Sarnia or Freeport for purposes of work for HRD (e.g. ESI catalysts)" (Category C); "[i]nformation on Dow commercial and experimental process conditions and equipment not used for the purposes of the work done for HRD (e.g. ESI, Dowlex, plants in Plaquemine, LA)" (Category D); and, "[i]nformation on business plans or research projects that are not related to wax or adhesives" (Category O). (*See* Ex. 1).

16. HRD does not dispute that these categories as described on Dow's redaction log are irrelevant to the case, but instead contends that Dow has improperly labeled redactions of relevant information with these codes. (D.I. 152 at ¶ 8). HRD has attached various documents in support of that claim. Although the numerous examples cited by HRD include four minor, inadvertent errors, in view of the greater than 150,000 pages produced by Dow, the number of errors has been minimal. Each of HRD's cited examples are addressed seriatim:

**Category C**

- HRD complains that Dow redacted information on catalysts used for HRD's products in its Exhibit J.1. (Id. at ¶ 12, Ex. J.1). However, the redacted information in these documents solely concerns catalyst information in specifications from *other* products. What follows are two examples of redactions in this document: ███████████████████████████████████████ The deleted information identifies catalyst information for one of Dow's commercial polymers, it does not identify not the catalysts used for HRD's products. (Kolt. Decl. ¶ 31).

- The catalyst efficiency information redacted in HRD's exhibits J.2 and J.3 was appropriately redacted, but should have been classified under category E.

**Category D**

- HRD complains that Dow used redaction key D for equipment used for HRD in the documents it attached at Exhibit K. (D.I. 152 at ¶ 13). One document is an email from April 2002, three months before the Dow/HRD Agreements were signed and long before the Sarnia plant was converted. (*Id.* at Ex. K.2). The redacted information concerns a different Dow facility; the comparable equipment at Sarnia had not yet been purchased or even designed. (Kolt. Decl. ¶ 32).

- The redacted information in the document attached by HRD at Exhibit K.1 was Dow's internal code name for two pieces of reactor equipment; equipment code names are not relevant to the case. (*See* Kolt. Decl. ¶ 19).[5]

**Category O**

- HRD argues that Dow has redacted laboratory notebooks directly related to research on HRD's products. (D.I. 152 at ¶ 9-10). Contrary to HRD's assertion, these Databooks also contain information on various research projects unrelated

---

[5] The redaction is appropriate, but should have been classified under category B.

9

to HRD. For example, some of the redacted projects include: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Kolt. Decl. ¶ 32).

- HRD claims that Dow redacted test results for samples referenced on page 8 of the lab notebook attached to its motion as Exhibit I.1. (D.I. 152 at ¶ 9). However, that page simply references receipt of the samples. It does not indicate that the Databook contains any results for the samples. Dow has produced these results in other documents. (Ex. 5). In fact, the redacted portion of page 8 contains results from a ▮▮▮▮▮▮▮▮ unrelated to HRD's wax project. HRD also complains that pages 21 and 26 of the same notebook were redacted, but, again, these pages concern projects completely unrelated to HRD.[6] (Kolt. Decl. ¶ 34).

- HRD complains that Dow redacted information given in a presentation that included information on HRD's waxes and Dow's "Affinity GA Polymers." (D.I. 152 at ¶ 11). However, none of the information pertaining to HRD's waxes in this presentation was redacted.[7]

**D.    The JDA Provides No Contractual Basis for Production of Dow's Trade Secrets**

17.    HRD argues it has a contractual right to the redacted material under the JDA. (D.I. 152 at ¶ 2).[8] However, in recognition of the sensitive nature of Dow's technology, the JDA was carefully drafted to limit the information to which HRD would have access. The title of Clause 4.3 cited by HRD, "Ownership of and Access to JDA Information," plainly limits the scope of information to which HRD is entitled to "JDA Information." (Ex. 11 at ¶ 4.3). Clause 10.10 of the JDA defines "JDA Information" as "any *new* Information . . . developed or acquired

---

[6] HRD complains that page 30 of the same notebook was improperly redacted. (D.I. 152 at ¶ 9). Results of some samples HRD requested were inadvertently redacted on that page; however, the same data were produced in other documents. (*See, e.g.* Ex. 6). That page, unredacted, is attached hereto as Exhibit 7. HRD also complains that Databook number 200103777 has not been produced. (D.I. 152 at ¶ 10). Dow has since located this document and it will be produced under separate cover.

[7] Some information related to Dow's adhesives grade polymers was mistakenly redacted from this document, but any such information has been produced in other documents. (*See, e.g.* Exs. 8, 9). This example does not support HRD's claim about the impropriety of the redaction category, but is a ministerial error which Dow has fixed. A revised version of this document is attached. (Ex. 10).

[8] HRD's argument that it has a contractual right to both access *and* use of the redacted information is further evidence of HRD's ulterior motives and the potential for harm to Dow.

10

both (a) during the Activity Period, and (b) in connection with work performed on this JDA."[9] (Id. at ¶ 10.10) (emphasis added). In contrast to the information contemplated by this clause, the manufacturing details redacted by Dow reflect years of process development and optimization work that Dow employs on other commercial processes and that were merely applied for production of HRD's products. (Kolt. Decl. ¶ 14). Therefore, the redacted information was neither new, nor was it developed in connection with work performed on the JDA.

18. In contrast, and in keeping with its obligations under Clause 4.3 of the JDA, Dow did not redact unique process details developed specifically for HRD, ████████ ████████████████████████████████████████████████ ████████████████████████████████████████ (Kolt. Decl. ¶ 26).

## CONCLUSION

For the foregoing reasons, HRD's motion to compel should be denied.

---

[9] HRD's use of the lower case "information" in its motion and its failure to set forth the title of Clause 4.3 misrepresents the specific and defined scope that clause was given in the JDA. (D.I. 152 at ¶ 2).

| | |
|---|---|
| OF COUNSEL:<br><br>Andrew Weissmann<br>Katya Jestin<br>JENNER & BLOCK LLP<br>919 Third Avenue<br>37th Floor<br>New York, NY 10022-3908<br>(212) 891-1600<br><br>Aaron A. Barlow<br>JENNER & BLOCK LLP<br>330 N. Wabash Ave.<br>Chicago, IL 60611<br>(312) 222-9350<br><br>Dated:   May 28, 2008 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>By:   /s/ Kenneth J. Nachbar<br>Kenneth J. Nachbar (#2067)<br>Samuel T. Hirzel (#4415)<br>1201 N. Market Street<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>*Attorneys for Dow Chemical Canada Inc. and The Dow Chemical Company* |

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on September 12, 2008 I served via Electronic Mail and by Hand the attached document on the following:

> W. Harding Drane, Jr.
> Richard L. Horwitz
> Potter Anderson & Corroon LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Wilmington, DE 19899-0951

Copies were also sent via Electronic Mail to the following:

> William C. Ferebee, Esquire
> Michael Landrum, Esquire
> O'DONELL, FEREBEE, MEDLEY & KEISER, P.C.
> 450 Gears, Eighth Floor
> Houston, TX 77067-4512

/s/ Kenneth J. Nachbar
Kenneth J. Nachbar (#2067)
Samuel T. Hirzel (#4415)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200