# EXHIBIT A

Dow Sarnia Announces Sarnia Product Development Plant To Be Idled          http://news.dow.com/dow_news/manufacturing/2005/20050118a.htm



Search [ ] GO

**PRODUCTS AND SERVICES    INVESTOR RELATIONS    THIS IS DOW    NEWS CENTER    OUR COMMITMENTS    INNOVATION    CAREERS**

## News Center

Corporate News

Product and Business News          Dow Sarnia Announces Sarnia Product Development Plant To Be Idled

Manufacturing News

Press Kit                          Sarnia, Ontario - January 18, 2005

Speeches and Reports               Dow's Specialty Plastics business announced today that it will cease production of polyethylene waxes at the

Media Contacts                     Sarnia Product Development Plant. This followed the recent news that Dow Canada had terminated the supply
                                   agreement with its customer for the products, HRD Corporation of Houston, Texas. The plant in Sarnia will be
Upcoming Events                    'mothballed' (idled) while Dow investigates other options for the Product Development Plant.

Feature Stories
                                   Mike Gillis, production leader at the plant confirmed that the decision, while not expected, was a business
Around Dow                         reality since at this time Dow has no plan to directly supply polyethylene wax to the market. "The Company will
                                   address the question of restarting the product development plant following the review of potential alternative
Dow TV                             uses of this facility."

Subscribe to Dow News
Service                            Mothballing of the Product Development Plant will affect 24 jobs directly aligned to the plant in addition to
                                   related support services. Site leadership has not had the opportunity to review the full impact in the face of this
Dow News Podcast                   rapid business decision however, infrastructure changes will need to occur to ensure existing businesses on
                                   site remain competitive and this could mean up to a total of 80 jobs being affected.

                                   "This is disappointing news for Dow Sarnia and these decisions are extremely hard on everyone. We have a
                                   talented and dedicated group in Sarnia and we are working through plans to address the effect on our
                                   employees," said Glen Mutscher, site operations director.

                                   "We will be working with our employees, leadership, Human Resources, and the Union - using our
                                   Relationship by Objectives (Dow/Union) process within the parameters of the recent Collective Agreement. It
                                   is too early to know the full extent of the change that will result from this business decision but we will be
                                   looking at any way we can to minimize job loss.

                                   "We remain committed to our people, safety, and the community. We also recognize that Dow businesses will
                                   continue to examine their assets to adjust to changing market conditions and we must meet these decisions
                                   with a focused response that will keep us in line with Dow's strategy to reduce costs and optimize assets."

                                   In addition to this idling, the Dow Chlor-Vinyl business announced that they will no longer receive or ship
                                   caustic soda from the Sarnia terminal. By month-end June, 2005, shipments of caustic soda will be supplied
                                   via other supply chain alternatives. This will affect 2 jobs directly aligned to the terminal.

                                   Dow employs approximately 450 people in Sarnia.

                                   Dow is a leader in science and technology, providing innovative chemical, plastic and agricultural products
                                   and services
                                   to many essential consumer markets. With annual sales of $33 billion, Dow serves customers in more than
                                   180 countries
                                   and a wide range of markets that are vital to human progress, including food, transportation, health and
                                   medicine, personal and home care, and building and construction, among others. Committed to the principles
                                   of sustainable development, Dow and its approximately 46,000 employees seek to balance economic,
                                   environmental and social responsibilities. References to "Dow" or the "Company" mean The Dow Chemical
                                   Company and its consolidated subsidiaries unless otherwise expressly noted. For further information, visit
                                   Dow's website at www.dow.com.

                                   Dow Chemical Canada Inc., a subsidiary of The Dow Chemical Company, employs approximately 1,700
                                   people in Canada. Headquartered in Calgary, Alberta, Dow Canada and its affiliates have manufacturing
                                   locations in: Sarnia, and Weston, Ontario; Fort Saskatchewan and Prentiss, Alberta; Elie, Manitoba; and
                                   Varennes, Quebec. For more information about Dow Canada, please visit our web site
                                   at www.dowcanada.com.


                                   For Editorial Information:

                                   Mimi Long
                                   Dow Chemical Canada INC.
                                   (519) 339-3267

Dow Sarnia Announces Sarnia Product Development Plant To Be Idled          http://news.dow.com/dow_news/manufacturing/2005/20050118a.htm

**YOU ARE HERE** ——————— *Dow Home : News and Information*

Help | Privacy Statement | Internet Disclaimer | Accessibility Statement | Search | Site Map

Copyright © The Dow Chemical Company (1995-2008). All Rights Reserved.
®™* Trademark of The Dow Chemical Company ("Dow") or an affiliated company of Dow

4/13/2008 6:00 PM

# EXHIBIT B

Dow Sarnia to Cease Local Manufacturing Operations by Year End 2008        http://news.dow.com/dow_news/manufacturing/2006/20060831b.htm



Search            GO

**PRODUCTS AND SERVICES     INVESTOR RELATIONS     THIS IS DOW     NEWS CENTER     OUR COMMITMENTS     INNOVATION     CAREERS**

# News Center

Corporate News

Product and Business News

Manufacturing News

Press Kit

Speeches and Reports

Media Contacts

Upcoming Events

Feature Stories

Around Dow

Dow TV

Subscribe to Dow News Service

Dow News Podcast

Dow Sarnia to Cease Local Manufacturing Operations by Year End 2008

Sarnia, ON - August 31, 2006

Dow Chemical Canada Inc.'s Sarnia site announced today that local manufacturing operations will cease by the end of 2008.

The decision to stop production at the Sarnia site was precipitated by Dow's inability to secure anysupply of ethylene, the principal feedstock for its Low Density Polyethylene (LDPE) unit. This followed the March 7th suspension of ethylene delivery from Western Canada through the Cochin Pipeline. The operators of the pipeline, Dome Pipeline Corporation and Cochin Pipe Lines Ltd., subsidiaries of BP Canada Energy Resources Company ("BP") had advised Dow that the suspension was necessary 'to ensure the appropriate safety margin for operations.' The decision to shut down Dow's LDPE unit changed the overall economics of the site and triggered assessments by each of the other businesses that had manufacturing facilities located in Sarnia. The individual business assessments highlighted a variety of issues related to the cost effectiveness, efficiency and age of the remaining Sarnia-based manufacturing facilities.

"This was a difficult decision that was made only after every other option was exhausted," said Jeff Johnston, President of Dow Chemical Canada Inc. "The production and infrastructure provided by Sarnia's LDPE unit was an important economic foundation for the remainder of the site's operations. Without the ongoing support from our LDPE unit, the other manufacturing facilities could not remain competitive.

"I am personally committing that throughout this process, Dow Chemical Canada Inc. will treat impacted employees fairly and with compassion, dignity and respect. I cannot emphasize strongly enough that the decision to shut down these facilities in no way reflects on the work and dedication of our Dow employees."

All jobs located at the Sarnia site will be affected by the announcement. The reduction of the site's 340 employees and 40 contractor workers will coincide with the phased cessation of production. A variety of options, including early retirement provisions, potential redeployment to other Dow locations, and the potential establishment of home-based offices may help reduce the effects of this decision.

"Our first priority is to support our employees and to ensure that production is concluded in a safe and environmentally responsible manner, to minimize the effects on our community, customers and suppliers," said Glen Mutscher, Director of Sarnia Site Operations. "We are very mindful of the legacy that binds Dow Sarnia employees, past and present, to Sarnia-Lambton and we will continue to meet our community, environmental and business obligations."

The site's LDPE and Polystyrene units will close in 2006. Operations at the Acrylate Latex and Propylene Oxide Derivatives units will cease during 2008. In addition, Dow's Product Development Plant will be moved from a mothballed state to permanent shut down, and the Hydrocarbons storage caverns and related assets are expected to be sold.

About The Dow Chemical Company

Dow is a diversified chemical company that harnesses the power of science and technology to improve living daily. The Company offers a broad range of innovative products and services to customers in more than 175 countries, helping them to provide everything from fresh water, food and pharmaceuticals to paints, packaging and personal care products. Built on a commitment to its principles of sustainability, Dow has annual sales of $46 billion and employs 42,000 people worldwide. References to "Dow" or the "Company" mean The Dow Chemical Company and its consolidated subsidiaries unless otherwise expressly noted.

Dow Chemical Canada Inc., a subsidiary of The Dow Chemical Company, employs approximately 1,300 people in Canada. Headquartered in Calgary, Alberta, Dow Canada and its affiliates have manufacturing locations in: Sarnia and Toronto, Ontario; Fort Saskatchewan and Prentiss, Alberta; and Varennes, Quebec. For more information about Dow Canada, please visit our web site at www.dowcanada.com.

For Editorial Information:

Mimi Long
The Dow Chemical Company

Dow Sarnia to Cease Local Manufacturing Operations by Year End 2008          http://news.dow.com/dow_news/manufacturing/2006/20060831b.htm

1 (800) 361-6650

YOU ARE HERE ·············Dow

Home : News and Information

Help | Privacy Statement | Internet
Disclaimer | Accessibility
Statement | Search | Site Map

Copyright © The Dow Chemical Company (1995-2008). All Rights Reserved.
®™* Trademark of The Dow Chemical Company ("Dow") or an affiliated company of Dow

# EXHIBIT C

📠002/003



## O'DONNELL FEREBEE MEDLEY & KEISER, P.C.

William C. Ferebee

### ATTORNEYS AT LAW

(281) 875-8200

December 12, 2007

VIA FAX (312) 923-8408

Mr. Aaron Barlow
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611-7603

     RE:   Dow v. HRD Corporation; *Our File No. M313.00026.*

Dear Mr. Barlow:

This letter is in response to your letter dated December 10, 2007, regarding Dow's redaction of documents. First your letter overstates HRD's position on redactions.

HRD's experts want a "level playing field". In other words, if Dow's witnesses (whether designated an expert or not) have seen an unredacted document, then our experts want to see the same document without redactions. That statement however does not apply to every document your experts and employees have ever seen in their life. **It only applies to the documents that Dow has produced in this litigation.** Frankly I am at a loss as to why Dow has any difficulty understanding that concept. If the roles were reversed, I am certain Dow would be taking the same position.

This is particularly true in this case where Dow has redacted all of the meaningful information from virtually every technical document.

At some point in time you suggested that our experts meet to see if they could agree on what was to be redacted. I expressed my reservations because I couldn't see how the 90,000 plus documents could be reviewed in less than two weeks. You suggested that the experts not review the documents one by one but rather discuss the matter in generalities. I took this suggestion back to my experts and they were unanimous and unequivocal in stating that they wanted the level playing field I discussed above.

I am not sure what you hope to accomplish in a meeting of experts. My experts will not willingly be blindsided in deposition or trial by documents that your employees and/or experts have seen but which they have not seen.

You keep forgetting that Dow's confidential information is fully protected by the Order that you prepared and the Court signed.

450 Gears - Eighth Floor■Houston, Texas 77067-4512■Fax (281) 875-4962■Email; wferebee@ofmklaw.com

Maybe my plant/processing expert would change his mind after he has a chance to see the actual facility at Sarnia were the product was made.  Can you arrange for that inspection?

Very Truly Yours,

O'DONNELL, FEREBEE, MEDLEY & KEISER, P.C.

*William C. Ferebee*

WILLIAM C. FEREBEE

cc:    CLIENT, *via fax*

WCF/cm

# EXHIBIT D

JENNER&BLOCK

December 18, 2007

VIA FACSIMILE

William C. Ferebee
O'Donnell Ferebee Medley & Keiser, P.C.
450 Gears - 8th Floor
Houston, TX 77067-4512

Jenner & Block LLP    Chicago
330 N. Wabash Avenue    Dallas
Chicago, IL 60611-7603    New York
Tel 312 222-9350    Washington, DC
www.jenner.com

Aaron A. Barlow
Tel  312 923-8308
Fax  312 923-8408
abarlow@jenner.com

Re:    Dow v. HRD Corporation

Dear Bill,

I am writing in response to your letter dated December 12, 2007 regarding your refusal to engage in a meet and confer with the parties' experts to discuss Dow's redactions.

You seem to be missing the point I have repeatedly raised with respect to the redacted material. In the document set at issue, our witnesses will see the exact same information as HRD's experts. HRD's experts cannot be concerned that they will not be on a "level playing field" with respect to Dow's documents, because the "field" of documents for both sides' witness will be the same. Your suggestion that we would redact relevant information only to blindside HRD's experts or you with the unredacted versions at deposition or at trial is unfounded, and would not be countenanced by the Court in any event.

You mentioned that you are not sure what we could accomplish in a meeting of the experts. As you know, the purpose for the meeting is to determine if any of the redacted information is relevant to issues in this lawsuit. During our discussions, you have never been able to articulate why any of the redacted information is relevant to any of the issues in the case or otherwise discoverable. Rather, you have consistently deferred to your experts' conclusory statements that they "want" to see the redacted information. The issue is not what experts "want" to review, but rather what experts reasonably need to review to express their opinions – in other words, whether the requested information is relevant. If, in fact, your experts have a basis for believing that any of the categories of redacted information are relevant, we would like to discuss that basis so that we could potentially make a decision to unredact certain information. For example, we still have no basis for understanding why you believe information regarding the catalyst system could be relevant, or why information relating to blenders that were not even used on the products at issue could be relevant. Yet, you steadfastly maintain that all of this information should be unredacted. Thus, the purpose of the meeting is to give HRD, through its experts, the opportunity to explain why any of the categories of redacted information are relevant to the issues in the lawsuit.

Your last paragraph regarding an inspection of the actual facility at Sarnia appears to be disingenuous at best. If your experts think they could determine the relevance of certain information after visiting the plant, they should be able to identify and describe what redacted information relating to the manufacturing process could be relevant in a meeting. HRD's expert

William C. Ferebee
December 18, 2007
Page 2

does not need to see the plant to discuss what types of information are relevant to the lawsuit and explain to us what you have been unable to do, namely, why the redacted categories of information are relevant. If your plant/processing expert believes that there is relevant information that he would like to see, we can discuss at a meeting the possibility of unredacting information that we agree is in fact relevant.

We would really like to resolve this issue, and we continue to believe that a good faith meet and confer is likely to be very helpful (in addition to being required by the local rules). We would like to understand whether you have a basis to assert that the redacted information is relevant or otherwise discoverable. However, you appear to be unwilling to do so.

Very truly yours,

Aaron A. Barlow

# EXHIBIT E



Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

W. Harding Drane, Jr.
Partner
Attorney at Law
wdrane@potteranderson.com
302 984-6019  Direct Phone
302 778-6019  Fax

January 25, 2008

**BY EMAIL AND HAND**
Mr. Kenneth Nachbar
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Re:    <u>Dow Chemical Canada, Inc. v. HRD Corporation; C.A. No. 05-23 (JJF)</u>

Dear Ken:

HRD is disappointed that you have rejected its proposal for a face to face meeting on February 11, 2008, to include Jenner & Block, you, Bill Ferebee, and me.  I believe that a face to face meeting could resolve a number of existing discovery issues, and hopefully "lower the temperature" a bit.  However, if Dow does not want to participate in such a meeting, HRD proposes to resolve your request for additional information on damages in one of the following two ways:

1.  a. HRD will produce Craig Cawley, Abbas Hassan and Aziz Hassan for deposition in Houston, Texas, on Monday, February 11, 2008.  These are the individuals you sought to depose in Dow's Motion.  You should be advised in advance that Mr. Cawley does not have any knowledge about HRD's damage calculations.  In addition, he is not an accountant or an economist and will not be designated as an expert witness in this case.  Likewise, Abbas Hassan and Aziz Hassan are not accountants and are not economists.  In addition, they will not be presented at trial as expert witnesses on the dollar amount of damages suffered by HRD.

b. The documents Abbas and Aziz used to calculate HRD's damages will be produced within five business days of when you make your selection of this option.

c. HRD will amend its Answer to Interrogatory 23 within five business days of your selection of this option.

OR

Mr. Kenneth Nachbar
January 25, 2008
Page 2

      2. HRD will produce an expert witness who will testify regarding HRD's damages. This witness can only be produced after Dow has provided, at a minimum, the following unredacted documents for review by HRD's expert:

      a. Documents, including without limitation email correspondence between Dow and HRD, which set forth the additional manufacturing facilities Dow was willing to construct for HRD; and

      b. Dow's sales of resin to the hot melt adhesive market for the years 2003-2007; and

      c. Dow's share of the hot melt adhesive market for the years 2003-2007; and

      d. Dow's gross sales and gross profits for sales to the hot melt adhesive industry for 2003-2008; and

      e. Dow's use of the patent it filed simultaneously with the HRD patent application.

      The emails and other documents are relevant to show that HRD and Dow had active plans to expand the manufacture of wax products in accordance with the HRD damage model. Items b, c, and d are relevant because Dow has actively sold resins for the hot melt adhesive industry for a number of years. The resin is approximately one third of a hot melt adhesive and the wax is approximately one third of the hot melt adhesive. Documents b, c and d are therefore important to show that HRD's projections of sales truly reflect what has occurred in the market for the last four years. Item e is relevant to show that the development of the waxes as set forth in the patents is valuable and Dow continues to pursue this market.

      HRD has requested that Dow produce these documents, but Dow either has not produced them at all, or has produced them in redacted form that renders them meaningless or largely so. Without the information listed above, any deposition of an expert would be premature, because he necessarily would answer every question "I don't have enough information to give you an opinion at this time."

      Please let me know which of these two alternatives Dow would like to pursue.

      On another matter, we have not had any response to our request to physically inspect the Sarnia facility where the waxes were manufactured. When will Dow allow HRD to visit the site with its experts?

Mr. Kenneth Nachbar
January 25, 2008
Page 3


        In addition, the Court has ordered Dow to provide to HRD a page by page
explanation of the reasons for each of its thousands of redactions. Perhaps we could agree the
Dow will produce all of the documents in unredacted form and the parties would jointly ask the
Court to find that the requirement of a page by page explanation is moot. In the alternative,
perhaps we could agree that Dow would produce unredacted copies of certain categories of
documents, thereby eliminating the need to provide explanations with regard to many of the
documents.

        We look forward to receiving your response.

                        Sincerely,

                        W. Harding Drane, Jr.


WHD/mho

cc:    Aaron A. Barlow, Esquire (by e-mail)
       William C. Ferebee, Esquire (by e-mail)
       Michael Landrum, Esquire (by-email)

844590

# EXHIBIT F

02/07/2008 10:34 FAX                                                    002/002



William C. Ferebee            **ATTORNEYS AT LAW**            (281) 875-8200

February 6, 2008

Mr. Aaron Barlow                                    VIA FAX (312) 923-8408
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611-7603

    RE:    Dow v. HRD Corporation; *Our File No. M313.00026.*

Dear Mr. Barlow:

    This letter is in response to your letter of December 20, 2007, and February 4, 2008, with regard to Interrogatory 6 and Requests for Admissions 7-12. I apologize for the delay in responding to your letter. I took a few days off at Christmas and then started 2008 with a trial on January 7, 2008, followed by another trial on January 16, 2008, and yet a third, one day trial on January 31, 2008. Between those trials and responding to the multitude of Dow motions, I inadvertently failed to respond to your letter concerning Interrogatory 6.

    HRD will amend its answer to Interrogatory 6 to address the concerns you expressed in your letter of December 20, 2007. I believe that the amended answer will address your perceived inconsistencies in the Interrogatory answer and the answers to Requests for Admissions 7-12.

    On another discovery matter, Dow has still not responded to HRD's request to inspect the Sarnia plant. What is Dow's position on the inspection?

                    Very Truly Yours,

                    O'DONNELL, FEREBEE, MEDLEY & KEISER, P.C.

                    *WC Ferebee*

                    WILLIAM C. FEREBEE

cc: CLIENT

WCF/cm

450 Gears – Eighth Floor■Houston, Texas 77067-4512■Fax (281) 875-4962■Email: wferebee@ofmklaw.com

# EXHIBIT G

# JENNER & BLOCK

February 29, 2008

Jenner & Block LLP            Chicago
919 Third Avenue              Dallas
37th Floor                    New York
New York, NY 10022            Washington, DC
Tel 212-891-1600
www.jenner.com

Andrew Weissmann
Tel  212 891-1650
Fax  212 909-0850
aweissmann@jenner.com

**Via Facsimile & Regular Mail**

William C. Ferebee
O'Donnell Ferebee Medley & Keiser, P.C.
450 Gears - 8th Floor
Houston, TX 77067-4512

Re:    Dow v. HRD Corporation/Proposed Sarnia Site visit

Dear Bill,

I am writing in response to your recent request to inspect the Sarnia facility. As we discussed in our conference call on February 22, 2008, this new request on your part is one we would be happy to consider once you provide the reason for your request and a description of the scope of the proposed inspection, as well as the proposed attendees (i.e. who, if anyone, would attend other than your yet-to-be-named expert. Also, any visitors would be required to sign the standard site visit Confidentiality Agreement.) We will of course promptly confirm whether we agree to the inspection when we receive the requested information. As I mentioned in our conference call, the Sarnia facility will not be kept in its current state pending your request. Indeed, the site (including the plant that you wish to visit) will be dismantled starting as early as April 2008, , so you need to provide this information promptly.

We are skeptical as to the benefits of a physical inspection of the production facility four years after it produced the products at issue in this case. Any relevant information about the manufacturing process is contained in Dow's documents. Additionally, I understand that representatives of HRD have already visited the Sarnia facility on multiple occasions, including a visit by the Hassans, Craig Cawley and Greg Borsinger in May 2002, a visit by the Hassans in December 2002 and a visit by Craig Cawley immediately prior to the start of production April 2004.

Nevertheless, we are prepared to consider promptly your request as soon as you provide the information described above. If we do not hear from you as to this information in the next ten days we will assume that you have concurred that another site visit is unnecessary.

Very truly yours,

Andrew Weissmann

15773_1

# EXHIBIT H

03/06/2008 11:25 FAX                                                    ☒002/003



## O'F M&K
### O'DONNELL FEREBEE MEDLEY & KEISER, P.C.

William C. Ferebee          **ATTORNEYS AT LAW**          (281) 875-8200

March 6, 2008

Mr. Andrew Weissmann                              VIA FAX (212) 909-0850
Jenner & Block, LLP
919 Third Avenue, 37th Floor
New York, New York 10022

RE:    Dow v. HRD Corporation; *Our File No. M313.00026.*

Dear Mr. Weissmann:

I am in receipt of your letter dated February 29, 2008, regarding HRD's request to view the Sarnia facility. Your letter references this as a "new" request. However, the request is months old. Indeed HRD has repeatedly requested permission to view the Sarnia plant, not only in letters, but in telephone calls with Aaron Barlow and again with you at the recent depositions.

Your letter states that you believe all of the information regarding the Sarnia plant can be found in Dow's documents. That is certainly not true at this moment. The plant documents are one of the many categories of documents containing extensive redactions. My experts can't tell much about the plant or its operations because of the extensive redactions.

As to the scope of the inspection, HRD simply wants to see the physical site so they can understand how the plant was operated. Because of the extensive redaction of documents, this inspection is very important. In addition, as a matter of due diligence, my experts want to be able to tell a jury that they physically saw the plant.

In addition to the HRD experts, I anticipate Abbas and Aziz Hassan will attend the inspection as well as HRD employee Craig Cawley, Michael Goldman and Hardy Drane of the Potter, Anderson & Corroon law firm. I feel confident that everyone will be happy to sign a standard Confidentiality Agreement.

I am concerned about your statement that the plant will be dismantled starting as early as April. My experts need to review unredacted documents concerning the plant prior to the inspection. The Court's order does not require Dow to provide HRD with reasons for its redactions until April 18, 2008. That means that the actual receipt and review of unredacted documents could take several additional weeks.

450 Gears – Eighth Floor■Houston, Texas 77067-4512■Fax (281) 875-4962■Email: wferebee@ofmklaw.com

03/06/2008 11:25 FAX                                                      ☒ 003/003

Very Truly Yours,

O'DONNELL, FEREBEE, MEDLEY & KEISER, P.C.

*William C. Ferebee*

WILLIAM C. FEREBEE

cc:     CLIENT, *via fax*

WCF/cm

450 Gears - Eighth Floor■Houston, Texas 77067-4512■Fax (281) 875-4962■Email: wferebee@ofmklaw.com

# EXHIBIT I

JENNER&BLOCK

March 10, 2008

Jenner & Block LLP          Chicago
330 N. Wabash Avenue        New York
Chicago, IL 60611-7603      Washington, DC
Tel 312 222-9350
www.jenner.com

**VIA FACSIMILE**

William C. Ferebee
O'Donnell Ferebee Medley & Keiser, P.C.
450 Gears - 8th Floor
Houston, TX 77067-4512

Aaron A. Barlow
Tel  312 923-8308
Fax  312 923-8408
abarlow@jenner.com

Re:    **Dow v. HRD Corporation**

Dear Bill:

This is to confirm our discussion today regarding your request to inspect the Sarnia plant.
I informed you that we could make the plant available for inspection any day between now and
the end of March. I asked that you provide dates for when your group could visit Sarnia between
now and the end of March. You indicated that within the next few days you would get back to
me with proposed dates. Please also the names of the individuals who will be attending the
inspection.

Very truly yours,

Aaron A. Barlow
AAB:rlu

# EXHIBIT J

03/17/2008 15:00 FAX                                                    @002/002



**O'DONNELL FEREBEE MEDLEY & KEISER, P.C.**

William C. Ferebee            **ATTORNEYS AT LAW**            (281) 875-8200

                                   March 17, 2008

Mr. Aaron Barlow                              VIA FAX (312) 923-8408
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611-7603

          RE:    Dow v. HRD Corporation; *Our File No. M313.00026.*

Dear Mr. Barlow:

     I am in receipt of your letter dated March 10, 2008, regarding an inspection of the Sarnia
facility. I am currently in trial and do not expect to be finished until March 31-April 1, 2008.
Therefore an inspection before the end of March is impossible.

     I would suggest April 8 and 9, 2008 for the inspection.

     Those attending will be:

          1. Dale Joy
          2. Dr. Rayford Anthony
          3. Abbas Hassan
          4. Aziz Hassan
          5. Greg Borsinger
          6. Craig Cawley
          7. Hardy Drane
          8. Michael Goldman
          9. William Ferebee

     Please let me know if these dates are acceptable.

                              Very Truly Yours,

                              O'DONNELL, FEREBEE, MEDLEY & KEISER, P.C.

                              *William C. Ferebee*
                              WILLIAM C. FEREBEE

cc: CLIENT

WCF/cm

450 Gears – Eighth Floor■Houston, Texas 77067-4512■Fax (281) 875-4962■Email: wferebee@ofmklaw.com

# EXHIBIT K

# JENNER&BLOCK

March 24, 2008

VIA FACSIMILE

William C. Ferebee
O'Donnell Ferebee Medley & Keiser, P.C.
450 Gears - 8th Floor
Houston, TX 77067-4512

Jenner & Block LLP  Chicago
330 N. Wabash Avenue Dallas
Chicago, IL 60611-7603 New York
Tel 312 222-9350  Washington, DC
www.jenner.com

Aaron A. Barlow
Tel  312 923-8308
Fax  312 923-8408
abarlow@jenner.com

Re: Dow v. HRD Corporation

Dear Bill,

We are in receipt of your request to visit the Sarnia PDP on April 8th and 9th.

As we have discussed in the past, both in writing and verbally, Dow is in the process of dismantling this site and had requested that you conduct your visit on or before the end of March 2008 since each day of delay is costly to Dow. However, in an effort to accommodate Bill's trial schedule, we will allow your visit in April under the following conditions. First, we would like to know who Dale Joy is (note that we have previously written you on March 19, 2008 but have received no response). Additionally, as you know, the Sarnia PDP plant stopped producing waxes for HRD in or about July of 2004 and has long been idle. Therefore, we don't understand why one full day is not sufficient for your visit. Accordingly, we will agree to allow your group to visit the Sarnia plant on April 8, 2008 provided that you let us know who Mr. Joy is promptly.

Sincerely,

Aaron A. Barlow

# EXHIBIT L

# This Exhibit Was Redacted In Its Entirety

# EXHIBIT M

**JENNER&BLOCK**

April 14, 2008

**VIA UPS NEXT DAY AIR**

Mr. William C. Ferebee
O'Donnell, Ferebee, Medley & Keiser, P.C.
450 Gears Road
Suite 800
Houston, TX 77067

Jenner & Block LLP    Chicago
One IBM Plaza         Dallas
Chicago, IL 60611-7603  New York
Tel 312 222-9350      Washington, DC
www.jenner.com

Rosalind G. Singleton
Tel   312 840-7883
Fax  312 840 7889
rsingleton@jenner.com

Re:    *Dow Chemical Canada Inc. and The Dow Chemical Company (collectively "Dow") v.*
       *HRD Corporation ("HRD"), Case No. 05-023 (JJF)*

Dear Mr. Ferebee:

Please find enclosed 1 CD of photographs bearing Bates numbers DOW00144841 -
DOW00144984.

Very truly yours,

Rosalind G. Singleton
Paralegal

RGS:
Enclosures

cc:    Aaron A. Barlow
       Raymond N. Nimrod

# EXHIBIT N

No. 05-023                              Abbas A. Hassan
Dow Chem vs. HRD vs. Dow Chem          February 18, 2008

Page 51

1    this.

2        Q.    Why one before the other?  Why wouldn't you go

3    to your -- your customers?

4        A.    Because, you know, you have a base.  Then you

5    can always, you know, put the puzzle together.  You

6    know, why am I going to take a National Starch document

7    that is going to be just one-tenth of 1 percent of the

8    puzzle compared to the 150,000 documents we are getting

9    from Dow?

10       Q.    Well, Mr. Hassan, I'll give you a reason:

11   Because you are basically saying you don't trust Dow

12   further than you can throw them.  Your view is that they

13   have done all these deliberate things to sabotage your

14   business.

15            So I would think that if you were bringing

16   a claim for ███████████ you might actually try and

17   get some documents when you have represented to the

18   Court that you were doing that.

19       A.    Whenever the trial date comes, we will

20   definitely work on that.

21       Q.    Now, with respect to Mr. Orloff, do you know

22   if he ever tested, his -- he and his company ever tested

23   the 2-Pack product that emanated from Sarnia?

24       A.    I don't recall.

25       Q.    Do you remember hearing anything about what

Edmondson Reporting Service
281-376-3532

No. 05-023                                    Abbas A. Hassan
Dow Chem vs. HRD vs. Dow Chem          February 18, 2008

Page 68

1    trying to get me to make a conclusion without seeing the
2    document.
3        Q.    Well, what is your position?  Who has these
4    documents?
5        A.    Dow has it.
6        Q.    And you are saying that they have been
7    redacted --
8        A.    Yes.
9        Q.    -- so that you can't see them, that Dow
10   deliberately took out everything that's relevant and
11   supports you and hasn't turned that over to you?
12       A.    Yes.
13       Q.    And so that's what's underneath those
14   redactions, is if we would only unredact that stuff, you
15   would have a case?
16       A.    We will prepare for one.
17       Q.    And you are waiting to see that stuff before
18   you will see whether other people have documents that
19   can help you?
20       A.    That's right.
21       Q.    Even though there might be ████████████ at
22   stake, you will have a wait-and-see attitude?
23       A.    No, we will definitely start when -- if you
24   have a court date and then we will start working very
25   hard on, you know, on getting the documents from all

Edmondson Reporting Service
281-376-3532

460a6b41-ea97-4126-81f3-e5fdc5480a82

No. 05-023                              Abbas A. Hassan
Dow Chem vs. HRD vs. Dow Chem           February 18, 2008

Page 69

1   around.  And if the date is, let's say, tomorrow and the
2   judge decides we'll have a trial this summer, so we will
3   start working on it.
4        Q.   Because right now it's, Why bother?
5        A.   No.  Why spend money on lawyers --
6        Q.   Right.
7        A.   -- unnecessarily at this minute until we have
8   the documents?
9        Q.   Because a subpoena is expensive?
10       A.   It costs money.
11       Q.   So let's turn to the ██████████ figure.  You
12  were here this morning when your twin brother testified
13  about the three plants that he said that Dow agreed
14  would be built for you.  Correct?
15       A.   It was not being built.  And it was if they
16  had excess, you know, over capacity or something, they
17  would give us those facilities, those -- those units.
18            So, no, it is not as per se it is grass
19  roots, you know, start from scratch buildup.  And they
20  say, if we have excess in assets, we will transfer it.
21       Q.   And who said that?
22       A.   Roger Schwartz.
23       Q.   Were you present?
24       A.   Yes.
25       Q.   Tell me everything that you can recall he said

Edmondson Reporting Service
281-376-3532

460a6b41-ea97-4126-81f3-a5fdc5480a82