**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DOW CHEMICAL CANADA INC. on its own behalf and as assignee of THE DOW CHEMICAL COMPANY,

Plaintiff,

v.

HRD CORPORATION (d/b/a Marcus Oil & Chemical)

Defendant, Counterclaim Plaintiff,

v.

DOW CHEMICAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY,

Counterclaim Defendants.

Case No. 05-023 (JJF)

**PUBLIC VERSION**

Original Filing Date: Jan. 17, 2008
Public Version Date: Sept. 12, 2008

**DOW CHEMICAL CANADA, INC. AND THE DOW CHEMICAL COMPANY'S REPORT TO THE COURT CONCERNING UNLAWFUL ACTIVITY AND EMERGENCY MOTION TO COMPEL DISCOVERY**

## TABLE OF CONTENTS

1. Context of the extortionate conduct. .......... 2

2. HRD's attempts to blackmail Dow. .......... 3

3. HRD's conduct violates 18 U.S.C. § 875(d), the federal statute criminalizing interstate transmission of extortionate threats to injure reputation.......... 6

4. Dow requires immediate discovery on HRD's unsupported damages claim because of HRD's recent extra-judicial actions.......... 8

# TABLE OF AUTHORITIES

**Cases**

*United States v. Morrisson*,
153 F.3d 34 (2d Cir. 1998) .......... 7

**Statutes**

18 U.S.C. § 875(d) .......... 1

18 U.S.C. §1350(c) .......... 6

## OVERVIEW

Over the last week, HRD has embarked on an unlawful effort to extort a settlement from Dow in this case by blackmailing Dow. HRD has threatened [redacted] HRD's communications can only be understood as threats to carry out these acts unless Dow agrees to provide more value to HRD to settle this lawsuit. HRD's conduct constitutes extortion under federal law. *See* 18 U.S.C. § 875(d). That HRD has embarked on this illegal conduct is indisputable: the threats are contained in email, fax and recorded telephone messages from HRD's principals to Dow officers and employees.



[redacted] (Ex. 1). However, HRD has failed entirely to provide any basis for this figure in discovery in this litigation. Given HRD's unlawful conduct and extra-judicial threats regarding their [redacted] Dow respectfully requests that this Court enter an Order requiring that: (1) HRD principals Aziz Hassan and Abbas Hassan and marketing manager Craig Cawley be produced for a deposition forthwith concerning the damages claim and their efforts to attack Dow's reputation and to attempt to extort a settlement; (2) HRD provide full responses to Interrogatory No. 23 in Dow's Third Set of Interrogatories (seeking an explanation of their damage claim); and (3) HRD provide all documents supporting or relating to HRD's alleged damages claim, including but not limited to the documents responsive to Dow's Document Request Nos. 111, 125 and 130-31.

HRD's effort to blackmail Dow into a settlement is so far outside the bounds of normal litigation that the Court's immediate intervention is appropriate.[1]

**1. Context of the extortionate conduct.**

Over the past several months, Mike Levinson, Dow's Director of Business Development for Plastics, has received phone calls from Aziz and Abbas Hassan, the principals in HRD, and has discussed with them the possibility of settling the case. (Levinson Decl. ¶ 4). On Sunday, January 6, 2008 Levinson sent an email to the Hassans in response to the Hassans' proposal for a meeting to discuss settlement of the lawsuit. Levinson indicated that there needed to be more

[1] For purposes of this Motion, Dow Chemical Canada, Inc. and The Dow Chemical Company are collectively referred to as "Dow." As used herein, the term "HRD" refers to both HRD Corporation and its division Marcus Oil & Chemical.

internal discussion at Dow and then he would get back to them regarding their proposal for a face to face discussion about settling the lawsuit. (*Id.* ¶ 5 and Levinson Ex. A).[2]

2. **HRD's attempts to blackmail Dow.**

On January 11, HRD began implementing its extortion plan to obtain a settlement through blackmail and threats. Early in the morning, HRD's Craig Cawley sent faxes to Dow's



(Ex. 1).

Later that morning, HRD's Abbas Hassan sent an email to a former Dow employee with a copy to Mike Levinson. (Levinson Ex. B). The email attached a copy of the above letter sent

[2] "Levinson Ex. _____" refers to Exhibit ____ attached to the Declaration of Michael S. Levinson.

to Dow's CEO. Mr. Hassan indicated in the email that [redacted] (*Id.*; Levinson Decl. ¶ 6).

On the afternoon of January 11, Aziz Hassan followed up the transmission of this email by leaving Mike Levinson a voicemail message as follows:

[redacted]

(Levinson Decl. ¶ 8) (emphasis added). [redacted] (*Id.* ¶ 9). He is, however, involved in decision making concerning this case and discussed the possibility of settlement with the Hassans. (*Id.* ¶¶ 2-3).

Within a matter of minutes of leaving this voice message, Aziz Hassan again called Mr. Levinson, and this time spoke to him live. During that telephone conversation, [redacted]

On Monday, January 14, Mike Levinson received another phone call from Aziz Hassan. Mr. Levinson informed Mr. Hassan that all conversations had to take place between the parties' lawyers. Mr. Hassan indicated that he understood and informed Mr. Levinson that the Hassans were still interested in sitting down with Dow to discuss settlement. Mr. Levinson said that Dow would get back to him via Dow's lawyers in Chicago. Mr. Hassan then said



On January 15, 2008, at 1:51 pm, Abbas Hassan sent Mike Levinson an email replying to Mr. Levinson's initial January 6 email (but deleting the date of January 6 to make it appear that this was the first response to Mr. Levinson's January 6 email). (Levinson Ex. D). Abbas Hassan said:



(*Id.*; Levinson Decl. ¶ 12).

Late in the afternoon of January 16, Mr. Levinson received another telephone call from Aziz Hassan. (Levinson Decl. ¶13). Mr. Hassan asked whether Mr. Levinson had received his e-mail. Mr. Levinson said that he received it, that he had forwarded it to counsel, that Dow

would be responding to them via counsel, and that he could not comment further. (*Id.*). Mr. Hassan asked if it would be soon, and Mr. Levinson said he hoped so. [redacted]

3. **HRD's conduct violates 18 U.S.C. § 875(d), the federal statute criminalizing interstate transmission of extortionate threats to injure reputation.**

The conduct of HRD, including the Hassans and Cawley, violates federal criminal law. Title 18, United States Code, Section 875(d) provides:

> Whoever, [1] with intent to extort [2] from any person, firm, association or corporation, [3] any money or other thing of value, [4] transmits in interstate or foreign commerce any communication [5] containing any threat to injure the property or reputation of the addressee or of another . . . or any threat to accuse the addressee or any other person of a crime, [commits a felony].

In this case, HRD indisputably transmitted emails, faxes and telephone calls in interstate commerce, from their offices in Houston, Texas, to Dow personnel in Midland, Michigan. (Element 4.) [redacted]

HRD's intent to extort (Element 1) money (Element 3) from Dow (Element 2) in the form of a settlement of the case is demonstrated by the phone message of January 11, the faxes sent to Dow's CEO and Controller, and HRD's other conduct. Specifically, Aziz Hassan threatened in the recorded phone message that he was going to execute a plan the following week

---

[3] Mr. Hassan frequently refers to himself and his brother Abbas as "the Brothers." (Levinson Decl. ¶13).



the plan. Lest there be any doubt about his extortionate intent, Aziz Hassan specifically coupled

Aziz Hassan followed up this recorded message with a statement during a subsequent call on January 11 to Mr. Levinson that the plan was to put pressure on Dow. (*Id.* ¶ 10). And to drive home the point further, Mr. Hassan called Levinson on January 16 to press for a settlement discussion and advised Mr. Levinson, in what could only be a reference to the threats to send the defamatory letters, that (*Id.* ¶ 13). The January 16 call thus coupled, once again, the money HRD is seeking in settlement with the threats intended to coerce Dow to pay that money.

The conclusion that HRD intended to extort a settlement



(*Id.*). In short, HRD's communications amount to a federal crime. *See, e.g.*, *United States v. Morrison*, 153 F.3d 34 (2d Cir. 1998) (upholding conviction under Section 875(d) for, *inter alia*, making interstate communications threatening the reputation of investment firm Smith Barney).

4. **Dow requires immediate discovery on HRD's unsupported damages claim because of HRD's recent extra-judicial actions**

HRD has claimed an entitlement to damages for Dow's supposed breach of contract amounting to [redacted] This is an extraordinary claim. The contract specifically allowed Dow to terminate the agreement for any reason upon 6 months notice provided it returned to HRD a CRP payment of less than $7 million. (Ex. 2, page 24, ¶ 21.2 and ¶ 21.4.2 and Ex. 3 at "Whereas" clause (C)). The [redacted] than the agreed upon amount for the termination of the entire contract.

Dow has no way of determining how HRD arrived at its [redacted] because HRD has withheld all of its evidence on this issue and has refused to explain its analysis. All that HRD has given Dow are conclusory statements about HRD's expected sales and profits that make no sense in the context of this contract. Specifically, HRD has stated:



(Ex. 4 at 8). However, HRD's contract with Dow ran for only four years and was limited to 60 million pounds per year. (Ex. 2, page 6, ¶ 2.1, page 7, ¶ 6.6). Yet, after "year 1," HRD's [redacted]

[redacted]

Second, HRD's contention assumes it would obtain a 50% profit margin or better, which makes no sense based on the facts that Dow is aware of. In fact, for a key product HRD intended to sell, [redacted] (Ex. 5 at 6). Yet, based on the terms of the Supply Agreement, including the Variable Costs Formulas and the monthly AOP charges, HRD's cost was in the range of [redacted] per pound, which amounts to at best a profit of about 10%. (Ex. 6 at 2; Ex. 2, page 12, ¶ 8.1.2).

Nor is HRD's claim supported by an expert. Indeed, less than two months ago, HRD indicated its expert--when he or she is eventually retained--may not agree with HRD's analysis:

> With regard to your concern about damages, HRD will provide you with the information on how it calculated the [redacted] ***However, that is not to say that HRD's expert will come to the same conclusion.*** HRD's expert needs information from Dow to either calculate or confirm HRD's damages. As a result, ***our expert will not prepare a report*** until the Court has ruled on our pending Motion to Compel and until the time for expert reports has arrived.

(Ex. 7) (emphasis added). Thus, HRD's [redacted] was arrived at by HRD itself and not by any expert. Given HRD's recent accusations, Dow is entitled to have discovery into the basis for HRD's analysis. However, HRD has refused to provide any meaningful discovery on this issue.

HRD's initial disclosures failed to provide any information on computation of damages. (Ex. 8 at 3). A letter from HRD's counsel dated May 10, 2006, made the [redacted] settlement demand but provided essentially nothing to support it other than some naked assertions about the size of the global market for all adhesives, an assumption about how much of that market was

accounted for by hot melt adhesives, and an assertion that HRD would "enjoy a 50% market share." (Ex. 9).

On November 9, 2006, Dow submitted its Fourth Request for Production of Documents, which included, in Request No. 111, a demand for all documents relating to HRD's damages claim, including HRD's [REDACTED] (D.I. 69). HRD responded on December 5, 2006, by saying "Any responsive documents will be produced by HRD's damage expert." (Ex. 10 at 6). No expert has been designated and no documents have been produced.

On October 23, 2007, Dow submitted its Third Set of Interrogatories. (D.I. 105). Interrogatory No. 23 requested information concerning HRD's damages claims, including detail supporting the [REDACTED] figure identified in HRD's May 10, 2006 letter. On October 25, 2007, counsel for Dow followed up by writing to counsel for HRD and pointing out that the case had been pending for two years and despite making this [REDACTED] HRD had not provided any discovery relating to the damages demands. (Ex. 11 at 2-3). The October 25 letter requested specific information regarding the calculation of the damages claim. (*Id*). Counsel for HRD responded on November 8 with a letter stating that "HRD will provide you with the information on how it calculated the [REDACTED] (Ex. 7). However, HRD's interrogatory response failed to provide meaningful information, instead setting forth the conclusory statement quoted and discussed above. (Ex. 4 at 8).

Furthermore, while HRD's damages claim extends over the period from 2004 until 2014, HRD has refused to provide any documents relating to any activities after 2004 that are relevant to HRD's profit margin or capacity to make the sales that form the basis of its claim. Specifically, Dow has requested marketing plans, profit and loss statements, tax returns and the

like for the entire period. (Ex. 12 at 9-11). However, HRD has flatly refused to provide any such documents, contending they are all irrelevant. (*Id.*).

Consequently, Dow persisted in attempting to discover the factual underpinnings for HRD's remarkable damages claim. In a letter of January 6, 2008, counsel for Dow pointed out the deficiencies in HRD's response to Interrogatory No. 23 and HRD's failure to provide documents relevant to damages. (Ex. 13 at 3-5). HRD responded on January 11, 2008, again refusing to provide any additional information regarding its damages claim, asserting that HRD's merely answering the question was "extremely generous" [4] and that no further information would be forthcoming until the time to designate experts arrived. (Ex. 14 at 2). This position is completely unreasonable given that HRD has conceded that the [REDACTED] was calculated by HRD, not by its experts, and that HRD has asserted that this claim represents what HRD [REDACTED]

In short, HRD has stonewalled discovery on its damages claim. That conduct, standing alone, warrants action by the Court, but the harm to Dow is multiplied by HRD's current course of action. [REDACTED] HRD should be required to provide full discovery on the factual basis of their [REDACTED] or concede that its claim is unsupportable.

This Court should therefore Order that:

[4] HRD's argument was that Dow's Interrogatory No. 23 exceeded the limit of 25 interrogatories, including subparts, set forth in the Court's scheduling order. Dow disagrees with HRD's contention. In any event, given the extraordinary circumstances, Dow requests that HRD be ordered to provide a complete response to Interrogatory No. 23.

1. HRD principals, Aziz Hassan and Abbas Hassan, and its marketing manager. Craig Cawley, be produced for deposition forthwith concerning HRD's damages claim and their efforts to attack Dow's reputation and to extort a settlement, such depositions to be without prejudice to conduct of full depositions of each witness on the merits at the appropriate time and without counting towards the total number of depositions Dow is allowed to take in this case.

2. HRD provide forthwith full responses to Interrogatory 23 of Dow's Third Set of Interrogatories or provide a certified statement that there is no basis for its damages claim of [REDACTED]

3. HRD provide forthwith all documents supporting or relating to HRD's alleged damages claim, including but not limited to the documents responsive to Dow's Document Request Nos. 111, 125 and 130-31.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Kenneth J. Nachbar (#2067)
Samuel T. Hirzel (#4415)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*The Dow Chemical Company*

OF COUNSEL:

Harry J. Roper
Raymond N. Nimrod
Aaron A. Barlow
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

Dated: January 17, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DOW CHEMICAL CANADA INC. on its own behalf and as assignee of THE DOW CHEMICAL COMPANY,

Plaintiff,

v.

HRD CORPORATION (d/b/a Marcus Oil & Chemical)

Defendant, Counterclaim Plaintiff,

v.

DOW CHEMICAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY,

Counterclaim Defendants.

Case No. 05-023 (JJF)

**FILED UNDER SEAL**
**CONFIDENTIAL UNDER THE PROTECTIVE ORDER**

**STATEMENT PURSUANT TO LOCAL RULE 7.1.1**

I hereby certify that on the morning of January 16, 2008, I telephoned Harding Drane of Potter, Anderson & Corroon, counsel for defendants/counterclaimants, and advised him of the circumstances of the foregoing motion, the relief sought by the motion, and our view of the need for expedition in connection with the motion and the relief sought. I asked that Mr. Drane let me know by the end of the day if his client would consent to the relief sought. As of the filing of this motion, I have not heard back from Mr. Drane.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Kenneth J. Nachbar (#2067)
Samuel T. Hirzel (#4415)
1201 N. Market Street
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*The Dow Chemical Company*

OF COUNSEL:

Harry J. Roper
Raymond N. Nimrod
Aaron A. Barlow
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

Dated: January 17, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DOW CHEMICAL CANADA INC. on its own behalf and as assignee of THE DOW CHEMICAL COMPANY,

Plaintiff,

v.

HRD CORPORATION (d/b/a Marcus Oil & Chemical)

Defendant, Counterclaim Plaintiff,

v.

DOW CHEMICAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY,

Counterclaim Defendants.

Case No. 05-023 (JJF)

**FILED UNDER SEAL CONFIDENTIAL UNDER THE PROTECTIVE ORDER**

**ORDER**

WHEREAS, Counterclaim Defendants Dow Chemical Canada, Inc. and the Dow Chemical Company (together, "Dow") have filed a Report to the Court Concerning Unlawful Activity and Emergency Motion to Compel Discovery (the "Motion"), and for good cause shown

IT IS HEREBY ORDERED this ___ day of ____________, 2008 as follows:

1. The Motion is granted.

2. HRD principals, Aziz Hassan and Abbas Hassan, and its marketing manager. Craig Cawley, shall be produced for deposition forthwith concerning HRD's damages claim and their efforts to attack Dow's reputation and to extort a settlement, such depositions to be without prejudice to conduct of full depositions of each witness on the merits at the

appropriate time and without counting towards the total number of depositions Dow is allowed to take in this case.

3. HRD shall, within 10 days after entry of this Order, provide Dow with full responses to Interrogatory 23 of Dow's Third Set of Interrogatories or provide a certified statement that there is no basis for its damages claim of [redacted]

4. HRD shall, within 10 days after entry of this Order, provide Dow with all documents supporting or relating to HRD's alleged damages claim, including but not limited to the documents responsive to Dow's Document Request Nos. 111, 125 and 130-31.

______________________________
U.S. District Judge

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on September 12, 2008 I served via Electronic Mail and by Hand the attached document on the following:

W. Harding Drane, Jr.
Richard L. Horwitz
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19899-0951

Copies were also sent via Electronic Mail to the following:

William C. Ferebee, Esquire
Michael Landrum, Esquire
O'DONELL, FEREBEE, MEDLEY & KEISER, P.C.
450 Gears, Eighth Floor
Houston, TX 77067-4512

*/s/ Kenneth J. Nachbar*
Kenneth J. Nachbar (#2067)
Samuel T. Hirzel (#4415)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200