UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOW CHEMICAL CANADA INC. on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 05-023 (JJF) |
| v. | ) ) | **PUBLIC VERSION** |
| HRD CORPORATION (d/b/a Marcus Oil & Chemical) | ) ) ) ) | |
| Defendant, Counterclaim Plaintiff, | ) | |

## DOW'S MOTION TO COMPEL
## REGARDING HRD'S TRADE SECRETS

 

Kenneth Nachbar (#2067)
Samuel T. Hirzel (#4415)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
knachbar@mnat.com
   Attorneys for Plaintiff
   The Dow Chemical Company

OF COUNSEL:

Harry J. Roper
Raymond N. Nimrod
Aaron A. Barlow
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

Dated:  January 9, 2008
Public Version Dated:  September 12, 2008

Plaintiffs Dow Chemical Canada Inc. and The Dow Chemical Company (collectively "Dow") hereby move to compel HRD to provide proper answers to Interrogatory Numbers 3 and 4 pursuant to Fed.R.Civ.P. 26, 33 and 37. If HRD cannot do so, Dow requests it be given leave to file for summary judgment on HRD's trade secret counterclaim.

1. In 2002 Dow and HRD entered into two contracts--one for the development of polyethylene waxes, and one for the supply of such waxes after the development work resulted in mutually agreeable products. A few months after Dow began to supply the agreed-to products, HRD refused to make the required payments. Dow sued to recover those payments. In response, HRD filed counterclaims, including one for misappropriation of trade secrets.

2. Dow served two interrogatories relating to HRD's trade secrets claim. Interrogatory No. 3 sought the identity of each HRD trade secret. (Ex. 1 at 7). Number 4 asked HRD to describe the manner in which Dow misappropriated each trade secret. (Ex. 1 at 7-8). However, HRD's response fails to support at least two essential elements of a trade secret claim. First, HRD fails to point to information that is a trade secret at all. Second, HRD fails to point to any evidence that Dow ever used each of HRD's alleged trade secrets.

3. **HRD fails to point to any trade secrets**. HRD's response to Interrogatory No. 3 lists 39 alleged trade secrets it disclosed to Dow and attaches presentation slides that HRD claims show many of these trade secrets. (Ex. 2). However, HRD's list fails to recite any properly designated trade secrets. Specifically, HRD's list contains items that were "generally known" and "readily ascertainable" to the relevant public. *See* DEL.CODE ANN. tit. 6 § 2001(4)(a). Further, HRD's list fails to "describe its trade secret with a reasonable degree of precision and specificity." *Savor, Inc. v. FMR Corp.*, 2004 WL 1965869, *6 (Del. Super. Ct. 2004) (Ex. 3). All of HRD's alleged trade secrets fail one or both of these requirements.

4. First, HRD could not possibly deny in good faith that many of the items on its list were publicly available. HRD certainly knows that many of the items on its "trade secrets" list were "generally known" and "readily ascertainable," because HRD itself placed them in the

public domain. HRD's inclusion of numerous publicly known items on its list reflects a lack good faith on HRD's part that should not be countenanced.

5. Indeed, HRD's bad faith is reflected right away in its Item 1. (Ex. 2 at 2). There, HRD asserts that its identification of various markets for waxes was a trade secret disclosed to Dow in 2002-04, but HRD disclosed the same market information on its website in 2000. (Ex. 4). Items 14-16, and several of the attached slides, contain information relating to HRD's vegetable-derived waxes that was published in HRD patents on this technology. (Exs. 5-7).

6. Similarly, HRD also lists the 2-pack concept as Items 22-24. (Ex. 2 at 5). To the extent that this information could have ever been a trade secret, any such designation was lost when HRD presented the concept at an industry conference in 2003. (Ex. 8 at 7).

7. HRD's Item 9 identifies a density/crystallinity chart as a trade secret. (Ex. 2 at 3; Ex. 9). However, this chart is neither secret, nor was it developed by HRD. HRD published the chart in 2003, and conceded that it came from *the open literature in 1951*, specifically R.B.Richards, J.Appl. Chem., 1, 370 1951. (Ex. 10 at HRD00000094). Yet, HRD has the audacity to now assert that this information--published in the 1950's--is an HRD trade secret that Dow allegedly misappropriated.

8. In Item 11, HRD alleges that it disclosed to Dow "Temperature and Heat Flow Charts." (Ex. 2 at 3). However, HRD attaches a chart that was not generated by HRD at all, but was in fact generated by Dow employees, and HRD copied this chart from an earlier Dow document. (Ex. 11) (showing data generated by Dow).

9. Second, HRD's list fails to "describe its trade secret with a reasonable degree of precision and specificity." *Savor*, 2004 WL 1965869, *6 (Ex. 3). Courts routinely grant motions to compel, as well as enter summary judgment or impose sanctions when trade secret claimants fail to identify their trade secrets with specificity. *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161 (9th Cir. 1998)(summary judgment); *Cromaglass Corp. v. Ferm*, 344 F. Supp. 924 (M.D.Pa. 1972)(sanction).

10. In *Cromaglass*, the claimant listed trade secret information pertaining to unspecified "materials," "suppliers," and "customers and potential customers, dealers and distributors." 344 F. Supp. at 926. The Court precluded the plaintiff from introducing evidence on these subjects, because the plaintiffs had failed to identify "the *specific* materials and suppliers allegedly used by Defendants, and the *specific* names and address of the customers, potential customers, dealers, distributors." *Id.* at 927. In *Imax*, even though the trade secret claimant provided a list of 80 alleged trade secrets referring to general categories of trade secrets, summary judgment was appropriate because the list failed to disclose the "*precise* numerical dimensions and tolerances of its projector as trade secrets *with sufficient particularity*." 152 F.3d at 1166 (all emphasis added in this motion).

11. HRD's list lacks the required precision and specificity. For example, Item 10 refers to "*coveted*" product "*characteristics*," but does not specify what they are. (Ex. 2 at 3). Similarly, Items 15-18, 23-24, and 28-29 refer to *unspecified "characteristics;"* Items 19 and 35-37 refer to well-known adhesive properties (e.g. PAFT) without specifying the alleged trade secret values; Items 36-38 refers to *vague "special needs"* of customers; Items 25 and 30 refer to lists of *unspecified customers*; and Items 32 and 34 refer to *unspecified "targets"* and *"testing results."* (Ex. 2 at 4-6). HRD also makes references to attached slides, but does not identify what portions of the slides are alleged trade secrets and what portions are not. (Ex. 2 at 6).

12. The bottom line is that HRD's response to Int. 3 leaves Dow in the dark with respect to the alleged trade secrets, and Dow cannot prepare its defense to the claim.[1]

13. **HRD fails to point to misappropriation by Dow of HRD's alleged trade secrets.** HRD's trade secret claim is deficient for a second reason. Dow is entitled to have HRD

---

[1] In its response to Interrogatory No. 3, HRD also failed to identify when its trade secrets were communicated to Dow, instead directing Dow to unspecified emails and "Dow's own records." FRCP 33(d) does not permit an interrogatory answer to reference documents where, as here, the interrogatory asks the party to state facts supporting its allegations. *Morock v. Chautauquo Airlines, Inc.*, 2007 WL 4247767 (M.D.Fla. 2007) (Ex. 12). Additionally, HRD's reference to Dow's documents is improper as Rule 33(d) only allows a party to refer to its own records, not those of the opposing party. *EEOC v. General Dynamics, Corp.*, 999 F.2d 113 (5th Cir. 1993).

provide its basis for alleging that Dow misappropriated each trade secret HRD intends to rely on. However, HRD's response to Int. 4 fails to provide a basis for alleging that Dow misappropriated any of HRD's alleged trade secrets. HRD's response again reflects a lack of good faith.

14.    HRD alleges that "Dow used, disclosed and shared HRD's 2-Pack concept" in a Dow paper published in 2004. (Ex. 2 at 6). However, even if true, HRD published the 2-Pack concept in 2003--so there could be no misappropriation in 2004. (Ex. 8 at 7). HRD also disingenuously asserts that Dow improperly used the 2-pack concept by developing the ████████████████████████████████████████████████████████

15.    HRD also points to six Dow patent applications and a 2007 Dow publication, which HRD alleges contain its trade secrets "listed above." (Ex. 2 at 7-8). However, HRD fails to identify any trade secret allegedly disclosed and misappropriated in those patent applications and the publication. Moreover, many of the trade secrets on HRD's list relate to (a) ████████████████████████████████████████████ (Items 14-16)--which Dow's patent applications and publication have nothing to do with. (Ex. 2 at 2-4). HRD certainly has no good faith basis for alleging any misappropriation in these areas.

16.    HRD alleges that Dow misappropriated 14 trade secrets ████████ ████████████████████████████████████ (Ex. 2 at 6). However, HRD does not explain how Dow used any of those 14 trade secrets in connection with making its metallocene-based Affinity polymer.

17.    Based on the foregoing Dow respectfully requests this Court GRANT its motion to compel. HRD should identify each trade secret in good faith with precision and specificity, the circumstances and dates of disclosure to Dow, and the alleged acts of misappropriation, including when the acts occurred and the circumstances surrounding such acts.

18.    Dow has repeatedly attempted to meet and confer with HRD so that HRD could provide the required information regarding its alleged trade secrets. (Exs. 15-22). HRD has steadfastly refused to do so.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Kenneth Nachbar*
Kenneth Nachbar (#2067)
Samuel T. Hirzel (#4415)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
knachbar@mnat.com
 Attorneys for Plaintiff
 The Dow Chemical Company

OF COUNSEL:

Harry J. Roper
Raymond N. Nimrod
Aaron A. Barlow
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
(312) 222-9350

Dated:   January 9, 2008

1379094

5

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on September 12, 2008 I served via Electronic Mail and by Hand the attached document on the following:

W. Harding Drane, Jr.
Richard L. Horwitz
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19899-0951

Copies were also sent via Electronic Mail to the following:

William C. Ferebee, Esquire
Michael Landrum, Esquire
O'DONELL, FEREBEE, MEDLEY & KEISER, P.C.
450 Gears, Eighth Floor
Houston, TX 77067-4512

/s/ Kenneth J. Nachbar
Kenneth J. Nachbar (#2067)
Samuel T. Hirzel (#4415)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200