IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA, INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, <br><br> Plaintiff <br><br> vs. <br><br> HRD CORPORATION, (d/b/a Marcus Oil & Chemical), <br><br> Defendant, Counterclaim Plaintiff <br><br> vs. <br><br> DOW CHEMICAL CANADA, INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, <br><br> Counterclaim Defendants | Case No. 05-023-(JJF) |

# OPINION OF THE SPECIAL MASTER ON HRD'S MOTION TO COMPEL DISCOVERY RELATIVE TO AFFINITY SALES

## July 2, 2009

B. Wilson Redfearn, Esquire
Special Master
TYBOUT, REDFEARN & PELL
750 Shipyard Drive, Suite 400
P.O. Box 2092
Wilmington, DE 19899
(302) 658-6901

## OPINION

HRD has moved to compel Dow to (1) provide responsive answers to supplemental interrogatories 16 an 17; (2) produce all documents relating to the volume of Dow's sales of its Affinity products from 2004 to the present; and (3) produce all documents showing its pricing of Affinity products from 2004 to the present. The motion is based on the argument that Dow's Affinity product[1] would have competed with HRD's two-pack product[2] and is thus relevant to its lost profit damages calculations.

Dow takes the position that the information sought by HRD is not relevant to any claims or defenses in this lawsuit. It argues that HRD's damages claims are barred by the language in the Supply Agreement. See ¶¶ 11.1, 11.2, 11.4 ("Neither party should be liable to pay consequential, special, punitive, exemplary, or incidental damages to the other party arising out of the performance or nonperformance of this Agreement."). Further, HRD determined to forgo whatever business opportunity that it may have had by directing Dow to cease production of the two-pack product.

HRD, in turn, submits that, at that time the JDA was in effect, Dow was still in the process of developing a two pack product and that HRD requested Dow to make Metallocene wax only until solution could be found relative to the inferior properties contained in the two pack. HRD thus contends that it only halted production when it discovered that the wax products at Sarnia did not comply with the agreed specifications. HRD further argues that the Supply Agreement does not address "lost profits" or "lost business opportunities", but even if they were to be excluded by the contract, its claim for good faith and fair dealing would allow such claims.

---

[1] Dow's Affinity product is a polymer designed to be used in a hot melt adhesive (HMA) formulation. A typical HMA is comprised from three primary products: (1) a wax; (2) a polymer; and (3) a resin/takifer. Longstreet Depo. Pg. 60:12-61:11.

[2] The two-pack would replace both the wax and the polymer (Affinity) components of a typical HMA. Id. at 85.

Dow has admitted that the Affinity products are situated in the HMA market. (See June 4, 2009 Status Conf. Tr. at Pg. 13:19-21), and its employee, Anthony Freneham, has acknowledged that HRD's two-pack would have competed with Dow's Affinity sales. Frencham Depo. Pg. 206:9-12.

At this time, there are summary judgment motions pending before the Court. Dow's summary judgment motion argues (as it does here) that HRD's position is without merit in that the agreement between the parties, in the specific terms noted previously, bars HRD's claims for any consequential damages. Unfortunately, the Court has not yet ruled on this dispositive motion. My ruling is thus based on the current status of the case. Should the Court accept Dow's position, the discovery would likely be moot. However, at this time, HRD's claims for lost profits and other consequential damages remain pending and must be addressed.

Consequential damages in the form of good will, lost future profits, and lost customers are not normally awarded in breach of contract actions. *See J.E. Rhoades & Sons v. Ammeraal, Inc.*, Del.Super., C.A. No. 83C-11-098, Gebelein, J. (March 30, 1988). Courts have consistently found these damages to be speculative, and have barred recovery for them. *Tanner v. Exxon Corp.*, Del.Super., C.A. No. 79C-01-005, Stiftel, J. (July 23, 1981), Letter Op. at 5. Lost profits, however, can be distinguished from lost future profits. Recovery for lost profits will be allowed in instances when a profit history is established, though recovery is limited to profits which might have been made pursuant to the performance of the particular contract at issue during the period for which the contract was to run. *Id.* at 7; see also *Crowell Corp. v. Himont USA, Inc.*, 1994 WL 762663, 3 (Del.Super.).

It is also possible that HRD would be permitted to pursue its claim on the basis that Dow breached its covenant of good faith and fair dealing.

In any event, based on the current record, HRD's position that this information is discoverable is correct. As to whether it will be admissible will depend on the future rulings of the Court.

At this point, I am ordering that Dow (1) provide complete responsive answers to HRD's supplemental interrogatories 15 and 16; (2) produce all documents showing the volume of sales related to its Affinity product(s) from 2004 to <u>2008</u>; and (3) produce all documents showing its pricing of Affinity products from 2004 to <u>2008</u>.

In its June 9, 2009 submission, HRD agreed that Dow might treat the discovery responses as "Highly Confidential", thus giving Dow the production afforded by the Stipulation and Order Governing Discovery Material dated January 20, 2006 at ¶3. It is my further ruling that the discovery be treated in accordance with Paragraph 3 of this Stipulation, and I Order that the materials be viewed only by HRD counsel and HRD's expert, Ken Stern. Further, Mr. Stern must sign a Confidentiality Non-Disclosure Agreement as set out in ¶7 of the Stipulation. Should he amend his report as a result of the Affinity information obtained, that report will be submitted for the review of HRD counsel only, until Court permits further dissemination. It must, of course, also be promptly transmitted to Dow's attorneys.

B. WILSON REDFEARN, ESQUIRE
Special Master