IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOW CHEMICAL CANADA, INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY,<br><br>　　　　　Plaintiff<br><br>　　vs.<br><br>HRD CORPORATION, (d/b/a Marcus Oil & Chemical),<br><br>　　　　　Defendant,<br>　　Counterclaim Plaintiff<br><br>　　vs.<br><br>DOW CHEMICAL CANADA, INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY,<br><br>　　Counterclaim Defendants | : : : : : : : Case No. 05-023-(JJF) : : : : : : : : : : : : : |

# RULINGS ON DOW'S OBJECTIONS TO HRD'S EXHIBITS

## December 11, 2009

B. Wilson Redfearn, Esquire
Special Master
TYBOUT, REDFEARN & PELL
750 Shipyard Drive, Suite 400
P.O. Box 2092
Wilmington, DE 19899
(302) 658-6901

1) **DOW00149006**

**Exhibit**: This exhibit is an R&D Report which was internally circulated among Dow employees in March, 2004.

**Exception**: HRD claims that it is relevant to HRD's pending patent and trade secret claims.

**Ruling**: Should be left to the discretion of trial judge.

**Opinion**:

HRD argues that it intends to offer this document to show that Dow not only received HRD trade secrets related to its two-pack concept, but also that Dow (1) engaged in substantial research efforts to develop HRD's concept for Dow's sole benefit, (2) failed to meet its reporting obligations under the Joint Development Agreement ("JDA"), and (3) developed and patented HRD's trade secrets without disclosure to HRD.

Dow argues that (1) HRD's claim that this document establishes that Dow violated its disclosures under the JDA was rejected by the Court in its summary decision, (2) the document does not establish trade secret misappropriation by Dow because HRD's two-pack concept was publically disclosed and (3) a confidential internal Dow document cannot, as a matter of law, constitute trade secret misappropriation.

I. **Exhibit's Intended Use:** **To show that Dow failed to meet its reporting obligations under the JDA.**

   **Ruling:** **HRD cannot use this document to show that Dow failed to meet its reporting obligations under the JDA as the Court has already disposed of this claim in its summary judgment ruling.**

In its September 24, 2009 opinion, the Court granted Dow's Motion for Summary Judgment with regard to HRD's counterclaim (Count 2) for breach of the JDA.[1] (D.I. 444, at

---

[1] It is noted that while HRD's patent related claims (set forth in Count 6 of its Second Amended Answer and Counterclaims) are, in fact, claims for breach of the JDA and/or claims for breach of the implied covenant of good faith and fair dealing (and therefore overlap in substance and content with Count 2 of HRD's Second Amended

1

34). The Court found specifically that this document (along with a September 2003 email chain among Dow employees and the deposition testimony of Michael Levinson) was insufficient to support HRD's claim. (D.I. 444, at 32-34). Therefore, by its summary determination, the Court extinguished HRD's claim that Dow failed to meet its reporting obligations under the JDA.

II. **Exhibit's Intended Use:** To support HRD's trade secret misappropriation and patent related claims.

**Ruling:** This exhibit may be relevant to HRD's trade secret misappropriation claims. However, this determination must be left for the trial judge.

After the Court's summary determination, HRD's remaining viable claims include (1) claims of trade secret misappropriation with respect to trade secrets 13, 23, 24 and 40, and (2) patent related claims with respect to the '897 and '217 patent applications.[2]

The exhibit discusses Dow's experimentation with two-packs through the use of single reactor and dual catalysts (SR-DC), which may implicate HRD's Trade Secret No. 40.[3] Additionally, the exhibit lists HMA Performance Targets which include information that appears to relate to HRD's Trade Secret No. 13.[4] Finally, the exhibit also indicates that Dow was

---

Answer and Counterclaims), the parties treated Count 2 (Breach of the JDA) as encompassing claims for breach of contract that do not touch on any patent issues, and the Court addressed and ruled on Count 2 in a manner paralleling the parties' treatment of their claims.

[2] Despite the thorough briefing before the Court on HRD's trade secret misappropriation claims, HRD did not rely on this exhibit in support of such claims against Dow, but rather relied only on Dow's patents and patent applications as evidence creating a triable issue of fact with respect to those claims. In fact, the Court pointed out that "[o]ther than in connection with the filing of PE Wax related patents, HRD's briefing identifies no other manner in which Dow allegedly disclosed or used HRD's purported trade secrets." (D.I. 444, at 41).

[3] See, HRD's Third Amended Answers and Objections to Dow's Interrogatories, Response to IG No. 3, ¶ 22 (stating "HRD gave Dow the concept of using dual catalysts to manufacture a 2-pack product.").

[4] See, HRD's Third Amended Answers and Objections to Dow's Interrogatories, Response to IG No. 3, ¶ 13 (stating, HRD disclosed to Dow the ideal weight distribution for the two-pack and wax products as well as the ideal adhesive properties, viscosity and heat stability sought by HRD customers. Viscosity range for the finished 2 pack being in the 800 to 1500 cps range with SAFT and PAFT in excess of 130 [degrees] F[ahrenheit] and fiber tear at 0 to 40 [degrees] F[ahrenheit] of 100%."); See, e.g., HRD's patent application '318, published on November 25, 2004 (about eight months after Dow's R&D report was generated), and entitled "Novel Multifunctional Polymer For Use in Hot Melt Adhesive Applications US 2004/0236002 A1, at [0153], [0155], [0157].

creating samples on two-pack products at the Freeport, Texas miniplant in 2003 with single reactor, single catalysts (SR-SC) and single reactor, dual catalysts (SR-DC). [5]

Dow argues that HRD's two-pack concept was publically disclosed by HRD in November 2003 and therefore is no longer entitled to trade secret protection.[6] It is correct that the general concept of a two-pack product, was disclosed to a meeting of the Adhesives and Sealant Counsel in November, 2003. However, based on OFMK-MARCUSUS002540-60, it is not clear that the presentation disclosed the specific composition of the two-pack product or the use of dual catalyst technology. Public disclosure of the two-pack concept does not abrogate any relevance this exhibit may have to HRD's remaining trade secret claims which pertain to the composition of the two-pack product and the use of dual catalyst technology to manufacture the same. [7]

Dow argues that because this exhibit was a confidential internal Dow document it cannot constitute trade secret misappropriation. *First Federal Savings Bank v. CPM Energy Sys. Corp.*, 1993 WL 138986 (Del. Super.). The Court in *First Federal* did not make a finding that a confidential internal memorandum would bar a claim for trade secret misappropriation. While an internal confidential document may not be probative of improper disclosure of the secret information, it may, nonetheless, be relevant to the improper use of the secret information. Thus, HRD might still prevail on its claim of trade secret misappropriation if it establishes that

---

[5] DOW00149006.

[6] In response to Dow's First Set of Requests for Admission, HRD admitted that its "concept" of the two-pack product was presented to members of the adhesives industry at a meeting of the Adhesives and Sealants Counsel ("ASC Convention"). The slideshow presented to the ASC in November, 2003 (OFMK-MARCUSUS002540-60) contains general information relating to the 2-pack concept, and therefore, it appears that the concept of a 2-pack was publicly disclosed. However, merely because aspects of a trade secret can be found in a publication, or even in a patent, does not mean that that the information in issue is not a trade secret. *Merck & Co., Inc. v. SmithKline Beecham Pharmaceuticals Co.*, 1999 WL 669354, at * 16-17 (Del. Ch.).

[7] The general trade secret misappropriation claim for the two-pack concept was dismissed in the Court's September 24, 2009 ruling. However, the Court denied Dow's Motion for Summary Judgment with respect to HRD's trade secrets No.s 13, 23,24 and 40. (D.I. 444, at 45).

confidential information was improperly used by Dow. *See*, 6 Del. C. § 2001(2); *Accenture Global Services GMBH v. Guidewire Software, Inc.*, 581 F.Supp.2d 654, 661-62 (D. Del. 2008).[8]

Based on the record before me, I am not able to determine whether sufficient evidence might be elicited at trial to show that Dow, in fact used, or intends to use, HRD's trade secrets to develop competing products. For that reason, I defer a ruling on the admissibility of this exhibit to the trial judge.

Recommended to the trial judge on December 11, 2009.

                                                            Special Master B. Wilson Redfearn

---

[8] In addition to demonstrating improper use or improper disclosure of the secret information, HRD must also establish that (1) a trade secret exists, (2) the secret was communicated by HRD to Dow, and (3) such communication was pursuant to an express or implied understanding that the secrecy of the matter would be respected. 6 Del. C. § 2001(2); *Accenture Global Services GMBH v. Guidewire Software, Inc.*, 581 F.Supp.2d 654, 661-62 (D. Del. 2008).

2)   **OFMK-MARCUS 004884 – 004888**

**Exhibit**:   Spreadsheets attached to the expert report of Richard M. Eakin.

**Exception**:   Admissible after proper foundation is laid.

**Ruling**:   This must be left to the discretion of trial judge.

**Opinion**:

HRD requests that the excel spreadsheet attachments to the report of Richard M. Eakin be allowed at trial following a proper foundation. Dow asserts that the data in the excel spreadsheets pertains to the level of volatiles of the product manufactured by Dow under the Supply Agreement and that this is an issue that is now moot given the Court's summary determination.

In its September 24, 2009 Opinion, the Court ruled in Dow's favor relative to the breach of contract claim.[9] The Court stated that "HRD has not identified any contractual obligation requiring Dow to provide PE Wax having only a certain amount of 'volatiles' or 'light ends'." The use of the Eakin excel spreadsheets to demonstrate a level of "light ends" or "volatiles" in Dow's product would be improper.

Based on the limited information that HRD has provided, I cannot determine any other use HRD may intend for the Eakin spreadsheets. To the extent that these spreadsheets are submitted at trial for some other purpose, such as its remaining trade secret and patent claims, a ruling on their admissibility must be left to the trial judge.

Recommended to the trial judge on December 11, 2009.

_____
Special Master B. Wilson Redfearn

---

[9] D.I. 444, at 29.

3)   DOW00049420

**Exhibit**: Data book of Cindy Ricci.

**Dow's Position**: Moot due to Court's summary determination in favor of Dow on its breach of contract claims.

**Ruling**: Must be left to the discretion of the trial judge.

**Opinion**:

Dow argues that this exhibit was made moot by the Court's summary decision. HRD contends that the data book of Cindy Ricci memorializes work performed under the JDA and is therefore relevant to HRD's surviving trade secret and patent related claims.

The data book indicates that an unused portion of a sample from the low viscosity trial at the Sarnia PDP, (sample 200406302138-02) was sent to Eastman Chemical Co. on 8/27/04.[10] Eastman Chemical Co. makes "Eastotac," a tackifying resin alleged by HRD to be useful with hot melt adhesive applications. Both Dow and HRD entered into non-disclosure agreements with Eastman Chemical.[11] Similarly, the data book indicates that "EB samples" were sent to Adherent Lab on 9/27/04 and that a sample was received from Adherent Lab on 1/20/05.[12] Again, both Dow and HRD entered into non-disclosure agreements with Adherent.[13]

Based on the information before me, I am unable to determine whether this exhibit is relevant to HRD's remaining claims, specifically, whether the exhibit affords proof that Dow improperly used HRD's trade secrets.

Relevant unredacted portions may be admissible at the discretion of the trial Judge. *See, Bohler-Udenulm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 114-15 (3d Cir. 2001). Since I

---

[10] DOW00049441.
[11] *See*, HRD's Third Amended Answers and Objections to Dow's Interrogatories, Response to No. 3.
[12] DOW00049448 and DOW00049462.
[13] *See*, HRD's Third Amended Answers and Objections to Dow's Interrogatories, Response to No. 3.

do not have sufficient information on which to rule, the admissibility of the exhibit must be left to the trial judge.

Recommended to the trial judge on December 11, 2009.

_____
Special Master B. Wilson Redfearn