IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOW CHEMICAL CANADA, INC.<br>on its own behalf and as assignee of<br>THE DOW CHEMICAL COMPANY<br>　Plaintiff, | §<br>§<br>§<br>§<br>§ | |
| v. | §<br>§ | C.A. No. 05-23 (JJF) |
| HRD CORPORATION (d/b/a<br>Marcus Oil & Chemical)<br>　Defendant, Counterclaim Plaintiff | §<br>§<br>§<br>§ | |
| v. | §<br>§ | |
| DOW CHEMICAL CANADA, INC.<br>on its own behalf and as assignee of<br>THE DOW CHEMICAL COMPANY and<br>THE DOW CHEMICAL COMPANY,<br>　Counterclaim Defendants. | §<br>§<br>§<br>§<br>§ | |

## SPECIAL MASTER'S POST FEBRUARY 2, 2010 HEARING ORDER ON HRD REQUESTS FOR DISCOVERY

On November, 10, 2008, the Court appointed B. Wilson Redfearn, Esquire, as Special Master, with authority, inter alia, to manage discovery, conduct hearings on discovery disputes, and rule on same.  (D.I. 185)  To identify discovery issues, the Special Master directed the parties to prepare a "Status Chart" prior to each monthly status conference, and to place on the Status Chart any issues to be decided by the Special Master.

On September 24, 2009 the Court issued its Opinion (D.I. 433) and Order (D.I. 434) regarding the parties' summary judgment motions.  On January 5, 2010, the Court issued its Memorandum Order (D.I. 468) denying HRD's motion for reconsideration of the Court's summary judgment rulings.

At the February 2, 2010 status conference, the Special Master decided certain outstanding discovery issues, which had been deferred pending the Court's ruling on HRD's motion for reconsideration. A copy of the Status Chart for the February 2, 2010 status conference is attached as Exhibit A hereto. A copy of the transcript of the February 2, 2010 status conference is attached as Exhibit B hereto. A copy of HRD's letter to the Special Master dated January 22, 2010 (without exhibits) ("HRD's Letter"), concerning those outstanding discovery issues, and Dow's response letter to the Special Master dated January 29, 2010 (without exhibits), are attached hereto as Exhibits C and D, respectively.

Having considered the written submissions and arguments of the parties, the Special Master's rulings are as follows:

It is ORDERED that:

1.      HRD's discovery requests, as reflected in Status Chart Items 16, 18, 22, 23 (except as this Item pertains to Interrogatories 3 and 9), 30, 32, 41, and 42, are DENIED. This includes denial of:

A.      HRD's request for discovery identified in its Fifth Motion to Compel (D.I. 171) Paragraph 3 and specifically as it related to HRD's Third Request for Production requests 1018-1070, 1073-1074, 1076, 1079, 1087, 1089-1091, 1096-1099, and 1114 served on May 15, 2008 (D.I. 156).

B.      HRD's request for a 30(b)(6) deposition of Dow, Items 1, 5, 7, 10, 20 and 22 (D.I. 196).

C.      HRD's request that Dow provide supplemental responses to HRD's Supplemental Interrogatories 2, 4, 7, 10, 15 and 16 served on January 23, 2009 (D.I. 205).

D.    HRD's request to reopen the deposition of Teresa Karjala with respect to work performed under, or simultaneous to, the JDA, and alleged inconsistencies between Ms. Karjala's deposition testimony and her June 22, 2009 Declaration.

E.    HRD's request for production of documents (other than IDFs) related to patent applications 2008/0306217 and 2006/0199897.

F.    HRD's request for documents (other than IDFs) related to all patents, other than patent applications 2008/0306217 and 2006/0199897.

2.    A ruling on HRD's request that Dow provide supplemental responses to HRD's Supplemental Interrogatories 3 and 9 served on January 23, 2009 (D.I. 205) is reserved pending further action.

So Ordered on this 2 day of ＿March＿, 2010

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
Special Master B. Wilson Redfearn

# EXHIBIT A

02/01/2010

## STATUS CHART
## DOW v. HRD, C. A. NO. 05-23

| No. | Issue | Deadline | Status/Discussion |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 5A. | | | |
| 6. | | | |
| 7. | Complete response to Dow's Interrogatory regarding and production of documents relating to HRD's damages claim, including documents relating to HRD's customer contacts after the December 2004, HRD's tax returns, HRD's contacts/business in the HMA industry and documents identified in Greg Borsinger's deposition. | | HRD's Position: Resolved because HRD has fully responded.<br><br>Dow's Position: Moot. HRD damages no longer relevant given the Summary Judgment Opinion and Order. |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | Expedited Response by HRD to Dow's document requests and interrogatories pertaining to HRD's newly added Count 6 | | HRD's Position: See 1/22/2010 Letter to the Special Master from Jason L. Frazer<br>Dow's Position: See 1/29/2010 Letter to the Special Master from |

| | | | Katya Jestin. |
|---|---|---|---|
| 17 | | | |
| 18 | HRD's Fifth Motion to Compel Production of Documents | | HRD's Position: See 1/22/2010 Letter to the Special Master from Jason L. Frazer Dow's Position: See 1/29/2010 Letter to the Special Master from Katya Jestin. |
| 19 | Letter dated May 27, 2009, from K. Jestin re: HRD discovery on 3rd party communication about Dow products | | Resolved. |
| 20 | | | |
| 21 | | | |
| 22 | HRD seeks to take a 30(b)(6) deposition related to patent information not produced by Dow in response to HRD discovery requests during fact discovery. | | HRD's Position: See 1/22/2010 Letter to the Special Master from Jason L. Frazer Dow's Position: See 1/29/2010 Letter to the Special Master from Katya Jestin. |
| 23 | Expedited complete responses by Dow of HRD's interrogatories numbers 2, 3, 4, 7, 9, 10, 15 and 16 as addressed in a letter of April 23, 2009 from Jason L. Frazer to Katya Jestin. | | HRD's Position: See 1/22/2010 Letter to the Special Master from Jason L. Frazer Dow's Position: See 1/29/2010 Letter to the Special Master from Katya Jestin. |
| 24 | | | |
| 25. | | | |
| 26. | | | |
| 27. | | | |
| 28. | | | |
| 29. | Protocol for presentation to SM of Objections to Exhibits and Deposition Designations | | The protocol has been complied with by both parties.. |
| 30. | HRD Application for Affinity Discovery | | HRD's Position: See 1/22/2010 Letter to the Special Master from Jason L. Frazer, item 23, interrogatories 15 and 16. |

| | | | |
|---|---|---|---|
| | | | Dow's Position: See 1/29/2010 Letter to the Special Master from Katya Jestin. |
| 31. | HRD Request to Reopen Depositions of Cerk, Edwardes, and Kolthammer | | Resolved. |
| 32. | Reopening Karjala Deposition on Patent Issues | | HRD's Position: See 1/22/2010 Letter to the Special Master from Jason L. Frazer Dow's Position: See 1/29/2010 Letter to the Special Master from Katya Jestin. |
| 33. | SM's Draft Opinions on Exhibits and Deposition Designations | | *See* item 29. |
| 34. | Dow Letter to Special Master Regarding Insufficiency of HRD's Discovery Concerning the Disposition of the 30 Railcars Under the June 4, 2009 Order and Seeking Relief Under FRCP 37. | | Resolved. |
| 35. | Dow's Request to HRD For ATS Retained Samples (as made on May 29, 2009 at Richard Eakin's deposition and in subsequent correspondence). | | Resolved. |
| 36. | | | |
| 37 | | | |
| 38 | . | | |
| 39 | Removal of Highly Confidential Designation in advance of trial. | | The parties are in agreement that documents currently designated "Highly Confidential" that will be used at trial will be reviewable by the other party's relevant principals and witnesses prior to trial. Terms of the protocol governing such review of High Confidential documents are being discussed by |

| | | | |
|---|---|---|---|
| | | | the parties. |
| 40 | HRD's request for production of documents related to the Patent Applications 2008/0306217 and 2006/0199897. | | HRD's Position: See 1/22/2010 Letter to the Special Master from Jason L. Frazer Dow's Position: See 1/29/2010 Letter to the Special Master from Katya Jestin. |
| 41 | HRD request for post-summary judgment ruling discovery on patent issues as set forth in its letter to the Special Master dated October 5, 2009. | | HRD's Position: See 1/22/2010 Letter to the Special Master from Jason L. Frazer Dow's Position: See 1/29/2010 Letter to the Special Master from Katya Jestin. |
| 42 | HRD's third-party subpoenas. | | HRD's Position: See 1/22/2010 Letter to the Special Master from Jason L. Frazer Dow's Position: See 1/29/2010 Letter to the Special Master from Katya Jestin. |

951749

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


DOW CHEMICAL CANADA, INC.,  :
on its own behalf and as    :
assignee of THE DOW CHEMICAL:
COMPANY,                    :
     Plaintiff,             :
                            :
  v.                        : Civil Action No.
                            : 05-023 (JJF)
HRD CORPORATION (d/b/a      :
Marcus Oil & Chemical),     :
     Defendant              :
     Counterclaim Plaintiff, :
                            :
  v.                        :
                            :
DOW CHEMICAL CANADA, INC.,  :
on its own behalf and as    :
assignee of THE DOW CHEMICAL:
COMPANY, and THE DOW        :
CHEMICAL COMPANY,           :
     Counterclaim Defendant, :


                  -  -  -

              February 2, 2010

                  -  -  -


          A hearing taken pursuant to notice in
the law offices of Tybout, Redfearn & Pell, 750 Shipyard
Drive, Suite 400, Wilmington, Delaware, Tuesday, February
2, 2010, commencing at approximately 1:15 p.m., before
Gloria M. D'Amore, Registered Professional Reporter and
Notary Public.


                  -  -  -

        Corbett Reporting - A Veritext Company
                230 N. Market Street
                Wilmington, DE 19801
                  (302) 571-0510

## Page 2

```
 1   BEFORE   B. WILSON REDFEARN, SPECIAL MASTER
             E-mail: bwredfearn@trplaw.com
 2
 3        ROBERT M. GREENBERG, ESQUIRE
             E-mail: rgreenberg@trplaw.com
 4
 5   APPEARANCES:
 6        KENNETH J. NACHBAR, ESQUIRE
             Morris, Nichols, Arsht & Tunnell LLP
 7           1201 N. Market Street
             Wilmington, Delaware 19801
 8           Phone: 302-658-9200
             E-mail: knachbar@mnat.com
 9        For the Plaintiff and Counterclaim
          Defendants
10
11        BRIAN J. FISCHER, ESQUIRE
          PAUL M. MONTELEONI, ESQUIRE
12           Jenner & Block LLP
             919 Third Avenue, 37th Floor
13           New York, New York 10022-3908
             Phone: 212-891-1600
14           E-mail: bfischer@jenner.com
             E-mail: PMonteleoni@jenner.com
15        For the Plaintiff and Counterclaim
          Defendants
16
17
18        W. HARDING DRANE, JR., ESQUIRE
          Potter, Anderson & Corroon LLP
19           Hercules Plaza, 6th Floor
             1313 N. Market Street
20           Wilmington, Delaware 19801
             Phone: 302-984-6184
21           E-mail: wdrane@potteranderson.com
          For the Defendant and Counterclaim
22        Plaintiff
23
24
```

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000 ~ 302-571-0510 ~ 610-434-8588 ~ 888-777-6690

## Page 3

```
 1   APPEARANCES CONTINUED:
 2
 3        WILLIAM C. FEREBEE, ESQUIRE
          JASON L. FRAZER, ESQUIRE
 4        O'DONNELL, FEREBEE, MEDLEY & KEISER, P.C.
             450 Gears, Eighth Floor
 5           Houston, Texas 77067
             Phone: 281-875-8200
 6           E-mail: wferebee@ofmklaw.com
             E-mail: jfrazer@ofmklaw.com
 7        For the Defendant and Counterclaim
          Plaintiff
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

VERITEXT NATIONAL COURT REPORT NG COMPANY
215-241-1000 ~ 302-571-0510 ~ 610-434-8588 ~ 888-777-6690

## Page 4

```
 1            SPECIAL MASTER REDFEARN:  I assume that
 2   the motion, the decision on the Motion for
 3   Reconsideration is not an appealable order.
 4            Is that correct?
 5            MR. DRANE:  It's unclear.  And I think
 6   that we believe that there is a basis for the Court to
 7   find that there is jurisdiction over the appeal,
 8   notwithstanding the Cunningham case, which, I think, The
 9   Third Circuit has cited.  Which way the Court is going to
10   hold, I don't know.  But there is a sufficient lack of
11   clarity that we thought was necessary to file an appeal.
12            SPECIAL MASTER REDFEARN:  You have filed
13   an appeal for the Motion for Reconsideration?
14            MR. DRANE:  Not from the Motion for
15   Reconsideration, but from the order granting the monetary
16   sanction.
17            SPECIAL MASTER REDFEARN:  Yes.  I'm
18   moving passed that now to the Motion for Reconsideration.
19            The decision, as I recall, was on the
20   5th of January.  And it would not have been necessary
21   yet, I think, to file an appeal from the Motion for
22   Reconsideration.  I just assumed you're not going to do
23   that.  If that's incorrect, I would like to know it
24   before we proceed here.
```

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000 ~ 302-571-0510 ~ 610-434-8588 ~ 888-777-6690

## Page 5

```
 1            MR. DRANE:  Well, at the moment, the
 2   appeal has been filed.  I think Dow, at least recently,
 3   has taken the position the Motion for Reconsideration is
 4   unlikely.
 5            MR. FRAZER:  I think we're talking
 6   apples and oranges.
 7            Are you talking about the Motion to
 8   Reconsider on the Summary Judgment Motion?
 9            SPECIAL MASTER REDFEARN:  I am.
10            MR. FRAZER:  Summary judgment.
11            MR. DRANE:  I'm sorry.  We have not
12   appealed from that.
13            SPECIAL MASTER REDFEARN:  And it's not
14   your intention to?
15            MR. DRANE:  That's correct.
16            SPECIAL MASTER REDFEARN:  I can't bind
17   you to that.  I just didn't want to go through this
18   meeting and have things said that were then going to be
19   changed because you were doing something of which I was
20   you know aware of.
21            So, when I talked about the Motion for
22   Reconsideration, I was talking about the Motion for
23   Reconsideration relative to the Motion for Summary
24   Judgment, not relative to the sanction's ruling.
```

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000 ~ 302-571-0510 ~ 610-434-8588 ~ 888-777-6690

1    MR. DRANE: I understand.
2    SPECIAL MASTER REDFEARN: Okay.
3 Relative to the matters which are before us this
4 afternoon, in order to avoid the agony of going through a
5 lot of these, I am going to rule initially as to Items
6 16, 18, 22, 32 and 42, that, in my opinion, they
7 constitute, those requests constitute new discovery.
8    And that in light of the statements made
9 in the Court's opinion of September 24, 2007 -- excuse me
10 -- 2009, discovery is closed. And as Special Master, I
11 feel bond by that comment. Were I to allow discovery and
12 a party later claim they had new evidence, that the Court
13 would not look kindly upon that. This is a situation
14 somewhat different than the normal appellate process.
15    In other words, I just feel that I am
16 bond by what the Court has previously said.
17    Should I have a different opinion, it
18 doesn't seem to me it makes much sense to express that,
19 in light of the fact that the judge who is going to hear
20 the exceptions has already made a statement as to what,
21 or how the Court feels.
22    I say that notwithstanding the fact that
23 I know that HRD takes the position that this is not new
24 discovery. I believe the Court would come to the

1 conclusion that it was new discovery. And in any event, I
2 think that you're going to have to take that matter up
3 with the Court, rather than with me, if you want to take
4 an exception.
5    Now, I would note that with the
6 exception of 42, which is the last of the paragraphs on
7 the status chart, that all of those sections were
8 sections in which the parties either previously stated
9 that the matter was resolved, or resolved with an
10 exception, or that no action is required pending the
11 Court's decision on the Motion for Consideration --
12    MR. GREENBERG: Reconsideration.
13    SPECIAL MASTER REDFEARN: --
14 Reconsideration.
15    It did seem to me that that was, from my
16 viewpoint, an acknowledgement that the parties'
17 understood that the only basis for reconsideration of
18 that issue was a ruling favorable to HRD, which did not
19 occur.
20    So, as I said before, if you're going to
21 -- if you don't agree with that, I think it is best that
22 you ask the Court to consider that issue, rather than me.
23 I don't think that we should be talking about that.
24    If you do want to except, my suggestion

1 would be that you attempt to reach a stipulated order and
2 then submit it to me so that you will have something to
3 except from, other than just the statements that I have
4 made here this morning.
5    I don't have very much more to say about
6 that, although I would be happy to go through these very
7 briefly. But I don't think I will be saying anything in
8 addition to what I previously said.
9    Issue No. 16, going through them
10 separately, Issue No. 16 has to do with the discovery
11 relative to patents or patent applications other than 217
12 or the 897 applications.
13    You will note that I have not included
14 40 and 41 in my previous comments.
15    It is clear, I believe, from the Court's
16 summary judgment opinion that he feels that those are the
17 only patents left in the case. To the extent that HRD
18 disagrees, then they can ask the Court what the Court
19 meant.
20    It does seem to me that I will be making
21 -- if that is the only issue that HRD would except from,
22 it seems to me that I'm going to make a subsequent ruling
23 on that because that was also the subject of a Motion in
24 Limine in which an exception was made. You can wait for

1 that. It just occurred to me that if that was the only
2 item that you might not need an order.
3    18 is another issue which was previously
4 marked resolved with the exception of the IDF. In the
5 previous status chart it stated no action needed pending
6 Motion for Reconsideration. And as I previously
7 indicated, I think that it is discovery which the Court
8 will have to grant. I'm not going to allow it.
9    MR. NACHBAR: I don't want the record to
10 read a way it wasn't intended. I think you just said it
11 is discovery that the Court will be required to grant.
12 You mean that --
13    SPECIAL MASTER REDFEARN: No. The Court
14 will be required to rule upon is what I meant.
15    MR. NACHBAR: Thank you.
16    SPECIAL MASTER REDFEARN: Thanks, Ken.
17    22. Exactly the same comments. Again,
18 this was an issue previously marked no action necessary
19 pending the ruling by The Court on HRD's Motion for
20 Reconsideration. Again, I did considered it to be new
21 discovery.
22    One further comment I might make is that
23 HRD mentioned -- I'm sorry -- Dow mentioned in its
24 submission that HRD can call those witnesses at trial. I

Page 10

1   think that is correct, and I think that is normally what
2   would be done in a situation where discovery was not
3   absolutely completed.
4        32, same comments. I consider this to
5   be new discovery. Again, I think HRD has the opportunity
6   of getting a fuller explanation at trial. I am not going
7   to allow discovery.
8        Relative to 42, which, essentially, is a
9   question of whether or not HRD can use the affinity sales
10  to use damages that flow from HRD's misappropriation of
11  HRD trade secrets and/or Dow's patent application, which
12  were based on HRD's confidential information, I think,
13  again, you're going to have to ask the Court for this.
14  It is an issue that I ducted, if that is the proper word
15  in the Motion in Limine. It seems to me that it is akin
16  to a case dispositive motion should I rule in Dow's
17  favor, and that's not what is intended by the order of
18  appointment of being Special Master.
19       As you know, this issue relates to Rule
20  45 subpoenas that were issued after the discovery cutoff
21  date. In my decision of September 24th, which was
22  written on the same day as the Court's opinion, but
23  before I had seen that opinion, I stated that discovery,
24  in my opinion, was improper without a showing of good

Page 11

1   cause. Good cause would, among other things, mean that
2   the discovery could not have gone forward earlier.
3        I am also concerned here about whether
4   or not HRD can, without a supplemental report, get their
5   damages expert to testify that the damages which flow
6   from the trade secrets and the two pending patent
7   applications --
8        SPECIAL MASTER REDFEARN: Can you read
9   that back?
10       (The reporter was requested to read back
11  from the record.)
12       SPECIAL MASTER REDFEARN: -- are,
13  essentially, the same as the damages to which he referred
14  in his report.
15       MR. NACHBAR: For the record, we would
16  oppose any, or we agree that supplementation would be
17  required. The time for expert reports, of course, has
18  long come and gone, and we would reserve all our rights
19  if there were an effort to supplement.
20       SPECIAL MASTER REDFEARN: Thank you. I
21  think I assumed that, Ken. You would have to apply to
22  the Court, if you wanted to supplement your reports.
23       So, with that, I'm willing to talk about
24  the other items on the status report which we haven't

Page 12

1   discussed, however, I think, somewhat in a limited
2   fashion.
3        As to Item 23, which is the next item on
4   the list, unless I am mistaken, I have reviewed the
5   interrogatories that were answered, on February 23, 2009,
6   and I have read HRD's letter to Dow of April 29, 2009.
7   It seems to me that it may be appropriate for Dow to
8   update Interrogatories No. 3 and No. 9. The others I am
9   not going to consider.
10       When I say that they are going to update
11  them, I, essentially, assumed that they could be updated
12  in accordance with HRD's letter to Dow, I think it is
13  dated -- no -- I'm sorry -- April 23, 2009.
14       Having said that, I don't know whether
15  or not HRD's response -- I'm sorry -- Dow's response is
16  that they can't update them -- they can't update
17  Interrogatories 3 and 9 or what their position is.
18       Just so the record is clear, in HRD's
19  letter to Dow, relative to Interrogatory No. 3, HRD
20  stated as follows, and I'm quoting, "HRD needs the name
21  of the persons who reviewed the Invention Disclosure
22  Forms and the names of the persons who determined what
23  information to share with HRD related to potential
24  invention."

Page 13

1        Limiting that to the patents that are
2   still in the case, what is Dow's position relative to its
3   ability to or need to amend Interrogatory No. 3? And I
4   realize that I am kind of throwing that at you without
5   your having had some time to consider it. Maybe that is
6   unfair.
7        MR. FISCHER: Well, of course, there's
8   no need to do anything. In all seriousness, we will have
9   to take a look at and examine it. But Dow's position is,
10  this interrogatory relates to disclosure obligations and
11  such disclosure obligations were removed from dispute by
12  the Court in its summary judgment opinion.
13       So, the subject matter of the
14  interrogatory is irrelevant for purposes of the present
15  proceedings. That's Dow's position on it as a legal
16  matter.
17       As a factual matter, what's in the
18  April 2009 interrogatory responses, I'm not prepared to
19  comment on that, other than to say Dow would not have
20  provided responses unless it felt that in good faith
21  these were sufficient and fully answered the question
22  asked to the extent relevant.
23       SPECIAL MASTER REDFEARN: Well, let me
24  look at the answer because I'm sure that I did that.

Page 14

1          MR. FRAZER: Exhibit 2 in this binder.
2          SPECIAL MASTER REDFEARN: Of your
3    exhibit.
4          MR. FRAZER: It's in the binder.
5    Exhibit 2.
6          SPECIAL MASTER REDFEARN: Their
7    Exhibit 2.
8          MR. FRAZER: Yes.
9          MR. GREENBERG: Page 6.
10         MR. FISCHER: Page 6 of Exhibit 2.
11         SPECIAL MASTER REDFEARN: Why doesn't
12   everyone take a chance and look at Interrogatory No. 3
13   and the answer.
14         Bearing in mind that it was my thought
15   that HRD could amend that, I guess, without prejudice
16   position taking.
17         MR. FRAZER: You mean Dow could amend
18   that?
19         SPECIAL MASTER REDFEARN: I'm sorry.
20   Dow could amend that without prejudice to any position
21   they're taking as to the patent applications that are
22   still in the case.
23         But my problem was that I didn't, I
24   don't know if I could have, but I didn't look at the

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000 ~ 302-571-0510 ~  610-434-8588 ~  888-777-6690

Page 15

1    production numbers which are listed by Dow.
2          Again, I think this may be unfair.  And
3    I think maybe I'll let Bill make a comment, and then
4    maybe I'll just let you write me a letter after this,
5    after this status conference, telling me what you can do.
6          I don't think the -- it seems to me that
7    you could do more with the answer and with the
8    understanding it's without prejudice to your position.
9    It might be easier to answer that, rather than to get
10   into some objections that you might --
11         MR. NACHBAR: We understand what you're
12   saying, and we'll take it under advisement.  But if Bill
13   want to make a statement, that's, of course, fine.
14         MR. FRAZER: Bill is not feeling well
15   today.
16         MR. FEREBEE: I'm losing my voice.
17         MR. FRAZER: We did look at the
18   documents.  There are a few E-mails.  I don't know if Dow
19   is attempting to represent those, or the people that are
20   supposedly being identified or not.  But our problem is,
21   it doesn't identify a person as requested.
22         SPECIAL MASTER REDFEARN: Well, that's
23   what I thought.  But there may be other objections that
24   Dow has.

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000 ~ 302-571-0510 ~  610-434-8588 ~  888-777-6690

Page 16

1          But in any event, let me -- I'm trying
2    to figure out the easiest way to do this.  I don't think
3    you necessarily have to communicate with me if you're
4    going to answer, if you're going to try and further
5    answer this.  If you are not, I think what you should do
6    is, I guess, within a week, write to me with a copy to
7    HRD explaining your position.
8          Again, I say this without prejudice
9    because it seems to me that, then, the cure may be worse
10   than the disease.  It may just be easier to respond to
11   those.
12         Did you want to say anything further?
13         MR. FRAZER: No.  It's primarily about
14   the fact that nobody has been identified.
15         SPECIAL MASTER REDFEARN: All right.
16         MR. DRANE: Just one question.
17   Procedural question, say in the event that they decide
18   not to revise the answer and write to you within a week
19   --
20         SPECIAL MASTER REDFEARN: Oh, thanks.
21         MR. DRANE: -- I assume HRD would be
22   allowed a response within a week after that.
23         SPECIAL MASTER REDFEARN: Respond within
24   a week.

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000 ~ 302-571-0510 ~  610-434-8588 ~  888-777-6690

Page 17

1          Thank you, Harding.
2          That brings us to Interrogatory No. 9.
3          MR. FISCHER: Just to revisit your point
4    that the cure may be worse than the disease.
5          One of the ongoing and persisting
6    problems is that it's never enough.  And supposed a
7    person is identified, the next door that's open is, Well,
8    we need a deposition, and we need a declaration and so on
9    and so forth.  And the current circumstances what they
10   are, the defied court order requiring HRD to pay Dow's
11   attorneys' fees incurred defending against the sanction
12   motion makes Dow very leery to act with a degree of
13   generosity that we might otherwise expect an applaud of
14   our litigants.
15         And so, that's why, as an objective
16   matter, I certainly appreciate where that sentiment comes
17   from, but we're not on a blank slate right now.
18         SPECIAL MASTER REDFEARN: All right.  I
19   understand that.  And accepting the generous spirit of
20   which you refer, I would say that it's highly unlikely as
21   is indicated previously that I'm going to allow
22   additional discovery.
23         And that's the reason why, or one of the
24   reasons why I have not -- why I summarily dismissed the

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000 ~ 302-571-0510 ~  610-434-8588 ~  888-777-6690

5  (Pages 14 to 17)

Page 18

1   counts at the beginning of this meeting. I am talking
2   about Counts or Paragraphs 16, 18, 22, 32 and 42 because
3   I have a similar fear that the party advantaged,
4   particularly if it were HRD, might be in a position to
5   argue that this is newly discovered evidence and it
6   changes everything. So, I guess, you're just going to
7   have to figure that out for yourself.
8           My inclination was to require
9   Interrogatory No. 3 to be supplemented, limited to the
10  patent applications that were still in the case.
11          Let's go now to Interrogatory No. 9.
12  And let me point out before I ask you what you want to do
13  that the only relief that I am, or the only suggestion I
14  am making to Dow is that they answer Interrogatory No. 9
15  in keeping with Dow's letter of April 29th in which it's
16  stated that they wanted Dow to identify each written
17  notice and who sent it.
18          MR. FISCHER: HRD's letter of
19  April 23rd.
20          SPECIAL MASTER REDFEARN: I'm sorry. I
21  keep switching these.
22          Off the record.
23          (Off-the-record discussion.)
24          SPECIAL MASTER REDFEARN: Back on the

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000 ~ 302-571-0510 ~ 610-434-8588 ~ 888-777-6690

Page 19

1   record.
2           So, take a look at Interrogatory No. 9.
3   Bear in mind that HRD's letter stated that it only wanted
4   you to identify the each written notice and who sent it.
5           Bear in mind, also, that I am not
6   inclined to grant additional discovery. And rather than
7   requiring anybody to state what they think they ought to
8   do, why don't you both just include that in your
9   discussions and/or your letter to me in a week and reply.
10          I think that gets us through 23.
11          As I understand it, no action is
12  required relative to 29.
13          Even though there are comments regarding
14  30, the letter states that that issue is resolved, and
15  I'm going to accept that.
16          31 is resolved.
17          I've ruled on 32.
18          33 no action is required.
19          34 and 35 are resolved.
20          39 is reserved for later.
21          And that leaves us with 40 and 41. And
22  in this case, 41 is similar to 16. But as I understand
23  it, limited to the patent applications which are still in
24  the case, that is 217 and 897.

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000 ~ 302-571-0510 ~ 610-434-8588 ~ 888-777-6690

Page 20

1           With the knowledge that Dow, in its
2   submission, has stated there were no additional documents
3   that it could supply, I would like to know what HRD's
4   position is on 40. If I said 41 previously, I'm sorry.
5           MR. FRAZER: Well, first off, if you go
6   back to Dr. Karjala's declaration, on certain patent
7   applications she stated the documents had been produced.
8   On other ones she did not. These two were two that she
9   did not state the documents had been produced, which
10  leads us to believe that there were documents out there.
11          If there are, in fact, no documents out
12  there, I guess, HRD would be seeking a -- seeking two
13  things from Dow. One, what documents were produced do
14  underlie these patents. And two, an affidavit from
15  somebody at Dow stating all of the underlying documents
16  have been produced.
17          SPECIAL MASTER REDFEARN: Who is
18  speaking for Dow?
19          Well, you seem reluctant to make a
20  comment regarding that. And I think this can be handled
21  in the same way that we handled the other items. I don't
22  know that we have to require some sort of an affidavit or
23  something of that sort.
24          But it seems to me that under the

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000 ~ 302-571-0510 ~ 610-434-8588 ~ 888-777-6690

Page 21

1   circumstances, it would be appropriate for you to comment
2   further; that is, go back and check. Find out if there
3   are other documents. If there are, I would not expect
4   someone to start complaining vociferously about the fact
5   that they were hidden or something of that sort.
6           MR. FRAZER: If I may add one thing.
7           Under Patent 217, Teresa Karjala's
8   declaration, this is in Paragraph 9, refers to a Databook
9   of Sylvie, and I'm going to butcher this, Desjardins,
10  maybe, which has not been produced today.
11          MR. FISCHER: What paragraph?
12          MR. FRAZER: Paragraph 9 on Page 5.
13          SPECIAL MASTER REDFEARN: Let me do
14  this. I hope this doesn't get too complicated.
15          In light of the fact that you're making
16  these comments, if you -- I'm suggesting that by Friday
17  you advise Dow what it is that you think may be out
18  there. That does not mean that Dow has to limit its
19  search to the documents that you suggested.
20          But I would like to discovery, all
21  discovery updated as opposed to new discovery. And if
22  there's something that you mentioned which Dow can
23  furnish, or something that Dow finds out about which it
24  can furnish, I would expect it to do that.

VERITEXT NATIONAL COURT REPORTING COMPANY
215-241-1000 ~ 302-571-0510 ~ 610-434-8588 ~ 888-777-6690

Page 22

1    I know that you all have probably
2 suggested that your discovery is up to date. But
3 discovery is really never up to date. People are always
4 finding out things in complex cases that they just missed
5 for some reason or another. And that, in fact, was Dow's
6 expert's testimony at the time we had the Motion for
7 Sanctions that things just were missed from time to time.
8    So, I accept that, when I know that from
9 my experience to be true.
10    So, in the event that people find
11 things, please get over your reluctance to produce them
12 in close cases because there's some argument that you
13 didn't need to and go ahead and produce them, rather than
14 find or have something discovered at trial which is going
15 to cause problems. All right.
16    MR. FISCHER: Just one thing. And I
17 think Mr. Frazer's comment is emblematic of what we're
18 dealing with here. Any enumeration, identification of
19 what it is HRD believes is out there that is not in their
20 possession, should be linked in some way to the claims
21 that actually remain in dispute.
22    SPECIAL MASTER REDFEARN: I agree.
23    MR. FISCHER: Because the problem that
24 we have is, he latches on -- Mr. Frazer latches onto

Page 23

1 Dow's scientist, Sylvie Desjardins. If there's a
2 Databook, we never got it. I'm not going to dispute
3 that. The problem is, it's not relevant. And if we just
4 read the sentence that Dr. Karjala wrote, she said that
5 Scientist, Sylvie Desjardins, who is involved with
6 research on the Symyx catalysts did not perform any work
7 from the JDA. Further, this IDF does not contain any
8 information relating to PE Waxes, which is a defined term
9 in the JDA, reduced to practice during the JDA, or as a
10 result of work performed in connection with the JDA,
11 which are vital ingredients if this is to qualify as a
12 development.
13    And that's the only question that
14 remains in litigation that was identified by the Court in
15 its summary judgment ruling, who owns these patent
16 applications.
17    And that turns on a construction and
18 comparing them against the definition of development in
19 the JDA. Whether there's a logbook out there is neither
20 here nor there. And so, Dow can't counsel its client, or
21 Dow's attorneys can't counsel Dow in good faith to
22 produce information that we know will never see the light
23 of day at trial if relevance is construed against the
24 claims that are actually in litigation. It just doesn't

Page 24

1 make any sense from Dow's prospective.
2    SPECIAL MASTER REDFEARN: You'll just
3 have to make a determination as to whether or not you can
4 produce it without opening discovery up or doing
5 something that you think is a matter of principle can't
6 be done. But if you're ever doing something on the basis
7 of principle, there better be another good reason beside
8 that. If, for practical reasons, you can produce it or
9 produce it in sufficient form that will satisfy the other
10 side, try and do that with the understanding that it is
11 without prejudice to your position. If you can't, you
12 can't.
13    In any event, let's go forward with the
14 procedure, which I suggested; that is, by the end of the
15 week, you notify Dow what you think it might be able to
16 produce.
17    MR. NACHBAR: In which claim that is
18 still in the case that it relates to?
19    MR. FRAZER: Yes.
20    SPECIAL MASTER REDFEARN: As much
21 information as you can.
22    And there's no reason why, after getting
23 that letter, you can't talk on the phone. And there is
24 no reason why you can't ask me to extend the period I

Page 25

1 have given you by whatever it is that you think you need.
2 But I would like to get this completed within a few
3 weeks.
4    That brings us to Item 41. I guess I
5 was not clear on what was being requested here. So I
6 wanted to give HRD a chance to state what it wanted on
7 the record.
8    MR. FRAZER: 41 relates to additional
9 patents that I believe at the beginning of the meeting
10 you have said we need to go to the Court.
11    SPECIAL MASTER REDFEARN: That doesn't
12 relate to either 217 or 897?
13    MR. FRAZER: This was the all
14 encompassing one that related to all of the patents that
15 we identified. 40 was specifically the two that were in
16 the case by the Court. So, 41 is kind of the broad one.
17    SPECIAL MASTER REDFEARN: So, 41 and 18
18 are the same?
19    MR. FRAZER: 41 and 18 are the same.
20 Correct.
21    SPECIAL MASTER REDFEARN: As far as I am
22 concerned, that covers the status chart so far as I want
23 to discuss it; although I am available to talk about
24 anything else that you think needs to be discussed at

Page 26

1  this point in time.
2          MR. NACHBAR:  I just want to commend you
3  for scheduling this on February 2nd.  I think Ground Hog
4  day was pure comedic genius.
5          SPECIAL MASTER REDFEARN:  All right.
6  Okay.  Anything we have to discuss about the exceptions
7  or anything of that sort?  No.  Okay.  Thank you.
8          (Hearing was concluded at,
9  approximately, 2:00 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 27

1          C E R T I F I C A T E
2  STATE OF DELAWARE:
                      :
3  NEW CASTLE COUNTY:
4          I, Gloria M. D'Amore, a Registered
5  Professional Reporter, within and for the County and
6  State aforesaid, do hereby certify that the foregoing
7  status conference was taken before me, pursuant to
8  notice, at the time and place indicated; that the
9  statements of said participants was correctly recorded in
10  machine shorthand by me and thereafter transcribed under
11  my supervision with computer-aided transcription; that
12  the transcript is a true record of the statements made by
13  the participants; and that I am neither of counsel nor
14  kin to any party in said action, nor interested in the
15  outcome thereof.
16          WITNESS my hand and official seal this
17  3rd day of February A.D. 2010.
18
19
   _____
20  GLORIA M. D'AMORE
    REGISTERED PROFESSIONAL REPORTER
21  CERTIFICATION NO. 119-PS
22
23
24

8  (Pages 26 to 27)

# EXHIBIT C



**O'DONNELL FEREBEE MEDLEY & KEISER, P.C.**

Jason L. Frazer

**ATTORNEYS AT LAW**

(281) 875-8200

1/22/2010

B. Wilson Redfearn                                          *Via electronic mail*
Special Master
Tybout, Redfearn & Pell
750 South Madison Street, Suite 400
Wilmington, DE 19899

RE: HRD's position regarding outstanding items on the Status Chart

Dear Special Master Redfearn:

Please allow this letter to serve as HRD's response to your email of January 8, 2010. Per your instructions, the parties conducted a meet and confer on January 14, 2010. At the meet and confer, the parties failed to resolve some of the items on the status chart. This letter will set forth HRD's position with respect to each outstanding item

**Item 16.**

HRD maintains Dow has not produced all underlying documents. This item has two distinct areas of dispute.

First, Dow has taken the position that only two patents remain at issue in this case (the '217 and '897 applications). However, Dow only moved for summary judgment on six patents. HRD identified several other patents which were not ruled on by the Court. Therefore, it is HRD's position that of the patents identified in HRD's responses to Dow's interrogatories, only the four ruled out by the court are no longer at issue.

In a draft ruling issued on January 19, 2010, the Special Master ruled on a preliminary basis that all patents, other than the '217 and '897, are inadmissible. HRD respectfully requests the Special Master reconsider this ruling. HRD had requested patent information since April of 2006. After nearly two years of Dow's failure to provide that information, HRD noticed a 30(b)(6) deposition which included HRD's intent to question a Dow appointed witness on Dow's HMA product patent filings. In response, Dow requested it be allowed to respond to this question, along with several others, in interrogatory form. HRD agreed to Dow's proposal and served supplemental interrogatories. Dow's responses were served on HRD on February 23, 2009.

In responding to HRD's interrogatories Dow, for the first time, identified fourteen patents filings related to the HMA industry. As the Special Master is aware, a patent is a highly technical document and it takes time to fully analyze the teachings of each application. Further impeding HRD's efforts to conduct discovery on issues related to Dow patents, Dow continued its refusal to

provide any documents underlying these newly-identified patents. To date, the only subsequent discovery Dow has provided is the declaration of Ms. Karjala, which raised more questions regarding Dow's HMA-related patents than it answered, as discussed further below. Dow further interfered with HRD's efforts to obtain meaningful discovery by serving Ms. Karjala's declaration on HRD just days *after* HRD filed its last briefing for the summary judgment motions. Dow's efforts to prevent HRD from receiving discovery on a key issue should not be rewarded by preventing HRD from presenting its full case at trial, including claims related to the belatedly identified patents.

Second, HRD is entitled to the discovery related to all of these patents. HRD has long requested this discovery and Dow admits it has not even gathered these documents. At the September 3, 2009, status conference, Dow's counsel stated "I mean, we haven't even collected these documents. The IDFs refer to various things, and this could be thousands of pages." (Sept. Status Conference Tr. Pg 21:13-15). Therefore, HRD requests Dow be ordered to collect and produce the documents underlying the patents.

**Item 18.**

HRD's Fifth Motion to Compel resulted from Dow's failure to respond to HRD's Third Request for Production of Documents ("RFP"). HRD's RFP sought, among other things, documentation of the research and development efforts undertaken during the JDA. As stated in the motion, HRD, based upon documents produced by Dow, identified numerous people who were associated with the project. However, Dow has failed to produce any databooks, notes, or other documents related to their work. HRD is entitled to a full response to its request for documents regarding the work performed under the JDA, which is directly relevant to HRD's remaining trade secret and patent claims.

**Item 19.** This item was resolved during the meet and confer on January 14, 2010.

**Item 22.**

HRD originally noticed a 30(b)(6) deposition of Dow on December 31, 2008. The notice included a detailed description of topics on which HRD desired to question a Dow-appointed witness. In a letter of January 9, 2009, Dow requested HRD to submit its questions regarding many of the topics, including most of the patent-related questions, in interrogatory form. In accordance with Dow's request, HRD subsequently served supplemental interrogatories. Instead of answering HRD's interrogatories, however, Dow responded with a litany of objections and little in the way of substantive responses. HRD had no opportunity to follow up on those areas where Dow provided limited or no information. None of this would have occurred during an oral deposition. Since Dow has not lived up to its agreement to provide meaningful answers in written format, HRD requests leave to take a the 30(b)(6) deposition as originally noticed.

Specifically, HRD seeks a 30(b)(6) deposition on the following subjects listed in its original notice:
1. Dow's assignment of personnel relating the Dow/HRD relationship;

2. Dow's protocols for patent application preparation, patent information sharing and reporting of patent-related information relating to HMAs and/or used in HMAs;
3. Dow's record keeping protocol as related to the JDA;
4. Products made under the JDA;
5. Capabilities of Dow's metallocene catalysts; and
6. Research and development performed by Dow since January 1, 2001 related to the development or marketing of wax component two-pack or a three pack product in the HMA industry.

**Item 23.**

As set forth in my letter to Katya Jestin of April 23, 2009 (copy attached as Exhibit 1 hereto), HRD has requested and remains entitled to discovery from Dow.

**Interrogatory 2.** HRD requested the IDFs and underlying documents for each of the patents. The Court has ruled the IDFs are privileged, but HRD remains entitled to the remaining documents.

**Interrogatory 3.** HRD is entitled to know who made decisions related to what information was withheld from HRD.

**Interrogatory 4.** HRD is entitled to know about all patent applications, whether published or not, related to products for use in the HMA industry.

**Interrogatory 7.** HRD is not seeking additional information on this answer.

**Interrogatory 9.** HRD has not received information in response to this request. During deposition, Mike Levinson, Dow's contract administrator, could not answer the question either.

**Interrogatory 15 and 16.** HRD has set forth its position on how the Affinity sales relate to its remaining damages claim in a letter dated October 5, 2009 from Mr. Drane to Special Master Redfearn. (Copy attached as Exhibit 2). HRD's position on this issue has not changed.

**Item 30.**

This item is resolved.

**Item 32.**

HRD requested to reopen the Karjala deposition after receiving her declaration dated June 22, 2009. During her earlier deposition, Ms. Karjala stated that she could not remember how many IDFs were prepared during the JDA or how many patents Dow filed pursuant to the JDA work. However, Ms. Karjala testified that when a scientist believed he or she had invented something new, the invention would be placed in a disclosure (IDF). (Karjala Depo. Pg. 185:2-4). Contrary to this sworn testimony, Ms. Karjala now asserts in her declaration that Dow did not prepare IDFs on all of the inventions. Karjala Dec. Para. 11. In addition, in the Declaration, she admits for the first time that some of the patents HRD identified in fact were a direct result of the JDA efforts.

*Id.* In particular, Ms. Karjala states application WO/2005/028584 "contains information on JDA Developments."

In addition, Ms. Karjala's declaration raises issues related to work being done by Dow independent of HRD during the term of the Dow/HRD JDA. The JDA required exclusivity during its pendency, and therefore whether Dow conducted the research under the JDA or ostensibly as part of a different project, HRD possesses a contractual claim to the information developed.

Furthermore, HRD disputes many of the assertions set forth in Ms. Krajala's declaration, and should be allowed to test those assertions through cross-examination. HRD set forth these disputes in a letter addressed to the Special Master dated July 6, 2009. (Copy attached as Exhibit 3)

For the foregoing reasons, HRD should be entitled to reopen Ms. Karjala's deposition to investigate all relevant inventions which Dow developed during the JDA period, test the veracity of her statements, and clarify the inconsistencies in her prior statements.

## Item 39.

The parties have agreed this item is not ripe for resolution at this point in time. The parties have agreed in concept to a protocol to remove the highly confidential designations, but are still discussing the timing of such action. With no trial date set, and additional summary judgment briefing pending, the parties agreed to postpone discussion on this item for the immediate future.

## Item 40 and 41.

These items relate back to the discussion presented in response to Item 16. HRD seeks all documents, except the IDFs, underlying each of the patents.

## Item 42.

The parties agreed to identify this issue as a separate item during the January 14, 2010, meet and confer. HRD previously had viewed this issue as part of item 19. HRD seeks the information it requested in its third-party subpoenas. HRD issued these subpoenas to certain of Dow's customers due to Dow's continued refusal to produce documents showing its sales of polymers competitive to HRD's two-pack products (i.e. the Affinity Request). The Special Master previously ruled Dow should fully respond to HRD's requests. (D.I. 355). As set forth in Mr. Drane's letter of October 5, 2009, to Special Master Redfearn (*see* Exhibit 2 hereto), HRD's damage model has not changed. Kenneth Stern's report values the lost business opportunity and HRD is entitled to the subpoenaed documents to support its damage model.

In closing, it should be emphasized that HRD is not seeking new discovery. Instead, HRD's past requests have remained unanswered for months, and in some cases for years. Dow has not met all of its discovery obligations and has failed to provide meaningful discovery on a number of relevant issues. With the recent rulings from the Court, the case could be set for trial later this

year. Therefore, it is time for Dow to resolve the outstanding issues and provide the discovery HRD is justly due.

Respectfully,
O'DONNELL, FEREBEE, MEDLEY & KEISER, P.C.

*Jason L. Frazer*

Jason L. Frazer

JLF:sw
Enclosures

cc: Robert M. Greenberg (w/encl. via Electronic Mail)
William C. Ferebee, Esq. (w/encl. via Electronic Mail)
Kenneth J. Nachbar, Esq. (w/encl. via Electronic Mail)
Katya Jestin, Esquire (w/encl. via Electronic Mail)
W. Harding Drane, Jr. Esq. (w/encl. via Electronic Mail)

# EXHIBIT D

# JENNER&BLOCK

January 29, 2010

Jenner & Block LLP          Chicago
919 Third Avenue           Los Angeles
37th Floor                 New York
New York, NY 10022         Washington, DC
Tel 212-891-1600
www.jenner.com

## VIA HAND DELIVERY

B.W. Redfearn, Esquire
Tybout, Redfearn & Pell
750 Shipyard Drive, Suite 400
Wilmington, DE 19810

Katya Jestin
Tel  212 891-1685
Fax  212 909-0818
kjestin@jenner.com

Re:    *Dow v. HRD*, No. 05-23 (JJF)

Dear Special Master Redfearn:

Dow writes in response to HRD's January 22, 2010 letter, in which HRD seeks to justify the continued relevance of its discovery demands.

## Item 16

In item 16, HRD claims that it is entitled to documents relating to patents that have been definitively and unambiguously ruled out of the case by both the Special Master and the Court. Specifically, HRD claims that it is still entitled to discovery on a variety of patents and patent applications identified in its amended responses to Dow's interrogatories. However, as HRD is aware, the Special Master has ruled that all patents other than the '217 and the '897 are no longer relevant. *See* Jan. 19, 2010 Special Master Ruling at 6. That ruling was predicated on the Court's September 24, 2009 summary judgment opinion, ("Summary Judgment Opinion" or "Opinion") in which the Court held that the only patent-related issues that survived summary judgment were HRD's claims to ownership of the '217 and '897 patents. *See* D.I. 444 at 47-49, 52-53. Moreover, in rejecting HRD's Motion for Reconsideration of the Summary Judgment Opinion (in which HRD sought to re-inject the additional applications into its patent claim) the Court again confirmed that only the '217 and '897 applications remain at issue. D.I. 468 at 2. In any event, Dow has fully complied with HRD's discovery requests and has provided all relevant discovery regarding JDA Developments. As a result, this item should be removed from the status chart as moot in light of the law of the case.

## Item 18

HRD argues that its Fifth Motion to Compel is still at issue, and that Dow should be required to produce additional information including "documentation of the research and development efforts undertaken during the JDA." HRD's claim is puzzling in light of past representations by HRD that this item was resolved. Specifically, HRD sent an email on June 1, 2009 to the Special Master attaching a revised status chart that HRD represented had been approved by "both Dow and HRD." Ex. 1. The status chart attached to HRD's email states that Item 18, HRD's Fifth Motion to Compel, is *"Resolved* except for IDFs." Ex. 1 (emphasis added). Thus, it is plain that the parties considered this item resolved with the exception of the IDFs. Subsequently the Court

ruled that Dow's IDFs are privileged (D.I. 444 at 47, 55), and, based on that ruling, HRD has withdrawn its claim to entitlement to their production. HRD's attempted revival of this Motion is a transparent effort to create discovery issues where they no longer exist; Dow has already produced all non-privileged documentation of the research and development efforts undertaken during the JDA. This item is resolved and should be removed from the Status Chart.

**Item 19**

We agree with HRD that this item has been resolved.

**Item 22**

Under Item 22 HRD argues that Dow has failed to adequately answer HRD's supplemental interrogatories, which were served in lieu of a 30(b)(6) deposition requested on certain patent-related topics. As a result, HRD claims that it is entitled to a 30(b)(6) deposition on six topics. First, every item of information sought by HRD under Item 22 is irrelevant due to the Court's Summary Judgment Opinion, which dismissed the entirety of HRD's Count 2 regarding Dow's alleged breach of the JDA and all of Count 6 but for the ownership interest of two patent applications. *See* D.I. 444 at 31-34, 47-49, 52-53; *see also* D.I. 475 at fn 2. For example, topics such as "[p]roducts made under the JDA," "[c]apabilities of Dow's metallocene catalysts," and "Dow's assignment of personnel relating [sic] the Dow/HRD relationship" have nothing to do with the remaining issues in the case, *i.e.* misappropriation of four remaining trade secrets and the ownership of two patent applications. In any event, HRD had ample opportunity to depose Dow's employees, and can of course, call such employees as witnesses at trial (insofar as HRD can satisfy the Court as to the relevance of their testimony to the claims remaining in the case). Finally, Dow fully complied with HRD's supplemental interrogatories and has provided all relevant discovery regarding research conducted under the JDA.

**Item 23**

HRD claims that it requested and is entitled to discovery from Dow in response to informal Interrogatory (Nos. 2, 3, 4, 7, 9, 15 and 16) served in January 2009. As set forth in detail below, Dow has fully responded to these interrogatories and, in any event, the information sought is no longer relevant in light of the Court's Summary Judgment Opinion.

*Interrogatory 2* - Interrogatory 2 requests Dow to: "identify the process Dow used from the time research begins, including how Dow determines an invention has been conceived, through the time the patent application is filed with the appropriate receiving office. Include the process Dow used to determine whether any of the claims or inventions belong to HRD under the provisions of the joint development agreement (JDA) or supply agreement (SA)." In its answer Dow explained this process. Ex. 2 at 5-6.

Now, HRD claims this interrogatory "requested the IDFs and underlying documents for each of the patents." This description of the request is wholly inaccurate; Interrogatory 2 does not explicitly or implicitly request Dow to produce any documents. Thus, Dow has provided the requested information in total and this interrogatory is no longer at issue. Even if HRD's characterization of their request was accurate, which it is not, with respect to the '217 and '897

applications, Dow has produced the applications as well as all documents relating to research conducted under the JDA.

*Interrogatory 3* - This interrogatory requests Dow to "[i]dentify the person(s) with responsibility for determining on Dow's behalf whether to provide to HRD information related to invention(s) created under the JDA or SA, and the persons who reviewed the HRD patent applications prior to submission; and explain how Dow determined what information to share with HRD related to the inventions(s), specifying what information Dow shared with HRD regarding the invention(s) and what information Dow elected not the share with HRD regarding the invention(s). Include the basis for any determination by Dow not to share information with HRD developed or discover under either the JDA or SA."

HRD now claims that it is "entitled to know who made decisions related to what information was withheld from HRD." First, Dow specifically responded to HRD's request by representing that "Dow did not withhold any information regarding inventions under the JDA." Ex. 2 at 6-7. Thus, Dow has no additional information to provide HRD.

Second, as briefed to the Court, Dow's alleged breach of disclosure obligations under the JDA were treated by HRD as relating to Counts 2 and 6 of HRD's counterclaims. D.I. 263 at 26, 30-31; D.I. 444 at 31-34, 54-55. The Court has expressly disposed of this claim as part of its outright dismissal of Count 2 (D.I. 444 at 31-34), and has dismissed all of Count 6 except determination of ownership with respect to two patent applications. D.I. 444 at 47-49, 52-53; *see* D.I. 475 at fn 2. Thus, this interrogatory has been fully resolved.

*Interrogatory 4* - This interrogatory seeks "all patent applications or provisional filings made by Dow since January 2001 related to wax products to be used in HMAs, or related to one-pack, two-pack or three-pack formulations for the HMA industry, and used thereof, including the current status of each application or provisional filing."

HRD now claims that it is "entitled to know about all patent applications, whether published or not, related to products for use in the HMA industry." On February 23, 2009 Dow responded in full to HRD's interrogatory, and provided a list identifying 14 patent applications, including the two remaining in HRD's patent claim. *See* Ex. 2 at 7-8.

The Court has held twice now that only those two patent applications remain at issue in this case. Thus the information sought by this interrogatory is no longer relevant, and in any event, relevant or not, Dow has provided it to HRD.

*Interrogatory 9* - This interrogatory asks Dow to "[d]escribe the process Dow used to notify HRD of certain events as required under the terms of the JDA and SA." As explained above, the Court dismissed Count 2 of HRD's counterclaims (to which this information would be relevant) and thus, this interrogatory is moot.

*Interrogatories 15 and 16* - Interrogatories 15 and 16 seek the sales in pound and dollars and the profit margin for AFFINITY™ 1900 and 1950 for the years 2003-2008. HRD claims that its position on this interrogatory was set forth in a letter from Hardy Drane dated October 5, 2009 (*see* HRD Ex. 2), but that letter provides no information regarding what additional information

HRD claims it still needs in response to these interrogatories. What HRD fails to recount is that Dow provided this *exact* information to HRD long ago. *See* Ex. 3.[1]

Further, HRD has consistently represented to the Special Master that the purported relevance of Affinity sales information is to Kenneth Stern's market share analysis. Ex. 5 at 2 (reasoning that "experts have made this [Affinity] information relevant. Ken Stern, HRD's damage expert, discussed the size of the HMA market in formulating his opinions in this case."). However, as pointed out in Dow's motion *in limine,* Mr. Stern has no opinions regarding damages on HRD's trade secrets claim, as his "lost opportunity" computation was based solely on HRD's now-dismissed claim for breach of the Supply Agreement; thus Mr. Stern's market share analysis is irrelevant as is the data related to Dow's AFFINITY™ line of products. This issue is moot and should be removed from consideration.

### Item 30

We agree with HRD that this item has been resolved, although HRD's statement to that effect in its letter is likely in error. We refer the Special Master to our discussion of Interrogatories 15 and 16 *supra* for Dow's position with regard to HRD's request for discovery related to Dow's AFFINITY™ line of products.

### Item 32

HRD next argues that it should be entitled to reopen Teresa Karjala's deposition because Dr. Karjala stated "for the first time" in a declaration that some of the patents HRD identified were a result of JDA efforts. Specifically, HRD points to patent application WO/2005/028584 as an example of an application "contain[ing] information on JDA Developments." HRD's argument is misleading and unpersuasive. This patent application is simply the international version of Dow's U.S. patent application 2006/0287444, which Dow has always maintained relates to Developments under the JDA, and which was *expressly* ruled out of the case by Judge Farnan. D.I. 444 at 47. Additional questioning on this international application is not warranted as the Court already found that HRD does not have an ownership interest in its U.S. counterpart under the JDA. *See* D.I. 444 at 47. In any event, Dow produced all of the documents on the JDA research that led to this application, and HRD was able to depose Dr. Karjala and any other Dow employee on these documents.

Next, HRD claims without pinpoint citation that Dr. Karjala's declaration generally raises issues "related to work being done by Dow independent of HRD during the term of the Dow/HRD JDA," and that HRD "possesses a contractual claim to the information developed" as the "JDA required exclusivity during its pendency." Dow cannot address specifically HRD's concerns with Dr. Karjala's declaration, because HRD failed to provide specific citations. However, it appears that HRD misapprehends Dr. Karjala's statements on the scope of exclusivity agreed to in the JDA. Dr. Karjala worked on a variety of adhesive projects during the pendency of the

---

[1] For the convenience of the Special Master, attached as Ex. 4 is a full compendium of the briefing on this subject matter.

JDA that were not related to Dow's relationship with HRD. However, all of the work she conducted outside of the Dow/HRD JDA was on polymers that were outside the scope of P.E. Wax as defined by the JDA. Therefore, patent applications filed on any such research are completely irrelevant to this lawsuit.

Finally, HRD's claim that it should be entitled to reopen Dr. Karjala's deposition merely because it "disputes many of the assertions" in her declaration is completely meritless. First, only two patents remain at issue in this case, and HRD had ample opportunity to question Dr. Karjala on these two patent applications during her deposition. If HRD wants to "clarify the inconsistencies in her prior statements," HRD will have an opportunity to do so at trial.

HRD's requests under Item 32 should therefore be denied, and this item is resolved.

**Item 39**

The parties have agreed to postpone discussion of this item to a later date.

**Item 40 and 41**

Items 40 and 41 relate to HRD's request for production of documents related to patent applications 2008/0306217 and 2006/0199897, and HRD's request for discovery on patent issues as set forth in its letter to the Special Master dated October 5, 2009 (*see* HRD Ex. 2). As discussed in Item 16, Dow has produced all relevant discovery regarding research conducted under the JDA and/or JDA Developments. Consequently, Dow has no additional documents to produce to HRD.

**Item 42**

In Item 42 HRD claims that it is entitled to the information "requested in its third-party subpoenas" to support its "lost business opportunity" damages claim. HRD's argument lacks merit for a number of reasons.

First, HRD's subpoenas (which were not served until after the close of discovery) request an overly burdensome amount of information from third parties, all of which is irrelevant to its case. For example, each subpoena asks for 53 discrete pieces of information or things, including actual samples of wax received from Dow in the last three years. *See. e.g.*, D.I. 412. On September 17, 2009, HRD claimed that it needs wax samples from third parties to determine whether "the products being delivered [by] Dow to its own customer contain light ends." Ex. 6 at 4. Light ends are no longer at issue in the case, so under its own relevance assertion HRD no longer needs this discovery.

Second, HRD's lost profits damages model is unrelated to HRD's remaining claims. As explained in Dow's motion *in limine*, the damages model presented by HRD's expert Kenneth Stern related entirely to HRD's now-dismissed counterclaims. *See* Dow's 11/30/09 Motion *in Limine* at 18-19. Indeed that model estimates the value of HRD's supposed lost opportunity to purchase two-pack product produced by Dow at Dow's plants using Dow's technology and catalysts. The model can not logically reflect damages incurred as a result of Dow's supposed improper use or disclosure of two-pack trade secrets, because the lost opportunity, if any, in that

case would be HRD's opportunity to have someone *else* produce the two-pack using non-Dow technology and catalysts. HRD cannot establish that any company is capable of building a plant capable of producing the same two pack product at the same rate and under the same costs as Dow. Thus, the documents regarding the sales of Dow's polymers competitive to HRD's two-pack products which HRD seeks "to support [the] damages model" of Mr. Stern are irrelevant to any remaining issue.

***

As set forth herein, each of these discovery disputes have been resolved and rendered moot by the Court's Summary Judgment Opinion and Order. Respectfully, HRD's attempts to revive disputes pertaining to dismissed claims should not be countenanced.

Respectfully submitted,

*/s/ Katya Jestin*
Katya Jestin


Enclosure

cc:  Kenneth J. Nachbar, Esq. (via email)
     W. Harding Drane, Jr., Esq. (via email)
     William C. Ferebee, Esq. (via email)