IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DOW CHEMICAL CANADA, INC., On its own behalf and as assignee of THE DOW CHEMICAL COMPANY,

Plaintiff,

vs.

HRD CORPORATION, (d/b/a Marcus Oil & Chemical),

Defendant, Counterclaim Plaintiff

vs.

DOW CHEMICAL CANADA, INC. On its own behalf and as assignee of THE DOW CHEMICAL COMPANY,

Counterclaim Defendants.

Case No. 05-023-(JJF)

**Recommendations of the Special Master**

**Final Rulings on HRD's Exceptions to the Special Master's Draft Rulings of January 19, 2010**

## I. MOTIONS IN LIMINE[1]

Dow has moved to exclude from HRD's exhibit list nine patent applications[2] which were not (1) disclosed prior to summary judgment briefing; (2) identified on HRD's pre-summary judgment exhibit list; (3) addressed by HRD during summary briefing; or (4) identified in HRD's expert reports. HRD contends that the patent applications support its claims of trade secret misappropriation and should be allowed because HRD was prevented from identifying those exhibits at an earlier time due to Dow's repeated refusals to comply with discovery requests.

**Ruling:** Inadmissible.

In the Order which was appended to its summary ruling of September 24, 2009, the District Court stated:

> "With respect to Count 6 of HRD's counterclaims for breach of contract and duty of good faith in perfecting patent rights, the Court grants Dow's Motion except to the extent it concerns the '897 and '217 patent applications . . . "[3]

Further, in his decision denying HRD's Motion for Reconsideration, Judge Farnan re-emphasized his prior ruling:

> "Following the Court's decision, the only issues left to be resolved are the amount of damages owed by HRD to Dow on the breach of contract claim and HRD's counterclaims regarding trade secrets 13, 23, 24 and 40; and breach of contract and duty of good faith in perfecting patent rights regarding two patent applications, United States Patent applications 2006/0199897 and 2008/0306217."[4]

The Court went on to state that it would not consider any further arguments "that have been made previously or should have been made previously."[5]

---

1 All draft rulings are appended hereto, including the applicable authorities.

2 WO2005/028587, US2006/0025640, US2005/0165192, WO2003/087178, WO2007/008558, WO2006/031250, WO2007/07869.

3 D.I. 434, at 2.

4 D.I. 468, at 2.

5 D.I. 468, at 4.

The Special Master adheres to the Court's prior decision. These patent applications are not admissible at this point and cannot be submitted at trial in support of HRD's claim.

## II. EXHIBITS

### DOW0098385

This exhibit is an internal Dow email chain setting out the thoughts of a Dow employee (Michael Levinson) relative to a research and development report. Initially, HRD claimed that the emails memorialized the work performed during the JDA, and argued that they provided underlying documentation to support HRD's patent claims. HRD also previously argued that the exhibit contains evidence concerning how Dow handled HRD's trade secrets under the Joint Development Agreement (JDA) and memorialized the parties' interaction with Eastman Chemical in developing the two-pack product.

In its current application, HRD states that the email is probative of the fact that the two-pack product is commercially viable. Thus, HRD argues:

> "In particular, the following language shows the commercial viability of the product and its performance: 'I know we didn't do much work with additives, but they can certainly change the balance of properties . . . therefore, a single catalyst two-pack can achieve much higher performance than with the tackifier alone.'"

**Ruling:** A ruling on this exhibit is left to the discretion of the trial judge.

HRD does not, in its submission, relate the process described in this email to either of the surviving patent applications.

In its summary opinion, the Court noted that:

> "Other than in connection with the filing of PE Wax-related patents, HRD's briefing identifies no other manner in which Dow allegedly disclosed or used HRD's purported trade secrets."[6]

It is HRD's position that its misappropriation of trade secrets claim is not tied to the Dow patent applications (HRD letter to Special Master dated 3/3/10).

---

[6] D.I. 444, at 41.

HRD has not explained how the cited language applies to its surviving claims. Neither have I been able to discern how the surviving claims actually impact on the marketability/value of the two-pack product. HRD's experts' reports do not disclose how it intends to convert the misappropriation of the particular trade secrets or the two Dow patent applications into a specific damage claim.

HRD has recently advised:

> "At this time, the trial date in this matter has not been set and HRD has not completed its final trial strategy." *Id.*[7]

While I question the admissibility of this exhibit, I am reluctant to rule on the exhibit when the record has not been finalized. Following a showing of misappropriation, the marketability (viability) of the referenced two-pack product (if enhanced by the surviving trade secrets and/or patent applications) may be relevant to HRD's damage claim.

In the event that there is proof that the remaining trade secrets and/or patents were misappropriated by Dow and the email relates to a surviving claim the Levinson-authored email would likely be relevant. This must be left for a determination by the trial judge.

---

7 At the same time, HRD advised that it did not intend to ask the Court to amend its expert's report on damages.

**DOW00103363**

This is an internal Dow email dated September 19, 2003. The only portions of the email at issue are the following:

> "Patent filings (9/19). We're filing two patents today, one with Marcus being a final filing on the use of single catalyst and dual catalyst products in hot melt adhesives (two-pack concept) and one Dow filing (process/product) to make dual catalyst and dual reactor two-packs. Also, the catalyst group is filing a patent on a new catalyst, 1307, which shows some promise for use in low MW products. This patent was filed yesterday.
>
> * * *
>
> October Terneuzen mini-plant: We will have a run to demonstrate the dual reactor concept for two-packs, mostly for IP purposes. We will also have a separate run with the [redacted] catalyst to determine its [redacted] product)."

HRD argues that this email constitutes evidence that Dow misappropriated and disclosed its two-pack trade secret in the patent applications referenced in the email. In addition, HRD claims that the fact that Dow was manufacturing a two-pack product at its Terneuzen facility is evidence of the commercial viability of the product and shows that it could have been made with a single catalyst, dual catalyst or dual reactors.

This document was previously cited by HRD (See HRD's opposition to Dow's Motion for Summary Judgment) in support of its argument that Dow breached the JDA by withholding developmental research.

**Ruling:** Inadmissible.

In its summary opinion, the Court identified the email in question.[8] As to the Terneuzen mini-plant, the Court found that no evidence had been presented concerning the existence of any significant Dow research which was developed using dual reactor facilities. Stated otherwise, the Court has already ruled on the Terneuzen comment.

---

[8] D.I. 444, at 32-33.

Neither is the first paragraph (as set out above) admissible. The exhibit is an internal document and, as such, it is not the disclosure of confidential information. To the extent that HRD is arguing that the 2003 patent applications disclosed a trade secret, I point out that the Court concluded that HRD only has ownership interests in patent applications '217 and '897.[9] (DI 433 at 47-54), i.e., the patent filings referenced in the email are no longer a part of HRD's damage claim.

In any event, this communication does not support HRD's argument that it shows the commercial viability of the surviving claims.

[9] DI 444, at 47-54.

**DOW00035375**

This is an internal Dow email which was authored in December, 2004. It relates to "estimated" and "potential" costs incurred by Dow (1) under the Supply Agreement and (2) for closing the Sarnia plant.

HRD contends that the email should be admitted because it estimates Dow's internal costs and that this estimate is relevant to HRD's position that the Supply Agreement's termination provision operates as a penalty and is void. HRD also contends that the document is relevant to show that the contract was terminated in 2004, thus reducing Dow's recovery of Annual Operating Payments (AOP).

**Ruling:** Since my initial ruling, the Court, in its Memorandum Order dated January 5, 2010, allowed Dow to file a Supplemental Summary Judgment Motion on the issue of Dow's damages.[10] This issue is now before the Court and is thus deferred for the ruling of the trial judge.

When the Court rules on the supplemental summary briefing, it will address HRD's arguments. To the extent that the exhibit survives the Court's ruling, it can be resubmitted.

10 D.I. 469, at 3-4.

**Patent Applications US 2006/0025640, US2007/0160833, WO2006/069205**

HRD argues that these patent applications show that Dow disclosed HRD's trade secrets. Dow contends that these applications relate to Trade Secret No. 22 which is no longer in issue and furthermore, HRD has failed to identify the specific property or technology in the patents that relates to any of the remaining trade secrets.

**Ruling:** Inadmissible.

At this point, the Court has ruled that the only patents as to which HRD can claim an ownership interest are patent applications 2006/0199897 and 2008/0306217. The applicability of these three patent applications was not previously argued to the Court.[11]

As stated in my draft ruling on Dow's Motion in Limine:

> "During Summary Judgment briefing, a party is required to make any arguments that are available. *Caisse National de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). HRD's failure to make this application previously is fatal to its Motion. This was confirmed in the Court's denial of HRD's Motion for Reconsideration. In that decision, the Court enunciated that there has been no showing of newly discovered facts and, to the extent that new arguments have been made, they are not appropriate for consideration in that they could have been argued previously. D.I. 468 1-5-10. *See also, St. Louis v. Morris*, 573 F.Supp.2d 846, 854 (D. Del. 2008)."[12]

These patent applications cannot be used to prove or disprove any surviving issue and are therefore inadmissible. *Fed. R. Evid.* 401, 402.

---

[11] D.I. 444, at 45-55.

[12] *See*, Special Master's Draft Ruling, at 6 (Jan. 19, 2010).

## III. DEPOSITION DESIGNATIONS

**Dow Objection # 8.**

**Designation(s):** 38:14-40:14.

**Deponent:** Kurt Swogger, Vice President of Business Development at Dow (retired).

**Objection:** Relevance; prejudicial; hearsay.

**Ruling:** Reserved for the trial judge.

The designated testimony concerns Mr. Swogger's initial meeting with the Hassan brothers. HRD asserts the testimony is relevant because it provides context for the developing relationship between HRD and Dow, and shows the limited extent of Mr. Swogger's understanding of HRD's business. HRD further argues that lines 38:14 through 38:24 are relevant to show that Dow did not have knowledge of its two-pack concept.

**Opinion:** While HRD contends that the testimony at 38:14 through 38:24 proves that Dow did not have any knowledge of the two-pack concept, the testimony does not tend to support that assertion. Nonetheless, it could be relevant to HRD's position that, prior to its relationship with HRD, Dow did not have the technical information encompassed in HRD's surviving trade secrets.

While HRD does not provide a specific argument as to how this testimony constitutes probative evidence, the testimony may be relevant to HRD's position that, at the start of this project, Dow did not have any detailed knowledge concerning HRD's technical concept for its two-pack product, including the details of its "narrow" molecular weight composition.

Should Dow argue at trial that HRD's unique two-pack concept and how it should be implemented, were areas where it was knowledgeable, this testimony might be relevant.

**Dow Objection #17**

**Designation:** 120:7-123:3.

**Deponent:** Al Longstreet, President of H.B. Fuller, North America (retired).

**Objection:** Relevance; prejudicial; hearsay.

**Ruling:** Reserved for the trial judge.

The designated testimony relates to Mr. Longstreet's understanding of pricing for Dow's Affinity product, and the potential business conflict between Dow and HRD as wax suppliers, particularly as it related to Fuller's business in the hot melt marketplace.

Dow argues that the testimony is irrelevant to any remaining issue in the case. HRD contends that the testimony is relevant in that it shows the commercial viability of its remaining trade secret and patent claims and, in addition, suggests that the testimony shows Dow's motive for misappropriating HRD's trade secrets and sabotaging its two-pack product. At this point, HRD has narrowed its designation to lines 120:25 through 121:14.

**Opinion:** In its summary ruling, the Court dismissed HRD's claim that Dow breached the JDA by failing to develop a commercially viable product.[13] That, however, does not preclude HRD from arguing that a product or process developed using misappropriated trade secrets or inventions had commercial value.

Should HRD be able to show at trial that Dow misappropriated the surviving trade secrets or the inventions disclosed in patent applications 2006/0199897 or 2008/0306217, and that this information might be utilized in a two-pack product that could then compete with the wax products which Fuller was using, the testimony could be relevant.

I am therefore leaving this issue to the discretion of the trial judge who, at trial, will be in a better position to evaluate the relevancy of this testimony on the issue of product viability.

---

13 D.I. 434, at 1.

This testimony is not, however, available to support HRD's argument that Dow sabotaged HRD by not producing a commercially viable product. The Court has ruled that Dow did not breach the Supply Agreement.[14]

14 D.I. 434.

**Dow Objection #18.**

    **Designation:** 136:5-21.

    **Deponent:** Al Longstreet, President of H.B. Fuller, North America (retired).

    **Objection:** Relevance; prejudicial.

    **Ruling:** Reserved for trial judge.

The designated testimony relates to H.B. Fuller's testing of the samples it received from HRD. HRD asserts that the testimony is relevant to its remaining claims as it shows the value of the two-pack concept and supplies a motive for Dow's interference with HRD's development of the two-pack product.

    **Opinion:** This testimony may be admissible to show the viability of the two-pack product. As with the previous ruling, if HRD can show at trial that Dow misappropriated the surviving trade secrets or that it has an ownership interest in the surviving patent applications, and this testimony is shown to apply to those surviving claims, the testimony could support a broad argument concerning the marketability/value of a two-pack product which utilized the surviving trade secrets or the inventions disclosed in the patent applications '217 or '897.

However, the court has dismissed HRD's claim that Dow failed to develop a conforming product under the JDA, and thus, HRD cannot use this testimony to support an argument that Dow is liable for sabotaging the two-pack product.

**Dow Objection #20.**

**Designations:** 29:6-30:10; 30:21-31:8; 189:22-191.21.

29:6-30:10: This testimony describes the (1) end users in the hot melt adhesives industry; (2) specialized nature of the competing products; and (3) size of the EVA market.

30:21-31:8: A continuation of above testimony.

189:22-191:21: This testimony provides that, as a consumer of raw material, Fuller would pay more for Metallocene than it would for an EVA product, and that the gap is narrowing between the costs of EVA and the Dow Affinity product.

The designated testimony relates to Al Longstreet's (President of H.B. Fuller) identification of specific hot melt adhesive markets, along with his opinions concerning pricing, industry success and end use applications. HRD argues that this testimony is relevant to its remaining patent and trade secret misappropriation claims as it illustrates the value of the two-pack concept in the marketplace, as well as Dow's motives for interfering in HRD's two-pack development. Dow objects to this testimony, asserting that it is only relevant to HRD's lost profits claim under the Supply Agreement, which argument has been dismissed by the Court.

**Deponent:** Al Longstreet, President of H.B. Fuller North America (retired).

**Objection:** Relevance, prejudicial; lack of personal knowledge; hearsay.

**Ruling:** (1) HRD can no longer argue that Dow interfered with the two-pack product development. This claim, which was based on HRD's position that Dow breached the Supply Agreement, has been dismissed. (2) At this point, HRD has conceded that the testimony relative to the EVA market share is not relevant. (3) Testimony supporting HRD's argument that a product or process based on misappropriated trade secrets or inventions has commercial value may be relevant, but this must be left to the discretion of the trial judge.

**Opinion:** In my original decision, I questioned the admissibility of this testimony, noting that it was in part the expert opinion evidence of a lay witness. In general, I thought it was off the mark, and stated that, to the extent that HRD is required to show that its surviving trade secrets or the patent applications have independent economic value, it should do so without wandering through this complicated, incidental testimony, the relevance of which a jury could not be expected to understand. Upon reflection, I believe that the admissibility of such lay testimony as supports HRD's claim that an involved process or product, in general, has value, should be left to the trial judge. Because of the various complicating issues, the trial judge will be in the best position to determine the admissibility of this testimony at trial.

As to the testimony specifically concerning the EVA market, I would note the following: When HRD objected to Dow's market share exhibits (PTX020, PTX023, PTX024, PTX034, PTX045 and PTX048), which were previously submitted[15], it stated:

> ". . . [T]he current status of the case makes any reference to market size irrelevant. None of HRD's counterclaims are dependent on the size of the market or whether it is expanding or contracting. Since these documents do not tend to prove any fact at issue in the current controversy, they should be excluded under F.R.E. 402. Furthermore, admitting these documents and discussing the market size and growth rate is likely to confuse the jury, waste the court's time on collateral issues beyond the current dispute, and cause undue delay . . ."

Following receipt of HRD's position, Dow stated it would remove these market share documents from its exhibit list, while reserving its rights should HRD take an inconsistent position at trial. HRD then removed its objection. Then, on March 8, 2010, HRD submitted its next set of exhibit objections to the Special Master.[16] Among Dow's exhibits (to which HRD

---

15 *See*, HRD's objections (Nov. 30, 2009).

16 Because of an ongoing exhibit controversy, Dow did not submit its exhibit objections and has not yet seen the objection to which reference is made.


objected) was an article discussing advances in EVA.[17] Included in HRD's objection was the following language:

> "An article discussing EVA, advances in EVA, or EVA's market size have no bearing on the current controversy before the Court . . ."

As to that portion of the designation having to do with the EVA market, it appears that HRD agrees that this market share testimony is no longer appropriate. Thus, I do not feel a need to rule on lines 29:24-30:10 and 30:21-31.8. As I see it, HRD has conceded their inapplicability.

As to the damage testimony in general, it has been Dow's position that, assuming misappropriation arguendo, HRD has still not provided adequate substantiation for its argument that the remaining trade secret or patent claims have commercial value or that specific damages can be proved.[18] This is a matter which must be resolved by the Trial Court.

---

17 Dow Exhibit PTX012.

18 The measure of damages is normally the profits, benefits or advantages gained through the trade secrets inventions or the loss caused by the misappropriation. *Reinforced Molding Corp. v. General Electric Co.*, 592 F.Supp. 1083 (W.D. Pa. 1984), See also, 6 Del.C. §2002(a) and §2003(a).

**RECOMMENDATION:**

I hereby certify that these are my Final Rulings relative to the parties' motions in limine, exhibits and deposition designations as to which draft rulings were published January 19, 2010, and as to which HRD has excepted. I hereby recommend them to the Court.

B. WILSON REDFEARN, Special Master

Dated: March 16, 2010