IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOW CHEMICAL CANADA INC., on its behalf and as assignee of THE DOW CHEMICAL COMPANY, | : : : : | |
| Plaintiff, | : : | |
| v. | : : : | |
| HRD CORPORATION (d/b/a Marcus Oil & Chemical), | : : : | C.A. 05-023-RGA |
| Defendant/Counterclaim Plaintiff, | : : : | |
| v. | : : : | |
| DOW CHEMICAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and the DOW CHEMICAL COMPANY, | : : : : : | |
| Counterclaim Defendants. | : | |

## **MEMORANDUM OPINION**

---

Kenneth J. Nachbar, Esq., Wilmington, Delaware; Attorney for Plaintiff Dow Chemical Canada Inc. and Counterclaim Defendants Dow Chemical Canada Inc. and The Dow Chemical Company.

John A. Sensing, Esq., Wilmington, Delaware; Attorney for Defendant and Counterclaim Plaintiff HRD Corporation (d/b/a Marcus Oil & Chemical).

---

August 2, 2012
Wilmington, Delaware

1

ANDREWS, UNITED STATES DISTRICT JUDGE:

This Court sanctioned Defendant HRD Corporation in the amount of $324,562.00 for

bringing a meritless Motion for Discovery Abuse Sanctions against Plaintiff Dow Chemical

Canada, Inc. (D.I. 470). HRD now brings two Motions for Reconsideration of the Sanctions

Order. (D.I. 471; D.I. 699). Dow requests additional sanctions against HRD for HRD's failure

to pay the sanctions award by the Court's deadline. (D.I. 479).

## BACKGROUND

### 1. Procedural History

HRD filed its Motion for Discovery Abuse Sanctions on April 16, 2009, alleging that

Dow committed eight distinct discovery violations. (D.I. 247). HRD requested case terminating

sanctions. (*Id.*) The Court "was struck by the seriousness of the allegations" and advised the

parties that "unless they resolved the Motion on their own terms, one of them would ultimately

pay the costs of the Motion." (D.I. 390, p. 18). The parties did not resolve the dispute and the

Court denied HRD's motion for sanctions, noting that HRD fell "well short" of carrying its

burden. (*Id.*) The Court invoked its discretionary power to sanction HRD by awarding Dow

attorneys' fees for its costs defending the motion. (*Id.* at 17-18). HRD was ordered to pay

$324,562.00 on or before January 14, 2010. (D.I. 470). On January 13, 2010, HRD filed a

Notice of Appeal from the Sanctions Ruling with the Third Circuit. (D.I. 472). On the same

day, HRD filed a motion requesting that the Sanctions Order be stayed pending final judgment

or, in the alternative, pending the outcome of the appeal. (D.I. 471). This motion further

requested, in the alternative, that the Court reconsider and vacate the Sanctions Order. (*Id.*)

HRD did not pay the sanctions amount by the January 14 deadline. On February 1, 2010, Dow

2

filed a Motion for Inherent Power Sanctions against HRD based on HRD's failure to comply
with the payment order. (D.I. 479). Dow specifically requested that HRD be prevented from
proceeding on its counterclaims until payment was made. (D.I. 480, p. 4). On June 24, 2010, the
Third Circuit dismissed HRD's appeal of the Sanctions Order for lack of appellate jurisdiction.
(D.I. 681). HRD then filed for bankruptcy on July 13, 2011, automatically staying all
proceedings in this case. (D.I. 682). The bankruptcy case was terminated on March 2, 2012, and
the automatic stay was lifted. (D.I. 694, Exh. B). The Court held a scheduling conference on
April 10, 2012, at which time the Court allowed the parties to file supplemental briefing on the
Motion for Reconsideration of the Sanctions Order. (D.I. 698). The Court now will resolve all
sanctions-related matters.

## 2. The Court's Opinion Denying HRD's Motion for Sanctions and Awarding Dow Attorneys' Fees

On July 30, 2009, the Court denied HRD's Motion for Discovery Abuse Sanctions and
awarded Dow attorneys' fees incurred defending the motion. (D.I. 390, p. 1). The Court began
its discussion by noting, "HRD has presented the Court with a piñata of alleged discovery
abuses, most of which totally lack merit." (*Id.* at 3). The Court then addressed a selection of
HRD's specific allegations.[1] The Court first examined HRD's complaint that Dow violated Fed.
R. Civ. P. 34(b) by failing to produce documents organized "by custodian, by HRD's requests
for production, chronologically, or in any other meaningful manner." (*Id.* at 4). The Court
noted, however, that Dow had agreed in July 2007 to ameliorate HRD's concerns regarding the
organization of the documents and had largely abided by the agreement. (*Id.* at 4-5). The Court

---

[1] The Court declined to address each and every discovery abuse alleged by HRD. (*Id.* at 3-4). To the extent that a
particular allegation was not mentioned, that allegation was not sufficient to merit a sanctions award. (*Id.* at 4).

concluded that "HRD's complaints regarding Dow's allegedly disorganized document production do not remotely support a sanctions award." (*Id.* at 5-6).

The Court next examined HRD's allegation that Dow's designated custodian of documents was largely unable to recognize documents at her deposition. (*Id.* at 6). The Court observed that a custodian is not necessarily an individual with knowledge of a particular document, but rather is merely someone who has physical control over the documents when they are collected for production. (*Id.*) The Court found that Dow had done nothing wrong and the circumstances of the custodian designation did not support a sanctions award. (*Id.* at 7). The Court next examined HRD's allegation that Dow failed to fully comply with an order to provide a page-by-page redaction log. (*Id.* at 8). The Court found that Dow had identified seventeen potential explanations for its redactions and provided a "Redaction Key" listing the explanations for each document. (*Id.*) The Court viewed this as reasonable compliance with its order and held that the allegation did not support a sanctions award. (*Id.*) The Court's final example of meritless allegations was HRD's allegation that Dow "hid its most damaging documents," including a supposedly damaging e-mail that HRD only discovered by "sheer luck." (*Id.*) The Court noted, however, that HRD never actually explained the relevance of the e-mail at issue, and that the Court itself failed to see the relevance of the e-mail. (*Id.* at 9). Further, HRD never sought to depose the author of the e-mail, and failed to mention the e-mail at the deposition of its recipient. (*Id.*) The Court concluded that the incident did not support a sanctions award. (*Id.* at 10).

This concluded the Court's review of allegations that it considered completely meritless. The Court then evaluated two alleged discovery abuses that did not rise to the level of sanctionable conduct, but nevertheless "require[d] the Court's attention." (*Id.* at 10). The first

4

involved HRD's inspection of Dow's Sarnia wax production facility. (*Id.* at 10-11). When

HRD's counsel arrived to inspect the facility, Dow prevented counsel from taking digital photos

with HRD's own camera. (*Id.* at 11). Instead, Dow required HRD to use a Dow-provided digital

camera and insisted on reviewing the photos before transmitting them to HRD. (*Id.*) HRD was

unhappy with the quality of the photos and the circumstances of the inspection, but the plant was

demolished before another inspection could occur.[2] (*Id.* at 11-12). HRD argued that the

inspection was tainted and its discovery efforts thus prejudiced. (*Id.* at 12). The Court did not

believe that HRD was prejudiced, chiefly because HRD delayed almost three years from the

complaint's initial filing to request the inspection. (*Id.* at 13). The Court, however, criticized

Dow's approach to discovery:

> Dow [was] not entirely blameless here. Indeed, prohibiting HRD from using its
> own camera to take photographs of the Sarnia plant was overzealous,
> unnecessary, and an exercise of poor judgment. The same may be said with
> regard to Dow's initial insistence that it take all photographs on behalf of HRD.
> Unfortunately, when it comes to discovery, Dow has too frequently exercised an
> unwarranted level of protectionism. This is reflected, for instance, in the
> excessive number of sealed filings in this case. Likewise, it has been reflected in
> Dow's withholding of documents over speculative concerns that HRD may export
> technology to Iran in violation of export control laws. Similarly, it is exemplified
> by Dow's overly extensive document redactions. Simply put, Dow's approach to
> discovery appears to have been guided by an undue level of distrust for its
> adversary, which seems to have again manifested itself during HRD's inspection
> of the Sarnia facility.

(*Id.* at 14-15). The Court finished this point by noting, "[A]lthough the Court concludes

that Dow did not commit any sanctionable conduct in connection with HRD's inspection

of the Sarnia facility, the Court nevertheless takes this opportunity to note that, during

discovery, Dow has not always been reasonable." (*Id.* at 15).

---

[2] The plant's demolition was scheduled prior to HRD's request to inspect the facility. (*Id.* at 10).

The Court next examined a second HRD allegation that it viewed as not wholly meritless. (*Id.*) HRD had objected to Dow's alleged failure to promptly produce process flow diagrams for the Sarnia facility. (*Id.*) Dow initially asserted that it never prepared the diagrams, but a Dow engineer admitted at deposition that they did in fact exist. (*Id.*) The Court did not see evidence to conclude that Dow's failure to promptly produce process flow diagrams was anything more than an innocent mistake. (*Id.* at 16). Sanctions were thus not warranted, but the Court attributed the mistake to "the result of a lack of reasonable effort on the part of Dow's counsel to thoroughly determine whether such documents exist[ed]." (*Id.*) The Court finished by concluding, "Dow's failure to produce process flow diagrams suggests more systematic problems with Dow's approach to discovery." (*Id.* at 17).

Despite the acknowledgment that Dow's discovery approach suffered from "systematic problems," the Court sanctioned HRD and awarded Dow its costs for defending the motion. (*Id.* at 17-18). The Court invoked its inherent "discretionary power to award attorneys' fees 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (*Id.*) (citing *In re Elonex Phase II Power Mgmt. Litig.*, 279 F. Supp. 2d 521, 525 (D. Del. 2003)). It further invoked 28 U.S.C § 1927: "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." (D.I. 370, p. 17) The Court noted that it was "reluctant" to award Dow attorneys' fees due to Dow's unreasonable conduct, but that it had advised the parties that "certain

6

conditions would apply to the continued litigation of the Current Motion." (*Id.* at 18). The conditions were, "unless [the parties] resolved the Motion on their own terms, one of them would ultimately pay the costs of the Motion." (*Id.*) Because HRD's allegations fell "well short of supporting the requested sanctions," the Court awarded Dow the costs of defending the Motion for Discovery Abuse Sanctions. (*Id.*)

## DISCUSSION

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Id.* HRD argues that the Court did not properly find that its Motion for Discovery Abuse Sanctions was brought in bad faith and also argues that newly discovered evidence shows that the basis for the motion was in fact stronger than originally presented. Dow responds that the Court properly found that HRD engaged in sanctionable conduct, that no new evidence justifies vacatur of the Sanctions Order, and that HRD's Motion for Reconsideration is untimely. Dow further requests that HRD be prohibited from proceeding on its counterclaims until HRD pays the sanctions award.

The Court begins by ruling that HRD's Motion for Reconsideration is timely. Dow argues that Rule 59(e) requires the Motion for Reconsideration to be brought within

twenty-eight days of the order to be reviewed.  Because the Sanctions Order was issued

on July 30, 2009, and HRD did not submit the Motion for Reconsideration until January

13, 2010, the motion is supposedly untimely.  The amount of sanctions, however, was not

fixed until January 5, 2010.  An award of sanctions it not final "until the district court

determines the amount of the sanction."  *See Lazorko v. Pennsylvania Hospital*, 237 F.3d

242, 248 (3d Cir. 2000).  Because HRD brought its motion only eight days after the

Sanctions Order became final, the motion is timely.

The Court based its Sanctions Order both upon "the Court's discretionary power

to award attorney fees 'when a party has acted in bad faith, vexatiously, wantonly, or for

oppressive reasons'" and 28 U.S.C. § 1927.  Both bases for sanctions require specific

findings of bad faith.  *See Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995); *see*

*Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 142 (3d Cir. 2009).

Sanctions should not be awarded, "absent a finding that counsel's conduct resulted from

bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal."  *Id*.

The Court's Sanctions Order did not apply the bad faith standard.  Although the

Court's intention to discourage the filing of meritless motions that level serious

allegations at opposing counsel is a salutary one, the rule is not that the losing party pays

opposing counsels' fees.  This Court did initially state that it was applying the bad faith

standard to HRD's conduct.  The Opinion, however, makes clear that an order of

sanctions was inevitable, regardless of whether bad faith was actually in play.  For

example, the Court admitted that Dow's unreasonable conduct in discovery matters made

the Court reluctant to sanction HRD, but this reluctance was overcome by its knowledge

that the parties were warned that "certain conditions would apply to the continued

8

litigation of the current Motion...unless [the parties] resolved the Motion on their own terms, one of them would ultimately pay the costs of the Motion." (D.I. 370, p. 18). The law does not support burdening a motion with the precondition that its denial will result in an automatic imposition of sanctions on the moving party. Bad faith is a necessary prerequisite and must be specifically determined. This is true regardless of the gravity of the underlying allegations; the amount of good faith required to bring a motion does not exist on a "sliding scale" that increases based on the severity of the motion's charges. HRD was sanctioned despite the Court's recognition that Dow "too frequently exercised an unwarranted level of protectionism," had "systematic problems" with its approach to discovery, and "sometimes acted unreasonably in discovery matters." (*Id.* at 14, 17, 18). This is precisely the type of conduct that would provide a party with the good faith basis to file a Motion for Discovery Abuse Sanctions. The fact that the motion was ultimately meritless was an insufficient reason to conclude that it was brought in bad faith. The Court thus reverses its prior decision and vacates the Sanctions Order.

The Court need not address HRD's theory that new evidence warrants reconsideration. Further, because the Sanctions Order is vacated, Dow's request that the Court prevent HRD from proceeding on its counterclaims until the Sanctions Order is paid is denied.

An appropriate order will follow.