IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOW CHEMICAL CANADA INC., on its behalf and as assignee of THE DOW CHEMICAL COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HRD CORPORATION (d/b/a Marcus Oil & Chemical),<br><br>Defendant/Counterclaim Plaintiff,<br><br>v.<br><br>DOW CHEMICAL CANADA INC., on its own behalf and as assignee of THE DOW CHEMICAL COMPANY, and THE DOW CHEMICAL COMPANY,<br><br>Counterclaim Defendants. | : | C.A. 05-023-RGA |

**MEMORANDUM OPINION**

This opinion addresses Dow's Motion for Award of Attorneys' Fees (D.I. 887) and Updated Request for Attorneys' Fees. (D.I. 896). The parties dispute whether Dow's submission of detailed time records is a prerequisite to attorneys' fees recovery. They offer competing interpretations of *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983) (holding that time records are a prerequisite for recovery of attorneys' fees under 42 U.S.C.A. § 1988). *Carey*, however, concerned a civil rights claim for fees recoverable under a federal statute. *Id.* at 1139. *Carey* is irrelevant to this situation, as Dow's request for attorneys' fees stems from a diversity contract claim where Delaware law, not federal

law, controls. *See Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 875 F. Supp. 165, 179-80 (S.D.N.Y. 1994).

In Delaware, the submission of time records is not a strict requirement for the recovery of attorneys' fees. *See Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546-47 (Del. 1998); *see also NuCar Consulting, Inc.v. Doyle*, 2006 WL 1071533, *3-4 (Del. Ch. Apr. 17, 2006)("split time problem"), *aff'd sub nom. Doyle v. Nucar Consulting, Inc.*, 913 A.2d 569 (Del. 2006). Trial courts have broad discretion in fixing the amount of attorney fees to be awarded and may consider a variety of factors. *See Johnston*, 720 A.2d at 546-47. As the parties well know, the Court held that Dow may recover attorneys' fees for its work asserting the original claim under the Supply Agreement, but is precluded from recovering for efforts opposing HRD's counterclaims brought under the Joint Development Agreement.[1] There is an overlap here between the legal work for which Dow is owed fees and those for which it is not. Where it is not reasonably possible to parse between which fees are recoverable fees from which are not, it is appropriate to award a reasoned fraction of the total fees incurred.[2] *See Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir. 1988); *Dickerson v. HBO & Co.*, 1995 WL 767179, at *2 (D.D.C. Dec. 21, 1995). The Court agrees with Dow that this is the right thing to do here, as the factual overlap between the factually related Supply Agreement and Joint Development Agreement litigation is apparent. The Court also agrees that the protracted nature of this case cuts against the usefulness of providing specific time entries, as the Court's ability to conduct a

---

[1] The Supply Agreement had an attorneys' fee provision. The Joint Development Agreement did not. (*See* D.I. 895).

[2] The parties do not cite, and the Court is unable to locate a Delaware state court case, or even a Third Circuit case, addressing this specific issue.

thorough review of the billable hours entered during the eight year litigation of a case with approximately 900 docket items is doubtful.[3]

In support of its original application, Dow provided an affidavit from its Managing Counsel averring to the total dollar amount of legal fees and costs incurred (about $15,000,000), with a monthly fee expense report attached. (D.I. 887-2). This provides a baseline from which the Court may consider Dow's present request of $9,781,595, which represents 75% of the fees from 2005-09. This is not unreasonable on its face, as the pursuit of the Supply Agreement contract claim involved a sophisticated and large scale chemical production dispute, with highly technical issues hinging on chemical testing and expert witnesses in the field of polyethylene waxes. The size of the damages award compared to the fee request also works in favor of finding the request reasonable, as HRD has been ordered to pay a grand total of $34,533,577 in connection with Dow's successful contract claim. (D.I. 886). Finally, while the Court understands Dow's method of approximation, I am not convinced that Dow's evidence (the three Looby affidavits, D.I. 887-2, 892, 898) and analysis (*e.g.*, D.I. 896 at 4-6) support the conclusion that 75% of total fees incurred from 2005-2009 can be said to pertain to the Supply Agreement. I understand Dow had recoverable fees it is not now seeking, for example, recent litigation on the Supply Agreement's damages issues. (*See* D.I. 874). I was not the assigned judge from 2005-09, and thus I have no personal knowledge from which to evaluate Dow's request. While I am not confident that 75% of the attorneys' fees from 2005-09 related to the Supply Agreement, I am confident, based on the record before me, that at least 50% did. Therefore, I conclude that $6,521,063.33 is the most that I could award as reasonable attorneys' fees.

---

[3] The Court notes that one good indication of the reasonableness of Dow's attorneys' fees would be a comparison with HRD's attorneys' fees. *See, e.g., Johnston*, 720 A.2d at 547. Since HRD has not offered such information, the Court infers that if HRD's attorneys' fees were disclosed, they would not provide a basis for challenging Dow's.

On the subject of the reasonableness of the attorneys' fees, this case is not the ordinary federal fee-shifting case. In litigation where one party, usually the plaintiff, does not actually pay the attorneys' fees, there is no client check on what the attorneys spend. In such a case, the need for court scrutiny is greater than in a case such as this, where the client was a sophisticated (Fortune 500) business entity that had its own attorney managing the litigative efforts of outside counsel. To some extent, the fact that Dow has already paid the fees seems to me to be evidence that they were reasonable. *See Johnston*, 720 A.2d at 547. In particular, some of the matters that come up in typical federal fee litigation, such as, the reasonableness of an attorneys' hourly rate given the attorneys' level of experience, the complexity of the work, and the local market for such work, is not, in my opinion, something that I would consider contested absent some evidence calling the matter into question.[4] A sophisticated consumer's arms-length purchasing of the services establishes that reasonableness, at least in the absence of any contrary evidence. I believe that is also true of the number of hours billed.

There is a second aspect of "reasonableness," which is where HRD concentrates its argument. If the client wanted its attorneys to over-litigate, either as a litigation tactic, or for other business reasons, the attorneys might run up expenses that are unreasonable although perfectly acceptable to the client. I think Dow has the burden of showing the reasonableness of its litigation tactics (at least if it wants recovery for all of its litigation expenses). For various reasons, Dow has not really addressed this.[5]

With all of that being said, the Court does believe that an additional reduction is in order. HRD's complaints regarding Dow's discovery conduct do not fall on deaf ears. As this Court

---

[4] The Court earlier found almost $300,000 in attorneys' fees in relation to one motion to be reasonable. (D.I. 470).

[5] I infer that Dow is concerned that litigating attorneys' fees is just throwing good money after bad. (D.I. 896 at 4 n. 1).

previously noted, "[D]uring discovery, Dow has not always been reasonable." (D.I. 390, p. 15). For example, Dow withheld discovery based on speculative concerns that HRD might export technology to Iran in violation of export control laws. (*Id.* at 14). Dow also failed to timely produce "process flow diagrams" that were "unquestionably relevant" to the case, despite HRD's repeated requests. (*Id.* at 16). The Court observed "systematic problems with Dow's approach to discovery." (*Id.*).[6] This Court granted at least three motions to compel in HRD's favor during the litigation. (D.I. 92, 121, 462). Due to these problems, and recognizing that Dow has the burden of proof, the Court finds that a 50% reduction from Dow's updated fee request is appropriate, leaving Dow with an attorneys' fees award of $3,260,531.66.

Dow's motions for attorneys' fees (D.I. 887 & 896) are GRANTED IN PART and DENIED IN PART. Dow is awarded $3,260,531.66. The Court will enter a separate order to that effect.

Richard G. Andrews
U.S.D.C. 7/29/13

[6] As is well-known to the parties, HRD's litigation conduct was not blameless either.